Nos. 23-2192, 23-2194

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**JAMES SPRINGER**
Plaintiff-Appellee/Cross Appellant,

v.

**MICHELLE LUJAN GRISHAM AND PATRICK ALLEN**
Defendants-Appellants/Cross-Appellees.

**Appeal from the United States District Court
For the District of New Mexico
No. 1:23-cv-00781-KWR-LF**

## APPELLEE'S REPLY BRIEF

| | |
|---|---|
| A. Blair Dunn, Esq.<br>WESTERN AGRICULTURE,<br>RESOURCE AND BUSINESS<br>ADVOCATES, LLP<br>400 Gold Ave SW, Suite 1000<br>Albuquerque, NM 87102<br>(505) 750-3060<br>abdunn@ablairdunn-esq.com | Zach Cook, Esq.<br>ZACH COOK, LLC<br>1202 Sudderth # 425<br>Ruidoso, NM 88345<br>(575) 937-7644<br>zach@zachcook.com |

*Attorneys for Plaintiff-Cross Appellant*

August 21, 2024

*Oral Argument Requested*

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................. 1

    A. The District Court Got It Right on Parks and Therefore
       Got It Wrong on Playgrounds……………………….………..……1

    B. The District Court Correctly Assessed the Non-Merit Factors
       for the Injunction…………………………………………………...5

    C. Plaintiff Did Argue His Standing to Challenge the Public Health
       Orders as Applied to Playgrounds and Does Have Standing
       Because the Playgrounds at Issue are an Internal Feature of the
       Parks that Plaintiff Has Standing to Challenge………………….....6

CONCLUSION ............................................................................................. 7

CERTIFICATES .......................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Aposhian v. Barr*,
958 F.3d 969 (10th Cir. 2020). ...................................................................................6

*Bonidy v. U.S. Postal Serv.*,
790 F.3d 1121 (10th Cir. 2015) ............................................................................ 3, 4, 6

*Koons v. Platkin*,
673 F. Supp. 3d 515 (D.N.J. 2023) ............................................................... 2, 3, 4

*Murthy v. Missouri*,
144 S. Ct. 7, 217 L. Ed. 2d 178 (2023) ......................................................................6

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022). ................................................................................ 1, 3, 5, 6

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009). ...................................................................................6

*Summum v. Pleasant Grove City*,
483 F.3d 1044 (10th Cir. 2007) ...................................................................................6

*United States v. Rahimi*,
144 S. Ct. 1889 (2024) .................................................................................................1

**Other Authorities**

Anne Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*
40 Landscape J. 1, 14 (2021) ...................................................................................1

# ARGUMENT

## A. The District Court Got It Right on Parks and Therefore Got It Wrong on Playgrounds

The Third Brief of Appellant/Cross-Appellee primarily focuses on addressing the June 2024 decision from the Supreme Court in *United States v. Rahimi*, 144 S. Ct. 1889 (2024) for the premise in this case that the district court's *Bruen* analysis amounted to requiring a "'historical twin" rather than a "historical analogue.'" *Rahimi* at 1903 (citation omitted). But a review of the district court's decision does not support this argument, instead, the district court's well-reasoned analysis was "'that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.' *Id*. (emphases in *Bruen*)." App. 95.

Ultimately, the Appellants/Cross Appellees' Third Brief does not find any more purchase than their Opening Brief, instead, insisting and continuing to rely upon their disagreement with the district court's proper determination that the more appropriate analogue for parks than the Reconstruction examples of regulation of firearms in parks that arose later were the analogues from the time before the adoption of the Second Amendment, stating:

> Even assuming those articles provided evidence for the Court to consider, it is not at all clear that there was no historical *analogue* to parks. *See* Anne Beamish, *Before Parks: Public Landscapes in*

*Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1, 14 (2021) ("Today's American public park is deeply rooted in the seventeenth and eighteenth-century utilitarian village green, common, square, and parade ground"); *Koons v. Platkin*, 2023 WL 3478604, at *83 (D. NJ 2023) (listing examples and noting no evidence that historical analogues prohibited the carrying of firearms).

App. 97. Again, the Third Brief does not explain why Judge Riggs's reliance on the extensive and reasoned analysis of Chief District Judge Bumb in *Koons v. Platkin*, 673 F. Supp. 3d 515, 640–42 (D.N.J. 2023), that the best historical analogue to consider were the parks in existence at the time of the time of adoption and before, is wrong. Quite simply, the district court has, at least with regards to parks, correctly identified the most relevant historical analogues from the most relevant time period in its reliance on *Koons* and this Court should remain unpersuaded to apply analogues from a less relevant time period to parks from that time period or from territorial jurisdictions. Plaintiff has satisfied his burden for the injunction entered by the district court regarding parks because the government has failed to carry its burden to show a historical tradition of banning firearms in public parks in their historical analogues.

With regard to playgrounds, however, the district court in this case, the district court in *Koons* and the Appellants/Cross Appellee have the argument inside out, literally. The illogical rhetorical instrument used here by the district court and the government goes as follows - playgrounds are a feature found on school grounds and

given that schools are recognized sensitive places then playgrounds found at schools are a sensitive place – which makes sense, but it is illogical to say – playgrounds found on park grounds are a sensitive place merely because children attend playgrounds found on both parks and school grounds. That analogy, as applied to parking lots associated to sensitive government buildings (Post Offices), has been rejected in this Circuit. In fact, the district court in *Koons* relied on this Circuit's pre-*Bruen* analysis recognizing:

> In his seemingly prescient concurring opinion, Judge Tymkovich essentially adopted this position, noting that a prohibition's presumption of lawfulness depends on the nature of the government property at issue. *See Bonidy*, 790 F.3d at 1135 (Tymkovich, J., concurring in part, and dissenting in part) ("it is not enough to say that *every* government building, lot, or park will be treated the same."); *see id.* at 1136 n.7 ("To say the right has not been extended to government buildings is to imply no plaintiff could ever successfully challenge a restriction in any government buildings. That goes too far."). In other words, a USPS post office and parking lot are manifestly different from the U.S. Capitol and its surrounds. At this juncture, the Court does not attempt to categorize the relevant differences, as the *Koons* Plaintiffs urged during oral argument. [Tr. at 9–23.] Rather, this Court simply notes that it addresses the challenges to Chapter 131 involving government buildings independently and without resort to assuming that a right to carry for self-defense does not exist. To employ such assumption would seem to misunderstand and misrepresent the *Bruen* dicta. Whether the sensitive-place designations survive depends **\*607** on whether the State can meet its burden of demonstrating a historical tradition that is well-established and representative as to such government buildings.

3

*Koons v. Platkin*, 673 F. Supp. 3d 515, 606–07 (D.N.J. 2023). Specifically, in his Concurring Opinion, Judge Tymkovich, discussing how a parking lot for a post office does not automatically become a sensitive place, states that:

> Similarly, the characteristics of the location at issue—the "where"—bear on this analysis.[6] A regulation may of course speak generally to a type of property. But the government's interest may be unusually weak **regarding a particular subcategory of that property**—it is not enough to say that *every* government building, lot, or park will be treated the same. In such a case, we should hesitate before holding a prophylactic general regulation substantially related to its objective.

*Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1135 (10th Cir. 2015)(emphasis added).

It is inapposite of that concurring opinion from *Bonidy* for the district court in this matter to have concluded that a playground located at park is automatically the same as a playground located at school. Instead, "courts may scrutinize two otherwise identical properties differently depending on their location." *Id*. at 1135. Judge Tymkovich's approach applied to this case yields a sounder logical outcome, where the government may lawfully prohibit the carrying of firearms at a playground located at school because schools are a sensitive place. Whereas the government may not lawfully prohibit the carrying of firearms at playgrounds located within parks, because parks are not a sensitive place where the carrying of firearms was historically prohibited.

This outcome is also on sounder footing logically for self-defense policy reasons as well, which is to say that if the Governor's aim in the regulation is to

4

prevent gun violence from harming children at parks, and parks are a dangerous location, then would not allowing law abiding parents of children to carry firearms in both the parks and the playgrounds located within or adjacent to a park to defend their children more likely meet that objective than disarming the parents so that they cannot defend their children as Appellee/Cross-Appellant seeks to do here. Appropriately applying both *Bruen* and the Concurring Opinion from *Bonidy* the district court correctly enjoined the prohibition of carrying in parks and incorrectly denied the injunction with respect to the public playgrounds not located on school grounds, but most commonly found to be an internal feature to a public park.

**B. The District Court Correctly Assessed the Non-Merit Factors for the Injunction.**

Carrying forward Judge Tymkovich's Opinion in *Bonidy* noted above to this case it is important for this Court to consider that:

> Of course I agree public safety—at not too amorphous a level of generality—qualifies as an important government interest. But the government has not shown that successfully combating potential crime at this location—a run-of-the-mill post office parking lot in a Colorado ski town—hinges on restricting the Second Amendment rights of lawfully licensed firearms carriers. Consequently, it cannot possibly show that preventing those individuals from storing their firearms in their cars is substantially related to preventing criminality. Thus, *as applied in this case,* the regulation restricts far more conduct than is necessary to protect the asserted government interest.

*Bonidy* at 1129. Thus, Appellee/Cross-Appellant stands on his Opening Brief that the district court correctly determined that the non-merits factors we met to satisfy

the holding in *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007); *Murthy v. Missouri*, 144 S. Ct. 7, 9, 217 L. Ed. 2d 178 (2023); *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases); and *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

### C. Plaintiff Did Argue His Standing to Challenge the Public Health Orders as Applied to Playgrounds and Does Have Standing Because the Playgrounds at Issue are an Internal Feature of the Parks that Plaintiff Has Standing to Challenge

As noted by the Appellants/Cross-Appellees, Plaintiff specifically challenged that it was a logical fallacy to find he could obtain an injunction that allowed him to carry his firearm inside of a public park but, must remain outside of a playground located inside of that public park. At a minimum, Plaintiff clarified that his intention in his declaration was to convey that he attends and plans to attend parks in the future where playgrounds are an internal feature. That argument was not waived in his Opening Brief, it was reaffirmed, pointing out that the district court erred in drawing a distinction between parks and playgrounds that cannot readily exist in the district court application of *Bruen* or for standing to challenge *as applied* regulation. Without question, Plaintiff wishes to be able to defend his family when they attend the parks including all internal features of those parks. Splitting hairs and mincing words does not change the reality that it is illogical to disallow parents from protecting their children in the internal area of a portion of a park where they are allowed otherwise to carry firearms to protect their children.

6

## CONCLUSION

This Court should affirm the injunction as to the Parks Restriction and reverse in part to remand for consideration of the Playgrounds Restriction in light of Judge Tymkovich's Opinion in *Bonidy*.

Respectfully submitted this August 21, 2024.

    Respectfully submitted,

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

7

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the foregoing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,638 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B) (iii). This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman.

## CERTIFICATE OF DIGITAL SUBMISSION

Pursuant to the 10th Circuit ECF User's Manual, Section II.J, I hereby certify with respect to the foregoing document, that:

1) All required privacy redactions have been made per 10th Cir. R. 25.5;

2) Required hard copies will be filed with the court upon acceptance; and

3) The digital submission has been scanned for viruses with the most recent version of Microsoft Windows Defendant Antivirus Version: 1.263.1943.0 Updated March 15, 2008 and according to this program is free of viruses.

## CERTIFICATE OF SERVICE

I, A. Blair Dunn, hereby certify that on August 21, 2024, I served a copy of the on the parties of record by electronic means:

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060 abdunn@ablairdunn-esq.com