Nos. 23-2192, 23-2194

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JAMES SPRINGER,

*Plaintiff-Appellee/Cross-Appellant*,

v.

MICHELLE LUJAN GRISHAM, OFFICE OF THE GOVERNOR, PATRICK ALLEN, AND
NEW MEXICO DEPARTMENT OF HEALTH,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court for the District of New Mexico
(No. 1:23-cv-00781-KWR-LF) (Hon. Kea W. Riggs)

**SUPPLEMENTAL BRIEF OF DEFENDANTS-APPELLANTS**

Holly Agajanian
*Chief General Counsel to Gov. Lujan Grisham*
Kyle P. Duffy
*Deputy General Counsel to Gov. Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Cody Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

Janet Carter
William J. Taylor, Jr.
Carina Bentata Gryting
Everytown Law
450 Lexington Ave, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

Freya Jamison
Everytown Law
P.O. Box 14780
Washington, DC 20044

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................1

   I.   We the Patriots holds that separate, unchallenged legal obstacles negate standing ....................................................................................................1

   II.  Springer lacks standing to seek preliminary injunctive relief .........................5

   III. Springer lacks standing for all additional claims for relief ...........................7

CONCLUSION ................................................................................................10


Albuquerque Code of Ordinances § 5-8-6 ................................................. Exhibit 1

Administrative Instruction Nos. 5-20, 5-19 ................................................ Exhibit 2

Bernalillo County Ordinances §§ 58-12, 58-5, 58-57 ................................. Exhibit 3

# TABLE OF AUTHORITIES

## Cases

*Bishop v. Smith*,
    760 F.3d 1070 (10th Cir. 2014)........................................................................2, 4

*Delta Constr. Co. v. E.P.A.*,
    783 F.3d 1291 (D.C. Cir. 2015) .......................................................................4

*Exotic Animal Owners v. New York*,
    98 F. App'x 905 (2d Cir. 2004) .....................................................................4, 8

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................................9

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ........................................................................................9

*Hansen v. Harper Excavating, Inc.*,
    641 F.3d 1216 (10th Cir. 2011)......................................................................10

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
    909 F.3d 446, 465 (D.C. Cir. 2018) ..............................................................4, 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................6

*Rio Grande Found. v. Oliver*,
    57 F.4th 1147 (10th Cir. 2023) .....................................................................10

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
    98 F.3d 1121 (9th Cir. 1996)...........................................................................4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................8

*Utah v. Babbitt*,
    137 F.3d 1193 (10th Cir. 1998).......................................................................9

*Valdez v. Lujan Grisham*,
    No. 22-2112, 2024 WL 2319752 (10th Cir. May 22, 2024) ................................8

*We the Patriots, Inc. v. Lujan Grisham*,
    119 F.4th 1253 (10th Cir. 2024) ...............................................1, 2, 3, 4, 6, 7, 8, 9

*White v. United States*,
    601 F.3d 545 (6th Cir. 2010)........................................................................4, 8

**Statutes**

Administrative Instruction No. 5-19 .................................................................3, 5

Administrative Instruction No. 5-20 ...........................................................3, 5, 6, 9

Albuquerque Code of Ords. § 5-8-6(G).........................................................3, 6

Bernalillo Cnty. Ord. § 58-57(b)(27)...............................................................3

Bernalillo Cnty. Ord. § 58-12(b)(27)..............................................................3, 6

Bernalillo Cnty. Ord. § 58-5...........................................................................3

N.M. Stat. Ann. §§ 30-7-2.1(A) & B(2) ........................................................3, 5, 9

**Other Authorities**

Charles Alan Wright et al., *Federal Practice and Procedure*
   § 3531.5 (3d ed. 2008 & Supp. 2024) ...................................................5

## INTRODUCTION

Defendants-Appellants/Cross-Appellees submit this brief in response to the Court's order directing supplemental briefing regarding the impact of *We the Patriots, Inc. v. Lujan Grisham*, 119 F.4th 1253 (10th Cir. 2024), on this cross-appeal. As explained below, *We the Patriots* compels the conclusion that Springer lacks standing to challenge the Parks Restriction or the Playgrounds Restriction because unchallenged, overlapping state and local laws forbid the conduct in which he says he wants to engage. This standing defect is not limited to the preliminary injunction at issue in this appeal; it applies equally to all of Springer's claims for relief. Therefore, this Court should vacate the district court's order granting a preliminary injunction as to the Parks Restriction, dismiss the cross-appeal of the district court's denial of a preliminary injunction as to the Playgrounds Restriction, and direct the district court to dismiss the case in its entirety.

## ARGUMENT

### I.    *We the Patriots* holds that separate, unchallenged legal obstacles negate standing

The plaintiffs in *We the Patriots* challenged the same Parks and Playgrounds Restrictions that Springer challenges here. Those restrictions prohibited firearm carry in Albuquerque and Bernalillo County public parks and playgrounds.[1] The

---

[1] The restrictions were in effect between September 2023 and October 2024, when the Governor's underlying order expired. *See We the Patriots*, 119 F.4th at

district court denied the motion for a preliminary injunction of both the Parks and Playgrounds Restrictions, and this Court, following supplemental briefing on mootness and standing, dismissed the appeal of that order for lack of jurisdiction. *We the Patriots*, 119 F.4th at 1261.[2]

The Court first concluded that the appeal as to the Parks Restriction was moot because the Parks Restriction had already been enjoined by the district court in the present case, and therefore any further injunctive relief "would not have any real-world effect." *Id.* at 1258. It then dismissed the appeal as to the Playgrounds Restriction for lack of standing. *Id.* at 1259-61. It noted that an injury is not redressable "when an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision," *id.* at 1259 (quoting *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014)), and then considered whether such obstacles existed in the plaintiffs' case.

The Court found that there are "multiple City and County restrictions on firearm carry in public parks and playgrounds" in Albuquerque and Bernalillo

---

1255-56 & 1256 n.2. This Court concluded that expiry of the order did not moot the case on the basis of voluntary cessation. *See id.* Defendants did not have an opportunity to brief that issue, *see* Rule 28(j) Letter, *We the Patriots*, Nos. 23-2166, 23-2167, 23-2185 (Oct. 16, 2024), Doc. 91 (notifying Court of expiry of order and offering to submit supplemental briefing on mootness if helpful to Court), but do not contest it here.

[2] *See also* Defs.' Suppl. Br., *We the Patriots,* Nos. 23-2166, 23-2167, 23-2185 (Aug. 14, 2024), Doc. 82.

2

County. *Id.* Specifically, the Court explained, a Bernalillo County ordinance prohibits firearms in playgrounds. *See id.* at 1259 (citing Bernalillo Cnty. Ord. §§ 58-5, 58-12(b)(27)).[3] In addition, Albuquerque applies New Mexico state law prohibitions on firearm carry in schools and universities—which extend to non-school property used for school- or university-related activities—to at least 25 playgrounds. *See id.* (citing City of Albuquerque Administrative Instructions Nos. 5-19 & 5-20 ("Instruction 5-19" and "Instruction 5-20"); N.M. Stat. Ann. §§ 30-7-2.1(A) & (B)(2)). The Court also noted that Albuquerque prohibits firearms on "Open Space Lands." *Id.* (citing Albuquerque Code of Ords. § 5-8-6(G)).[4] Each of these restrictions is presumptively constitutional. *See id.* at 1260 ("[W]e give all statutes a presumption of constitutionality and we must apply the same presumption to [] ordinances." (citation omitted)).

The Court concluded that these separate prohibitions deprived the plaintiffs of standing, finding it had "no reason to believe that the playgrounds that Plaintiffs state they intend to visit are not already subject to independent and unchallenged

---

[3] This ordinance prohibits firearms in any "park and recreation facility, except ... as otherwise authorized in accordance with county, state or federal laws" and defines "[p]ark and recreation facility" to include, among others, "all parks [and] playgrounds … managed by the parks and recreation department." *Id.* The ordinance also creates a similar prohibition for Bernalillo County "open space." *Id.* § 58-57(b)(27).

[4] Defendants attach Albuquerque Code of Ordinance § 5-8-6 as Exhibit 1; Instructions 5-20 and 5-19 as Exhibit 2; and Bernalillo County Ordinances § 58-12, 58-5, and 58-57 as Exhibit 3 to this Supplemental Brief.

firearm carry prohibitions, and we are unable to redress injuries caused by the

independent actions of third parties—such as the City and the County—that are

not before us." *Id.* at 1261. The plaintiffs had alleged only a general intent to visit

"playgrounds" and had not identified "a single specific playground that they

plan[ned] to visit" or specified "whether such playgrounds [we]re covered by City

and County regulations." *Id.* at 1260. It was the plaintiffs' burden to establish that a

favorable decision would provide redress, and their failure to identify specific

playgrounds not covered by separate prohibitions meant they had failed to

establish that "enjoining enforcement of the playgrounds restriction would allow

them to lawfully carry firearms in playgrounds." *Id.* Thus, the Court could not

"provide any meaningful relief," and the plaintiffs lacked standing. *Id.* at 1260-61.[5]

---

[5] The rule that plaintiffs fail to establish redressability or causation when "an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision," *Bishop*, 760 F.3d at 1078, applies in other circuits too. *See, e.g.*, *White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010) (dismissing challenge to federal prohibition on cockfighting because separate, state-level prohibitions on cockfighting "would remain in place notwithstanding any action we might take in regard to the [federal law]"); *Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018) (dismissing challenge to agency directive prohibiting federal agencies from using plaintiff's cybersecurity products because federal statute imposed broader prohibition); *Delta Constr. Co. v. E.P.A.*, 783 F.3d 1291, 1296-97 (D.C. Cir. 2015) (holding that plaintiffs failed to establish causation and redressability where they challenged EPA regulation but not "substantially identical" NHTSA regulation); *Exotic Animal Owners v. New York*, 98 F. App'x 905, 907 (2d Cir. 2004) (summary order) (dismissing monkey owner's challenge to New York State reporting requirements for owners of wild animals because New York City separately banned the possession of such animals); *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (holding that injury was not

## II.    Springer lacks standing to seek preliminary injunctive relief

The relevant jurisdictional facts in the present case are just like those in *We the Patriots*, and therefore Springer lacks standing to seek a preliminary injunction against the Parks and Playgrounds Restrictions.

Regarding the Parks Restriction, Springer has not identified any specific parks he intends to visit with a firearm. Instead, he declared only that the public health order prohibited him from carrying a firearm for "the months of September and October at the parks that [he] attend[ed] for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta." App. 55. That assertion failed to state a future intent to visit any parks and did not identify any specific parks in Albuquerque or Bernalillo County. Springer failed to establish standing for that reason alone. *See* Defs.' Opening Br. 44-45 n.33.

Even putting that aside, *We the Patriots* confirms that the separate, overlapping restrictions render Springer's alleged injury not redressable. Just as for playgrounds, multiple other restrictions prohibit firearms in city and county parks. Instruction 5-20 clarifies that N.M. Stat. Ann. § 30-7-2.1 prohibits firearms in "Balloon Fiesta Park, which is used for school activities," and in "neighborhood parks, which are used" for public school functions.  Instruction 5-20 §§ 1(B)(2), (5).

---

traceable to challenged federal statute when it was also traceable to state statute); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.5 (3d ed. 2008 & Supp. 2024) (describing doctrine and collecting cases).

A Bernalillo County ordinance generally prohibits firearms in parks and "open space[s]," Bernalillo Cnty. Ord. § 58-12(b)(27), and Albuquerque also prohibits firearms on "Open Space Lands," Albuquerque Code of Ords. § 5-8-6(G).

Just as in *We the Patriots*, it was Springer's burden to establish standing by identifying one or more parks in which he intended to carry firearms, where doing so is *not* forbidden by a separate, unchallenged law. Even if his bare-bones declaration were generously read to specify a desire to carry in Balloon Fiesta Park, he still would have failed to show a redressable injury, given that the Administrative Instruction specifically includes that park. *See* Instruction 5-20 § 1(B)(5). And just like the plaintiffs in *We the Patriots*, Springer has not challenged those separate restrictions, nor has he claimed an intent to carry illegally (in violation of those restrictions) if the Parks Restriction were enjoined. *Cf. We the Patriots*, 119 F.4th at 1261 (citing *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974), for proposition that "courts will generally assume that litigants 'will conduct their activities within the law and so to avoid prosecution and conviction'"). Thus, Springer has failed to demonstrate that enjoining the Parks Restriction would redress his alleged injury.

As to the Playgrounds Restriction, the district court appropriately dismissed Springer's claim for lack of standing because he "does not assert that he has ever, or intends to, carry firearms in playgrounds." App. 91; *see also* App. 55 (Springer declaration lacking any mention of playgrounds); Defs.' Resp. and Reply Br. 32-34.

6

Springer has also waived any standing arguments regarding the Playgrounds Restriction by failing to raise them in his opening brief on appeal. *See* Defs.' Resp. and Reply Br. 30-32. *We the Patriots* now provides an additional basis for concluding that Springer lacks standing: the separate restrictions identified in *We the Patriots* prohibit Springer from carrying firearms in playgrounds, and he has not challenged those restrictions in this lawsuit. *See* 119 F.4th at 1259-61. He also has not specified whether he intends to visit any playgrounds that are not covered by those separate restrictions, nor has he declared he would carry illegally (in violation of those restrictions) if the Playgrounds Restriction were enjoined. Thus, the facts are identical to those in *We the Patriots*, and Springer has not established redressability.

In sum, *We the Patriots* puts beyond doubt that Springer lacks standing to seek preliminary injunctive relief against the Parks and Playgrounds Restrictions. Therefore, this Court should vacate the district court's decision enjoining the Parks Restriction and dismiss Springer's cross-appeal of the district court's denial of a preliminary injunction of the Playgrounds Restriction for lack of jurisdiction.

## III.   Springer lacks standing for all additional claims for relief

*We the Patriots* not only ends this appeal; it ends this entire case. In addition to a preliminary injunction, Springer seeks a declaration that the public health orders are unconstitutional, a permanent injunction, damages, costs and expenses, and any other "appropriate relief." App. 19-20. It is his burden to establish standing for

each of these forms of relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Springer has not—and cannot—meet that burden for any of his claims because they suffer from the same redressability issue that dooms his claim for preliminary injunctive relief.

Although *We the Patriots* did not reach this issue, courts routinely dismiss claims in their entirety because the existence of unchallenged, overlapping laws defeats redressability for all forms of relief. For example, in *Valdez v. Lujan Grisham*, No. 22-2112, 2024 WL 2319752 (10th Cir. May 22, 2024) (unpublished), this Court ordered the district court to dismiss a case seeking "damages as well as declaratory and injunctive relief" for lack of jurisdiction, because unchallenged, overlapping restrictions defeated redressability. *See id.* at *1, *3-5.[6] Other circuits have done the same. *See, e.g.*, *White*, 601 F.3d at 552, 556 (similar, for case in which complaint sought declaratory judgment and permanent injunctive relief); *Kaspersky Lab*, 909 F.3d at 465 (similar, for case in which complaint sought declaratory judgment as well as preliminary and permanent injunctive relief); *Exotic Animal*

---

[6] Although unpublished, *Valdez* is persuasive. Its reasoning is consistent with *We the Patriots* and the out-of-circuit authorities discussed above, *see supra* n.5, and *We the Patriots* relied on the discussion of redressability in an earlier (also unpublished) opinion in the case, calling it "instructive," 119 F.4th at 1258, 1259 n.3 (citing *Valdez v. Lujan Grisham*, No. 21-2105, 2022 WL 2129071, at *2-3 (10th Cir. June 14, 2022)).

*Owners*, 98 F. App'x at 907 (similar, for request for declaratory relief).[7] In each of these cases, redressability concerns were the same across all types of relief sought. *See also Haaland v. Brackeen*, 599 U.S. 255, 292-93 (2023) (explaining that request for declaratory judgment "suffers from the same flaw"—lack of redressability—as request for injunction).

This Court should reach the same conclusion. All of Springer's claims for relief rest on the same foundation for standing: his bare-bones declaration that, read generously, asserts a desire to carry firearms in Balloon Fiesta Park. *See* App. 55. As explained, Springer has not challenged the restrictions that separately and independently prevent him from carrying guns in that park. *See* Instruction 5-20; N.M. Stat. Ann. §§ 30-7-2.1(A) & (B)(2). So long as those restrictions are unchallenged, any relief this Court could order—whether monetary, declaratory, or injunctive—cannot redress his alleged injuries, because those restrictions continue to prohibit him from carrying a firearm there. *See We the Patriots*, 119 F.4th at 1257 ("[F]or a party to properly invoke federal jurisdiction, we must be able to

---

[7]Although these decisions determined standing on appeal from the grant of a motion to dismiss, the efficient course in this case would be to instruct the district court to dismiss the entire case for lack of standing, rather than to instruct it only to dismiss the claim for preliminary injunctive relief and then leave it to the district court to apply *We the Patriots* and dismiss the remainder of the case (followed, presumably, by another—albeit clearly meritless—appeal). *See, e.g., Utah v. Babbitt*, 137 F.3d 1193, 1197 (10th Cir. 1998) (vacating preliminary injunction and remanding with instruction to dismiss claims for which plaintiffs lacked standing).

redress their alleged injuries."). Nor, for these same reasons, would any alleged injuries be traceable to the challenged public health order. *See, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'"). Furthermore, because it is "axiomatic that standing is evaluated as of the time a case is filed," *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1161 (10th Cir. 2023); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1225 (10th Cir. 2011), these are not deficiencies that Springer can cure on remand. *See Rio Grande Found.*, 57 F.4th at 1162 ("Regardless of the stage of litigation …, the standing inquiry remains focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed."). For these reasons, this Court should, in addition to vacating the injunction and dismissing Springer's cross-appeal, direct the district court to dismiss Springer's remaining claims for lack of standing.

## CONCLUSION

This Court should vacate the district court's order preliminarily enjoining the Parks Restriction, dismiss Springer's cross-appeal of the district court's denial of his motion to preliminarily enjoin the Playgrounds Restriction, and order the district court to dismiss this case in its entirety.

December 16, 2024                    Respectfully submitted,

                                     /s/ Janet Carter
                                     Janet Carter
                                     William J. Taylor, Jr.
                                     Everytown Law
                                     450 Lexington Ave, P.O. Box 4184
                                     New York, NY 10163
                                     (646) 324-8174
                                     jcarter@everytown.org

                                     Holly Agajanian
                                     *Chief General Counsel to Gov. Lujan Grisham*
                                     Kyle P. Duffy
                                     *Deputy General Counsel to Gov. Lujan Grisham*
                                     490 Old Santa Fe Trail, Suite 400
                                     Santa Fe, NM 87501

                                     Cody Rogers
                                     Serpe Andrews
                                     2540 El Paseo Road, Suite D
                                     Las Cruces, NM 88001

## CERTIFICATE OF COMPLIANCE

This supplemental brief complies with the type-volume limit and typeface requirement specified in this Court's order of December 4, 2024, because the body of the brief is 10 pages long and the brief was prepared in 14-point Baskerville font.

Respectfully submitted,

/s/ Janet Carter
Janet Carter

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

/s/ Janet Carter
Janet Carter

# EXHIBIT 1

**§ 5-8-6 PROHIBITED ACTIVITIES.**

The following activities are prohibited in any Open Space Lands or Regional Preserves:

(A)   *Criminal Trespass.* Criminal trespass consists of unlawfully entering or remaining upon the land or property of another, knowing that any consent to enter or remain has been denied or withdrawn by the person or persons lawfully in possession of the premises or after the request or demand to leave the premises by the authorized representative of the person or persons lawfully in possession of the premises.

(B)   *Negligent Use of Weapons.* Negligent use of weapons consists of:

(1)   Discharging a weapon within the city limits without legal justification; or

(2)   Endangering the safety of another or his property by handling or using a firearm or other deadly weapon in a negligent manner.

(C)   *Criminal Damage to Public Property.* Criminal damage to public property consists of intentionally damaging to a value of less than $1,000 any real or personal property of the city, county, state or United States government without the consent of the owner thereof.

(D)   *Operation of Motorcycles, Motorscooters, and Recreational Vehicles in Certain Areas off the Public Way.* No person shall ride or operate any motorcycle, motorscooter, off-road vehicle or recreational vehicle on any private property or public property within one-quarter of a mile of any school, hospital, convalescent home or residence, except on a public way or parking lot, or on a private road or driveway.

(E)   *Removal of Natural Resources.* No person shall dig or remove any soil, sand, gravel, rock, scoria, shrubs, trees, cacti, or other plants from Open Space Lands or Regional Preserves.

(F)   *Wildlife.* No person shall harm, hunt, pursue, molest, harass, trap, collect, or remove any mammal, bird, reptile, or amphibian animals or eggs or young of said animals on/from Open Space Lands or Regional Preserves.

(G)   *Weapons and Firearms.* No person shall carry, possess, or discharge any firearm, bow, crossbow, blowgun, or spring-driven, compressed air or $CO_2$ powered rifle or pistol on Open Space Lands or Regional Preserves.

(H)   *Dumping of Waste, Refuse, Trash, Oil.* No person shall dump, deposit, dispose, throw out, or leave behind any solid waste, plant waste or trimmings, oil or grease, or any other form of rubbish or waste on Open Space Lands or Regional Preserves in other than receptacles designated for that purpose.

(I)   *Vandalism, Protection of Ethno-Historical Resources.* No person shall mark or deface in any way any rock, wall, surface, petroglyph or sign on any Open Space Lands or Regional Preserve, nor shall they remove or disturb any archaeological site or artifact.

(J)   *Alcoholic Beverages.* Drinking or consuming of alcoholic beverages on Open Space Lands or Regional Preserves shall be considered "Drinking in Public" and is hereby prohibited.

(K)   *Fires.* No person shall smoke or attempt to smoke or build or attempt to build a fire on Open Space Lands or Regional Preserves, except as provided in Section 5-8-7(B)(6) of the Albuquerque Open Space Ordinance.

(L)   *Camping.* No person shall camp, except as provided in § 5-8-7.

('74 Code, § 5-6-6) (Ord. 23-1980; Am. Ord. 35-1987; Am. Ord. 63-2005)

# EXHIBIT 2



# CITY OF ALBUQUERQUE
*Office of the Mayor/ Chief Administrative Officer*

**ADMINISTRATIVE INSTRUCTION NO:** 5-19

**TITLE:**    Noting the applicability of State laws prohibiting firearms in City of Albuquerque Child Development Centers, Community Centers, Health and Social Service Centers, Multigenerational Centers, and Senior Centers, subject to certain exceptions

**PRIMARY DEPARTMENTS:**    Department of Family and Community Services and Department of Senior Affairs

**SECONDARY DEPARTMENTS:** Department of Municipal Development, Albuquerque Police Department, Legal Department, Albuquerque Fire Rescue

PO Box 1293

Albuquerque

NM 87103

www.cabq.gov

As set forth in Administrative Instruction No. 8-5, it is the policy of the City of Albuquerque to ensure that safe and healthful working conditions exist for its employees, contractors and the general public whose work involves the conducting of business in city-owned buildings, on city- owned properties or in the course of normal business. In addition, the City may have liability under the Tort Claims Act for negligence in the operation of its facilities. Accordingly, it is the policy of the City to determine what federal, state and local laws apply to City facilities and to ensure such laws are observed and enforced.

This Administrative Instruction confirms that the City's Community Centers, Multigenerational Centers, and Senior Centers (collectively, the "Centers") all fall within the definition set forth in New Mexico Statutes Annotated 1978, Sections 30-7-2.1 of "school premises." In addition, Health and Social Service Centers fall within the definition set forth in NMSA 1978, § 30-7-2.4, of "university premises." Pursuant to Sections 30-7-2.1 and 30-7-2.4, it is unlawful to carry firearms at any of these facilities, subject to the exceptions set forth in, and coextensive with, those statutes.

1. The prohibition on deadly weapons and firearms in schools and universities

NMSA 1978, § 30-7-2.1(A) (1994) makes it unlawful to carry a deadly weapon on "school premises," except by "(1) a peace officer; (2) school security personnel; (3) a student, instructor or other school-authorized personnel engaged in army, navy, marine corps or air force reserve officer training corps programs or state-authorized hunter safety training instruction; (4) a person conducting or participating in a school-approved program, class or other activity involving the carrying of a deadly weapon; or (5) a person older than nineteen years of age on school premises in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property." Those who commit unlawful carrying of a deadly weapon on school premises may be charged with a fourth degree felony under NMSA 1978, § 30-7-2.1(C)

*Albuquerque - Making History 1706-2006*

NMSA 1978, § 30-1-12 (1963) defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted."

NMSA 1978, § 30-7-2.4(A) (2003) makes it unlawful to carry a firearm on "university premises" except by: "(1) a peace officer; (2) university security personnel; (3) a student, instructor or other university-authorized personnel who are engaged in army, navy, marine corps or air force reserve officer training corps programs or a state-authorized hunter safety training program; (4) a person conducting or participating in a university-approved program, class or other activity involving the carrying of a firearm; or (5) a person older than nineteen years of age on university premises in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property." Those who commit unlawful carrying of a firearm on university premises may be charged with a petty misdemeanor under NMSA 1978, § 30-7-2.4(D).

2.  Policy Rationale for State laws prohibiting firearms in public schools and universities

The US Supreme Court has long upheld laws forbidding the carrying of firearms in sensitive places such as schools. See *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). The need for such a law in New Mexico has only become clearer since the 1994 and 2003 enactments of the State laws prohibiting the carrying of firearms on public school and university premises.

Between the Columbine massacre, which occurred on April 20, 1999, and the date of this Administrative Instruction, the United States has seen 68 mass K-12 "school shootings." Thirty-one of those 68 shootings occurred after December 14, 2012, when a mass shooter murdered 20 six- and seven-year-old school children at Sandy Hook Elementary, as well as six staff members who tried to protect them. Since 2013, American schools, including post-secondary, have seen 181 deaths and 358 injuries attributable to gunfire.

Three school shootings have occurred in New Mexico: (1) Roswell Berrendo Middle School with two injured on January 14, 2014; (2) Aztec High School with three fatalities, including the shooter, on December 7, 2017; and (3) Cleveland High School in Rio Rancho on February 14, 2019 with no physical injuries. These are in addition to the mass shooting that occurred at the Clovis public library on August 28, 2017, when a 16-year-old Clovis High School student killed two and injured four.

Strong policy considerations continue to underlie the State laws cited above. Like schools, mass shooters have targeted municipal centers such as community centers across the country. In 1999, a mass shooter killed one community member

and injured five people at the Los Angeles Jewish Community Center. In 2014, a mass shooter killed two people in a shooting at the Overland Park Jewish Community Center in Kansas. Most recently, a mass shooter killed 12 people and injured four more at a Virginia Beach municipal center.

Between August 1, 2015, and July 31, 2019, 27 gun offenses have been reported to the Albuquerque Police Department ("APD") at City community, health and social service, and senior centers (see attached map). On May 31, 2013, an eight-year-old girl was shot and killed at the City's own Alamosa Community Center. Most recently, on April 4, 2019, a shooting occurred at the Alamosa Community Center. Over that same time period, 510 gun offenses have been reported to APD within a two-block radius of the City's community centers, health and social service centers, multigenerational centers, and senior centers.


3.  Applicability of Sections 30-7-2.1 and 30-7-2.4 to City facilities

In addition to the buildings and grounds that house public schools, NMSA 1978, § 30-7-2.1(B)(2) defines "public school premises" as "any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed." Under this definition, all Centers fall under the definition of public school premises.

The City's Community Centers, Multigenerational Centers, and Senior Centers are all inextricably linked to schools, provide school-related and school sanctioned activities, and even themselves serve as schools by providing various education classes. The City is party to several contracts and agreements with Albuquerque Public Schools ("APS"), reflecting joint use of the Centers. In addition, the City works with public schools in a broad array of programs and services, including, but not limited to:

- APS Access/CTAP/APS Transitional Services to provide high school age students with disabilities that need transition into areas of employment, post-secondary education/training, independent living and community connections
- APS-sanctioned or APS-related before- and after-school programming
- APS-sanctioned or APS-related school meal programs
- Performances by APS and public charter schools
- School-sanctioned transport to and from APS public schools
- Direct use of Center facilities by charter schools
- 25 playground recreation sites with APS
- Therapeutic recreation programs with APS
- Job mentorship programs
- Child and family development programs

In Fiscal Year 2019, 200,000 City youth and nearly 325,000 City adults visited City community centers. The City Playground Recreation Program served almost 270,000 children, and the City Therapeutic Recreation Program served almost

48,000 youth and 12,000 adults. The City Job Mentorship Program had an enrollment of over 1,500.

In addition to the buildings and grounds of a university, NMSA 1978, § 30-7-2.4(C)(2)(b) (2003) defines "university premises" as "any other public buildings or grounds, including playing fields and parking areas that are not university property, in or on which university-related and sanctioned activities are performed." Under this definition, all four Health and Social Service Centers fall under the definition of "university premises" because they are used for the UNM Maternity & Family Planning clinic. In addition, San Pablo Young Children's Health Center leases space to UNM. City Health and Social Service Centers serve approximately 144,000 clients annually.

As the Attorney General recently noted, local governments do not have the right to pick and choose what state laws to enforce. The state laws cited above are clear and unambiguous. The State legislature could have narrowly defined "public school premises" and "university premises" to mean only those properties owned or leased by public schools or universities. Instead, the Legislature chose expressly to include buildings and areas "that are not public school property" and "that are not university property."

4.  Training and posting

The Department of Family & Community Services, Department of Senior Affairs, Department of Municipal Development Security Division, Legal Department, Albuquerque Police Department and the community risk reduction initiative of Albuquerque Fire Rescue are instructed to develop and implement training to ensure that affected employees are aware of the provisions of state law discussed above, and to make any required postings or public notices related to NMSA 1978, §§ 30-7-2.1 and 30-7-2.4.

Until such training is developed, City personnel who see a violation of the State laws cited in this Administrative Instruction should call 9-1-1 and take no further action.


**Sarita Nair**
**Chief Administrative Officer**


**August 16, 2019**
**Effective Date**

AI NO:   5-20

## NOTING THE APPLICABILITY OF STATE LAW TO CONDITIONS TO ENTRY TO CITY OF ALBUQUERQUE PARKS AND OTHER FACILITIES (8/31/2020)

**ADMINISTRATIVE INSTRUCTION NO:** 5-20

**TITLE:** Noting the Applicability of State Law to Conditions to Entry to City of Albuquerque Parks and Other Facilities

**PRIMARY DEPARTMENTS:** Parks and Recreation Department, Department of Family and Community Services, Department of Senior Affairs

**Secondary Departments:** Albuquerque Police Department, Department of Municipal Development, Legal Department, Albuquerque Fire Rescue

As set forth in Administrative Instruction No. 8-5 ("AI 8-5"), it is the policy of the City of Albuquerque to ensure that safe and healthful working conditions exist for its employees, contractors, and the general public whose work involves the conducting of business in city-owned buildings, on city-owned properties or in the course of normal business. Administrative Instruction No. 5-19 ("AI 5-19") provided guidance on the policy set forth under AI 8-5 to City community centers, health and social service centers, multigenerational centers, and senior centers under applicable State laws. In addition, both AI 8-5 and 5-19 indicated that the City may have liability under the Tort Claims Act for negligence in the operation of its facilities and provides the need to ensure laws are observed and enforced.

This Administrative Instruction shall:

   (1)   Ensure enforcement of the State's prohibition of carrying deadly weapons, including firearms, at City property or facilities that are used for school or college related and sanctioned activities pursuant to NMSA 1978 § 30-7-2.1 and § 30-7-2.4. This includes enforcement at certain City property or facilities used for such activities but not encompassed in AI 5-19; and

   (2)   Ensure that conditions of entry to City parks and recreations centers, established by the City herein, are enforced under New Mexico's criminal trespass law, NMSA 1978 § 30-14-1(C) NMSA 1978, including a prohibition of carrying deadly weapons at certain City property or facilities.

**1. Prohibition of carrying deadly weapons, including firearms, at city property and facilities used for school or college related and sanctioned activities**

   **A. The prohibition on deadly weapons and firearms in schools**

NMSA 1978, § 30-7-2.1(A) makes it unlawful to carry a deadly weapon on "school premises," except by "(1) a peace officer; (2) school security personnel; (3) a student, instructor or other school-authorized personnel engaged in army, navy, marine corps or air force reserve officer training corps programs or state-authorized hunter safety training instruction; (4) a person conducting or participating in a school-approved program, class or other activity involving the carrying of a deadly weapon; or (5) a person older than nineteen years of age on school premises in a private automobile or other private means of conveyance, for lawful protection of the person's or another's person or property." Those who commit unlawful carrying of a deadly weapon on school premises may be charged with a fourth degree felony under NMSA 1978, § 30-7-2.1(C).

NMSA 1978, § 30-1-12 defines "deadly weapon" as "any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted."

   **B. Applicability of NMSA 1978, § 30-7-2.1 to City property and facilities**

The state laws cited above are clear and unambiguous. The State legislature could have narrowly defined "public school premises" and "university premises" to mean only those properties owned or leased by public schools or universities. Instead, the Legislature chose expressly to include buildings and areas "that are not public school property" and "that are not university property."

In addition to the buildings and grounds that house public schools, NMSA 1978, § 30-7-2.1(B)(2) defines "public school premises" as "any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed."

Under this definition, the statute's prohibition, including the exception for law enforcement officers, applies to:

   (1)   City property or facilities expressly covered by AI 5-19;

   (2)   City neighborhood parks, which are used as playing areas for public schools and other public school programming, including those used for the Food Services Program for Children in partnership with Albuquerque Public Schools;

   (3)   City sports fields, including the Albuquerque Regional Sports Complex, and City golf courses, which are used for public school and university sports or physical education classes, but not including facilities at Shooting Range Park;

   (4)   City pools, including the surrounding parking lots, which are used for school activities;

(5)  Balloon Fiesta Park, which is used for school activities;

(6)  The Albuquerque Convention Center, which is used for public school graduations and other school activities;

(7)  Civic Plaza, which educators and students from Amy Biehl Charter High School regularly use for physical education activities and in which playground equipment is located.

<u>Exceptions</u>: This AI is not applicable to the at Shooting Range Park, the Esperanza Bike Shop, the BMX Complex, Open Space or other Parks and Recreation Department maintenance yards or administrative business offices.

## 2. Criminal trespass and the prohibition of deadly weapons on government property

### A. Criminal trespass

New Mexico's criminal trespass statute regarding government property may be used to disallow the carrying of firearms, according to an Attorney General Advisory Letter dated September 8, 2011. Under NMSA 1978, § 30-14-1(C), "Criminal trespass also consists of knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof." As noted by the 2011 Attorney General letter, this statute authorizes a political subdivision to consent to entry by others to its property, establish reasonable conditions to consenting to entry, and enforce such conditions. Such conditions may include banning dangerous weapons, including firearms, if the government "reasonably conclude[s] that adequate and proper security requires imposing such a condition as a requirement for members of the public generally to access the" property.

If members of the public are properly advised of a condition, including the prohibition of carrying deadly weapons, to gain entrance to a public facility, the trespass statute can be used for enforcement purposes. The facility at issue in the Attorney General letter was a district attorney's office, which counties are required to provide. The letter stated the same condition could be imposed by either the district attorney's office or the county, depending on which was the "custodian" of the property for purposes of Section 30-14-1(C). However, this analysis did not turn on whether a state agency or local government established the condition.

Provided this authority, the City of Albuquerque shall enforce this state law by ensuring adequate and proper security, including a prohibition on the carrying of deadly weapons, with the exception of law enforcement officers, property and facilities identified herein.

### B. Prohibiting possession of deadly weapons at certain City property and facilities

Pursuant to the City of Albuquerque's authority to impose and enforce conditions to entry to its property under New Mexico's criminal trespass statute as interpreted by the Attorney General letter dated September 8, 2011, possession of deadly weapons at the following City property and facilities is prohibited, with the exception of law enforcement officers, to ensure adequate and proper security for City personnel and members of the public:

(1)  Any City property and facilities utilized for school sanctioned activity;

(2)  City parks or facilities listed in Section 1(B)(1) - (7),.

Notice shall be posted regarding this Administrative Instruction and the enforcement of NMSA 1978, § 30-7-2.1(A) and § 30-14-1(C) at each property or facility in which this Administrative Instruction applies.

Preemption pursuant to Article II, §6 of the Constitution of New Mexico is not applicable because the right to keep and bear arms does not encompass carrying deadly weapons, including firearms, under the circumstances and at the public places set forth herein.

## 3. Prohibition of deadly weapons, including firearms, in sensitive places

### A. Sensitive places

Albuquerque saw the risk of firearms at parks on June 15, 2020. After armed counter-demonstrators confronted protestors near Tiguex Park in Old Town, tensions escalated leading to physical altercations and an armed counter-demonstrator shot a protestor four times. With the Albuquerque Police Department recovering a large number of firearms and ammunition, that incident had the potential to be much more violent it was. The City of Albuquerque has the police power to protect its inhabitants and preserve peace and order under NMSA 1978, § 3-18-1, and desires to exercise this authority to prevent future incidents like the shooting on June 15, 2020.

In declaring the Second Amendment's individual right to bear arms in District of Columbia v. Heller, the United States Supreme Court recognized the legitimacy of prohibitions on carrying firearms in "sensitive places." D.C. v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817, 171 L. Ed. 2d 637 (2008). The Court noted schools and government buildings as obvious such places, but declined to provide an exhaustive list. Courts have since found public parks to be sensitive places. Particularly, some jurisdictions have held there is no logical distinction between schools and parks where children recreate. Warden v. Nickels, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010).

In denying a challenge to a statewide ban on firearms in parks, an Illinois' court not only found there was a compelling argument that public parks were "sensitive places" but that the ban also withstood intermediate scrutiny under the Second Amendment. People v. Bell, 2018 IL App (1st) 153373. The law was a justified restriction to protect the police and public from dangerous weapons because large numbers of people congregate in parks for recreation.

### B. Prohibition of deadly weapons, including firearms, at certain City property or facilities deemed sensitive places

In accordance with established law, in order to protect citizens exercising their First Amendment rights as well as protecting children who often congregate in public parks, recreational facilities, and plazas under a variety of circumstances, such City owned property and facilities are "sensitive places." Possession of deadly weapons is prohibited at the following "sensitive places," with the exception of law enforcement officers, to ensure adequate and proper security for City personnel and members of the public:

(1)   Any City property utilized for school sanctioned activity;

(2)   City parks and recreation facilities listed in Section 1(B)(1)-(7)..

Notice shall be posted regarding this Administrative Instruction and the enforcement of NMSA 1978, § 30-18-1 at each property or facility in which this Administrative Instruction applies.

Preemption pursuant to Article II, § 6 of the Constitution of New Mexico is not applicable because state law already addresses carrying deadly weapons, including firearms, under the circumstances and at the public places set forth herein and this Instruction merely clarifies the applicability of those state laws.

### 4. Severability

If any section, subsection, sentence, clause, word, or phrase of this Administrative Instruction is for any reason held to be unconstitutional or otherwise invalid by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Administrative Instruction.

| | |
|---|---|
| _____<br>Sarita Nair<br>Chief Administrative Officer<br><br>_____<br>Effective Date | _____<br>Sarita Nair<br>Chief Administrative Officer<br><br>8/31/20<br>_____<br>Effective Date |

[AI NO: 5-20 (pdf)](#)

# EXHIBIT 3

Appellate Case: 23-2192    Document: 110    Date Filed: 12/16/2024    Page: 29

Sec. 58-12. - Penalty and prohibited conduct.

(a) *Penalty.* Except as otherwise provided in this article, any violation of the provisions of section 58-12 is punishable in accordance with section 1-6.

(b) *Prohibited conduct.*

(1) *Unlawful entry.* No person shall enter into, remain in or leave any vehicle unattended in any park and recreation facility or portion thereof when the park and recreation facility or portion thereof is closed to the public.

(2) *Failure to pay fee.* No person shall enter into or remain in any park and recreation facility or participate in any program sponsored by the parks and recreation department for which admission or a fee is required, without having paid that admission or fee.

(3) *Interfering with employee.* No person shall interfere or attempt to interfere with any employee or elected official of Bernalillo County, emergency responder, law enforcement officer or animal control officer acting within the scope of their authorized duties, or give false or misleading information with the intent to mislead such person in the performance of his or her authorized duties in any park and recreation facility.

(4) *Disruption of authorized activity.* No person shall knowingly disrupt any authorized activity conducted in any park and recreation facility.

(5) *Permits.*

     a. No person shall engage in any activity in any park and recreation facility for which a permit is required under section 58-10, unless a permit has been issued for the activity.

     b. No person, having been issued a permit under section 58-10, shall fail to produce and exhibit the permit during the permitted activity upon the request of the county manager, any parks and recreation department employee or any law enforcement officer.

     c. No person, having been issued a permit under section 58-10, shall fail to comply with the conditions of the permit.

(6) *Sale of goods or services.*

     a. No person shall sell, solicit, peddle or hawk any good, service, food or beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

     b. No person shall station or place any stand, cart or vehicle for the display or sale of any good, service, food or beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(7) *Advertising.*

     a.

Appellate Case: 23-2192     Document: 110     Date Filed: 12/16/2024     Page: 30

No person in any park and recreation facility shall announce or call attention to any event or good, service, food or beverage for sale, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    b. No person in any park and recreation facility shall distribute any flyer, handbill, circular, pamphlet or other advertisement or notice, or place such on any vehicle, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    c. No person shall paste, glue, tack, post or erect any sign, advertisement or notice in any park and recreation facility or along any street adjacent to any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(8) *Alcohol.* No person shall possess, consume or sell any alcoholic beverage in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County, and, if necessary, a special dispenser's permit or public celebration permit issued by the State of New Mexico, Regulation and Licensing Department, Alcohol and Gaming Division.

(9) *Glass.*

    a. No person shall possess any glass, ceramic or other breakable material in any park and recreation facility outside of any vehicle, except for materials authorized by the county manager.

    b. No person shall knowingly or recklessly throw, propel or break any glass, ceramic or other breakable material in any park and recreation facility.

(10) *Domestic animals.*

    a. No person shall allow any animal under his or her ownership or control to enter into or remain in any park and recreation facility or portion thereof designated as closed to animals by the county manager.

    b. In accordance with sections 6-45 and 6-53, no person shall allow any animal under his or her ownership or control to run at large in any park and recreation facility. All animals shall be restrained on a secure leash that does not exceed or is retractable to six feet in length; provided, however, that the county manager may designate off leash areas and policies and procedures governing such areas.

    c. In accordance with section 6-56, no person shall allow any animal under his or her ownership or control to defecate in any park and recreation facility, except if such animal waste is immediately removed and properly disposed of by the person having ownership or control of the animal.

    d.

Appellate Case: 23-2192    Document: 110    Date Filed: 12/16/2024    Page: 31

No person shall allow any animal under his or her ownership or control to play, swim, bathe, wade, urinate or defecate in any pool, fountain or body of water in any park and recreation facility.

e. No person shall allow any horse or any animal capable of being ridden by a person under his or her ownership or control to enter into or remain in any park and recreation facility, except in such park and recreation facilities that the county manager may designate for use by such animals.

f. No person shall hitch any horse or animal capable of being ridden under his or her ownership or control in any manner which damages vegetation or structures, or which interferes with or disturbs the public's use of any park and recreation facility.

g. No person shall allow any cattle or livestock under his or her ownership or control to enter into or remain in any park and recreation facility.

h. No person shall relocate, release or leave unattended any animal in any park and recreation facility.

i. No person shall allow any animal under his or her ownership or control to pursue, harass, injure or kill any wild or domestic animal in any park and recreation facility.

j. No person shall allow any animal under his or her ownership or control to damage or destroy any property in any park and recreation facility. In addition to the penalty prescribed in section 1-6, any person so allowing any animal under his or her ownership or control to damage or destroy property shall be liable for the full amount of the damage.

k. The prohibitions of subsections (b)(10)a.—j. shall not apply to service animals in the performance of qualifying services or to animals in the performance of official law enforcement or rescue activities.

(11) *Wildlife habitat.* No person or animal under his or her control shall remove disturb, damage or destroy any wildlife habitat features, including, but not limited to, animal dens, burrows, dwellings or nests in any park and recreation facility.

(12) *Introduction of organisms.* No person shall introduce or cause to be introduced any organism, living or dead, including, but not limited to, non-native plants, animals, fish or insects in any park and recreation facility.

(13) *Hunting and trapping.* No person shall hunt, trap, pursue, harass, injure, collect or remove any mammal, bird, reptile, amphibian or the eggs or young of such animals in any park and recreation facility.

(14) *Feeding.* No person shall feed or attempt to feed any animal any noxious substance, including, but not limited to, tobacco or alcohol in any park and recreation facility.

(15)

*Fishing.* No person shall fish for, net, spear or catch any fish in any body of water in any park and recreation facility, except where designated by the county manager and in compliance with the licensing requirements of the State of New Mexico Department of Game and Fish.

(16) *Boating.* No person shall sail, row, propel, float upon or use any boat, raft, floatation device or other vessel on any body of water in any park and recreation facility, except where designated by the county manager.

(17) *Swimming.* No person shall swim, wade or bathe in any body of water in any park and recreation facility, except where designated by the county manager.

(18) *Fountains.* No person shall stand, walk or climb upon, or swim, wade or bathe in any fountain in any park and recreation facility, except where designated by the county manager.

(19) *Climbing on features.* No person shall climb any tree or stand, sit or walk upon any monument, railing, fence or similar features in any park and recreation facility.

(20) *Urination/defecation.* No person shall urinate or defecate in any park and recreation facility, except in plumbing fixtures or chemical toilets specifically provided for those purposes.

(21) *Unauthorized construction.* No person shall clear ground or excavate for, construct, install, improve on or maintain any permanent or temporary structure, utility, fence, gate, road, trail or similar features in any park and recreation facility, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(22) *Litter.* No person shall leave or deposit any rubbish, debris, waste or other material in any park and recreation facility, except that which is generated by legal activities in a park and recreation facility and deposited in a designated receptacle. Where receptacles are not provided or are full, all such material shall be carried out of the park and recreation facility by the person responsible for its presence and properly disposed of elsewhere.

(23) *Pollution of waters.* No person shall deposit or discharge in the waters of any pool, fountain or other body of water in any park and recreation facility any rubbish, debris, waste or other material that may pollute or contaminate such waters.

(24) *Damage to natural resources.* No person shall collect, remove, disturb, deface, graffiti, damage or destroy any natural resource, including, but not limited to, all live and dead vegetation and all parts thereof; landscaping materials; soil, rocks or any other earthen material; minerals or other articles or artifacts of geological interest or value in any park and recreation facility.

(25) *Damage to archaeological, paleontological and historical resources.* No person shall remove, collect, disturb, deface, graffiti, damage or destroy any object of archaeological, paleontological or historical interest or value in any park and recreation facility.

(26)

Appellate Case: 23-2192     Document: 110     Date Filed: 12/16/2024     Page: 33

*Damage to property.* No person shall remove, disturb, deface, graffiti, damage or destroy any property in any park and recreation facility, including, but not limited to, buildings, art, signs, gates, fences, walls, tools, equipment, trash receptacles, benches, paving materials, utility lines and irrigation lines.

(27)  *Firearms and weapons.*

    a.  No person shall possess, use, discharge or cause to be discharged any firearm or weapon, including, but not limited to, any air or gas weapon, air rifle or pistol, BB gun, pellet gun, potato cannon, blow gun, spring gun, spear gun, paintball gun, air-soft gun, bow and arrow, crossbow, slingshot, stun gun, spear, sword, knife with blade over five inches long or any other form of weapon harmful to human or animal in any park and recreation facility, except for authorized archery activities at the El Refugio Archery Range or as otherwise authorized in accordance with county, state or federal laws.

    b.  No person shall discharge or cause to be discharged any firearm or weapon listed in subsection 58-12(b)(27)a. into or across any park and recreation facility from outside the boundary of a park and recreation facility.

(28)  *Fireworks and explosives.* No person shall possess, sell, ignite or discharge any firework or explosive device in any park and recreation facility, except as authorized by the county manager.

(29)  *Fire.*

    a.  No person shall make, light or maintain a fire in any park and recreation facility, except where designated or on a grill, stove or fire ring supplied by the parks and recreation department. All fires shall be built in a safe manner, attended at all times and properly extinguished.

    b.  Fires may be prohibited entirely from any park and recreation facility by order of the county commission or county manager.

(30)  *Trail use and conduct.* No person shall fail to obey any sign that dictates authorized uses or behavior on any path or trail in any park and recreation facility.

(31)  *Human-powered and motorized vehicles and devices.*

    a.  No person shall operate any motorized vehicle or device in any park and recreation facility, except on authorized roads, parking lots or other areas designated by the county manager. Motorized wheelchairs, mobility scooters, power chairs and similar electric mobility devices used by persons who need assistance to be mobile are exempt from this prohibition if operated in a safe manner and in accordance with all applicable park and recreation and traffic rules and regulations.

    b.  No person shall operate any bicycle, scooter, skateboard, roller skates, rollerblades or any other human-powered vehicle or device on any tennis court, basketball court, running track, artificial sports surface or other sports facility in any park and recreation facility,

Appellate Case: 23-2192   Document: 110   Date Filed: 12/16/2024   Page: 34

except in areas specifically designated for such uses by the county manager. Child strollers, baby carriages and medical mobility devices used by persons who need assistance to be mobile are exempt from this prohibition.

    c.  No person shall ride any skateboard or operate any other human-powered vehicle or device on any picnic table, bench, fountain, planter, fence, railing, sculpture or similar features in any park and recreation facility.

    d.  No person shall park any human-powered or motorized vehicle or device in such a manner that creates a hazard to vehicular, pedestrian, bicycle or other traffic in any park and recreation facility.

    e.  No person shall clean or maintain any motorized vehicle or device or livestock trailer in any park and recreation facility, except for emergency repairs.

    f.  No person shall fail to operate any human-powered or motorized vehicle or device in accordance with all applicable county and state motor vehicle laws in any park and recreation facility.

(32)  *Aircraft.* No person shall take off from or land in any park and recreation facility in any motorized or nonmotorized aircraft including, but not limited to, airplanes, helicopters, ultralights, gliders, hang gliders, paragliders or parachutes, except:

    a.  Hang gliders and similar unpowered, heavier-than-air, flexible-wing aircraft landing at Big Sky Hang Glider Park;

    b.  Aircraft used to transport injured persons, evacuees, medical personnel or public officials in the event of an accident, disaster or emergency;

    c.  Aircraft landing in a bona fide emergency;

    d.  Where designated by the county manager.

(33)  *Model aircraft and watercraft.* No person shall operate any motorized model vehicle, aircraft or watercraft, or ignite or launch any model rocket in any park and recreation facility, except where designated by the county manager.

(34)  *Gambling.* No person shall gamble in any park and recreation facility.

(35)  *Geocaching.* No person shall place a geocache in any park and recreation facility unless he or she first registers the geocache with the parks and recreation department and places the geocache in accordance with the policies and procedures established by the county manager. The county manager may confiscate any geocache in any park and recreation facility without cause.

(36)  *Golfing.* No person shall possess, use or play with golf equipment or golf balls in any park and recreation facility, except where designated by the county manager.

(37)

*Tennis.* No person shall give tennis lessons in any park and recreation facility when such lessons are given for compensation or fees of any sort, except when lessons are offered as part of a recreation program sponsored by the parks and recreation department or expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(38)   *Dangerous projectiles.* No person shall engage in activities that involve thrown or otherwise dangerous propelled objects such as stones, arrows, javelins, discuses or similar objects likely to inflict injury in any park and recreation facility.

(Ord. No. 2010-14, 5-25-10)

Appellate Case: 23-2192     Document: 110     Date Filed: 12/16/2024     Page: 36

Sec. 58-5. - Definitions.

Unless the context requires otherwise, the following definitions shall apply to this article:

*County manager* means the County Manager of Bernalillo County. Wherever this article grants authority to or places responsibility on the county manager, the county manager may delegate his or her authority or responsibility to the director of the parks and recreation department as he or she may deem expedient. The director of the parks and recreation department may delegate his or her authority or responsibility to subordinates as he or she may deem expedient.

*Parks and recreation department* means the parks and recreation department of Bernalillo County.

*Parks and recreation facility* means all parks, playgrounds, athletic courts and fields, trails, bodies of water within a park, pools, fountains, community centers, senior centers, parking lots, drives and all other lands, buildings and facilities so designated as park and recreation facilities by the county manager and managed by the parks and recreation department, excluding open space.

*Sheriff's office* means the Bernalillo County Sheriff's Office.

(Ord. No. 2010-14, 5-25-10)

**Cross reference—** Definitions generally, § 1-2.

Appellate Case: 23-2192    Document: 110    Date Filed: 12/16/2024    Page: 37

Sec. 58-57. - Penalty and prohibited conduct.

(a) *Penalty.* Except as otherwise provided in this article, any violation of the provisions of [this] section is punishable in accordance with section 1-6.

(b) *Prohibited conduct.*

    (1) *Unlawful entry.* No person shall enter into, remain in or leave any vehicle unattended in any open space or portion thereof when the open space or portion thereof is closed to the public.

    (2) *Failure to pay fee.* No person shall enter into or remain in any open space or participate in any program sponsored by the parks and recreation department for which admission or a fee is required, without having paid that admission or fee.

    (3) *Interfering with employee.* No person shall interfere or attempt to interfere with any employee or elected official of Bernalillo County, emergency responder, law enforcement officer or animal control officer acting within the scope of their authorized duties, or give false or misleading information with the intent to mislead such person in the performance of his or her authorized duties in any open space.

    (4) *Disruption of authorized activity.* No person shall knowingly disrupt any authorized activity conducted in any open space.

    (5) *Permits.*

        a. No person shall engage in any activity in any open space for which a permit is required under section 58-55, unless a permit has been issued for the activity.

        b. No person, having been issued a permit under section 58-55, shall fail to produce and exhibit the permit during the permitted activity upon the request of the county manager, any parks and recreation department employee or any law enforcement officer.

        c. No person, having been issued a permit under section 58-55, shall fail to comply with the conditions of the permit.

    (6) *Sale of goods or services.*

        a. No person shall sell, solicit, peddle or hawk any good, service, food or beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

        b. No person shall station or place any stand, cart or vehicle for the display or sale of any good, service, food or beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    (7) *Advertising.*

        a.

No person in any open space shall announce or call attention to any event or good, service, food or beverage for sale, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    b. No person in any open space shall distribute any flyer, handbill, circular, pamphlet or other advertisement or notice, or place such on any vehicle, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

    c. No person shall paste, glue, tack, post or erect any sign, advertisement or notice in any open space or along any street adjacent to any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

  (8) *Alcohol.* No person shall possess, consume or sell any alcoholic beverage in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County, and, if necessary, a special dispenser's permit or public celebration permit issued by the State of New Mexico, Regulation and Licensing Department, Alcohol and Gaming Division.

  (9) *Glass.*

    a. No person shall possess any glass, ceramic or other breakable material in any open space outside of any vehicle, except for materials authorized by the county manager.

    b. No person shall knowingly or recklessly throw, propel or break any glass, ceramic or other breakable material in any open space.

  (10) *Domestic animals.*

    a. No person shall allow any animal under his or her ownership or control to enter into or remain in any open space or portion thereof designated as closed to animals by the county manager.

    b. In accordance with sections 6-45 and 6-53, no person shall allow any animal under his or her ownership or control to run at large in any open space. All animals shall be restrained on a secure leash that does not exceed or is retractable to six feet in length.

    c. In accordance with section 6-56, no person shall allow any animal under his or her ownership or control to defecate in any open space, except if such animal waste is immediately removed and properly disposed of by the person having ownership or control of the animal. Under no circumstances shall a person allow any animal under his or her ownership or control to defecate or urinate in any agricultural field, community garden or other place of food production in any open space.

    d. No person shall allow any animal under his or her ownership or control to play, swim, bathe, wade, urinate or defecate in any pool, fountain or body of water in any open space.

e. No person shall allow any horse or any animal capable of being ridden by a person under his or her ownership or control to enter into or remain in any open space, except in such open space or portion thereof that the county manager may designate for use by such animals.

f. No person shall hitch any horse or animal capable of being ridden under his or her ownership or control in any manner which damages vegetation or structures, or which interferes with or disturbs the public's use of any open space.

g. No person shall allow any cattle or livestock under his or her ownership or control to enter into or remain in any open space.

h. No person shall relocate, release or leave unattended any animal in any open space.

i. No person shall allow any animal under his or her ownership or control to pursue, harass, injure or kill any wild or domestic animal in any open space.

j. No person shall allow any animal under his or her ownership or control to damage or destroy any property in any open space. In addition to the penalty prescribed in section 1-6, any person so allowing any animal under his or her ownership or control to damage or destroy property shall be liable for the full amount of the damage.

k. The prohibitions of subsection (b)(10)a.—j. shall not apply to service animals in the performance of qualifying services or to animals in the performance of official law enforcement or rescue activities.

(11) *Wildlife habitat.* No person or animal under his or her control shall remove disturb, damage or destroy any wildlife habitat features, including, but not limited to, animal dens, burrows, dwellings or nests in any open space.

(12) *Introduction of organisms.* No person shall introduce or cause to be introduced any organism, living or dead, including, but not limited to, non-native plants, animals, fish or insects in any open space.

(13) *Hunting and trapping.* No person shall hunt, trap, pursue, harass, injure, collect or remove any mammal, bird, reptile, amphibian or the eggs or young of such animals in any open space.

(14) *Feeding.* No person shall feed or attempt to feed any wildlife any substance in any open space.

(15) *Fishing.* No person shall fish for, net, spear or catch any fish in any body of water in any open space, except where designated by the county manager and in compliance with the licensing requirements of the State of New Mexico Department of Game and Fish.

(16) *Boating.* No person shall sail, row, propel, float upon or use any boat, raft, floatation device or other vessel on any body of water in any open space, except where designated by the county manager.

(17) *Swimming.* No person shall swim, wade or bathe in any body of water in any open space, except where designated by the county manager.

(18) *Fountains.* No person shall stand, walk or climb upon, or swim, wade or bathe in any fountain in any open space, except where designated by the county manager.

(19) *Climbing on features.* No person shall climb any tree or stand, sit or walk upon any monument, railing, fence or similar features in any open space.

(20) *Urination/defecation.*

    a. No person shall fail to urinate or defecate in plumbing fixtures or chemical toilets specifically provided for those purposes in any open space where such fixtures are readily available.

    b. No person shall urinate or defecate in public view, defecate within 200 feet of any body of water, or fail to bury human waste in any open space where such activities are authorized by the county manager.

(21) *Unauthorized construction.* No person shall clear ground or excavate for, construct, install, improve on or maintain any permanent or temporary structure, utility, fence, gate, road, trail or similar features in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(22) *Litter.* No person shall leave or deposit any rubbish, debris, waste or other material in any open space, except that which is generated by legal activities in an open space and deposited in a designated receptacle. Where receptacles are not provided or are full, all such material shall be carried out of the open space by the person responsible for its presence and properly disposed of elsewhere.

(23) *Pollution of waters.* No person shall deposit or discharge in the waters of any pool, fountain or other body of water in any open space any rubbish, debris, waste or other material that may pollute or contaminate such waters.

(24) *Damage to natural resources.* No person shall collect, remove, disturb, deface, graffiti, damage or destroy any natural resource, including, but not limited to, all live and dead vegetation and all parts thereof; landscaping materials; soil, rocks or any other earthen material; minerals or other articles or artifacts of geological interest or value in any open space.

(25) *Damage to archaeological, paleontological and historical resources.* No person shall remove, collect, disturb, deface, graffiti, damage or destroy any object of archaeological, paleontological or historical interest or value in any open space.

(26) *Damage to property.* No person shall remove, disturb, deface, graffiti, damage or destroy any property in any open space, including, but not limited to buildings, art, signs, gates, fences, walls, tools, equipment, trash receptacles, benches, paving materials, utility lines and

Appellate Case: 23-2192    Document: 110    Date Filed: 12/16/2024    Page: 41

irrigation lines.

(27) *Firearms and weapons.*

    a. No person shall possess, use, discharge or cause to be discharged any firearm or weapon, including, but not limited to any air or gas weapon, air rifle or pistol, BB gun, pellet gun, potato cannon, blow gun, spring gun, spear gun, paintball gun, air-soft gun, bow and arrow, crossbow, slingshot, stun gun, spear, sword, knife with blade over five inches long or any other form of weapon harmful to human or animal in any open space, except as otherwise authorized in accordance with county, state or federal laws.

    b. No person shall discharge or cause to be discharged any firearm or weapon listed in subsection (27)a. into or across any open space from outside the boundary of an open space.

(28) *Fireworks and explosives.* No person shall possess, sell, ignite or discharge any firework or explosive device in any open space, except as authorized by the county manager.

(29) *Fire.*

    a. No person shall make, light or maintain a fire in any open space, except where designated or on a grill, stove or fire ring supplied by the parks and recreation department. All fires shall be built in a safe manner, attended at all times and properly extinguished.

    b. Fires may be prohibited entirely from any open space by order of the county commission or county manager.

    c. No person shall collect firewood in any open space, except as expressly authorized under the terms of a lease, concession, permit or other written agreement with Bernalillo County.

(30) *Trail use and conduct.* No person shall fail to obey any sign that dictates authorized uses or behavior on any path or trail in any open space.

(31) *Human-powered and motorized vehicles and devices.*

    a. No person shall operate any motorized vehicle or device in any open space, except on authorized roads, parking lots or other areas designated by the county manager. Motorized wheelchairs, mobility scooters, power chairs and similar electric mobility devices used by persons who need assistance to be mobile are exempt from this prohibition if operated in a safe manner and in accordance with all applicable open space and traffic rules and regulations.

    b. No person shall operate any bicycle, scooter, skateboard, roller skates, rollerblades or any other human-powered vehicle or device in any open space, except in areas specifically designated for such uses by the county manager. Child strollers, baby carriages and medical mobility devices used by persons who need assistance to be mobile are exempt

from this prohibition.

    c. No person shall ride any skateboard or operate any other human-powered vehicle or device on any picnic table, bench, fountain, planter, fence, railing, sculpture or similar features in any open space.

    d. No person shall park any human-powered or motorized vehicle or device in such a manner that creates a hazard to vehicular, pedestrian, bicycle or other traffic in any open space.

    e. No person shall clean or maintain any motorized vehicle or device or livestock trailer in any open space, except for emergency repairs.

    f. No person shall fail to operate any human-powered or motorized vehicle in accordance with all applicable county and state motor vehicle laws in any open space.

(32) *Aircraft.* No person shall take off from or land in any open space in any motorized or nonmotorized aircraft including, but not limited to airplanes, helicopters, ultralights, gliders, hang gliders, paragliders or parachutes, except:

    a. Aircraft used to transport injured persons, evacuees, medical personnel or public officials in the event of an accident, disaster or emergency;

    b. Aircraft landing in a bona fide emergency;

    c. Where designated by the county manager.

(33) *Model aircraft and watercraft.* No person shall operate any motorized model vehicle, aircraft or watercraft, or ignite or launch any model rocket in any open space.

(34) *Gambling.* No person shall gamble in any open space.

(35) *Geocaching.* No person shall place a geocache in any open space unless he or she first registers the geocache with the parks and recreation department and places the geocache in accordance with the policies and procedures established by the county manager. The county manager may confiscate any geocache in any open space without cause.

(36) *Dangerous projectiles.* No person shall engage in activities that involve thrown or otherwise dangerous propelled objects such as stones, arrows, javelins, discuses or similar objects likely to inflict injury in any open space.

(Ord. No. 2010-11, 5-25-10)