**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

JAMES SPRINGER,

      Plaintiff,

    v.                           No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

      Defendants.

## ORDER DENYING REQUEST TO RECONSIDER OR STAY PRELIMINARY INJUNCTION

THIS MATTER comes before the Court upon Defendants' Emergency Motion for Stay Pending Appeal and Clarification **(Doc. 21)**. Defendants request the Court reconsider or stay its order preliminarily enjoining the portion of Defendant Patrick Allen's public health order banning firearms in public parks. For the reasons stated below, the Court finds Defendants' motion is not well-taken and therefore is **DENIED**. The temporary stay of the preliminary injunction pending briefing on this motion is vacated.

This case concerns Defendant Patrick Allen's public health order, which in relevant part temporarily banned firearms in parks and playgrounds in Bernalillo County and Albuquerque, New Mexico. The Court entered a preliminary injunction enjoining the public health order to the extent it banned firearms in public parks, concluding that Defendants had not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues pursuant to _Bruen. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen_, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

Defendants filed a motion to stay the preliminary injunction or alternatively reconsider and vacate the preliminary injunction. Defendants presented (1) new evidence they believe demonstrates a historical tradition of firearm regulation in public parks or historical analogues, and (2) argued the Court otherwise erred.  As explained below, the Court declines to consider Defendants' belated evidence, as they have not demonstrated why they could not have presented it during the briefing on the preliminary injunction motion.

Moreover, having considered all evidence presented in the preliminary injunction briefing, the Court concludes that it did not err in finding that Defendants had not carried their burden of showing a historical tradition of firearm prohibition in public parks.  Therefore, the Court declines to reconsider the preliminary injunction or stay the preliminary injunction pending appeal.

## BACKGROUND

New Mexico's Governor issued an executive order declaring a state of public health emergency due to gun violence.  Doc. 1, Ex. 2, Governor's Executive Order 2023-130, Declaring State of Public Health Emergency Due to Gun Violence, September 7, 2023.  Subsequently, based on this public health emergency, the Department of Health Secretary Patrick Allen issued a public health order imposing restrictions on the possession of firearms. *See* Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, Doc. 1, Ex. 1. Those restrictions have been narrowed following rulings in related cases in this district.

In his motion for preliminary injunction, Plaintiff challenged certain portions of the public health order currently in effect which in part temporarily restricts the right to carry firearms in certain public parks and playgrounds in Bernalillo County and Albuquerque, New

Mexico.  *See* Doc. 10, Ex. 1, Amended[1] Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, October 6, 2023 (the "Public Health Order").  That public health order was issued by the Secretary of the New Mexico Department of Health, Defendant Patrick Allen. The Governor also issued renewed executive orders extending the public health emergency due to gun violence.

The Public Health Order currently in effect is narrower than prior public health orders.  In relevant part, the current order states that no individual, aside from law enforcement officers, licensed security officers, and certain others, may carry firearms in public parks or playgrounds. *Id.* This temporary restriction does not apply to Albuquerque's Shooting Range Park, state parks, or areas owned by the New Mexico Energy, Minerals and Natural Resources Department, State Parks Division, or the State Land Office.  *Id.*  The Public Health Order clarifies that the firearm restrictions apply to Bernalillo County and Albuquerque, New Mexico.  It also has several provisions unrelated to the right to bear firearms.

The relevant portion of the Public Health Order the Plaintiff seeks to preliminarily enjoin is as follows:

> (1) No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office

Doc. 10-1, Ex. 1, at 2.  This temporary restriction is in effect through the duration of the public health emergency declared in the Governor's executive orders.  Doc. 10-1, Ex. 1, at 3.  The

---

[1] The public health order in effect and at issue has previously been referred to as the "Second Amended Public Health Order" by Plaintiff and this Court.  Any reference to "Second Amended Public Health Order" or "Public Health Order" generally refers to the operative public health order being challenged in the record as Doc. 10, Exhibit 1, unless otherwise noted.

public health emergency has been extended several times.  It is currently in effect until January 26, 2024.  *See* Executive Order 2023-146 Renewing State of Public Health Emergency Due to Gun Violence, issued December 29, 2023, https://www.sos.nm.gov/legislation-and-lobbying/executive-orders (last accessed January 22, 2024).

The Court granted in part the motion for preliminary injunction, as follows:

> [T]he Court preliminarily enjoins *only* the limited portion of the Second Amended Public Health Order (Doc. 10, Ex. 1, at 2), issued by the New Mexico Department of Health Secretary Patrick Allen, which restricts the carrying of firearms in public parks in Albuquerque and Bernalillo County, New Mexico.  No other portion of the public health order is enjoined.

Doc. 19 at 19-20.  Defendants simultaneously filed a notice of appeal and this emergency motion which in substance seeks a stay pending appeal or reconsideration of the preliminary injunction. Doc. 21.  The Court issued an order temporarily staying the preliminary injunction pending briefing on the motion, and ordering briefing on whether it had discretion to reconsider or vacate the preliminary injunction while an appeal is pending.  Order Temporarily Staying Preliminary Injunction Pending Briefing on Motion, Doc. 22.

## DISCUSSION

I.  **District courts have discretion to reconsider a preliminary injunction while an appeal is pending under Fed. R. Civ. P. 62.1 by issuing an indicative ruling.**

Defendants requested, as an alternative form of relief, that the Court reconsider the preliminary injunction. Doc. 21 at 1 n.1. The Court ordered briefing on whether it had discretion to reconsider and vacate the preliminary injunction while an appeal was pending.  *See* Doc. 22. As explained below, the Court assumes it has discretion to reconsider an interlocutory order such as a preliminary injunction while an appeal is pending by making an indicative ruling under Fed. R. Civ. P. 62.1.

District courts generally have discretion to reconsider interlocutory orders.  Fed. R. Civ.

P. 54(b).   However, a notice of appeal may divest a district court of jurisdiction in some

circumstances.  *Stewart v. Donges*, 915 F.2d 572, 577-78 (10th Cir. 1990).  Fed. R. Civ. P. 62

allows a district court to "suspend, modify, restore, or grant an injunction" while an appeal is

pending.  Moreover, when a request for reconsideration is made, Fed. R. Civ. P. 62.1 provides:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court
> lacks authority to grant because of an appeal that has been docketed and is
> pending, the court may:
>
> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for
> that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1.  Therefore, the Court assumes it has discretion to rule on the request to

reconsider the preliminary injunction by issuing an indicative ruling or by denying the motion.

## II.   **The Court declines to consider new evidence presented by Defendants which could have been, but was not, presented before the Court issued the preliminary injunction.**

Defendants request that the Court reconsider the preliminary injunction or stay the

preliminary injunction, in part based on new evidence and an expanded historical record attached

to their motion.  As explained below, the Court in its discretion declines to consider Defendants'

new evidence in deciding whether to reconsider the preliminary injunction. Moreover, the Court

does not believe it is appropriate here to consider new evidence not previously in the record to

stay the preliminary injunction pending appeal.

**A. The Court, in its discretion, declines to consider new evidence which, could have been but was not presented earlier, in deciding whether to reconsider the preliminary injunction.**

Defendants filed new evidence in their motion to stay or reconsider which they did not present in their response the motion for preliminary injunction, including (1) creating a new historical record of firearm regulations, and (2) a declaration from an historian regarding the history of public parks.

The Court in its discretion declines to consider Defendants' new evidence in deciding whether to stay or vacate the preliminary injunction.  Defendants request to reconsider an interlocutory order. The Court has discretion to reconsider an interlocutory order and its discretion is not cabined by the standards which apply to Fed. R. Civ. P. 59 and 60 motions. "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). Moreover, the Court has discretion to "reconsider" an interlocutory order under Fed. R. Civ. P. 54(b).

The Court has discretion in deciding what standard to apply to reconsideration of an interlocutory order. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering a motion to reconsider an interlocutory order, the "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)").  In its discretion, the Court finds the Rule 59(e) framework useful here when considering a motion to reconsider an interlocutory order. *Id.*

"Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.' " *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144,

6

1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rule 59(e) relief is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law.").

However, "[Rule 59(e) 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). Additionally, Rule 59 "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see also Servants of Paraclete*, 204 F.3d at 1012 fFiling a motion pursuant to Rule 59 is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

Applying these standards in its discretion to this interlocutory order, the Court concludes that Defendants have not explained why their new evidence could not have been provided earlier. Rather, the evidence appears to have been available prior to their response to the motion for preliminary injunction.

As explained in its prior opinion, the United States Supreme Court in *Bruen* stated that a district court is "entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6.

> The burden on the merits in a preliminary injunction proceeding tracks the burden at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government. *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct."). Therefore, Defendants bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23- 00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020), *quoted in Bruen*, 142 S.Ct at 2130 n.6. District courts "are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6. A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

Memorandum Opinion and Order, Doc. 19 at 10. Defendants have not explained why their new evidence was not previously presented for consideration in the preliminary injunction briefing. Rather, the evidence appears to have been available to use in their response to the preliminary injunction motion. Defendants did not request an extension to file its brief in response to the motion for preliminary injunction. Therefore, the Court in its discretion declines to consider Defendants' new evidence in determining whether to reconsider the preliminary injunction.

**B. Court declines to consider new evidence in determining whether Defendants have made a strong showing they are likely to succeed on appeal.**

A district court may stay a preliminary injunction pending appeal. Fed. R. Civ. P. 62(d). District courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed

on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

In determining whether Defendants have made a strong showing that they are likely to succeed on appeal, the Court believes that the new evidence is irrelevant. Appellate courts generally decide appeals based on the record before the district court at the time it made its decision. As explained above, the *Bruen* court concluded that the governmental defendants have the burden to create a historical record demonstrating a historical tradition of firearm regulation. *Bruen* further stated the district court is "entitled" to rely upon this historical record created by the parties, and need not carry the government's burden for them by sifting through historical materials not presented to it. *Bruen*, 142 S.Ct at 2130 n.6, 2150.   Here, Defendants' new evidence was not presented to this court at the time the preliminary injunction was entered.

Defendants appear to suggest that they can expand the historical record on appeal, and therefore they are likely to succeed on appeal.  Defendants cite to several cases suggesting that a party can offer new case law or legal authority on appeal.  *See* Doc. 32 at 6-7.  Citing to new legal authority on appeal is different from expanding the *Bruen* evidentiary historical record.  As explained above, *Bruen* has made clear that the historical record created by the parties is not the same as merely citing to legal authority or case law, and that the districts courts are entitled to rely upon the historical record in issuing their decisions.  In that sense, *Bruen's* "historical record" has some characteristics of a factual record.  In contrast, district courts sometimes must find and apply the relevant law to a case before it even if the parties fail to do so.

III.   **Defendants have not shown that the Court erred in concluding that Plaintiff had demonstrated standing for preliminary injunctive relief.**

Defendants assert that the Court erred by finding that Plaintiff had established standing for preliminary injunctive relief as to the public health order's ban on firearms in public parks. The Court disagrees.

To demonstrate standing, Plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Defendants assert the Court erred by finding that Plaintiff had (1) established an injury in fact (2) that is likely to be redressed by a favorable judicial decision.  As explained below, Plaintiff has established an injury in fact and redressability.

A.   **Plaintiff has established an injury in fact as he has shown he intends to engage in a course of conduct arguably affected with a constitutional interest.**

In opposing the motion for preliminary injunction, Defendants primarily asserted that Plaintiff had failed to establish an injury in fact, because he did not assert that he intended to engage in a course of conduct arguably affected with a constitutional interest, i.e., carrying firearms in parks *in the future*.  "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895

(1979)).  Defendants did not contest that there was a credible threat of prosecution under the public health order.

Plaintiff filed a declaration in support of standing.  He asserts that:

3.      I have been prohibited by the Second Amended Public Health order from lawfully carrying my firearm for my and my family's protection for most of the months of September and October at the parks that I attend for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta.

4.      I also planned to organize and attend a rally in support of the Second Amendment to exercise my First Amendment rights by engaging in the expressive conduct of openly carrying a firearm in Civic Plaza but also have been prohibited from doing so by the SAPHO.

**Doc. 10-2, Exhibit 2, at 1.**  Moreover, in his verified Motion, he asserts that he "has children that participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been forced [sic] to attend several of those parks without the benefit of firearms for his own personal defense, or for the defense of his family in the drug and violence riddled city of Albuquerque."  **Doc. 10 at 2.**  In his declaration, he asserted that this statement was true and correct.  *See* **Doc. 10-2, Exhibit 2, at 1**.

Defendants assert that Plaintiff did not show an injury in fact because he did not assert he intends to visit parks in the future. The Court disagrees.

As noted above, a plaintiff establishes an injury in fact when he shows an intention to engage in a course of conduct arguably affected with a constitutional interest.  The Court finds he did so when he said "I attend" parks, Doc. 10-2, Exhibit 2 at 1, and when he said he "has children that participate in youth sports at the parks at issue in the SAPHO" Doc. 10 at 2.  By saying "I attend" parks, the Court finds that Plaintiff is clearly asserting that he is *currently* and *continues* to attend parks.  Defendants appear to assert that by saying "I attend", he did not say he would attend parks in the future.  When a declarant states "I attend parks", it is not limited to

when the declarant speaks, i.e, that he only attends parks at the time he wrote the declaration. The present tense has long been used to express something *currently* ongoing and expected to *continue*, or an act outside of time. *See, e.g.,* Rodney Huddleston, et al., *A Student's Introduction to English Grammar,* § 3.4, at 59 (Cambridge University Press, 2d ed. 2022) (phrase such as "Tricia mows the lawn" is present imperfective, used in a situation where declarant "regularly or habitually" does an activity. "This situation holds at the time of speaking but began before then and may continue after it."); *Bas Aarts, Oxford Modern English Grammar* § 9.2.1.1 (Oxford University Press, 2011); *Id.* at § 9.2.1.4 ("in a number of contexts the present tense is used without referring to present time. These include general descriptions, descriptions of journeys…"); *Id.* at § 9.3.2.1. The Court finds that when Plaintiff said that he *attends* parks, that he is not referring merely to the moment he drafted the declaration, but a continuing activity he participates in.

Defendants assert or imply that by referencing the months of September and October in his declaration, Plaintiff was asserting he only attends parks in September and October, and no other time. The Court disagrees. Plaintiff drafted his declaration in October when he filed his motion for preliminary injunction. Defendants first issued their firearm ban in parks on September 8, 2023. When Plaintiff referenced the months of September and October in his declaration, he was not stating that he only attends parks in September or October, but was referencing how long *so far* he had been prohibited from carrying firearms in parks at the time he drafted his declaration in October.

Reading Plaintiff declaration and his statements in his verified motion as a whole, Plaintiff has clearly asserted an injury in fact. The Court finds that Plaintiff has stated he intends

to carry firearms in parks, and has demonstrated an intention to engage in a course of conduct affected with a constitutional interest.

**B. Plaintiff established redressability, as the record before the Court reflects that a preliminary injunction would redress his injury.**

Defendants also assert that Plaintiff had failed to establish that the injury is likely to be redressed by a favorable judicial decision. The Court disagrees. The Court addressed redressability in its opinion as follows:

> Defendants summarily assert that Plaintiff's asserted injury is not redressable as there is a separate restriction on carrying firearms in parks in Albuquerque. According to Defendants, the City of Albuquerque has administratively interpreted state law prohibiting the carrying of firearms on school property to include a wide range of city property, including parks. **Doc. 15 at 7**. That restriction is subject to a separate lawsuit in state court. The Court finds this point to be undeveloped in the briefing and insufficient to place the issue before the Court. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). For example, it is unclear whether the threat of prosecution in the other case is credible. Even assuming Defendants' redressability argument were properly developed, Defendants do not allege that the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque. Moreover, an injunction would eliminate the threat of being prosecuted under the public health order, which would redress Plaintiff's injury. Finally, Defendants' argument in their response that a separate firearm ban was already in place appears to contradict the Public Health Order and Executive Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence. In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks. Therefore, it appears an injunction would still redress Plaintiff's injury, with respect to the firearm ban in public parks.

Doc. 19 at 7-8. The Court sees no reason to deviate from this reasoning.

Defendants argue that the Court shifted the burden on redressability to them. The Court disagrees. Plaintiff bears the burden of establishing standing, including redressability. In their response to the motion for preliminary injunction, Defendants argued that a judicial decision would not redress Plaintiff's injury, as firearms were already banned under a separate City of

Albuquerque administrative memorandum. Plaintiff's burden does not alter the fundamental principle that a party asserting an argument or fact has the burden of adequately developing an argument, or supporting an asserted fact by evidence in the record, to properly place the issue before the Court.  Here, Defendants summarily asserted that Plaintiff failed to establish that an injunction would redress his injury by referencing a City of Albuquerque administrative policy without explaining the policy or providing it.  There is no such evidence in the record before the Court. NMSA 1978 § 30-7-2.1 makes it unlawful to carry a deadly weapon on "school premises."  That administrative policy apparently interprets state law banning firearms on school premises to apply to a wide variety of city property.  Defendants did not provide the administrative policy, any citation or explanation of that policy, nor did they provide any evidence in the record supporting their assertion of fact.  There is no evidence in the record that the policy is being enforced, or there is a credible threat of prosecution under that policy. Defendants asserted a statement of fact – that guns were already banned in parks in Albuquerque pursuant to a city administrative decision – without supporting that fact in the record by citation to any evidence. This unsupported argument or factual assertion was also contradicted by their other arguments in the briefing.  For example, Defendants have also asserted the firearm ban under the public health order is necessary, as otherwise guns would be allowed in parks in Albuquerque. *See* Doc. 21 at 13 (noting public would be irreparably harmed by the presence of firearms in parks if public health order's firearm ban was enjoined).  Therefore, Defendants' argument regarding redressability was not adequately developed for the Court to consider.

Alternatively, assuming the argument was properly developed, the record before the Court does not reflect that firearms are banned in *all* parks in the City of Albuquerque.  Plaintiff provided the city's administrative interpretation in their reply, which does not appear to ban

firearms in *all* parks in the city.  Doc. 16-2, Exhibit 2.  Rather, the memo is careful to describe that firearms are banned in parks where school activities are held. Doc. 16-2 at 2 (interpreting state statute's prohibition on carrying firearms on school premises to include "city neighborhood parks, which are used as playing areas for public schools and other school programing, including those used for the Food services Program for Children in partnership with Albuquerque public schools."). Nothing in the record before this Court suggests that school activities are held in all parks in Albuquerque.  Finally, the record does not suggest that firearms are banned in *all* city parks.  *See* Doc. 16-2.  Therefore, based on the record before the court, it would be merely speculative that firearms are banned in all parks in the City of Albuquerque as school premises, based on the City of Albuquerque's administrative memorandum.

Moreover, there is nothing in the record to reflect that the threat of prosecution is credible under the City's administrative interpretation of "school premises".

Alternatively, even assuming there were a separate firearm ban in public parks in Albuquerque, Plaintiff still could redress his injury as the city's restriction does not appear to apply elsewhere in Bernalillo County.  Defendants assert that Plaintiff did not state he attended parks in Bernalillo County.  The Court disagrees.  Plaintiff plainly stated that he attends "youth sports at the parks at issue in the SAPHO," and attends parks at issue in the Public Health Order. Doc. 10 at 2; *see also* Doc. 10-2, Exhibit 2 (declaration stating he is prohibited from carrying firearms in parks he attends). Nothing in the record suggests that Plaintiff restricts his visits to parks in Albuquerque. Moreover, although he states that he has been unable to attend the Balloon Fiesta in Albuquerque, he does not state that he only attends parks in Albuquerque. *See* Doc. 19 at 6, citing Doc. 10-2, Exhibit 2 at 1. Therefore, even assuming the City of Albuquerque's

administrative memorandum independently bars carrying guns in public parks, it does not appear to bar carrying guns elsewhere in Bernalillo County.

Issuing a preliminary injunction would redress Plaintiff's injury on two separate, alternate grounds: (1) it would allow him to carry guns in parks and (2) it would remove the threat of prosecution under the Defendants' public health order for carrying guns in public parks in Bernalillo County and Albuquerque, New Mexico. Plaintiff has satisfied the redressability element of standing.

Therefore, for the reasons stated herein and in the Court's prior order, Doc. 19, the Court concludes that Plaintiff has demonstrated standing for a preliminary injunction of the public health order's ban on firearms in public parks.

**IV.** **Considering the evidence before the Court at the time the preliminary injunction was issued, Defendants have not shown that the Court erred warranting reconsideration or a stay of the preliminary injunction pending appeal.**

Defendants request that the Court either stay the preliminary injunction or reconsider the injunction. The Court concludes that defendants have not shown that the Court erred based on the evidence presented in the briefing on the motion for preliminary injunction. Therefore, Defendants have not (1) made a strong showing of success on appeal warranting a stay or (2) demonstrated error warranting reconsideration.

**A.** **Defendants have not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues.**

As explained below, Plaintiff has shown a likelihood of success on the merits as to his Second Amendment claim challenging firearm restrictions in public parks. Considering the evidence before the Court at the time the preliminary injunction was issued, Defendants have not

carried their burden to show a historical tradition of banning firearms in public parks or their historical analogues.

The Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Association, Inc. v. Bruen*, __U.S. __, 142 S.Ct. 2111, 2122, 213 L.Ed.2d 387 (2022). In *Bruen,* the United States Supreme Court adopted a new two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such as showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*

The burden on the merits in a preliminary injunction proceeding tracks the burden at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government. *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct."). Therefore, Defendants

bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020). District courts "are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6. A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

In analyzing the government's proffered historical evidence, the Court must keep in mind that "constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783, *quoted in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022). But "the Second Amendment's historically fixed meaning applies to new circumstances ...." *Bruen*, 142 S.Ct. at 2132. This task "will often involve reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar." *Id.* (citation and internal quotation marks omitted). In assessing whether regulations are "relevantly similar under the Second Amendment," courts should look "toward at least two

metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."
*Id*. at 2132–33. But, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*. (emphases in *Bruen*).

In its response to the motion for preliminary injunction, Defendants provided the Court with no evidence, in a declaration or any other evidentiary form. Rather, Defendants point to the following citations: (1) citations to laws or regulations identified in a district court case, *Maryland Shall Issue*; (2) western territorial laws; (3) a Texas law from 1871; and (4) a Missouri law from 1883. *See* **Doc. 15 at 12**, *citing Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11-12 (D. Md. July 6, 2023); **Doc. 15 at 13** (citing western territorial laws). As explained below, these citations do not satisfy Defendants' burden of pointing to a historical tradition of firearm regulation in public parks or their historical analogues.

The *Maryland Shall Issue* decision cited to the following laws or regulations restricting firearms in public parks:

> *see* First Annual Report on the Improvement of the Central Park, New York at 106 (**1857**), Opp'n Ex. 13, ECF No. 59-17; an 1870 law enacted by the Commonwealth of Pennsylvania stating that "[n]o persons shall carry fire-arms" in Fairmount Park in Philadelphia, Pennsylvania, *see* Acts of Assembly Relating to Fairmount Park at 18, § 21.II (**1870**), Opp'n Ex. 20, ECF No. 59-24; an 1895 Michigan state law providing that "No person shall fire or discharge any gun or pistol or carry firearms, or throw stones or other missiles" within a park in the City of Detroit, *see* **1895** Mich. Local Acts at 596, § 44, Opp'n Ex. 43, ECF No. 59-47; and a **1905** ordinance in Chicago, Illinois stating that "all persons are forbidden to carry firearms or to throw stones or other missiles within any of the Parks ... of the City," **1905** Chi. Revised Mun. Code, ch. XLV, art. I, § 1562, Opp'n Ex. 49, ECF No. 59-53. Similar restrictions were enacted to bar the

carrying of firearms in (1) Saint Paul, Minnesota, *see* Annual Reports of the City Officers and City Boards of the City of Saint Paul at 689 (**1888**), Opp'n Ex. 32, ECF No. 59-36; (2) Williamsport, Pennsylvania, *see* **1891** Williamsport, Pa. Laws and Ordinances at 141, § 1, Opp'n Ex. 37, ECF No. 59-41; (3) Wilmington, Delaware, *see* **1893** Wilmington, Del. Charter, Part VII, § 7, Opp'n Ex. 39, ECF No. 59-43; (4) Reading, Pennsylvania, *see* A Digest of the Laws and Ordinances for the Government of the Municipal Corporation of the City of Reading, Pennsylvania at 240, § 20(8) (**1897**), Opp'n Ex. 44, ECF No. 59-48; (5) Boulder, Colorado, *see* **1899** Boulder, Colo. Revised Ordinances at 157, § 511, Opp'n Ex. 45, ECF No. 59-49; (6) Trenton, New Jersey, *see* **1903** Trenton, N.J. Charter and Ordinances at 390, Opp'n Ex. 48, ECF No. 59-52; (7) Phoenixville, Pennsylvania, *see* A Digest of the Ordinances of Town Council of the Borough of Phoenixville at 135, § 1 (**1906**), Opp'n Ex. 52, ECF No. 59-56; (8) Oakland, California, *see* **1909** Oakland, Cal. Gen. Mun. Ordinances at 15, § 9, Opp'n Ex. 53, ECF No. 59-57; (9) Staunton, Virginia, *see* **1910** Staunton, Va. Code, ch. II, § 135, Opp'n Ex. 54, ECF No. 59-58; and (10) Birmingham, Alabama, *see* **1917** Birmingham, Ala. Code, ch. XLIV, § 1544, Opp'n Ex. 55, ECF No. 59-59.

On a state level, in **1905**, Minnesota prohibited the possession of firearms within state parks unless they were unloaded and sealed by a park commissioner. 1905 Minn. Laws, ch. 344, § 53, Opp'n Ex. 50, ECF No. 59-54. In 1917, Wisconsin prohibited bringing a "gun or rifle" into any "wild life refuge, state park, or state fish hatchery lands" unless it was unloaded and in a carrying case. **1917** Wis. Sess. Laws, ch. 668, § 29.57(4), Opp'n Ex. 56, ECF No. 59-60. In **1921**, North Carolina enacted a law prohibiting the carrying of firearms in both private and public parks without the permission of the owner or manager of that park. *See* 1921 N.C. Sess. Laws 53–54, Pub. Laws Extra Sess., ch. 6, §§ 1, 3, Opp'n Ex. 57, ECF No. 59-61.

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11 (D. Md. July 6, 2023) (emphases added).  The Court notes that these historical records were provided to the *Maryland Shall Issue* court as exhibits but were not provided to the undersigned in the response.

Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*.  There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before or around the enactment of the Fourteenth Amendment.  *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the

Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133, 2137 (because post-Civil War discussions of the right to keep and bear arms "took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources."), *quoting Heller*, 554 U.S. at 614. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law. 142 S.Ct at 2154 n.28.

Defendants appear to take the position that they need not cite to any laws from the 18th century or early to mid-19th century because modern public parks existed beginning in the late 19th century.

However, Defendants did not establish in the evidentiary record that modern parks arose in the late 19th century. In a footnote, Defendants reference several scholarly articles or books, but do not provide a relevant parenthetical or provide them to the Court. The Court is not convinced such articles provide sufficient evidence. Even assuming those articles provided evidence for the Court to consider, it is not at all clear that there was no historical *analogue* to parks. *See* Anne Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1, 14 (2021) ("Today's American public park is deeply rooted in the seventeenth- and eighteenth-century utilitarian village green, common, square, and parade ground"); *Koons v. Platkin*, 2023 WL 3478604, at *83 (D. NJ 2023) (listing examples and noting no evidence that historical analogues prohibited the carrying of firearms). The Court does not determine whether modern parks are historically analogous to

historical common greens, but merely illustrates that Defendants have not provided *any* citation to firearm restrictions before 1850, such as during recreation.

*Bruen* did not state that the government need only look for historical *twins*. *Bruen*, 142 S.Ct. at 2133. Rather, Defendants have the burden to cite to historical *analogues*, and Defendants have not provided evidence that there were no historical analogues to modern parks in the 18th century and early 19th century. *Id.* Even if parks (as defined today) did not exist in the 18th century or early 19th century, Defendants still had the burden of providing evidence of firearm regulations in public spaces that were analogous to parks. *Bruen*, 142 S.Ct. at 2132-33. Here, Defendants did not present *any* such evidence, or any citation before 1850. *See, e.g., Koons*, —— F.Supp.3d at ——, 2023 WL 3478604, at *83 ("Despite the existence of such common lands since the colonial period, the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks."), *cited in Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) (same). For example, assuming today modern parks are used for recreation, Defendants provided no citations to historical analogues before 1850 limiting firearms during recreational activity or in places of recreation, or even in social gatherings.

Moreover, the vast majority of the citations in *Marlyand Shall* Issue are to laws or ordinances arising in the late 19th century and early 20th century. "This Court gives less weight to laws enacted within a few years of the 20th century because they provide little insight into the public's understanding of the Second Amendment either in 1791 or 1868." *Bruen*, 142 S. Ct. at 2154 (explaining that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence"); *see also Id.* at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or

their *amici*. As with their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."). The *Bruen* decision considered late 19th century laws to the extent they were consistent with earlier laws. *Id.* at 2137, 2154. And it did not consider 20th century law at all. *Id.* at 2154 n.28; *see also Heller*, 554 U.S. at 605, 128 S.Ct. 2783 (evidence of "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century" represented a "critical tool of constitutional interpretation."), quoted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022). Because Defendants did not create a record in accordance with these authorities of earlier laws restricting the carrying of firearms in historical analogues, they have not shown that the laws they did cite were consistent with earlier law. *See, e.g., Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *18 (D. Colo. Aug. 7, 2023) (government fell short of showing historical tradition of firearm regulation when it failed to point to *any* evidence of understanding of right to bear arms in founding period.), *citing Bruen*, 142 S. Ct. at 2136 (relying on evidence from reconstruction era on would "give postenactment history more weight than it can rightly bear.").

Defendants cite to territorial law from western states such as New Mexico, Arizona, and Oklahoma. But the *Bruen* court expressly rejected relying on territorial laws or decisions. *Bruen*, 142 S.Ct. at 2154-55. The *Bruen* decision reasoned that the territories governed less than 1% of the American population, the territorial laws were enacted a century after the Second Amendment was adopted, the territorial laws were transitory, and they were rarely subject to judicial scrutiny. *Id.* at 2155. Therefore, western territorial laws shed little light on the understanding of the Second Amendment when it was adopted. Defendants suggest the Court

should reject the *Bruen* decision's analysis of western territorial law.  District courts lack the authority to reject the analysis set forth by the United States Supreme Court, and in any event, *Bruen's* analysis is persuasive.

Defendants also cite to a Texas statute from 1871.  *See* Response, Doc. 15 at 13.  The *Bruen* court addressed this Texas statute, finding it to be an outlier.  In that statute, Texas prohibited firearms in public venues and social gatherings.  1871 Texas Gen Laws Ch. 34, § 1. The Supreme Court of Texas upheld the law.  *English v. State*, 35 Tex. 473, 476.  The *Bruen* court analyzed this law, considered it an outlier, and stated that it contradicted the weight of other evidence.  *Bruen,* 142 S. Ct at 2153.  Here, the Texas statute and decision does not alter the Court's reasoning, or fix the defects identified in the Court's order.  The Texas law does not cure the defect that *no* historical analogue was cited prior to 1850, or demonstrate a historical tradition of firearm regulation in historical analogues.

Defendants also cited to a statute from Missouri.  Missouri enacted a law in 1883 "prohibiting the carrying of firearms in places where people are assembled for 'educational, literary or social purposes' and ' any other public assemblage of persons met for any lawful purpose."  Response, Doc. 15 at 13, *quoting Antonyuk,* 639 F. Supp. 3d at 323. As noted above, the Missouri law does not fix the deficiencies identified in Defendants' historical record, as it was enacted in the late 19th century. Moreover, it is unclear why Defendants did not cite to any earlier law banning firearms in places where people assemble for educational, literary, social, or recreational purposes.

In sum, Defendants provide *no* evidence illuminating the scope of the Second Amendment before or around the time it was adopted.  *Bruen*, 142 S.Ct. at 2136 (constitutional rights "are enshrined within the scope they were understood to have when the people adopted

24

them"). As to the time of the enactment of the Fourteenth Amendment, Defendants presented insufficient evidence illuminating such understanding. The majority of Defendants' citations come at least 20 years after the enactment of the Fourteenth Amendment, which the *Bruen* decision gave less weight, and considered to the extent it was consistent with earlier law. Under the circumstances of this case, Defendants' citation primarily to historical analogues from the late 19th century and early 20th century is insufficient to establish a historical tradition of firearm regulation in relevant historical analogues.

Considering the evidence before the Court at the time the preliminary injunction was issued, the Court concludes that it did not err in concluding that Defendants failed to carry their burden to establish a historical tradition of firearm regulations in public parks. Therefore, the Court concludes that (1) Defendants have not shown an error warranting reconsideration and (2) Defendants have not demonstrated they are likely to succeed on the merits of an appeal warranting a stay of the preliminary injunction.

**B.    Defendants' arguments for reconsideration or a stay are not well-taken**

Defendants assert that the Court erred in noting that they failed to cite to any law regulating firearms prior to 1850, as public parks only a rose in the late 19th century. As explained above, Defendants did not establish in the record that public parks arose in the late 19th century, which is a factual determination. Moreover, they did not establish that there were no earlier historical *analogues* to cite, such as prohibitions on carrying firearms during social gatherings or recreation.

Defendants cited to three scholarly works to establish that parks arose in the late 19th century. Doc. 15 at 15, n.16. The Court expressed skepticism that scholarly articles or books neither submitted into the record nor referenced in a declaration could provide evidence to

establish a fact.  Doc. 19 at 13.  Defendants also did not state that those articles found that there were no historical *analogues* to modern parks prior to 1850. Defendants cited to three scholarly works as *evidence* establishing a *fact*, i.e., that "there were no modern-style parks at the time of the Founding Era."  Doc. 15 at 15 n.16. None of those three scholarly works were provided to the Court to consider as evidence.  *See* D.N.M.LR-Civ. 7.3(b) ("Parties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact."). *Bruen*, 142 S.Ct at 2130 n.6, 2133, 2150 (government must develop historical record). Therefore, Defendants did not satisfy their evidentiary burden.

Alternatively, Defendants' citations generally do not establish when modern parks arose, and do not establish that there was no *analogue* to modern parks in the 18th century or early 19th century. For example, one book stated that parks were created in the *early* 19th century.  *See* Susanne Scheld *et al., Rethinking Urban Parks: Public Space and Cultural Diversity*, 19-20 (2009).  It discusses the various type of parks but it does not state that modern parks were created in the mid to late nineteenth century.  Moreover, it did not state there were no historical analogues to modern parks relevant to the analysis of the historical tradition of firearm regulation, such as places for social gathering or recreation.  Defendants also cited to Steven R. Pendery, *Probing the Boston Common* at 43 Archaeology 42-47 (1990), but that citation has the same problems. It does not (1) state that modern parks were created in the late 19th century, or state that (2) there were no historical analogues to modern parks. Finally, Defendants cited to Michael Rawson, *Eden on the Charles, the Making of Boston*, 73 (Harvard University Press, 2010).  The cited page stated that the Boston Commons became entirely dedicated to passive recreation in 1830, approximately 30 years before "America's great park-building age." *Id.* There is no citation for this proposition.  The relevant end-note citation does not provide a source

for this fact and instead discusses a separate topic, and is therefore not persuasive. *See Id.* n. 88. Even so, *Eden on the Charles* does not establish that there were no historical analogues for Defendants to cite.   Therefore, the Court finds that (1) Defendants have not established that modern parks did not exist at the time of the founding or in the early 19th century; and (2) Defendants have not established there were no historical analogues they could have cited before 1850, such as restrictions during social gatherings or recreation.

Even assuming Defendants had established that modern parks did not exist prior to the mid to late 19th century (which they did not), Defendants had the burden of demonstrating a historical tradition of firearm regulation in historical *analogues,* not *twins.*   Defendants have not shown there were no historical *analogues,* such as firearm regulations during social gatherings or recreation.

Defendants assert the Court should have given more weight to the understanding of the right to bear arms around the time of the enactment of the Fourteenth Amendment in 1868, as opposed to the Founding Era.   *Bruen* noted a scholarly debate regarding whether the appropriate analysis should focus on time of the enactment of the Second Amendment (1791) or Fourteenth Amendment (1868) and did not expressly resolve the issue.   *Bruen,* 142 S.Ct. at 2138.   However, ignoring the understanding of the right to bear arms around the time of enactment of the Second Amendment would be wholly contradictory *Bruen's* actual analysis.   As explained above, *Bruen* repeatedly focused on the understanding of the right to bear arms at the time of the Second Amendment, and discounted later laws as not providing sufficient understanding of the understanding of the right to bear arms at the time of the enactment of the Second Amendment. Although *Bruen* acknowledged the scholarly debate, it also cited to multiple United States Supreme Court cases holding that the protections of the Bill of Rights as applied to the States is

"pegged to the public understanding of the right when the Bill of rights was adopted in 1791." *Bruen*, 142 S.Ct at 2137-38. *Bruen* did not overrule those cases, and until the United States Supreme Court issues a different decision, the Court must follow these other Supreme Court decisions. *Bruen* itself considered the historical record at the time of the founding, and gave less weight to later laws. The federal district courts ultimately must follow United States Supreme Court precedent. Therefore, the Court concludes that ignoring the understanding of the right to bear arms around the time of the enactment of the Second Amendment is not appropriate here.

Defendants assert that the Court should follow the Second Circuit decision in *Antonyuk,* which was issued after the court issued the preliminary injunction decision. *See Antonyuk v. Chiumento*, 89 F.4th 271, 355 (2d Cir. 2023) (reversing district court's preliminary injunction of firearm ban in public parks). The Court notes that the *Antonyuk* decision appears to have a different historical record before it than this Court had. The cases cited in *Antonyuk* were not all cited here, especially those from the founding era. Moreover, *Antonyuk* appears to analogize modern parks to crowded public forums. There is nothing in the record demonstrating that public parks in Albuquerque and Bernalillo County are analogous to crowded, historical public forums in New York City. Moreover, *Antonyuk* appeared to rely in part on territorial laws which the United States Supreme Court expressly rejected in *Bruen*, as explained above.

## V.   <u>The remaining stay factors do not favor the issuance of a stay of the preliminary injunction pending appeal</u>.

Moreover, the remaining stay factors do not favor a stay of the preliminary injunction. To obtain a stay pending appeal, Defendants must show that they "will suffer irreparable injury unless the [stay] issues." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)). Harm

must not be speculative, rather Defendants bear the burden of showing a significant risk of harm absent a stay. *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021). That harm "must be both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001), quoted in *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021).

Defendants assert that they will suffer irreparable harm due to potential increased gun violence in public parks.  The record before the Court is unclear whether a firearm ban in public parks would reduce gun violence.  Defendants' arguments are contradictory. They cite to three shootings which occurred in Albuquerque parks before the public health order's ban on firearms in Albuquerque parks, as proof that a ban is necessary.  However, those shootings occurred during what Defendants allege was a separate firearm ban imposed by the City of Albuquerque.[2] To the extent they may suggest that additional state resources would be provided to enforce the Defendants' ban under the public health order, they have not presented that in the record. Defendants suggest that the public may be intimidated by individuals such as Plaintiff carrying firearms for self-defense.  While the Court is sympathetic to this argument, it is unclear whether this constitutes irreparable harm, and the Court is constrained by binding precedent under *Bruen*. Moreover, the government generally does not suffer irreparable harm from an injunction which halts an unconstitutional practice.  *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Even assuming Defendants had demonstrated irreparable harm, when a movant has not demonstrated a strong likelihood of success on appeal, a "stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co. v. United States*, 272 U.S. at 672, 47

---

[2] Although Defendants argue that the City of Albuquerque already had a firearm ban in place, as noted above, evidence of that ban was not presented in the record.

S.Ct. 222 (citation omitted).  Based on the record before the Court, it appears that any harm is speculative.

Defendants must also demonstrate "that the balance of equities tips" in their favor and "that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)*.* "The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the [stay] causes" the other party. *Free the Nipple-Fort Collins,* 916 F.3d at 806. A loss of a constitutional right usually trumps any harm to the defendant. *Id*. Here, the Court finds that the harm suffered by Plaintiff outweighs the harm to Defendants' interests. *Id.* at 806-07. Even assuming the Defendants had demonstrated irreparable harm absent a stay pending appeal, the Court concludes that the balance of the equities favors denying the stay pending appeal.

It is clear that Plaintiff suffers harm from the infringement of his constitutional rights. The Tenth Circuit has observed that "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). The Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases).  Here, Plaintiff has made a strong showing that Defendants violated his Second Amendment right to carry firearms in public parks in Bernalillo County and Albuquerque, New Mexico. The violation of a constitutional right constitutes irreparable harm which cannot necessarily be adequately remedied by money damages. *Free the Nipple-Fort Collins*, 916 F.3d at 806-07 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm

to the defendant.... (internal quotations and citations omitted)). Balancing the equities, the Court concludes a stay pending appeal is not appropriate.

As to the fourth and final factor, "it's always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 806-07.

Therefore, the remaining factors all weigh in favor of denying a stay pending appeal.

## VI.   **The Court declines to modify the preliminary injunction to apply only to Plaintiff.**

Defendants request that the Court clarify that the preliminary injunction only applies to enforcement of the public health order against Plaintiff.  For example, Defendants cited to a case which counseled against a district court issuing a nationwide injunction. *Georgia v. President of the United States*, 46 F.4th 1283, 1306 (11th Cir. 2022). Here, the Court did not issue a nationwide injunction which applies outside of this district. Rather, it enjoins a portion of the Defendants' public health order which restricts the right to carry firearms in public parks in Albuquerque and Bernalillo County, New Mexico, which is within the District of New Mexico.

Moreover, courts regularly enjoin named defendants from enforcing their unconstitutional state or local laws, which has the result of enjoining them from enforcing their unconstitutional laws against non-parties. *See, e.g., May v. Bonta,* SACV 23-01798 CJC, 2023 WL 8946212, at *19 (C.D. Cal. Dec. 20, 2023) (enjoining state law restricting firearms); *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126, 1135 (D. Colo. 2017) (preliminarily enjoining "the City of Fort Collins from enforcing § 17–142(b) of the Fort Collins Municipal Code or Ordinance No. 134 to the extent that it prohibits women, but not men, from knowingly exposing their breasts in public."), *aff'd,* 916 F.3d 792 (10th Cir. 2019); *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1158 (10th Cir. 1999) (affirming preliminary injunction enjoining enforcement of unconstitutional New Mexico state law). This is especially true in what

appears to be a facial challenge to an unconstitutional law or executive order.[3] *See, e.g., United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478, 115 S. Ct. 1003, 1019, 130 L. Ed. 2d 964 (1995) (considering whether plaintiff asserts a facial challenge to statute in determining whether to apply injunction to nonparties).

## CONCLUSION

As explained above, Defendants have not demonstrated that the Court should consider their new evidence which they could have, but did not, present in the briefing on the motion for preliminary injunction.  Considering the evidence before the Court at the time the preliminary injunction was issued, the Court concludes it did not err. Finally, the Court concludes that Defendants have not made a strong showing of success on appeal warranting a stay pending appeal. Therefore, the Court declines to issue an indicative ruling under Fed. R. Civ. P. 62.1 vacating the preliminary injunction, declines to modify the preliminary injunction, and declines to issue a stay of the preliminary injunction pending appeal.

**IT IS THEREFORE ORDERED** that Defendants' Emergency Motion for Stay Pending Appeal and Clarification **(Doc. 21)** is **DENIED.**

---

[3] It appears that Plaintiff has raised a facial challenge to the public health order's restriction on carrying firearms in public parks. A facial challenge attacks a statute head-on, asserting that the challenged statute "violates the Constitution in all, or virtually all, of its applications." *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (citation omitted). In contrast, an as-applied challenge "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the *particular circumstances* of the case." *Id.* (citation omitted). "[T]he distinction between facial and as-applied challenges .... goes to the breadth of the remedy employed by the Court." *Citizens United*, 558 U.S. at 331, 130 S.Ct. 876. Here, the challenge appears to be facial, as Plaintiff has argued that public health order's firearm ban is unconstitutional in virtually all of its applications.  No party has identified any facts which would render the firearm ban constitutional in some circumstances, but unconstitutional in this case.

**IT IS FURTHER ORDERED** that the temporary stay of the preliminary injunction pending briefing on this motion is vacated.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE