**Nos. 23-2192, 23-2194**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**JAMES SPRINGER**
Plaintiff-Appellee/Cross Appellant,

v.

**MICHELLE LUJAN GRISHAM AND PATRICK ALLEN**
Defendants-Appellants/Cross-Appellees.

**Appeal from the United States District Court
For the District of New Mexico
No. 1:23-cv-00781-KWR-LF**

**RESPONSE IN OPPOSITION TO MOTION OF DEFENDANTS-APPELLANTS TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

A. Blair Dunn, Esq.
WESTERN AGRICULTURE,
RESOURCE AND BUSINESS
ADVOCATES, LLP
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com

Zach Cook, Esq.
ZACH COOK, LLC
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

*Attorneys for Plaintiffs-Appellants*

February 12, 2024

# INTRODUCTION

Just as they did with the District Court Appellants are again attempting to modify the record to include non-dispositive information that they could have presented before the District Court made the determination to issue its preliminary injunction, but elected not to. This is especially important, given that it appears that Appellants are again attempting to bootstrap almost 1000 pages of exhibits of additional evidence that they could have supplied but elected not to when before the District Court. Putting aside the greater untimeliness of the new allegations of material evidence the Appellants now seek to have this Court review for a stay, the information is unpersuasive because of the laws they cite in the time before (1851-1866, *see* ECF. Doc. No. 21-1 pg 1) the ratification of the Fourteenth Amendment only one state (NY) was regulating firearms in "modern" parks and the recent time after ratification (1868 – 1878, *see* ECF. Doc. No. 21-1 pgs 1-2) only three additional states, for a total of 4 out of 45 were regulating firearms in parks. Thus, not only is this untimely information, it does not change the analysis with regard to parks that the District Court has already performed and is merely rearguing (again) that the District Court was wrong in holding:

Nevertheless, in reviewing these historical citations, there are

> several issues that render them irrelevant or unpersuasive in light of *Bruen*. There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before or around the enactment of the Fourteenth Amendment. *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law.

MOO at 12-13. Virtually nothing and certainly nothing new in the almost 1000 pages that Appellants have (again) supplied with the instant Motion calls either of the District Court's analysis, the first of which is noted above, into question. These are arguments that are transparently a design to have this material presented to the this Court, which is improper, even if it would change the this Court's analysis, because this Court is no more likely to disregard the Supreme Court's instruction in *Bruen* than the District Court was either time.

## ARGUMENT

### I. The Appellants' Motion Does Satisfy the Four Factors of *Hilton* for a Stay Pending Appeal

As the District Court recited below a defendant must satisfy four factors for the relief they seek being: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially

injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

### A.    Appellants are Unlikely to Succeed on Appeal

To be perfectly clear, Appellants are asking this Court to ignore the District Court's sound analysis of applying *Bruen's* clear holdings rejecting the broad application of sensitive places stating that "expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022). It especially worth noting that Appellants' reliance on the Second Circuit's pronouncement of "overreading of *Bruen*" by District Court in *Antonyuk v. Chiumento*, 2023 WL 8518003, at *62 (2d Cir. Dec. 8, 2023) becomes unpersuasive given that it was the Second Circuit that was reversed by the Supreme Court in *Bruen*.

To be sure there is a distinct, politically-charged debate raging in the Nation and in the Courts, which is part of why the Second Circuit's holding to narrowly interpret *Bruen* is suspect stating that "the appropriate figure in this instance is not the percentage of the nation's *total* population that was affected by city park firearms restrictions, but rather the percentage of the *urban* population that was governed by

4

city park restrictions." *Antonyuk v. Chiumento*, 2023 WL 8518003, at \*62 (2d Cir. Dec. 8, 2023)(emphasis in original.) That statement from the Second Circuit finds no support in *Bruen*. Especially, when what does find support in *Bruen* is the Supreme Court's citation to D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018), which does not support the Second Circuit's expansion of parks as an analogue to fairs and markets.

Thus, the critical question that the District Court has correctly addressed, at least as far as parks are concerned, that the Second Circuit gets wrong, is whether the regulation is consistent with the <u>*Nation's*</u> (presumably the Supreme Court is not indicating some small percentage of the Nation in this test) history and tradition. And in this regard the Second Circuit's decision which is based upon the premise of crowds of people gathering at fairs and markets flies in the face of the statement from the Supreme Court that "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a "sensitive place" simply because it is crowded and protected generally by the New York City Police Department. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022). Rather, the District Court in that case, performed the Court *Bruen* analysis that this Court should follow to be consistent with *Bruen* and that the Tenth Circuit is more likely to follow which is a survey of the Nation's (considered as a whole) history and tradition to find that:

> In any event, even if the number and geographical origins of these city laws *326 (when combined with the two state laws previously mentioned) were sufficient to constitute a tradition that was *established*, they do not constitute a tradition that was *representative* of the Nation. As explained earlier in this Decision, as of 1890, the five cities in question (New York City law, Philadelphia law, Chicago law, St. Louis law, and St. Paul law) comprised about 6.8 percent of the American population. *See* Dept. of Interior, Compendium of Eleventh Census: 1890 (1890). As of 1870, the two states in question (Texas and Missouri) contained only about 6.6 percent of the American population. *See* Dept. of Interior, Compendium of Ninth Census: 1870 (1870). The Court need not go back and recalculate the numbers so that they both come from the same census: it is confident that, under reasoning conduct in *NYSRPA*, the resulting percentage of less than 15 would not suffice to be representative of the Nation.

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 325–26 (N.D.N.Y. 2022), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), and *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. Chiumento*, 2023 WL 8518003 (2d Cir. Dec. 8, 2023). The District Court's analysis and logic regarding the Appellee's likelihood of success is more consistent with *Bruen* than the Second Circuit's inconsistent decision in *Antonyuk* and therefore, a better indicator of the likelihood of Appellants' success in the appeal in the Tenth Circuit.

Finally, Appellants equate their likelihood of success to maintaining the initial status quo while the appeal proceeds, but this is far from accurate and while the Court may very well find that there is an interest in maintaining the initial status quo because there is substantial question about the correct application of *Bruen* it should not equate that question to likelihood of success as the Appellants invite here.

Rather, while some other District Courts cited by Defendants including the North District of Texas have stated that "*Bruen* left open a critical doctrinal question concerning the proper historical lens," and thus the dispute was "open to differing conclusions"); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022), the District Court and the Appellee do not agree that this question is as murky as those District Courts found it to be or certainly as open to obviously inconsistent interpretation as the Second Circuit has decided it is and thus, a stay is not warranted here.

    B.    **The Non-Merits Factors Do Not Support a Stay**

As an initial matter, it absolutely *can be* disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging what the Court has determined is likely unconstitutional action. Moreover, this Circuit has been clear on this point regarding the government's assessment of speculative harm to the public stating "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). And the recent Dissent of Justice Alito, joined by Justices Thomas and Gorsuch, is persuasive in this regard stating:

> the Government offers a series of hypothetical statements that a covered official *might* want to make in the future and that, it thinks, *might* be chilled. Application 36–38. But hypotheticals are just that—speculation that the Government "*may* suffer irreparable harm at some point in the

7

> future," not concrete proof. *White*, 458 U.S. at 1302, 103 S.Ct. 1 (emphasis added). And such speculation does not establish irreparable harm. *Nken*, 556 U.S. at 434, 129 S.Ct. 1749; see also *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n. 5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)

*Murthy v. Missouri*, 2023 WL 6935337, at *2 (U.S. Oct. 20, 2023). Here, Appellants offer that the irreparable harm of gun violence will occur if they are enjoined from enforcing the PHO. Yet, this speculation is betrayed by the invocation, again, of the City of Albuquerque's nearly identical attempt to regulate parks for more than the last 3 years. Assuming *arguendo*, that City of Albuquerque could enact its Administrative Orders without violating the provision of the New Mexico Constitution that prohibits municipal regulation of firearms (a point which is undeveloped before the District Court and undecided by the state district court in the pending matter), the City of Albuquerque has not been enjoined by the state district court enforcing its prohibition on the carry of firearms in public parks and that order has done nothing to curb gun violence in parks in over 3 years, such that the Appellants here felt compelled to enact a nearly identical prohibition. Assuming that repeating the same action will produce a different result is not just rank speculation, it is Einstein's definition of insanity.

As previously established before the District Court, Appellee intends to visit the parks at issue in the future and is prevented from doing so armed by the PHO. His loss of his constitutionally protected freedom is therefore real and present

constituting irreparable harm. That is not the question pending before the District Court because the District Court has already correctly applied Tenth Circuit precedent to find "[t]he Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases)."

Moreover, as to public interest the District Court has correctly applied this Circuit's holding in *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) that "[a]s to the fourth and final factor, 'it's always in the public interest to prevent the violation of a party's constitutional rights.' *Id.* at 806-07." MOO at 18.

## CONCLUSION

Because the Appellants have failed to satisfy all 4 of the factors for a stay of the preliminary injunction pending appeal this Court should deny the Motion.

Respectfully submitted this 12th day of February 2024.

> WESTERN AGRICULTURE, RESOURCE
> AND BUSINESS ADVOCATES, LLP
>
> */s/ A. Blair Dunn*
> A. Blair Dunn, Esq.
> 400 Gold Ave SW, Suite 1000
> Albuquerque, NM 87102
> (505) 750-3060
> abdunn@ablairdunn-esq.com
>
>
> Zach Cook, LLC
>
> */s/ Zach Cook*

9

Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

## CERTIFICATE OF SERVICE

I, A. Blair Dunn, hereby certify that on February 12, 2024, I served a copy of the foregoing upon parties of record as follows:

Holly Agajanian
Holly.agajanian@state.nm.us

Cody R. Rogers
crogers@serpeandrews.com,

Kyle P. Duffy
Kyle.duffy@state.nm.us

Janet Carter
jcarter@everytown.org

William J. Taylor, Jr.
wtaylor@everytown.org

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com