Nos. 23-2192, 23-2194

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————

JAMES SPRINGER,

*Plaintiff-Appellee/Cross-Appellant,*

v.

MICHELLE LUJAN GRISHAM, OFFICE OF THE GOVERNOR, PATRICK ALLEN, AND
NEW MEXICO DEPARTMENT OF HEALTH,

*Defendants-Appellants/Cross-Appellees.*

———————————

On Appeal from the United States District Court for the District of New Mexico
(No. 1:23-cv-00781-KWR-LF) (Hon. Kea W. Riggs)

———————————

**REPLY IN SUPPORT OF DEFENDANTS-APPELLANTS' MOTION TO
STAY PRELIMINARY INJUNCTION PENDING APPEAL**

———————————

Holly Agajanian
*Chief General Counsel to Gov. Lujan Grisham*
Kyle P. Duffy
*Deputy General Counsel to Gov. Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Cody Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

Janet Carter
William J. Taylor, Jr.
Everytown Law
450 Lexington Ave, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

   I.  The Parks Restriction Is Constitutional.......................................................2

   II. The Non-Merits Factors Favor a Stay........................................................9

CONCLUSION...................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
    585 U.S. 579 (2018) ............................................................................................. 9

*Antonyuk v. Bruen*,
    624 F. Supp. 3d 210 (N.D.N.Y. 2022) ................................................................. 6

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) ........................................................... 2, 5, 6, 7, 8

*Antonyuk v. Hochul*,
    635 F. Supp. 3d 111 (N.D.N.Y. 2022) ................................................................. 6

*Antonyuk v. Hochul*,
    639 F. Supp. 3d 232 (N.D.N.Y 2022) .................................................................. 6

*Antonyuk v. Hochul*,
    No. 22-2908, 2022 WL 18228317 (2d Cir. Dec. 7, 2022) .................................... 3

*Baca v. Dep't of Army*,
    983 F.3d 1131 (10th Cir. 2020) .......................................................................... 4

*Carralero v. Bonta*,
    No. 23-4354 (9th Cir. Jan. 6, 2024), Dkt. 12 ....................................................... 3

*Diné Citizens Against Ruining Our Env't v. Jewell*,
    839 F.3d 1276 (10th Cir. 2016) ...................................................................... 2, 4

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................................................................ 5

*Kipke v. Moore*,
    Nos. 1:23-cv-01293 & 1:23-cv-01295 (consol.), 2023 WL 6381503 (D. Md. Sept. 29, 2023) ............................................................................................................ 3

*Koons v. Att'y Gen. N.J.*,
    No. 23-1900 (3d Cir. June 20, 2023), Dkt. 29 ..................................................... 3

*Lafave v. Cnty. of Fairfax*,
    No. 1:23-cv-01605 (E.D. Va. Jan. 24, 2024), Dkt. 33 ......................................... 3

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................................ 5

*Md. Shall Issue, Inc. v. Montgomery Cnty.*,
    No. 8:21-cv-01736, 2023 WL 4373260 (D. Md. July 6, 2023), *appeal docketed*, No.
    23-1719 (4th Cir. July 10, 2023) ................................................................................3, 4

*Murthy v. Missouri*,
    144 S. Ct. 7 (2023) ............................................................................................................9

*New York State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ........................................................................................1, 4, 5, 7, 8

*United States v. Alaniz*,
    69 F.4th 1124 (9th Cir. 2023) ..........................................................................................4

*United States v. Thomas*,
    939 F.3d 1121 (10th Cir. 2019) ......................................................................................6

*We the Patriots, Inc. v. Lujan Grisham*,
    No. 1:23-cv-00773-DHU-LF, 2023 WL 6622042 (D.N.M. Oct. 11, 2023),
    *appeals docketed*, Nos. 23-2166, 23-2167, 23-2185 (10th Cir. Oct. 20, 2023) .........2

**Other Authorities**

Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment
    Adjudication*, 133 Yale L.J. 99 (2023) ...........................................................................6

Tamara Lopez, *Albuquerque Police Investigating Deadly Shooting at Pat Hurley Park*, KOB4
    Eyewitness News (Feb. 12, 2024), https://www.kob.com/new-mexico/
    albuquerque-police-investigating-deadly-shooting-at-pat-hurley-park/ ..............1

# INTRODUCTION

In response to epidemic—and rapidly rising—rates of gun violence in New Mexico, Governor Lujan Grisham and the New Mexico Department of Health prohibited individuals other than military and law enforcement from carrying firearms in some of the state's most vulnerable areas: Albuquerque and Bernalillo County parks and playgrounds. Contrary to the weight of authority following *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and the clear historical record, the District Court enjoined the prohibition on guns in parks (the "Parks Restriction") in the operative public health order ("PHO") and declined to stay that injunction pending appeal.

This Court should promptly correct that error and stay the preliminary injunction. New Mexico and its residents are irreparably harmed each day that the State is prevented from enforcing its lifesaving rule. In the weeks since the District Court enjoined the Parks Restriction, at least one person has been fatally shot in an Albuquerque park. Tamara Lopez, *Albuquerque Police Investigating Deadly Shooting at Pat Hurley Park*, KOB4 Eyewitness News (Feb. 12, 2024), https://www.kob.com/new-mexico/albuquerque-police-investigating-deadly-shooting-at-pat-hurley-park/. And the injunction is not supportable on the merits. The Parks Restriction is consistent with the Second Amendment because it is

rooted in a robust tradition of regulating firearms in public parks and is analogous to historical practices of regulating firearms in schools and public forums.

**ARGUMENT**

**I.     The Parks Restriction Is Constitutional**

Defendants are likely to succeed on appeal because Plaintiff has not established a likelihood of success on the merits of his Second Amendment claim at all—let alone the "clear and unequivocal" merits showing required to obtain the "extraordinary remedy" of a preliminary injunction.[1] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted). The Second Circuit and four district courts—including one in the same district as the court below, assessing the same Parks Restriction at issue in this appeal—have correctly rejected challenges to restrictions on guns in parks at the preliminary injunction stage. *See Antonyuk v. Chiumento*, 89 F.4th 271, 359-63 (2d Cir. 2023); *We the Patriots, Inc. v. Lujan Grisham*, No. 1:23-cv-00773-DHU-LF, 2023 WL 6622042, at *9 (D.N.M. Oct. 11, 2023), *appeals docketed*, Nos. 23-2166, 23-2167, 23-2185 (10th Cir. Oct. 20, 2023); *Md. Shall Issue, Inc. v. Montgomery Cnty.*, No. 8:21-cv-01736, 2023

---

[1] Even Plaintiff admits there is a "substantial question about the correct application of *Bruen*." Response in Opposition to Motion of Defendants-Appellants to Stay Preliminary Injunction Pending Appeal ("Pl. Opp.") at 6. This concession, alone, is fatal to Plaintiff's position because it recognizes that Plaintiff's entitlement to a preliminary injunction is not "clear and unequivocal." *See Diné Citizens*, 839 F.3d at 1281.

2

WL 4373260, at *11-12 (D. Md. July 6, 2023), *appeal docketed*, No. 23-1719 (4th Cir. July 10, 2023); *Kipke v. Moore*, Nos. 1:23-cv-01293 & 1:23-cv-01295 (consol.), 2023 WL 6381503, at *9-10 (D. Md. Sept. 29, 2023); *see also LaFave v. Cnty. of Fairfax*, No. 1:23-cv-01605 (E.D. Va. Jan. 24, 2024), Dkt. 33 (denying preliminary injunction without written opinion). Faced with the same issue this motion presents—a request to stay pending appeal a preliminary injunction of a prohibition on firearms in parks—both the Second and Third Circuits properly granted the stay. *See Antonyuk v. Hochul*, No. 22-2908, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022); *Koons v. Att'y Gen. N.J.*, No. 23-1900 (3d Cir. June 20, 2023), Dkt. 29.[2] Given the robust authority for concluding that parks are sensitive places in which the government may regulate firearms, this Court should do the same.

        Plaintiff's arguments against a stay are unavailing. *First*, Plaintiff appears to take the position that, in considering Defendants' motion, this Court must ignore all the additional historical laws Defendants presented with their stay motion below, *see* App. F-H, because, in his view, the copies of these historical laws are "exhibits of additional evidence" that should have been provided earlier. Pl. Opp. at 2; *see id.* at 2-3. But, as Defendants have explained, this is not so. *See* Motion of

---

        [2] On the appeal of a challenge to California's law restricting guns in state and local parks, the Ninth Circuit initially granted an administrative stay of the district court's preliminary injunction, then subsequently dissolved that stay and denied a stay pending appeal without any analysis, but did so "pending further order of the court." *Carralero v. Bonta*, No. 23-4354 (9th Cir. Jan. 6, 2024), Dkt. 12.

3

Defendants-Appellants to Stay Preliminary Injunction Pending Appeal ("Def. Mot.") at 14 n.16. Laws are not subject to the same constraints on the timing of their submission as purely factual evidence. *See, e.g.*, *Baca v. Dep't of Army*, 983 F.3d 1131, 1140 (10th Cir. 2020) (noting that a party on appeal may provide "new legal authority in support of" a claim advanced below). And that rule applies equally to the submission of historical laws supporting the constitutionality of a firearm restriction under the Second Amendment. *See, e.g.*, *United States v. Alaniz*, 69 F.4th 1124, 1129 n.1 (9th Cir. 2023) (rejecting challenger's argument in a Second Amendment case "that the government's analogues cannot be considered on appeal because they were not raised below"). Defendants have no answer to this settled authority.[3]

*Second*, as to the merits, Plaintiff asserts that the historical parks laws are almost all "unpersuasive" because those that appeared before 1866 were from one

---

[3] In any event, for the reasons set forth in Defendants' motion, a stay is warranted here whether this Court considers these additional historical laws or not. The fourteen city-park regulations and three state-park regulations that Defendants specifically referenced below in their opposition to Plaintiff's preliminary injunction motion, *see* Doc. 15 at 12-13, are enough by themselves to establish a "'tradition of regulation' of firearms in parks," *Md. Shall Issue*, 2023 WL 4373260, at *11 (quoting *Bruen*, 597 U.S. at 27), and at the very least negate any claim that Plaintiff has a "clear and unequivocal right" to the "extraordinary remedy" of a preliminary injunction against the Parks Restriction. *Diné Citizens*, 839 F.3d at 1281 (citation omitted); *see* Def. Mot. at 12-13 (discussing these laws); *see also id.* at 13 n.14, 18 n.19 (noting other historical laws Defendants presented in their opposition to the preliminary injunction motion).

4

state and those that appeared from 1868 to 1878 were from three additional states. *See* Pl. Opp. at 2-3. There are a host of errors underlying this assertion, as Defendants' stay motion already made clear. *See* Def. Mot. at 8-19 (explaining that the Second Amendment permits Defendants to prohibit guns in parks regardless of the time period that is the focus of the historical analysis). Defendants will reiterate just two of those errors here. First, as the Second Circuit correctly found, all of these laws are a continuation of a historical tradition stretching back to the founding and beyond, *see Antonyuk*, 89 F.4th at 355-59, so any suggestion that they came too late is mistaken. *See* Def. Mot. at 17. Second, Plaintiff's 1878 cutoff is arbitrary and inexplicable. Consideration of sources from "the period *after* [an Amendment's] enactment or ratification" is "a critical tool of constitutional interpretation." *Bruen*, 597 U.S. at 20 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008)) (emphasis added); *see Antonyuk*, 89 F.4th at 354-55 & 354 n.69 (giving significant weight to six parks ordinances from the 1880s and 1890s); Def. Mot. at 7-8. This is particularly so where the challenged restriction implicates changed societal conditions, like the advent of public parks in the mid- to late-nineteenth century. *See* Def. Mot. at 7-8, 11-12. It would be nonsensical to require Defendants to offer evidence of states and localities regulating firearms in a particular location before that location existed. *See, e.g.*, *McCullen v. Coakley*, 573 U.S. 464, 481 (2014) ("States adopt laws to address problems that confront them.");

5

*Antonyuk*, 89 F.4th at 359 n.78 (noting that "the relative novelty of public parks as institutions also justifies a flexible approach under *Bruen*").

*Third*, Plaintiff suggests that this Court is likely to find the decision of its sister circuit in *Antonyuk*, 89 F.4th 271, less authoritative than the district court decision that the Second Circuit largely (and, with respect to parks, wholly) vacated in that case. *See* Pl. Opp. at 5-6. That is baseless. To begin with, a Second Circuit decision is far more persuasive than an out-of-circuit district court, particularly given this Court's caution against creating circuit splits. *See, e.g.*, *United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) (surveying reasons to avoid splits and concluding that "[w]e should not create a circuit split merely because we think the contrary arguments are marginally better"). Moreover, any suggestion that this particular district court opinion might be persuasive is undercut by the fact that the court could not even agree with itself: over the course of ten weeks, it issued three decisions and took a different approach in each, both as to methodology and many of its conclusions. *Compare Antonyuk v. Bruen*, 624 F. Supp. 3d 210 (N.D.N.Y. 2022), *with Antonyuk v. Hochul*, 635 F. Supp. 3d 111 (N.D.N.Y. 2022), *and Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y 2022); *see also* Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication*, 133 Yale L.J. 99, 139-40 (2023) (tracing "shifting methodologies" across the three *Antonyuk* district court opinions); *id.* at 140-41 (surveying "confusion" in district court's resulting

conclusions—including, for example, that "[b]ans on guns in places of worship were unconstitutional in [its first opinion], constitutional in [its second], and unconstitutional again in [its third]" and "[b]ans on guns in children's summer camps were unconstitutional in [its first and second opinions], but constitutional in [its third]").[4]

*Fourth*, Plaintiff argues that the Second Circuit's analysis is inconsistent with *Bruen*'s instruction that New York cannot "effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the [police]." Pl. Opp. at 5 (quoting *Bruen*, 597 U.S. at 31). But that is not what *Antonyuk* did. Rather, it recognized a centuries-long, tradition of "regulating firearms in quintessentially crowded areas and public forums," such as "fairs and markets," *Antonyuk*, 89 F.4th at 355-56, and held that a prohibition on guns in urban parks sat comfortably within this tradition: "As urban public parks took root as a new type of public forum [in the late nineteenth century], cities continued the tradition of regulating firearms in historical public forums, such as fairs and markets, to likewise keep these new public spaces, urban parks, peaceable." *Id.* at

---

[4] Plaintiff also suggests that this Court should deem the *Antonyuk* decision "unpersuasive" simply because "it was the Second Circuit that was reversed … in *Bruen*." Pl. Opp. at 4. The notion that this Court should disregard all Second Circuit decisions on Second Amendment issues, no matter how well-reasoned, because a decision applying different controlling law was reversed is self-evidently mistaken.

7

359. In other words, the Second Circuit accepted that this tradition justified prohibiting guns in Central Park and other urban parks—not that it justified a blanket prohibition throughout all of Manhattan.

*Fifth*, Plaintiff quibbles with the Second Circuit's view that the relevant comparison when assessing the representativeness of urban parks restrictions is urban populations, not the entire national population. *See* Pl. Opp. at 4-5.[5] But that is simply a matter of common sense: if a court were assessing states' regulatory approach to activity on underground public transit systems, it would not make sense to assign significance to the absence of regulations in Wyoming or Hawai'i. The more important aspect of *Antonyuk*'s analysis regarding a population-based approach is its common-sense conclusion that "[d]isqualifying proffered analogues based only on strict quantitative measures such as population size absent any other indication of historical deviation would turn *Bruen* into the very 'regulatory straightjacket' the Court warned against." *Antonyuk*, 89 F.4th at 339 (quoting *Bruen*, 597 U.S. at 30).

In short, nothing in Plaintiff's opposition casts doubt on the robust historical record of firearms regulation in parks and analogous places. And it is clear from the

---

[5] Plaintiff disregards the fact that *Antonyuk* was considering a far smaller group of historical restrictions specific to parks—just the eight city ordinances New York had presented, *see* 89 F.4th at 359—than Defendants have presented here. *See* Def. Mot. at 12-14; *supra* p. 4 and note 3.

weight of authority in Defendants' favor that the better course is to stay the preliminary injunction and maintain the status quo while the appeal proceeds.

## II. The Non-Merits Factors Favor a Stay

As Defendants explained in their motion, the non-merits factors also strongly support a stay here. *See* Def. Mot. at 19-21. Plaintiff's arguments in response do nothing to change that. He asserts that "it absolutely *can* be disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging [in] what the [District] Court has determined is likely unconstitutional action." Pl. Opp. at 7. That misses the mark: it assumes the Parks Restriction is unconstitutional, whereas Defendants' point is that they and the State of New Mexico indisputably will have suffered irreparable injury if the PHO is ultimately upheld, and in the meantime they have been unable to enforce its restrictions. *See* Def. Mot. at 19-20; *see also, e.g.*, *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the state."). This is not mere "speculation," as Plaintiff contends, *see* Pl. Opp. at 7-8—especially considering the current state of the record and caselaw.[6] *See* Def. Mot. at 1-19; *supra* Section I. Nor does the harm that would be visited on the public at large should Defendants be

---

[6] Plaintiff's citation to the dissent from a grant of an application of stay pending appeal in *Murthy v. Missouri*, 144 S. Ct. 7, 9 (2023), does not affect the proper analysis in this case. First, a dissent is obviously not controlling. Second, unlike here, the purported irreparable harm in that case did not involve the government's inability to enforce its laws.

9

prevented from enforcing the Parks Restriction amount to "rank speculation," Pl. Opp. at 8, especially when Defendants have provided examples of shootings in Albuquerque parks, *see supra* p. 1; Def. Mot. at 1 & App. A at 2, as well as literature demonstrating the chilling effect of guns on the public's use and enjoyment of parks.[7] *See* Def. Mot. at 20 & nn. 22 & 23.

On the other hand, it remains unclear at best that Plaintiff will suffer irreparable harm if this Court stays the preliminary injunction. As previously noted, there is no evidence in the record suggesting that Plaintiff (who lives in a different county) will visit an Albuquerque or Bernalillo County park in the near future. *See* Def. Mot. at 21. And even if there were, Plaintiff fails to show how his temporary inability to carry a firearm while he occasionally visits Albuquerque-area parks would actually increase the likelihood of Plaintiff or his family being injured in a shooting. *See id.* at 20-21. Accordingly, the non-merits factors weigh in favor of staying the preliminary injunction.

---

[7] Plaintiff puzzlingly devotes much of the non-merits section of his opposition to criticizing Defendants for their purported "invocation, again, of the City of Albuquerque's nearly identical attempt to regulate parks." Pl. Opp. at 8. Defendants did not invoke City of Albuquerque restrictions in their stay motion.

10

# CONCLUSION

The Court should stay the District Court's preliminary injunction pending appeal.

February 20, 2024                   Respectfully submitted,

/s/ Janet Carter
Janet Carter
William J. Taylor, Jr.
Everytown Law
450 Lexington Ave, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

Holly Agajanian
*Chief General Counsel to Gov. Lujan Grisham*
Kyle P. Duffy
*Deputy General Counsel to Gov. Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Cody Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,566 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface (fourteen-point Baskerville font) using Microsoft Word.

Respectfully submitted,

/s/ Janet Carter
Janet Carter

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2024, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

                                      Respectfully submitted,

                                      /s/ Janet Carter
                                      Janet Carter