# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

JAMES SPRINGER,

*Plaintiff-Appellee/Cross-Appellant,*

v.

MICHELLE LUJAN GRISHAM, OFFICE OF THE GOVERNOR, PATRICK ALLEN, AND NEW MEXICO DEPARTMENT OF HEALTH,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court for the District of New Mexico
(No. 1:23-cv-00781-KWR-LF) (Hon. Kea W. Riggs)

## DEFENDANTS-APPELLANTS' APPENDIX

### ORAL ARGUMENT REQUESTED

Holly Agajanian
*Chief General Counsel to Gov. Lujan Grisham*
Kyle P. Duffy
*Deputy General Counsel to Gov. Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, NM 87501

Cody Rogers
Serpe Andrews
2540 El Paseo Road, Suite D
Las Cruces, NM 88001

Janet Carter
William J. Taylor, Jr.
Carina Bentata Gryting
Everytown Law
450 Lexington Ave, P.O. Box 4184
New York, NY 10163
(646) 324-8174
jcarter@everytown.org

Freya Jamison
Everytown Law
P.O. Box 14780
Washington, DC 20044

# TABLE OF CONTENTS

District Court Docket Sheet, *Springer v. Lujan Grisham*, Case No. 1:23-cv-00781-KWR-LF (D.N.M.) ……….………………...….. App. 1

Document 1, Complaint (Sept. 12, 2023) ……….…….….……...….. App. 7

Document 1-1, Public Health Order (Sept. 12, 2023) …..……..…............ App. 25

Document 1-2, Executive Order 2023-130 (Sept. 12, 2023) ……..…..…. App. 28

Document 7, Order Granting Motion for Recusal (Oct. 2, 2023) …..…….. App. 31

Document 9, Order Regarding Request for Ex Parte Temporary Restraining Order (Oct. 16, 2023) ………………….…...……...…. App. 35

Document 10, Plaintiff's Renewed Motion for a Preliminary Injunction (Oct. 26, 2023) ……………………….…………...…. App. 41

Document 10-1, Second Amended Public Health Order (Oct. 26, 2023) ……………………….….……......…...…. App. 51

Document 10-2, Declaration of James Springer (Oct. 26, 2023) ………..…. App. 55

Document 15, Defendants' Response to Plaintiff's Renewed Motion for Preliminary Injunction (Nov. 9, 2023) ……..……...................…. App. 56

Document 16, Plaintiff's Reply in Support of Renewed Motion for Preliminary Injunction (Nov. 13, 2023) ……...………...................…. App. 76

Document 19, Memorandum Opinion and Order on Plaintiff's Renewed Motion for a Preliminary Injunction (Dec. 5, 2023) ...……..…..…. App. 85

Document 20, Defendants' Notice of Appeal (Dec. 8, 2023) …………...…. App. 105

Document 21, Defendants' Emergency Motion for Stay Pending Appeal and Clarification (Dec. 8, 2023) …………...……….....…. App. 107

Document 22, Order Temporarily Staying Preliminary Injunction
        Pending Briefing on Motion (Dec. 11, 2023) …………………....…… App. 124

Document 25, Plaintiff's Notice of Cross-Appeal (Dec. 12, 2023) …..........… App. 126

Document 26, Plaintiff's Response in Opposition to Emergency Motion
        for Stay Pending Appeal and Clarification (Dec. 12, 2023) ……....…… App. 128

Document 27, Defendants' Answer and Affirmative Defenses
        (Dec. 13, 2023) …………………………………………………………....…… App. 138

Document 32, Defendants' Reply in Support of Emergency Motion for
        Stay Pending Appeal and Clarification (Dec. 26, 2023) ………....…… App. 146

Document 37, Order Denying Request to Reconsider or Stay
        Preliminary Injunction (Jan. 22, 2024) ……....................................…… App. 158

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL

# U.S. District Court
## United States District Court - District of New Mexico (Albuquerque)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00781-KWR-LF

| | |
|---|---|
| Springer v. Lujan Grisham et al | Date Filed: 09/12/2023 |
| Assigned to: District Judge Kea W. Riggs | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Laura Fashing | Nature of Suit: 440 Civil Rights: Other |
| Case in other court:  Tenth Circuit, 23-02192 | Jurisdiction: Federal Question |
|                                Tenth Circuit, 23-02194 | |
| Cause: 28:1331 Federal Question: Other Civil Rights | |

**Plaintiff**

**James Springer**                    represented by    **Jared Robert Vander Dussen**
Western Agriculture, Resource and Business
Advocates, LLP
New Mexico
400 Gold Ave SW
Ste 1000
Albuquerque, NM 87102
505-750-3060
Fax: 505-226-8500
Email: warba.llp.jared@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary J Cook**
1703 Sudderth # 425
Suite 5
Ruidoso, NM 88345
575-937-7644
Fax: 575-993-5362
Email: zach@zachcook.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A. Blair Dunn**
Western Agriculture, Resource and Business
Advocates, LLP
400 Gold SW Ave
Suite 1000
Albuquerque, NM 87102
505-750-3060
Fax: 505-226-8500
Email: abdunn@ablairdunn-esq.com
*ATTORNEY TO BE NOTICED*

**App. 1**

V.

**Defendant**

**Michelle Lujan Grisham**                    represented by **Holly Agajanian**
                                                             Office of the Governor
                                                             490 Old Santa Fe Trail
                                                             Ste. 400
                                                             Santa Fe, NM 87501
                                                             505-476-2210
                                                             Email: holly.agajanian@exec.nm.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Cody R. Rogers**
                                                             Serpe Andrews, PLLC
                                                             2540 El Paseo Rd, Suite D
                                                             Las Cruces, NM 88001
                                                             575-288-1453
                                                             Email: crogers@serpeandrews.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Kyle P Duffy**
                                                             Office of the Governor
                                                             490 Old Santa Fe
                                                             Ste. 400
                                                             Santa Fe, NM 87501
                                                             505-476-2210
                                                             Email: kyle.duffy@state.nm.us
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Office of the Governor**
*New Mexico*

**Defendant**

**Patrick Allen**                             represented by **Holly Agajanian**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Cody R. Rogers**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Kyle P Duffy**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**New Mexico Department of Health**           represented by **Holly Agajanian**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**App. 2**

**Cody R. Rogers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyle P Duffy**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/12/2023 | 1 | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF *FOR CIVIL RIGHTS VIOLATIONS* against All Defendants ( Filing Fee - Online Payment), filed by James Springer. (Attachments: # 1 Exhibit 1 - PHO, # 2 Exhibit 2 - Exec Order, # 3 Exhibit Declaration of James Springer, # 4 Civil Cover Sheet Civil Cover Sheet, # 5 Exhibit TRO Info Sheet)(Dunn, A.) Modified on 9/12/2023 (bc). (Entered: 09/12/2023) |
| 09/12/2023 | | Filing and Administrative Fees Received: $ 402 receipt number ANMDC-9001628 re 1 Complaint, filed by James Springer (Payment made via Pay.gov)(Dunn, A.) (Entered: 09/12/2023) |
| 09/12/2023 | | United States District Judge David H. Urias and United States Magistrate Judge Laura Fashing assigned. (bc) (Entered: 09/12/2023) |
| 09/12/2023 | 2 | NOTICE of Hearing on Emergency Request for Temporary Restraining Order<br><br>Hearing set for 9/13/2023 at 01:00 PM in Albuquerque - 420 Mimbres Courtroom before District Judge David H. Urias.<br>(jmg)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 09/12/2023) |
| 09/12/2023 | 3 | Emergency MOTION for Recusal by James Springer. (Attachments: # 1 Exhibit Declaration of A. Blair Dunn) (Dunn, A.) (Entered: 09/12/2023) |
| 09/13/2023 | 4 | MINUTE ORDER<br><br>**VACATING** Emergency Request for Temporary Restraining Order set for 9/13/2023.<br><br>THIS IS A TEXT ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.<br>(jmg) (Entered: 09/13/2023) |
| 09/14/2023 | | Summons Issued as to Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (bc) (Entered: 09/14/2023) |
| 09/25/2023 | 5 | CERTIFICATE OF SERVICE by James Springer *Of Complaint and Summons Upon Counsel for Defendants* (Dunn, A.) (Entered: 09/25/2023) |
| 09/28/2023 | 6 | AFFIDAVIT re 3 Emergency MOTION for Recusal *of Plaintiff James Springer* by James Springer (Dunn, A.) (Entered: 09/28/2023) |
| 10/02/2023 | 7 | ORDER by District Judge David H. Urias GRANTING 3 Motion for Recusal. (cmm) (Entered: 10/02/2023) |
| 10/02/2023 | 8 | PLEASE TAKE NOTICE that this case has been randomly reassigned to United States District Judge Kea W. Riggs as the trial judge. |

**App. 3**

|  |  | Under D.N.M.LR-Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges.<br><br>***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.*** **Kindly reflect this change in your filings.**<br><br>District Judge David H. Urias no longer assigned to this case.<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bc) (Entered: 10/02/2023) |
|---|---|---|
| 10/16/2023 | 9 | ORDER by District Judge Kea W. Riggs DENYING WITHOUT PREJUDICE AS MOOT Plaintiff's request for an ex parte temporary restraining order as to the Original Public Health Order issued September 8, 2023. (cmm) (Entered: 10/16/2023) |
| 10/26/2023 | 10 | Second MOTION for Preliminary Injunction by James Springer. (Attachments: # 1 Exhibit 1 - SAPHO, # 2 Exhibit 2 - Springer Declaration) (Dunn, A.) Modified on 10/27/2023 - untermed motion (cmm). (Entered: 10/26/2023) |
| 10/26/2023 | 11 | ORDER DIRECTING SERVICE AND SETTING BRIEFING SCHEDULE by District Judge Kea W. Riggs re 10 Motion for Preliminary Injunction. (cmm) Modified text on 10/27/2023 change ruling language (gr). (Entered: 10/26/2023) |
| 10/26/2023 | 12 | CERTIFICATE OF SERVICE by James Springer re 11 Order on Motion for Preliminary Injunction (Dunn, A.) (Entered: 10/26/2023) |
| 11/03/2023 | 13 | NOTICE by James Springer re 10 Second MOTION for Preliminary Injunction *of Supplemental Information* (Attachments: # 1 Exhibit 1 - Guv Press Release Extending PHA) (Dunn, A.) (Entered: 11/03/2023) |
| 11/09/2023 | 14 | NOTICE of Appearance by Cody R. Rogers on behalf of All Defendants (Rogers, Cody) (Entered: 11/09/2023) |
| 11/09/2023 | 15 | RESPONSE to Motion re 10 Second MOTION for Preliminary Injunction filed by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health. (Rogers, Cody) (Entered: 11/09/2023) |
| 11/13/2023 | 16 | REPLY to Response to Motion re 10 Second MOTION for Preliminary Injunction filed by James Springer. (Attachments: # 1 Exhibit 1 - City Adminstrative Order, # 2 Exhibit 2 - Amended City Adminstrative Order) (Dunn, A.) (Entered: 11/13/2023) |
| 11/13/2023 | 17 | NOTICE of Briefing Complete by James Springer re 10 Second MOTION for Preliminary Injunction filed by James Springer (Dunn, A.) (Entered: 11/13/2023) |
| 12/04/2023 | 18 | NOTICE by James Springer re 10 Second MOTION for Preliminary Injunction *of Supplemental Information* (Attachments: # 1 Exhibit 1) (Dunn, A.) (Entered: 12/04/2023) |
| 12/05/2023 | 19 | MEMORANDUM OPINION AND ORDER by District Judge Kea W. Riggs GRANTING IN PART AND DENYING IN PART 10 Second MOTION for Preliminary Injunction . (cmm) (Entered: 12/05/2023) |
| 12/08/2023 | 20 | NOTICE OF APPEAL as to 19 Memorandum Opinion and Order by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (Filing Fee - Deliver Payment) (Agajanian, Holly) (Entered: 12/08/2023) |
| 12/08/2023 | 21 | MOTION to Stay re 19 Memorandum Opinion and Order by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (Attachments: # 1 Exhibit A, # 2 Exhibit A-1, # 3 Exhibit B, # 4 Exhibit C) (Agajanian, Holly) (Entered: 12/08/2023) |

**App. 4**

| 12/11/2023 | 22 | ORDER TEMPORARILY STAYING PRELIMINARY INJUNCTION PENDING BRIEFING ON MOTION by District Judge Kea W. Riggs granting 21 Motion to Stay (cab) (Entered: 12/11/2023) |
| --- | --- | --- |
| 12/11/2023 | 23 | Transmission of Preliminary Record to US Court of Appeals re 20 Notice of Appeal. (Attachments: # 1 Preliminary Record on Appeal) (gr) (Entered: 12/11/2023) |
| 12/11/2023 | 24 | USCA Information Letter with Case Number 23-2192 for 20 Notice of Appeal filed by Office of the Governor, Michelle Lujan Grisham, New Mexico Department of Health, Patrick Allen. (cmm) (Entered: 12/11/2023) |
| 12/11/2023 | | Filing Fee Received: $ 605 receipt number ANMDC-9128845 re 20 Notice of Appeal filed by Office of the Governor, Michelle Lujan Grisham, New Mexico Department of Health, Patrick Allen (Payment made via Pay.gov)(Rogers, Cody) (Entered: 12/11/2023) |
| 12/12/2023 | 25 | NOTICE OF CROSS APPEAL as to 19 Memorandum Opinion and Order by James Springer. (Filing Fee - Online Payment) (Dunn, A.) Tenth Circuit, 23-02194. (Entered: 12/12/2023) |
| 12/12/2023 | | Filing Fee Received: $ 605 receipt number ANMDC-9129960 re 25 Notice of Cross Appeal filed by James Springer (Payment made via Pay.gov)(Dunn, A.) (Entered: 12/12/2023) |
| 12/12/2023 | 26 | RESPONSE in Opposition re 21 MOTION to Stay re 19 Memorandum Opinion and Order filed by James Springer. (Dunn, A.) (Entered: 12/12/2023) |
| 12/13/2023 | 27 | *Defendants'* ANSWER to 1 Complaint, *and Affirmative Defenses* by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. Related document: 1 Complaint, filed by James Springer.(Rogers, Cody) (Entered: 12/13/2023) |
| 12/13/2023 | 28 | TRANSCRIPT ORDER FORM NOT NECESSARY by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor for the 20 Notice of Appeal (Rogers, Cody) Modified on 12/13/2023 (cmm). (Entered: 12/13/2023) |
| 12/13/2023 | | MINUTE ORDER OF USCA-Notice due that record is complete by 12/20/2023 for Mitchell R. Elfers, Clerk of Court as to 20 Notice of Appeal filed by Office of the Governor, Michelle Lujan Grisham, New Mexico Department of Health, Patrick Allen. (cmm) (Entered: 12/13/2023) |
| 12/14/2023 | 29 | NOTICE TO USCA that Record is Complete re 20 Notice of Appeal. (cmm) (Entered: 12/14/2023) |
| 12/15/2023 | 30 | Transmission of Preliminary Record to US Court of Appeals re 25 Notice of Cross Appeal. (Attachments: # 1 Exhibit Preliminary Record) (cmm) (Entered: 12/15/2023) |
| 12/15/2023 | 31 | USCA Information Letter with Case Number 23-2194 for 25 Notice of Cross Appeal filed by James Springer. (cmm) (Entered: 12/15/2023) |
| 12/26/2023 | 32 | REPLY to Response to Motion re 21 MOTION to Stay re 19 Memorandum Opinion and Order filed by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor. (Agajanian, Holly) (Entered: 12/26/2023) |
| 12/26/2023 | 33 | NOTICE of Briefing Complete by Patrick Allen, Michelle Lujan Grisham, New Mexico Department of Health, Office of the Governor re 21 MOTION to Stay re 19 Memorandum Opinion and Order filed by Office of the Governor, Michelle Lujan Grisham, New Mexico Department of Health, Patrick Allen (Agajanian, Holly) (Entered: 12/26/2023) |
| 01/04/2024 | 34 | TRANSCRIPT ORDER FORM by James Springer for the 25 Notice of Cross Appeal: A |

**App. 5**

| | | transcript is NOT necessary for this appeal. (cmm) (Entered: 01/04/2024) |
|---|---|---|
| 01/04/2024 | 35 | Minute order filed - Notice due that record is complete by 01/11/2024 for Mitchell R. Elfers, Clerk of Court (oclk). (Text Only - No Attachment) [23-2194] re <u>25</u> Notice of Cross Appeal. (cmm) (Entered: 01/04/2024) |
| 01/04/2024 | <u>36</u> | NOTICE TO USCA that Record is Complete re <u>25</u> Notice of Cross Appeal. (cmm) (Entered: 01/04/2024) |
| 01/22/2024 | <u>37</u> | ORDER by District Judge Kea W. Riggs DENYING <u>21</u> MOTION to Stay re <u>19</u> Memorandum Opinion and Order filed by Office of the Governor, Michelle Lujan Grisham, New Mexico Department of Health, Patrick Allen. (cmm) (Entered: 01/22/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/26/2024 13:36:01 | | |
| **PACER Login:** | ▮▮▮▮ | **Client Code:** x |
| **Description:** | Docket Report | **Search Criteria:** 1:23-cv-00781-KWR-LF |
| **Billable Pages:** | 5 | **Cost:** 0.50 |

**App. 6**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

       **Plaintiff,**

**v.**

                          **Civil Action No.**

**MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,**

       **Defendants.**

**COMPLAINT[1] FOR DECLARATORY AND INJUNCTIVE RELIEF FOR
CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C.A. §1983; VIOLATIONS
OF RIGHTS PROTECTED BY THE NEW MEXICO CIVIL RIGHTS ACT;
EMERGENCY REQUEST FOR A TEMPORARY RESTRAINING ORDER;
REQUST FOR PRELIMINARY INJUNCTION, PERMANANT INJUNCTIVE
RELIEF AND DAMAGES**

    COMES NOW Plaintiffs hereby respectfully move this Honorable Court for a temporary restraining order, preliminary injunction, and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65, and for declaratory relief against the individually named Defendants acting in their individual capacities under the color of law, and for damages against the Seventh Judicial District Court pursuant to the New Mexico Civil Rights Act, and states as follows in support thereof.

**INTRODUCTION**

    Thomas Paine in <u>American Crisis</u> stated that: "tyranny, like hell, is not easily conquered, yet, we have this consolation with us, that the harder the conflict, the more glorious the triumph." Yet the tyranny proposed by the Governor her is that her supposed end of

---

[1] The Complaint and Motion are verified by the Declaration of James Springer attached hereto.

1

combating gun is based of a false belief that disarming law abiding citizens will cause individuals engaged in criminal activity to forego the use of firearms in criminal activities. Unfortunately, this belief is so widespread that many persons have erroneously held that things are 'just' because law makes them so."  Frédéric Bastiat, *The Law*, The Foundation for Economic Education, Inc., Irvington-on-Hudson, New York 10533. Here, it is clear that Governor Lujan Grisham has knowingly (she is herself an attorney and is familiar with the United States Supreme Court Decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022)) acted in contravention of the United States Constitution and the New Mexico Constitution in contravention of the clear prohibition of 18 USCA §242.

## PARTIES AND JURISDICTION

1.      Plaintiff James Springer is currently a resident of Torrance County, New Mexico. Plaintiff is reporter who acts as member of the press to inform citizens on the happenings of their government.

2.      Defendant Office of the Governor is as public body as defined in NMSA 1978, §41-4A-2 who is sued for damages and injunctive relief against its employees from taking further actions that interfere with Plaintiff's rights protected by the New Mexico Bill of Rights.

3.      Defendant Michelle Lujan Grisham is the Governor of New Mexico who is sued pursuant 42 U.S.C.A. §1983 for declaratory and injunctive relief under for actions taken individually under the color of law.

4.      Defendant Patrick Allen is the Secretary of the New Mexico Department of Health who is sued for declaratory and injunctive relief for actions taken individually under the color of law.

**App. 8**

5.      Defendant Office of the Governor is as public body as defined in NMSA 1978, §41-4A-2 who is sued for damages and injunctive relief against its employees from taking further actions that interfere with Plaintiff's rights protected by the New Mexico Bill of Rights.

6.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because, Plaintiffs allege a current and imminent continuing violation of their rights under the laws and Constitution of the United States. Additionally, the Court in its discretion may exercise pendant jurisdiction to address claims arising under the state law of New Mexico, specifically NMSA § 41-4A-1 *et. seq.*

7.      The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because this action presents an actual controversy within the Court's jurisdiction.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants are residents of and/or perform their official duties in this district. In addition, all of the events giving rise to the claims in this Complaint arose in this district.

## GENERAL ALLIGATIONS

8.      Plaintiff is an independent investigative journalist who produces content intended to expose to the general public cases of government fraud, waste, and abuse.

9.      On September 12, 2023, Plaintiff engaged in expressive conduct by openly carry his firearm on a traditional public forum in Albuquerque New Mexico in support of the Second Amendment to the United States Constitution.

10.     Plaintiff displays the content described in Paragraphs 8 on 9 above on a YouTube channel he operates called James Freeman.

**App. 9**

11.     Approximately 444,000 people around the world subscribe to and enjoy Plaintiff's YouTube channel called James Freeman.

12.     The content Plaintiff posts on his YouTube channel and on other social media platforms often receives tens of thousands of views and frequently sparks robust debate about matters of public interest related to constitutional rights, the workings of government and other related matters.

13.     On September 12, 2023, while engaged in protest and exercising his right to bear arms protected by the US and NM Constitutions, Plaintiff became engaged in an encounter with New Mexico State Police officers who directed him that his conduct was in violation of the Governor's public health order and would result in a civil citation for  him at some undesignated time in the future for his exercise of speech and bearing arms.

14.     This citation that was threatened for lawful bearing of arms and speech to be issued pursuant to Public Health Order entitled "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" signed by Patrick M. Allen in his official capacity as the Secretary of the New Mexico Department of Health on September 8, 2023 (hereinafter "PHO," attached here as Exhibit 1).

15.     Paragraph (1) (A) to (E) on pages 1 to 2 of the PHO state:

No person, other than a law enforcement officer or licensed security officer, shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either open carry or concealed, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to New Mexico Department of Public Health, except:

A.     On private property owned or immediately controlled by the person;
B.     On private property that is not open to the public with the express permission of the person who owns or immediately controls such property;

C.      While on the premises of a licensed firearms gunsmith for the purpose of lawful transfer or repair of a firearm;

D.      In the event that Plaintiff is to appear at the location described above in Paragraph 13, the Administrative Order attached hereto as Exhibit "1" requires that Plaintiff is escorted by and accompanied by the Torrance County Sheriff's Office while in the building.

E.      While engaged in the legal use of a firearm at a properly licensed firing range or sport shooting competition venue; or

F.      While traveling to or from a location listed in Paragraphs (1)through (4) of this section; provided that the firearm is in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock.

16.      Aside from the four locations listed on pages 1-2 and paragraphs (1)(A) to (1)(D) of the PHO, ordinary, law-abiding citizens are prohibited from bearing arms for self-defense in otherwise non-sensitive public places by the PHO and the Executive Order 2023-130 (attached here as Exhibit 2).

17.      At all times related to this complaint, Patrick M. Allen was employed by the New Mexico Department of Health, and was acting on behalf of, under color of or within the course and scope of the authority of the New Mexico Department of Health.

18.      On September 7, 2023, Michelle Lujan Grisham, in her individual capacity and also in her official capacity as the Governor of New Mexico, made the PHO possible by signing Executive Order 2023-130; an Executive Order declaring a public health emergency due, in part, to criminal gun violence and directed the Secretary of the New Mexico Department of Health, Patrick M. Allen, to collaborate with the Governor's Office to provide "an effective and coordinated response to this public health emergency." *See* Executive Order 2023-130, p. 2, ¶ 1.

19.      In addition, Michelle Lujan Grisham, in her individual capacity and in her official capacity as the Governor of New Mexico, ordered and directed that all "political subdivisions of the State shall comply with and enforce all directives issued pursuant to this Order." *See* Executive Order 2023-130, p. 3, ¶ 4.

20.    On September 7, 2023, Executive Order 2023-130 went into effect "immediately" and is to remain in effect "until October 6, 2023." *See* Executive Order 2023-130, p. 3, ¶1.

21.    At all relevant times related to this verified complaint, Michelle Lujan Grisham was the current occupant of the Office of the Governor for the State of New Mexico, and acting on behalf of, under color of or within the course and scope of the authority of the Office of the Governor of New Mexico.

22.    While the goal of enhancing public health is laudable, the methodology employed by the orders at the heart of this case and signed by New Mexico's highest State officials violate the clearly established constitutional rights of individuals, like James Springer, who live and work in locations effected by these orders, such as Albuquerque, New Mexico.

23.    These orders effectively eviscerate the rights of citizens who desire to lawfully exercise their Second Amendment right to bear firearms for self-defense outside of their homes without fear of reprisal or punishment by government officials who want to curtail those same constitutional rights including freedom of speech based upon the content of the speech.

24.    The PHO has led to the punishment and reprisal for James Springer as an otherwise law-abiding citizen member of the press and other similarly situated individuals because it clearly states that any "person or entity who willfully violates this Order may be subject to civil administrative penalties available at law." See PHO, p. 3, ¶ 4.

25.    In fact, the Executive Order 2023-130 that Michelle Lujan Grisham signed orders and directs that all "political subdivisions of the State shall comply with and enforce all directives issued pursuant to this Order." See Executive Order 2023-130, p. 3, ¶ 4.

26.    These orders eviscerate the right to carry firearms for self-defense by demanding that any weapon being transported to or from one of the four enumerated places where one can

possess a functioning firearm, see PHO, pp.1-2, ¶ (1)(A)-(D), be transported "in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock," *see* PHO, p. 2, ¶ (1)(E).

27.    These restrictions create an unconstitutional burden on any individual, like Plaintiff James Spring or any other similarly situated individual, who desires to use a firearm to protect themselves from any form of violence or criminal activity while travelling to or from one of the four enumerated locations in the PHO, the only four places where it is permissible hold and fire a functioning firearm withing the prohibited locations outlined in the PHO.

28.    Obviously, having a firearm in a locked box in one's car does not adequately allow one to swiftly exercise one's right to self-defense the way having a loaded firearm on your person provides when an exigent situation demands a rapid defensive use of force.

29.    These orders also unconstitutionally limit the rights of individuals to carry firearms in public places that are not one of the four enumerated locations in the PHO, but yet are not sensitive public places where firearm possession can be lawfully curtailed.

30.    For instance, just last summer the United States Supreme Court clearly and unambiguously held "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

31.    In arriving at this holding, the highest court in our country explicitly stated the "constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id*. 142 S. Ct. at 2156 (*citing McDonald v. Chicago*, 561 U.S. 742, 780 (2010)).

**App. 13**

32.     The Supreme Court also held that governments could not declare entire cities (or counties for that matter) to be "sensitive places" where "the government may lawfully disarm law-abiding citizens." *Id*., 142 S. Ct. at 2133.

33.     In fact, our highest court declared that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Id*., 142 S. Ct. at 2134.

34.     The Supreme Court held that there "is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id*., 142 S. Ct. at 2134.

35.     Yet that is precisely what Michelle Lujan Grisham and Patrick M. Allen have attempted to do and have done with Executive Order 2023-130 and the September 8, 2023 PHO: declare large swaths of public areas like the City of Albuquerque and other cities and counties in New Mexico to be areas where law abiding citizens are disarmed despite having violated no other law.

36.     Such governmental action is prohibited in our Republic.

37.     Under our constitutional structure, the right of individuals, like James Springer, to "wear, bear, or carry upon the person or in the clothing or in a pocket, for purposes of being armed and ready for offensive or defensive action in case of a conflict with another person" is a right guaranteed under the Second Amendment. *Id*. 142 S. Ct. at 2134 (internal ellipses omitted).

38.     Michelle Lujan Grisham and Patrick M. Allen violated the clearly established constitutional rights of Plaintiff by unlawfully executing Executive Order 2023-130 and the September 8, 2023 PHO; orders seeking to prevent law-abiding citizens from bearing arms.

**App. 14**

39.     These individuals, despite whatever public health goals they may have had, intentionally violated their formal oaths of office to uphold the constitution and laws of the United States when instituting these unconstitutional restrictions on a law-abiding citizen's right to bear arms in clear violation of the criminal prohibition provided for in 18 USCA §242.

40.     These individual Defendants, under the guise of official government action and using the color of state law, sought to limit the historical right to bear arms for self-defense in non-sensitive public places in New Mexico. Under the PHO, for instance, "any person who willfully violates this Order may be subject to civil administrative penalties available at law." See PHO, p. 3, ¶ 4.

41.     The penalties outlined in the PHO and suffered by Mr. Springer are unconstitutional.

42.     The issue in this case is a pure legal issue addressing the constitutionality of the PHO and Executive Order 2023-130.

43.     This Court can lawfully issue an ex parte temporary restraining order under Fed. R. Civ. P. 65(b) without notice to an opposing party when "specific facts in" a "verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

44.     In this case, Plaintiff James Springer is and has been irreparably injured by Executive Order 2023-130 and the September 8, 2023 PHO because those orders declare that he, as well as other law abiding citizens, cannot carry a firearm for self-defense in the City of Albuquerque, as well as other unknown and publicly undiscernible locations, when travelling in

9

**App. 15**

ordinary non-sensitive public places; those orders also unlawfully threaten to punish him and other similarly situated individuals for doing so.

45.    The injury to Plaintiff James, and the irreparable damage to his constitutional right to bear arms for self-defense in non-sensitive public places, is current and ongoing, as it is for other similarly situated individuals.

46.    Plaintiff James Springer has suffered the indignity or consequence of being punished by State officials for exercising his constitutionally guaranteed right to bear firearms in self-defense in non-sensitive public places because the individual Defendants, who are acting under the color of state law, whether they are acting in their official or individual capacity, are reaching far beyond their limited powers by limiting the right to bear arms and abridging his right to engage in expressive conduct based upon the content of his speech.

47.    The irreparable injury to Plaintiff James Springer and others similarly situated is real and concrete having occurred that this Court is well within its right to issue an *ex parte* emergency temporary restraining order enjoining the implementation of Executive Order 2023-130 and the September 8, 2023 PHO as far as those orders limit the Second Amendment rights guaranteed to Plaintiff James Springer and others similarly situated.

48.    Tellingly, Sam Bregman, who has been appointed as both the District Attorney for the Second Judicial District in Albuquerque and as the Chairman of New Mexico's Organized Crime Commission by Governor Michelle Lujan Grisham, has commented on these orders as follows: "As an officer of the court, I cannot and will not enforce something that is clearly unconstitutional."[2]

---

[2] *See* https://www.huffpost.com/entry/albuquerque-guns-new-mexico_n_64fd382fe4b043f73bc10a3e

**App. 16**

49.     More tellingly, New Mexico's Attorney General, Raul Torrez, has issued a formal letter to Governor Lujan Grisham, condemning her actions as unconstitutional.[3]

50.     In short, the unconstitutionality of these orders is widely accepted and should not be tolerated by the Court.

**COUNT I: VIOLATION OF THE RIGHT TO BEAR ARMS– 42 U.S.C. § 1983**

51.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

52.     Defendants did author and sign official government proclamations that made and make it possible for other state officials to unconstitutionally punish Plaintiff James Springer and others similarly situated for carrying firearms for self-defense in non-sensitive public places.

53.     Defendants did attempt and have unconstitutionally deprived Plaintiff James Springer of his constitutional right to bear arms in public by authoring and signing Executive Order 2023-130 and the September 8, 2023 PHO.

54.     Plaintiff James Springer has been and continues to be irreparably harmed by those public orders, signed by individuals acting under the color of state law as well as in their official capacities.

55.     Given the state of clearly established constitutional law on the issue of bearing arms in non-sensitive public places as articulated by our Supreme Court, Plaintiff James Springer and situated have shown a clear and unequivocal right to have their right to bear arms in public restored and Executive Order 2023-130 and the September 8, 2023 PHO declared unconstitutional as it applies to their right to bear arms.

56.     Defendants, acting individually under the color of state law, as well as in their official capacities, attempted to cause and/or caused Plaintiff James Springer and others similarly

---

[3] *See* https://drive.google.com/file/d/1kaLVreNK409FizA8BV8c8qO8etGMOoet/view

**App. 17**

situated to be deprived of their constitutional right to bear arms in non-sensitive public places for the purpose of self-defense under the Second Amendment as applied to the State of New Mexico under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

## COUNT II: VIOLATION OF FREEDOM OF THE PRESS AND SPEECH - VIEWPOINT DISCRIMINATION – 42 U.S.C. § 1983

57.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

58.     The First Amendment of the United States Constitution protects an individual's freedom of expression/freedom of speech and the individual's right to petition their government for redress, moreover the First Amendment prohibits infringement on the freedom of the press to report on the affairs of government by the government.

59.     As a government actors, individually, acting under the color of law, Defendants issued orders that prevent the expressive conduct of openly bearing arms in support of the rights of citizens to bear arms and engaged in viewpoint discrimination by making such conduct subject to the pain of civil administrative penalty.

60.     As a direct and proximate result of the punitive actions, Plaintiff suffered injuries consisting of deprivation of a Constitutional Right, Plaintiff seeks declaratory relief and injunctive relief to halt the continuation of these deprivations.

## COUNT III: VIOLATION OF N.M. CONST. ART. II, § 6, and ART. II, §17 (ONLY AS TO THE DEFENDANTS OFFICE OF THE GOVERNOR AND DEPARTMENT OF HEALTH)

61.     Plaintiff herein incorporates all the foregoing paragraphs.

62.     Defendants Office of the Governor and Department of Health violated Plaintiff's constitutional rights of to bear arms and freedom of speech when that Defendants entered the Executive Order and PHO at issue here.

**App. 18**

63.     Defendants' orders prohibit the bearing of arms protected by N.M. CONST. ART. II, § 6.

64.     Defendants' orders prohibit the free exercise of speech protected by N.M. CONST. ART. II, § 17 by discriminating against expressive conduct on the basis that it is content supportive of the right to bear arms.

65.     Because the Defendants acting through their agents have violated Plaintiff's rights protected by the Bill of Rights of the New Mexico Constitution with disregard for the harm it would cause Plaintiff, the Plaintiff is entitled to judgement establishing that his rights were violated and for actual damages associated to those violations as well as attorney's fees and costs.

## JURY DEMAND

Plaintiffs request a trial by a jury of twelve (12) persons.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendants jointly and severally, and seek relief as follows:

(1)     a Declaratory Judgment that issuance and enforcement of the Executive Order and the PHO is unconstitutional for the reasons stated herein, and that the actions of the individual Defendants were unlawful and unconstitutional;

(2)     a Declaratory Judgment that the actions of the Defendants through its employees violated Plaintiff's rights protected by the New Mexico Bill of Rights;

(3)     for an award of actual damages against the Office of the Governor and the Department of Health under the New Mexico Civil Rights Act;

(4)     a temporary restraining order to prohibit individual Defendants from enforcing the orders at issue, issuing any further orders or taking any action to ban or exclude

**App. 19**

Plaintiff from exercising his rights to speech or to bear arms;

(5)     a preliminary and permanent injunction to prohibit Defendants from enforcing the

orders or promulgating new ones that prohibit Plaintiff from speech in support of

the right to bear arms or to bear arms;

(6)     award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C.

§ 1988 and NMSA 1978, §41-4A-3; and,

(7)     such other relief as this Court deems appropriate.

## REQUEST FOR TEMPORARY RESTRAING ORDER

**Plaintiff Has a Liberty Interest in Freedom of Speech, Freedom of the Press and to
Petition the Government for Redress That Requires Due Process of Law Before He is
Deprived of Liberty.**

Plaintiff has a liberty interest in bearing arms protected by the Second Amendment and in

activities protected by the First Amendment to speech, and the Orders at issue in this lawsuit most

certainly runs afoul of those protections.

### A Temporary Restraining Order is Necessary to Prevent Irreversible Harm

Unless the Court enters this Temporary Restraining Order and Preliminary Injunction,

Plaintiff will cut off from exercising his rights in any sort of significant way in a number of

locations in Torrance County.

### I.     Standards for Issuance of a Preliminary Injunction

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably

injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction

may cause the opposing party; (3) granting the preliminary relief would not be adverse to the

public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v.

Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted). For the reasons

14

**App. 20**

that follow, the standards for granting a temporary and preliminary injunction have been met in this case.

## II.   Plaintiffs are Likely to Succeed on the Merits.

### A.   Defendants' Orders prohibit the exercise of the fundamental liberty to bear arms in self-defense and are viewpoint discrimination in violation the First Amendment and the corresponding New Mexico Constitution provisions in the Bill of Rights.

To determine whether a government act violates the substantive component of the Due Process Clause, courts begin by determining the proper level of scrutiny to apply for review. "Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002). An act passes strict scrutiny only if it "narrowly tailored to further a compelling government interest." *Id.* "If no heightened scrutiny applies, the statute need only be rationally related to a legitimate government purpose." *Id.* "In deciding whether to recognize additional classifications as suspect, courts traditionally look to see if the classification is 'based on characteristics beyond an individual's control,'[] and whether the class is 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Id.* (citations omitted). Here, Plaintiff's fundamental rights protected by the First Amendment are clearly abridged and he was afforded no notice or opportunity to address the abridgment of those liberties. Moreover, the Order clearly violate the rights affirmed in *Bruen* and cannot satisfy the test the Supreme Court set forth in that case making Plaintiff likely to succeed on the merits.

## III.   The Plaintiff Will Suffer Irreparable Injury if Injunctive Relief Is Denied

The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably

constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from Courthouse, excluding him from public hearings and denying him public services unquestionably deprives him of his ability speak freely, publish in the press and to petition his government for redress. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process, First Amendment and Second Amendment rights are burdened if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard. Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

**IV.    The Balance of Harms Favors Issuance of Injunctive Relief**

Plaintiff has established both likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative (if not outright nonexistent) such speculative harm cannot outweigh an injury to the

Due Process and First Amendment rights of a Plaintiff who has established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship. Because the Defendant cannot show any sort of reasonably anticipated harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

## V.    An Injunction Is in the Public Interest

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev.*, 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997). It is in the public interest to not allow government to ban members of the press from public courthouses and hearings or to deny them the ability to make records request simply because they do not like the content of the speech or press of an individual reporter.

## CONCLUSION

17

French mathematician and philosopher, Blaise Pascal, stated that *"[j]ustice without force is powerless; force without justice is tyrannical*." This Court should give force to justice and for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order.

Respectfully submitted this 12th day of September 2023.

<div style="margin-left:40%">

WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

</div>

**App. 24**



MICHELLE LUJAN GRISHAM
**Governor**

PATRICK M. ALLEN
**Cabinet Secretary**

**PUBLIC HEALTH ORDER**
**NEW MEXICO DEPARTMENT OF HEALTH**
**SECRETARY PATRICK M. ALLEN**

**September 8, 2023**

**Public Health Emergency Order Imposing Temporary Firearm**
**Restrictions, Drug Monitoring and Other Public Safety Measures**

**WHEREAS,** for the reasons stated in Governor Michelle Lujan Grisham's Executive Orders 2023-130 and 2023-132, gun violence and drug abuse currently constitute statewide public health emergencies, as defined in the Public Health Emergency Response Act;

**WHEREAS,** pursuant to those Executive Orders, I have begun collaborating with the New Mexico Department of Homeland Security and Emergency Management, the New Mexico Department of Public Safety, and the Governor's Office to provide an effective and coordinated response to these public health emergencies;

**WHEREAS,** the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -19, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government to preserve and promote public health and safety, to maintain and enforce rules for the control of a condition of public health importance; and

**WHEREAS,** temporary firearm restrictions, drug monitoring, and other public safety measures are necessary to address the current public health emergencies.

**NOW, THEREFORE, I,** Patrick M. Allen, Secretary of the New Mexico Department of Health, in accordance with authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of emergency powers under the All Hazard Emergency Management Act, do hereby **DECLARE** that gun violence and drug use constitute conditions of public health importance, as defined in NMSA 1978, Section 24-1-2(A), and hereby **ORDER** and **DIRECT** as follows:

(1)     No person, other than a law enforcement officer or licensed security officer, shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health, except:

A.     On private property owned or immediately controlled by the person;

Exhibit 1

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org

**App. 25**



       B.     On private property that is not open to the public with the express permission of the person who owns or immediately controls such property;

       C.     While on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful transfer or repair of a firearm;

       D.     While engaged in the legal use of a firearm at a properly licensed firing range or sport shooting competition venue; or

       E.     While traveling to or from a location listed in Paragraphs (1) through (4) of this section; provided that the firearm is in a locked container or locked with a firearm safety device that renders the firearm inoperable, such as a trigger lock.

(2)     The New Mexico Regulation and Licensing Department shall conduct monthly inspections of licensed firearms dealers in the State to ensure compliance with all sales and storage laws.

(3)     The Department of Health shall, within 20 days, compile and issue a comprehensive report on gunshot victims presenting at hospitals in New Mexico, which shall include (if available): demographic data of gunshot victims, including age, gender, race, and ethnicity; data on gunshot victim's healthcare outcomes; the brand and caliber of the firearm used; the general circumstances leading to the injury; the impact of gunshot victims on New Mexico's healthcare system; and any other pertinent information.

(4)     No person, other than a law enforcement officer or licensed security officer, shall possess a firearm on state property, public schools, and public parks.

(5)     The New Mexico Department of Health and the New Mexico Environmental Department shall develop a program to conduct wastewater testing for illicit substances, such as fentanyl, at all public schools.

(6)     The Children, Youth and Families Department shall immediately suspend the Juvenile Detention Alternative Initiative and evaluate juvenile probation protocols.

(7)     The Department of Public Safety shall dispatch additional officers and resources to Bernalillo County and work with the Albuquerque Police Department and Bernalillo County Sheriff to determine the best use of those resources.

(8)     The Department of Public Safety shall coordinate with local law enforcement agencies and the district attorneys' offices and assist in apprehension of individuals with outstanding arrest warrants.

**I FURTHER DIRECT** as follows:

(1)     This Order shall be broadly disseminated in English, Spanish, and other appropriate languages to the citizens of the State of New Mexico.

(2)     Trigger locks shall be made available free of charge to all firearm owners; provided that each firearm owner shall only be entitled to one free trigger lock. Firearm owners wishing to obtain a free trigger lock should call 505-984-3085 or email info@newmexicanstopreventgunviolence.org.

(3)     The New Mexico Department of Health, the New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(4)     Any person or entity who willfully violates this Order may be subject to civil administrative penalties available at law.

(5)     This Order shall take effect on September 8, 2023, and remain in effect for the duration of the public health emergencies declared in Executive Orders 2023-130 and 2023-132 and any subsequent renewals of those public health emergency declarations, unless otherwise rescinded.

(6)     Should any provision of this Order or its application to any person or circumstances be held invalid by a court of law, the remainder of this Order or the application of its provisions to other persons or circumstances shall remain in full force and effect.

ATTEST:

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 8TH DAY OF SEPTEMBER 2023

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

PATRICK M. ALLEN
SECRETARY OF THE
NEW MEXICO DEPARTMENT OF HEALTH



# State of New Mexico

Michelle Lujan Grisham
*Governor*

### EXECUTIVE ORDER 2023-130

### DECLARING STATE OF PUBLIC HEALTH EMERGENCY DUE TO GUN VIOLENCE

**WHEREAS,** New Mexico consistently has some of the highest rates of gun violence in the nation;

**WHEREAS,** the rate of gun deaths in New Mexico increased 43% from 2009 to 2018, compared to an 18% increase over this same time period nationwide;

**WHEREAS,** guns are the leading cause of death among children and teens in New Mexico, and have led to the deaths of a thirteen-year-old girl on July 28, a five-year-old girl on August 14, and an eleven-year-old boy on September 6;

**WHEREAS,** New Mexico has recently experienced an increasing amount of mass shootings, including mass shootings in Farmington and Red River this year;

**WHEREAS,** these gun-related deaths and injuries have resulted in devastating physical and emotional consequences for individuals, families, and communities throughout the State;

**WHEREAS,** the impact of gun violence extends beyond physical injuries and fatalities— causing emotional trauma, economic burdens, and long-lasting consequences for those affected individuals and their families;

**WHEREAS,** the increasing number of gunshot victims strains our already over-burdened healthcare system and places undue pressure on medical professionals and resources;

Exhibit 2

**WHEREAS,** after consulting with the Secretary of the Department of Health, I have determined that the foregoing situation constitutes a statewide public health emergency of unknown duration, as defined by the Public Health Emergency Response Act; and

**WHEREAS,** the foregoing situation also constitutes a man-made disaster causing or threatening widespread physical or economic harm that is beyond local control and requiring the resources of the State pursuant to the All Hazard Emergency Management Act.

**NOW, THEREFORE, I**, Michelle Lujan Grisham, Governor of the State of New Mexico, by the authority vested in me by the Constitution and laws of the State of New Mexico, do hereby **DECLARE** that a state of public emergency exists throughout the State due to gun violence and **ORDER** and **DIRECT** as follows:

1.      The Department of Public Health, Department of Homeland Security and Emergency Management, and Department of Public Safety shall immediately begin collaborating with my Office to provide an effective and coordinated response to this public health emergency.

2.      The Department of Finance and Administration shall make available emergency financial resources in an amount not to exceed seven hundred fifty thousand dollars ($750,000.00) to the to the Department of Health, Department of Homeland Security and Emergency Management, and/or Department of Public Safety, in accordance with NMSA 1978, Sections 12-11-23 to -25. Funds shall be expended for the purpose of complying with this Order and shall be expended specifically to avoid and minimize economic or physical harm and to protect the public health, safety, and welfare. Funds shall be paid out upon warrants drawn by the Secretary of Finance and Administration upon vouchers approved by the Governor or an agent or agency designated by her for that purpose.

*Executive Order 2023-130*                                                        *Page 2*

3.    All mayors, sheriffs, and members of governing bodies of municipalities or counties are encouraged to request, if necessary, an emergency proclamation and implementation of temporary additional restrictions to address this public health emergency pursuant to the Riot Control Act.

4.    All political subdivisions of the State shall comply with and enforce all directives issued pursuant to this Order.

**I FURTHER ORDER** and **DIRECT** as follows:

1.    This Order supersedes any previous orders, proclamations, or directives to the extent they are in conflict.

2.    This Order shall take effect immediately and shall remain in effect until October 6, 2023.

ATTEST:

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 7TH DAY OF SEPTEMBER 2023

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

MICHELLE LUJAN GRISHAM
GOVERNOR



*Executive Order 2023-130*                                                                 *Page 3*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

      Plaintiff,

vs.                                                                                        No. 1:23-cv-00781 DHU-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK M. ALLEN, and
NM DEPARTMENT OF HEALTH,

      Defendants.

## ORDER ON "EXPEDITED MOTION" TO RECUSE

This matter comes before the Court on Plaintiff James Springer's "Expedited Motion for the Honorable David Urias, U.S. District Judge, to Recuse Himself from All Proceedings Going Forward and Re-Assign the Case and Motion to Vacate the Hearing for Consideration of the Motion to Recuse." ("Motion") Doc. 3. Plaintiff Springer filed his Motion on September 12, 2023, but did not submit the affidavit required by 28 U.S.C. § 144 until sixteen days later, on September 28, 2023. Doc. 6. Although the Motion brought under §144 was deficient,[1] the Court nevertheless

---

[1] The Motion filed on September 12, 2023, was accompanied by an affidavit executed by Plaintiff's counsel, but did not include an affidavit from a party to the proceeding which is required when seeking relief under 28 U.S.C. § 144. *See* Doc. 3, Ex. 1.

granted Plaintiff's request to vacate the hearing on his request for a Temporary Restraining Order.[2]

Doc. 4.  The Court now considers Plaintiff's Motion.

## Discussion

In his Motion, Plaintiff Springer requests that, pursuant to 28 U.S.C. § 144, this Court recuse itself from hearing his case because his counsel, A. Blair Dunn and Jared Vander Dussen, once represented a client who brought a legal action against the Court while he was a practicing attorney. Motion at 1.  According to Plaintiff, he "[does] not reasonably believe that the personal issue between Judge Urias and [his] attorney will allow [the Court] to act impartially towards me." Doc. 6, Affidavit of James Springer at ¶ 3. Plaintiff provides no facts to explain his belief other than to say his lawyer "personally sued Judge Urias." *Id.* at ¶ 2.

The statute upon which Plaintiff relies provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.  The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only on such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.  In addition, 28 U.S.C. § 455 provides that any judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned and, among other things, where he has a "personal bias or prejudice concerning a party."

---

[2] The reason for requesting the Court vacate Plaintiff's request for an emergency hearing on his motion for a temporary restraining order is unclear.  In his Motion, Plaintiff suggested that vacating the hearing was appropriate so the Court could consider his Motion, but in a footnote Plaintiff's counsel suggested his request was made because he had a prior commitment to attend a livestock show with his daughter. Doc. 3, fn. 1.

As Plaintiff correctly points out in his Motion, the Tenth Circuit has made clear that allegations of bias or prejudice on the part of a court in a § 144 motion must contain more than mere conclusions, but instead must show actual facts indicating the existence of a judge's personal bias and prejudice against a party.   Motion at 3. "The simple filing of an affidavit does not automatically disqualify a judge." *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) (citation omitted). In fact, "a trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true." *Id*. (citing *United States v. Ming*, 466 F.2d 1000 (7th Cir. 1972), cert. denied, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972)).   Moreover, "[a]n affidavit must comply with §144 before it can effectively disqualify a judge." *Id*. (citing *United States v. Anderson*, 433 F.2d 856 (8th Cir. 1970)).

In this case, Plaintiff has not shown that recusal is required under § 144.   First, Plaintiff has not shown the existence of facts that would establish the Court is personally biased or prejudiced against him or in favor of an adverse party.   The Court has never met Plaintiff, knows nothing about him, and assures Plaintiff that, as with all cases before it, the Court would be impartial and fair in considering his case.   Nor does the Court hold any personal bias or prejudice towards Plaintiff's counsel.   Although the Court is aware that Plaintiff's counsel represented a client in a case brought against several lawyers and firms, including this Court, the claims against the Court were never proven and were ultimately dismissed with prejudice.   Second, Plaintiff's § 144 motion remains deficient as it is not accompanied by a certificate of counsel stating that it is made in good faith.   *See* 28 U.S.C. § 144; *Bray*, 546 F.2d at 857.   For these reasons, the Court finds recusal is not appropriate under this statute.

However, pursuant to 28 U.S.C. § 455, the Court should consider whether his impartiality might be reasonably questioned in this matter.   Although the Court finds Plaintiff has not shown

sufficient facts to establish actual bias or prejudice against him, it is not unreasonable to believe

Plaintiff would be concerned about the Court's impartiality in this matter.  For that reason alone,

the Court believes recusal is appropriate.

Therefore, the Court **GRANTS** Plaintiff's Motion to Recuse (Doc. 3) and will direct the

Clerk of the Court to reassign this matter.

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

———————————————

JAMES SPRINGER,

      Plaintiff,

    v.                            No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

      Defendants.

<u>**ORDER REGARDING REQUEST FOR EX PARTE TEMPORARY RESTRAINING
ORDER**</u>

THIS MATTER comes before the Court upon Plaintiff's Request for an *ex parte* Temporary Restraining Order **(Doc. 1 at 14-18)**.  Plaintiff requests the Court enter an *ex parte* temporary restraining order as to Defendants' September 7 and 8, 2023 executive order and public health order which in part temporarily restricted the Second Amendment right to bear arms in certain places in New Mexico.  *see* **Doc. 1 at ¶¶ 43, 47**.  Because it appears that Defendant is seeking an *ex parte* temporary restraining order for a public health order which is no longer in effect, the Court will deny without prejudice the request to enter an *ex parte* temporary restraining order as moot. *See, e.g., We the Patriots, USA, Inc. v. Grisham,* 23-cv-773 DHU/LF, Doc. 21 (D.N.M) (order denying as moot plaintiffs' motion for preliminary injunction as to Defendants' public health order dated September 8, 2023). Plaintiff may file a new motion either (1) challenging the current public health order, or (2) demonstrating why the court should enjoin a public health order which no longer exists.

**BACKGROUND**

Plaintiff challenges the Original Public Health Order and Executive Order issued on September 7 and 8, 2023. *See* Doc. 1, Ex. 1, Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, September 8, 2023 (the "Original Public Health Order"); Doc. 1, Ex. 2, Governor's Executive Order 2023-130, Declaring State of Public Health Emergency Due to Gun Violence, September 7, 2023.

Since then, on October 6, 2023, the New Mexico Department of Health issued a second amended Public Health Order, superseding prior orders. *See* Amended Public Health Order, https://cv.nmhealth.org/wp-content/uploads/2023/10/NMAC-PHO-20231006-Amended.pdf  (last accessed October 16, 2023) ("Second Amended Public Health Order"). The Governor also issued a renewed executive order extending the public health emergency due to gun violence until November 3, 2023.  The Second Amended Public Health Order appears to be significantly narrower than the one challenged by Plaintiff in his complaint.  In relevant part, the new order states that no individual, aside from law enforcement officers, licensed security officers, and certain others, may carry firearms in public parks or playgrounds. *Id.* This temporary restriction does not apply to Albuquerque's Shooting Range Park, state parks, or areas owned by the New Mexico Energy, Minerals and Natural Resources Department, State Parks Division, or the State Land Office. *Id.*  The Second Amended Public Health Order clarified that the firearm restrictions apply to Bernalillo County and the City of Albuquerque.  It also has several provisions unrelated to the right to bear firearms.

This case was transferred to the undersigned on October 2, 2023, and is one of several cases in this district challenging the Defendants' public health orders restricting the right to bear arms. A temporary restraining order was in place in at least one other related case until October

11, 2023. *See We the Patriots, USA, Inc. v. Grisham et al.,* 23-cv-773 DHU/LF, Doc. 21 (D.N.M) (order extending temporary restraining order until October 11, 2023). An order denying the motion for preliminary injunction was entered in that case. *See We the Patriots USA, Inc., v. Grisham,* 1:23-CV-00773-DHU-LF, 2023 WL 6622042, at *1 (D.N.M. Oct. 11, 2023).

## DISCUSSION

The Court denies without prejudice Plaintiff's request for *ex parte* temporary restraining order as moot, because Plaintiff challenges a public health order which is no longer in effect. Moreover, as explained below, the Court cannot issue an *ex parte* temporary restraining order as to the Second Amended Public Health Order without further briefing or development of the record.

The purpose of a temporary restraining order or preliminary injunction is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction or temporary restraining order, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public

interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Plaintiff has not yet asserted facts sufficient to establish his standing to challenge the Second Amended Public Health Order.  For Plaintiff to demonstrate standing, he must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Here, this means that Plaintiffs must demonstrate standing to challenge the restrictions of the Second Amended Public Health Order, that is, carrying firearms in public parks and playgrounds.  *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought"). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Here, Plaintiff has not yet alleged in his complaint or asserted in an affidavit that he carries firearms in playgrounds or through public parks (not including state parks), or intends to do so.  Therefore, he has not asserted an injury-in-fact.

Plaintiff has also not yet demonstrated a likelihood of success on the merits as to the Second Amended Public Health Order.  The Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home."  *New York State Rifle & Pistol Association, Inc. v.*

*Bruen*, __U.S. __, 142 S.Ct. 2111, 2122, 213 L.Ed.2d 387 (2022).   In *Bruen,* the United States Supreme Court adopted a two-step test to determine whether a restriction violates the Second Amendment.   *Id.* at 2129-30.   In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct."   *Id.* at 2130.   In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."   *Id.*   Only if the government makes such as showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."   *Id.* Here, Plaintiff has not yet shown a likelihood of success on the merits, as he has not engaged with the historical tradition analysis under *Bruen* by showing that the regulation restricting firearms in playgrounds and certain public parks is inconsistent with the Nation's historical tradition of firearm regulation. Although the Government generally has the burden to show a regulation is consistent with historical tradition, Plaintiff has not yet demonstrated that his right to relief is clear and unequivocal to warrant an ex parte order.   *See, e.g.*, *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003) (party seeking preliminary injunction bears burden of showing substantial likelihood of success on the merits).

Similarly, Plaintiff has not yet shown irreparable harm warranting injunctive relief.  He has not stated that he carries or intends to carry firearms in playgrounds and public parks, and that the failure to enjoin the Second Amended Public Health Order would irreparably harm him.

If Plaintiff chooses to file a new motion for preliminary injunction or temporary restraining order, he should specify the portions of the Second Amended Public Health Order he seeks to enjoin with specificity, and explain how those portions violate *Bruen,* including engaging with *Bruen's* historical tradition analysis.   *See* Fed. R. Civ. P. 65(d) (requiring that every injunction and

restraining order (1) state its terms specifically and (2) describe in reasonable detail the act or acts restrained or required.)   Plaintiff should also brief standing.  If Plaintiff continues to pursue a temporary restraining order as to the original, superseded public health order, Plaintiff should address mootness or otherwise explain why the Court should enjoin an order which is no longer in effect. Finally, if he files a new motion, he should serve it on defendants and file certificates of service on the docket.

Therefore, Plaintiff's request for an *ex parte* temporary restraining order as to the Original Public Health Order issued September 8, 2023 is denied without prejudice as moot.

**IT IS SO ORDERED**.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

6

**App. 40**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

       **Plaintiff,**

**v.**

                  **Civil Action No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,**

       **Defendants.**

**_RENEWED_ MOTION FOR PRELIMINARY INJUNCTION UNDER THE
GOVERNOR'S MOST RECENT ORDERS**

COMES NOW Plaintiff by and through his undersigned counsel of record, and renews his

motion for a Preliminary Injunction addressing the October 6, 2023, Public Health Order, EX 1,

and for his reasons states:

**BACKGROUND**

On October 16, 2023 this Court entered an Order, ECF Doc. No. 9, denying without

prejudice Plaintiff's request for a temporary restraining order given that the original Public

Health Order (PHO) had been superseded by later editions of the PHO.  This instant motion

addresses that most recent Second Amended Public Health Order (SAPHO). Specifically, this

Motion targets the provision that:

> No person, other than a law enforcement officer or licensed security officer, or
> active duty military personnel shall possess a firearm, as defined in NMSA
> 1978, Section 30-7-4.1, either openly or concealed, in public parks or
> playgrounds within the City of Albuquerque or Bernalillo County, except in the
> City of Albuquerque's Shooting Range Park and areas designated as a state park
> within the state parks system and owned or managed by the New Mexico
> Energy, Minerals and Natural Resources Department State Parks Division, or
> the State Land Office.

EX 1 at 2. This Court also admonished in its Order that Plaintiff was required to

**App. 41**

demonstrate standing to challenge the Second Amended Public Health Order. Plaintiff does so here now. Plaintiff has children that participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been forced to attend several of those parks without the benefit of firearms for his own personal defense, or for the defense of his family in the drug and violence riddled city of Albuquerque. *See* EXHIBIT 2, Declaration of James Springer.

## ARGUMENT

## REQUEST FOR PRELIMINARY INJUNCTION

**The Second Amended Public Health Order impermissibly infringes on Plaintiff's Fundamental Liberties protected by the United States and New Mexico Constitutions.**

Plaintiff has a liberty interest in bearing arms protected by the Second Amendment for self-defense in the increasingly dangerous city of Albuquerque and in engaging in activities protected by the First Amendment to speech. The SAPHO currently at issue in this lawsuit most certainly runs afoul of those protections. It runs afoul of those protections by declaring new sensitive places that exceed traditional historical protection for Second Amendment activity in these locations and prohibits expressive conduct in traditional public forums based upon the content of the speech.

### Standards for Issuance of a Preliminary Injunction

A movant may obtain a preliminary injunction if: (1) the movant will be irreparably injured by denial of the relief; (2) the movant's injury outweighs any damage the injunction may cause the opposing party; (3) granting the preliminary relief would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Keirnan v. Utah Transit Auth.,* 339 F.3d 1217, 1220 (10th Cir. 2003) (citation omitted).

For the reasons that follow, the standards for granting a temporary and preliminary

injunction have been met in this case.

## I.      A Temporary Restraining Order is Necessary to Prevent Irreversible Harm

Unless the Court enters a Preliminary Injunction, Plaintiff will continue to suffer the loss of carrying firearms for self-defense in public parks and playgrounds. *See* EX 2.   Moreover, Plaintiff is a staunch advocate of the First Amendment and commonly organizes or attends protests in traditional public forums. Plaintiff plans to organize or attend protests at Civic Plaza (a traditional public forum commonly used for expressive conduct such as protests or political rallies) in downtown Albuquerque for the express purpose of voicing support for the right to bear arms for self-defense by openly carrying firearms in self-defense as well as for the purpose of expressing support for gun possession and carrying of firearms an important right for law-abiding citizens.

## II.     Plaintiffs are Likely to Succeed on the Merits.

### A. *Defendants' Orders prohibit the exercise of the fundamental liberty to bear arms in self-defense and are viewpoint discrimination in violation the First Amendment and the corresponding New Mexico Constitution provisions in the Bill of Rights.*

As this Court has noted, in *Bruen,* the United States Supreme Court has adopted a two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct." If it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such a showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*  As the Supreme Court also noted, it is Plaintiff's burden to demonstrate a substantial likelihood that the Government's regulation is inconsistent with the Nation's historical tradition of firearm regulation.

<div align="center">3</div>

In this instance, the historical tradition of firearm regulation at issue concerns the addition of new sensitive places, beyond the scope of what the New Mexico Legislature has traditionally regulated. And once again, the *Bruen* analysis is enlightening for this instant matter. The Supreme Court's rejection of New York's argument regarding sensitive places lays out that where New York viewed:

> "sensitive places" where the government may lawfully disarm law-abiding citizens [to] include all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." Brief for Respondents 34. It is true that people sometimes congregate in "sensitive places," and it is likewise true that law enforcement professionals are usually presumptively available in those locations. But expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below.

*Bruen* at 2133–34. The Supreme Court in *Bruen* also cited favorably D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018) which supports that the SAPHO's *ban* on the carrying of firearms in public parks and playgrounds is outside of the historical tradition of firearm regulation.  Importantly, Kopel and Greenlee's research supports that "*Heller's* mention of 'longstanding' laws against carrying guns in 'schools' or 'government buildings' has modest support in history and tradition. As of the 1930s, several states had broad laws against guns in schools. A larger number of states had laws against arms at polling places. But these were the minority approach. Widespread bans on arms in government buildings or schools came in the later part of the twentieth century." *Id*. at 263.

Here in New Mexico, where we live, the Legislature has specifically defined school premises for purposes of banning firearms in those *sensitive places* in a matter that excludes the parks and playgrounds that the SAPHO now seeks to criminalize for the carrying of firearms for

**App. 44**

protection. *See* NMSA 1978 § 30-7-2.1 [1]   Arguably, the SAPHO seeks to ban (*not regulate...ban)* the carrying of firearms on grounds that are not those of a public elementary, junior high or high school, or public grounds where school related or school sanctioned activities are then being performed. Thus, the regulation goes beyond what even the New Mexico Legislature has traditionally regulated, and must find support somewhere else in our Nation's traditional firearm regulation.

Once again, the analysis supports the conclusion that Plaintiff is likely to succeed on the merits. The most analogous case to the instant situation is *Morris v. U.S. Army Corps of Eng'rs*, 60 F. Supp. 3d 1120 (D. Idaho 2014).  And again, the analysis of Kopel and Greenlee's law review article is persuasive, stating:

> Nor was the District Court of Idaho persuaded by the sensitive places argument.[]
> "The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated. The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats."[265]
> But the court pointed out that *Heller* "limited the 'sensitive place' analysis to facilities like 'schools and government buildings.' In contrast, the ban imposed by the Corps applies to outdoor parks."[]
> Moreover, the sensitive places language from *Heller* "confirms the right of the Corps to regulate handguns on its property. But here the Corps is attempting to ban handguns, not regulate them."[] Thus, "[w]hile the Corps retains the right to regulate the possession and carrying of handguns on Corps property, this regulation imposes an outright ban, and is therefore unconstitutional under any level of scrutiny."

---

[1]   B. As used in this section, "school premises" means:
(1) the buildings and grounds, including playgrounds, playing fields and parking areas and any school bus of any public elementary, secondary, junior high or high school in or on which school or school-related activities are being operated under the supervision of a local school board; or
(2) any other public buildings or grounds, including playing fields and parking areas that are not public school property, in or on which public school-related and sanctioned activities are being performed.

5

**App. 45**

*Id.* at 275. Here, Plaintiff (a law-abiding citizen) wishes to carry firearms in parks and playgrounds that are not school grounds, and are not public grounds that are not being used for school related or sanctioned activities. But, an outright *ban* prohibits him from doing so without the threat of prosecution by law enforcement.  Thus, Plaintiff is substantially likely to succeed on the merits of claims. And there is no citable source of law that supports the notion that there was ever any historical tradition of firearm regulation on public parks and playgrounds in the Eighteenth or Nineteenth centuries in this Country. Nor is there even a hint of historical tradition of doing so in our State of New Mexico in the Twentieth century.  And it's worth noting that, even if the Court were to apply some sort oof means-end scrutiny, there is no reliable evidence that banning the carrying of firearms by law abiding citizens for protection in public parks or playgrounds would have the necessary positive impact on the compelling government interest in curbing gun violence.[2]

As it relates to the claim by the Plaintiff that SAPHO infringes upon his expressive conduct in a traditional public forum on the basis of content, to determine whether a government act violates the substantive component of the Due Process Clause, courts begin by determining the proper level of scrutiny to apply for review. "Even though citizens of statutory counties are not a suspect class, we will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Here with regard to the infringement upon Plaintiff's First Amendment expressive conduct in traditional public forum, the SAPHO passes strict scrutiny only if it "narrowly tailored to further a compelling government interest." *Id.* Instead, Plaintiff's fundamental rights protected by the First

---

[2] *See* https://www.rand.org/research/gun-policy/analysis/gun-free-zones.html

**App. 46**

Amendment are clearly abridged as all citizens are banned from engaging in this particular expressive conduct in these traditional public forums and he was afforded no notice or opportunity to address the abridgment of those liberties.  Moreover, these restrictions are content based with zero evidence (as noted above) that that they will achieve a compelling government interest that would withstand strict scrutiny.

### III.    The Plaintiff Will Suffer Irreparable Injury if Injunctive Relief Is Denied

"The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from carrying arms for his and his family's protection at public parks and playground in the dangerous city of Albuquerque represents an unquestionable loss of that liberty interest, and the SAPHO's conversion of traditional public forums such as Civic Plaza, unquestionably deprives him of his ability speak freely and publish in the press based upon the content of the speech he wishes to engage in a traditional public forum. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection—inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

The fact that Due Process, First Amendment and Second Amendment rights are burdened

**App. 47**

if not outright denied, as they are in this case, establishes the preliminary injunction's "irreparable harm" standard.  Thus, under the Tenth Circuit Court of Appeals' jurisprudence, irreparable injury has occurred and will continue to occur until an injunction issues.

### IV.    The Balance of Harms Favors Issuance of Injunctive Relief

Plaintiff has established both likelihood of success on the merits as well as a clear irreparable injury. In addition, the balance of harms tips decidedly in favor of Plaintiff. In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460 (2009). Where the government's perception of harm is speculative (if not outright nonexistent) such speculative harm cannot outweigh an injury to the Due Process,  First Amendment and Second Amendment rights of a Plaintiff who has established a substantial likelihood of success on the merits.

If preliminary injunctive relief is not granted, and the Court later finds that the challenged laws impermissibly infringe constitutional rights, the Plaintiffs will have suffered irreparable harm. After the fact, this Court will be unable to make things right again. By contrast, if this Court grants preliminary injunctive relief and later finds against the Plaintiff, the Defendants will not have suffered any hardship. Because the Defendant cannot show any sort of reasonably anticipated harm if an injunction is granted, and the Plaintiffs will suffer certain harm in the absence of injunctive relief, the balance of hardships favors the Plaintiff. When plaintiffs establish that a case raises constitutional issues, as the Plaintiffs have in this case, the Court should presume that the balance of harms tips in their favor. *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002).

**App. 48**

## V.      An Injunction Is in the Public Interest

Finally, Plaintiff establishes that issuance of a preliminary injunction is in the public interest. The Tenth Circuit Court of Appeals recognizes "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *citing Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005); *see also Utah Licensed Bev.*, 256 F.3d at 1076; *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997). It is in the public interest to not allow government to ban members of the press from public courthouses and hearings or to deny them the ability to make records request simply because they do not like the content of the speech or press of an individual reporter.

## **CONCLUSION**

French mathematician and philosopher, Blaise Pascal, stated that *"[j]ustice without force is powerless; force without justice is tyrannical*." This Court should give force to justice and for all the foregoing reasons, Plaintiffs respectfully request this Court grant a Temporary Restraining Order and issue a preliminary injunction .

Respectfully submitted this 26th day of October 2023.

> WESTERN AGRICULTURE, RESOURCE
> AND BUSINESS ADVOCATES, LLP
>
> */s/ A. Blair Dunn*
> A. Blair Dunn, Esq.
> Jared R. Vander Dussen, Esq.
> 400 Gold Ave SW, Suite 1000
> Albuquerque, NM 87102
> (505) 750-3060
> abdunn@ablairdunn-esq.com
> warba.llp.jared@gmail.com
>
> Zach Cook, LLC

9

/s/ Zach Cook
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

/s/ A. Blair Dunn
A. Blair Dunn, Esq.

10

**App. 50**



NEW MEXICO
**Department of Health**
Office of the Secretary

MICHELLE LUJAN GRISHAM
Governor

PATRICK M. ALLEN
Cabinet Secretary

# EXHIBIT 1

### PUBLIC HEALTH ORDER
### NEW MEXICO DEPARTMENT OF HEALTH
### SECRETARY PATRICK M. ALLEN

#### October 6, 2023

**Amended Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures**

**WHEREAS,** for the reasons stated in Governor Michelle Lujan Grisham's Executive Orders 2023-130 and 2023-132, and subsequent renewals of those orders, gun violence and substance misuse currently constitute statewide public health emergencies, as defined in the Public Health Emergency Response Act;

**WHEREAS,** pursuant to those Executive Orders, I have begun collaborating with the New Mexico Department of Homeland Security and Emergency Management, the New Mexico Department of Public Safety, and the Governor's Office to provide an effective and coordinated response to these public health emergencies;

**WHEREAS,** both the Bernalillo County Sheriff and Chief of the Albuquerque Police Department have identified the Bernalillo County Metropolitan Detention's lack of staffing, space, and prompt screening of arrested individuals as a significant contributor to these public health emergencies by keeping police officers off the streets while they wait for arrestees to be processed;

**WHEREAS,** according to the New Mexico Department of Health, child firearm emergency department visits in New Mexico increased by 100% for youth ages 0-13 between 2018 and 2022;

**WHEREAS,** the New Mexico Department of Health possesses legal authority pursuant to the Public Health Act, NMSA 1978, Sections 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, Sections 12-10A-1 to -19, the Department of Health Act, NMSA 1978, Sections 9-7-1 to -18, and inherent constitutional police powers of the New Mexico state government to preserve and promote public health and safety, to maintain and enforce rules for the control of a condition of public health importance; and

**WHEREAS,** temporary firearm restrictions, illicit substance monitoring, and other public safety measures are necessary to address the current public health emergencies.

**NOW, THEREFORE, I,** Patrick M. Allen, Secretary of the New Mexico Department of Health, in accordance with authority vested in me by the Constitution and the Laws of the State of New Mexico, and as directed by the Governor pursuant to the full scope of emergency powers

**OFFICE OF THE SECRETARY**
1190 St. Francis Dr., Suite N4100 • P.O. Box 26110 • Santa Fe, New Mexico • 87502
(505) 827-2613 • FAX: (505) 827-2530 • www.nmhealth.org



**App. 51**

under the All Hazard Emergency Management Act, do hereby **DECLARE** that gun violence and substance misuse constitute conditions of public health importance, as defined in NMSA 1978, Section 24-1-2(A), and hereby **ORDER** and **DIRECT** as follows:

(1)     No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7-4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office.

(2)     The New Mexico Regulation and Licensing Department shall conduct monthly inspections of licensed firearms dealers in the State to ensure compliance with all sales and storage laws.

(3)     The New Mexico Department of Health and the New Mexico Environment Department shall develop a program to conduct wastewater testing for illicit substances, such as fentanyl, at all public schools.  The New Mexico Environment Department shall have the authority to independently test the wastewaters of the state and perform any other acts authorized by the NMSA 1978, Section 24-1-3 of the Public Health Act necessary to address the public health emergency as outlined herein and within the Executive Order 2023-132. The New Mexico Environment Department shall be eligible to receive funds directly from the New Mexico Department of Finance and Administration pursuant to NMSA 1978, Sections 12-11-23 to -25, necessary to promptly address the public health emergency.

(4)     The New Mexico Children, Youth and Families Department shall immediately suspend the Juvenile Detention Alternatives Initiative and evaluate juvenile probation protocols.

(5)     The New Mexico Department of Public Safety shall dispatch additional officers and resources to Bernalillo County and work with the Albuquerque Police Department and Bernalillo County Sheriff to determine the best use of those resources.

(6)     The New Mexico Department of Public Safety shall coordinate with local law enforcement agencies and the district attorneys' offices and assist in apprehension of individuals with outstanding arrest warrants.

(7)     All participating New Mexico Managed Care Organizations shall immediately ensure that individuals who need drug or alcohol treatment have received a permanent, adequate treatment placement within 24 hours of the request.

(8)     The New Mexico Human Services Department shall send relevant Managed Care Organizations letters of direction requiring them to provide their plans to achieve continual behavioral health network adequacy.

(9)     The New Mexico Department of Corrections and the New Mexico Department of Homeland Security shall provide assistance to the Bernalillo County Metropolitan Detention Center and its contractors to ensure adequate staffing, space, and screening for arrested and

incarcerated individuals; provided that nothing in this provision shall be construed to limit the authority and responsibility of Bernalillo County Metropolitan Detention Center in managing its operations.

(10)    The New Mexico Department of Public Safety shall organize safe surrender events in the cities of Albuquerque, Espanola, and Las Cruces within thirty days.

**I FURTHER DIRECT** as follows:

(1)    This Order shall be broadly disseminated in English, Spanish, and other appropriate languages to the citizens of the State of New Mexico.

(2)    Trigger locks shall be made available free of charge to all firearm owners; provided that each firearm owner shall only be entitled to one free trigger lock. Firearm owners wishing to obtain a free trigger lock should visit www.safestoragenm.org.

(3)    The New Mexico Department of Health, the New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this Order.

(4)    Any person or entity who willfully violates this Order may be subject to civil administrative penalties available at law.

(5)    This Order supersedes any previous Order to the extent it is in conflict and shall take effect on October 6, 2023, and remain in effect for the duration of the public health emergencies declared in Executive Orders 2023-130 and 2023-132 and any subsequent renewals of those public health emergency declarations, unless otherwise rescinded.

(6)    Should any provision of this Order or its application to any person or circumstances be held invalid by a court of law, the remainder of this Order or the application of its provisions to other persons or circumstances shall remain in full force and effect.

(7)    Nothing in this Order shall be construed to contradict or evade any court orders temporarily enjoining provisions in previous public health emergency orders that remain in this Order. Any court order regarding such provisions shall apply to the same provisions found herein.

ATTEST:

_____

MAGGIE TOULOUSE OLIVER
SECRETARY OF STATE

DONE AT THE EXECUTIVE OFFICE
THIS 6TH DAY OF OCTOBER 2023

WITNESS MY HAND AND THE GREAT
SEAL OF THE STATE OF NEW MEXICO

_____

PATRICK M. ALLEN
SECRETARY OF THE
NEW MEXICO DEPARTMENT OF HEALTH

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

      Plaintiff,

v.

                          Civil Action No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

DECLARATION OF JAMES SPRINGER

     I, James Springer declare:

1.  I am a resident of Torrance County, New Mexico.

2,  I am familiar with the contents of the Complaint and the Renewed Motion for TRO and Preliminary

    Injunction in this matter, and I verify that they are true and correct to the best of my knowledge.

3.  I have been prohibited by the Second Amended Public Health order from lawfully carrying my firearm

    for my and my family's protection for most of the months of September and October at the parks that

    I attend for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in

    Albuquerque during the balloon fiesta.

4.  I also planned to organize and attend a rally in support of the Second Amendment to exercise my First

    Amendment rights by engaging in the expressive conduct of openly carrying a firearm in Civic Plaza

    but have been prohibited from doing so by the SAPHO.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct and is executed this 26th day of October 2023.

                      James Springer

# **<u>EXHIBIT 1</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

     **Plaintiff,**

vs.                            No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

     **Defendants.**

## DEFENDANTS' RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION UNDER THE GOVERNOR'S MOST RECENT ORDERS

     Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"),[1] by and through their counsel of record, hereby submit their Response to Plaintiff's Renewed Motion for Preliminary Injunction Under the Governor's Most Recent Orders (the "Motion") [Doc 10].

### Introduction and Background

     Having only recently emerged from a global pandemic, New Mexico finds itself in the midst of another public health crisis. In 2021, the last year for which complete data is available from the Centers for Disease Control and Prevention, New Mexico's gun death rate was the third highest in the nation.[2] In a single twelve-month period, firearm related emergency room visits

---

[1] The Office of the Governor, named in the caption of Plaintiffs' complaint, is not a legal entity that can sue or be sued.

[2] *See Comprehensive Report on Gunshot Victims Presenting at Hospitals in New Mexico*, at 5, N.M. Dep't of Health (Sept. 28, 2023), https://www.nmhealth.org/publication/view/report/8462/.

increased 77% for males aged 0-13, 115% for females aged 14-17, and 32% for males aged 14-17. *See id.* Since 2017, firearm death rates have increased by 91% for American Indian/Alaska Native residents, 78% for Hispanic residents, and 47% overall. *Id.* Staggeringly, New Mexico's firearm injury death rate is 90% higher than the national average. *Id.*

One need look no further than local news coverage to witness the tragic effects of this crisis. On September 6, 11-year-old Froylan Villegas, along with his mother, baby brother, and cousin were returning home from an evening at the Isotopes game when seventeen bullets tore through their car.[3] At least one of those bullets struck Froylan, killing him; another seriously injured his cousin. *See id.* Unfortunately, this is only one example of how gun violence is destroying the lives of New Mexicans, including children.[4]

Governor Michelle Lujan Grisham has made significant efforts to address gun violence during her term in office, including championing public health and safety legislation, convening task forces, and increasing funding for public safety.[5] But the terrible events described above

---

[3] Alexa Skonieski, *Family, friends grieve 11-year-old shot, killed while leaving Isotopes Park*, KRQE News (Sept. 12, 2023), https://www.krqe.com/news/albuquerque-metro/family-friends-remember-11-year-old-shot-killed-while-leaving-isotopes-park/.

[4] *See, e.g.*, Aliza Chasan, *14-year-old boy, dad arrested after teen allegedly used father's gun to kill teenage girl in New Mexico*, CBS News (July 30, 2023), https://www.cbsnews.com/news/teen-father-arrested-girl-shot-killed-gun-police-assault-questa-new-mexico/; *APD charges 4 teens for drive-by shooting that killed 5-year-old girl*, KOB News (Aug. 21, 2023), https://www.kob.com/new-mexico/apd-charges-4-teens-for-drive-by-shooting-that-killed-5-year-old-girl/; Jessica Salinas, *Albuquerque mom accused of shooting 7-year-old accused in other abuse cases*, KRQE News (Sept. 22, 2023), https://www.krqe.com/news/albuquerque-metro/albuquerque-mom-accused-of-shooting-7-year-old-accused-in-other-abuse-cases/.

[5] *See, e.g.*, Press Release, *Governor delivers over $40 million for new police officers across New Mexico*, Office of Gov. Michelle Lujan Grisham (Sept. 9, 2022), https://www.governor.state.nm.us/2022/09/09/governor-delivers-over-40-million-for-new-police-officers-across-new-mexico/; Press Release, *Gov. Lujan Grisham priority legislation effective today*, Office of Gov. Michelle Lujan Grisham (June 16, 2023), https://www.governor.state.nm.us/2023/06/16/gov-lujan-grisham-priority-legislation-effective-today/; Press Release, *Governor establishes ERPO task force*, Office of Gov. Michelle Lujan

2

deprived the Governor of luxury of time to wait and see these efforts yield results. And so the Governor took more immediate action and issued Executive Orders 2023-130 and 2023-132 invoking her powers under the All Hazard Emergency Management Act (AHEMA), NMSA 1978, §§ 12-10-1 to -10 (2007), and declaring a state of public health emergency due to gun violence and drug abuse pursuant to the Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015).[6]

Shortly thereafter, Department of Health Secretary Patrick Allen issued a public health emergency order imposing broad restrictions on the possession of firearms in cities and counties with high levels of gun violence and implementing various other measures meant to reduce gun violence and drug abuse (the "PHO").[7] Plaintiff and numerous individuals and groups filed federal lawsuits seeking preliminary and permanent injunctive relief to bar enforcement of the PHO, primarily arguing it infringed upon their Second Amendment rights. *See Nat'l Ass'n for Gun Rights v. Lujan Grisham*, 2023 WL 5951940 (D.N.M. Sept. 13, 2023); [Doc. 1]. These cases were all initially assigned to the Honorable David H. Urias. *See id.*; Order on "Expedited Motion" to Recuse [Doc. 7]. However, Judge Urias recused himself from presiding over this case at Plaintiff's request. *See id.*

_____

Grisham (Aug. 26, 2022), https://www.governor.state.nm.us/2022/08/26/governor-establishes-erpo-task-force/.

[6] *Executive Order 2023-130*, Gov. Michelle Lujan Grisham (Sept. 7, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-130-1.pdf;   *Executive Order 2023-132*, Gov. Michelle Lujan Grisham (Sept. 8, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-132.pdf.

[7] *Public Health Order*, N.M. Dep't of Health (Sept. 8, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/090823-PHO-guns-and-drug-abuse.pdf.

On September 13, 2023, Judge Urias granted the other plaintiffs' requests for a temporary restraining order enjoining the Governor and Secretary Allen from enforcing the PHO "to the extent it imposes additional restrictions on the carrying or possession of firearms that were not already in place prior to its issuance." *Nat'l Ass'n for Gun Rights*, 2023 WL 5951940 at *5. Two days later, Secretary Allen amended the PHO to, *inter alia*, remove the broad prohibition on the carrying of firearms in Albuquerque and Bernalillo County and replace it with a narrow provision restricting firearms in public parks, playgrounds, and "other public areas provided for children to play in."[8] On October 5, 2023, the Governor renewed the states of public health emergency pursuant to Section 12-10A-5(D)(2).[9] The following day, Secretary Allen amended the PHO to, among other things, clarify the scope of its firearm restrictions and remove the restriction of firearms in "other public areas provided for children to play in."[10]

The PHO's narrowed restrictions on firearms were again immediately challenged in federal court as violating the Second Amendment. *See We the Patriots, Inc. v. Lujan Grisham*, 2023 WL 6622042 (D.N.M. Oct. 11, 2023). On October 11, 2023, Judge Urias issued a memorandum opinion and order denying a preliminary injunction against the October 6 PHO's restrictions on

---

[8] *Public Health Order*, N.M. Dep't of Health (Sept. 15, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/NMAC-EO-2023-130-132-Amended.pdf.

[9] *Executive Order 2023-135*, Gov. Michelle Lujan Grisham (Oct. 5, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/10/Executive-Order-2023-135.pdf; *Executive Order 2023-136*, Gov. Michelle Lujan Grisham (Oct. 5, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/10/Executive-Order-2023-136.pdf. The Governor most recently renewed the state of public health emergency on November 3, 2023. Although the most recent executive orders have not yet been posted online due to technical issues, they will be posted on the following website next week: https://www.governor.state.nm.us/about-the-governor/executive-orders/.

[10] *Public Health Order*, N.M. Dep't of Health (Oct. 6, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/10/NMAC-PHO-20231006-Amended.pdf.

the possession of firearms in public parks and playgrounds. *See We the Patriots*, 2023 WL 6622042, at *1. With regard to parks, Judge Urias found it "plausible" that the temporary restrictions were consistent with the Nation's historical tradition of firearm regulation given the existence of similar laws in numerous cities and three states from the time period before and following the ratification of the Fourteenth Amendment. *Id.* at **8-9. And with regard to playgrounds, Judge Urias found these spaces analogous to schools, which the United States Supreme Court had recognized were "sensitive places" in which firearms could constitutionally be prohibited. *See id.* at **9-11. Accordingly, Judge Urias held that the plaintiffs failed to meet their burden to demonstrate their challenge to the PHO's temporary restrictions was likely to succeed. *Id.* at *9.

On October 16, 2023, this Court denied Plaintiff's request for an *ex parte* temporary restraining order regarding the original PHO's broad restrictions on the possession of firearms because the restrictions were no longer in effect and Plaintiff had not established facts showing that he had standing to challenge the restrictions on firearms in parks and playgrounds. [Doc. 9 at 1, 4] The Court further observed that Plaintiff had not demonstrated a likelihood of success on the merits as to the operative PHO because "he has not engaged with the historical tradition analysis under *Bruen* by showing that the regulation restricting firearms in playgrounds and certain public parks is inconsistent with the Nation's historical tradition of firearm regulation." [Doc. 9 at 5] Plaintiff subsequently filed the Motion, seeking a preliminary injunction against the PHO's current restrictions on firearms in parks and playgrounds.

The Court should deny the Motion. At the outset, Plaintiff lacks standing to challenge the PHO because he does not specifically allege or assert that he intends to carry firearms in parks or playgrounds going forward, and the City of Albuquerque already prohibits such conduct. Plaintiff

**App. 60**

also fails to demonstrate a substantial likelihood of success on the merits of any challenge to the PHO. Multiple courts have already indicated that the government may constitutionally prohibit firearms in playgrounds, which are analogous to sensitive locations such as schools that the Supreme Court recognizes are excepted from the Second Amendment's commands. The same goes for the temporary restriction on firearms in parks given the tradition of comparable historical regulations. And Plaintiff's First Amendment undeveloped viewpoint discrimination challenge fails for a multitude of reasons. Lastly, Plaintiff cannot demonstrate any form of harm, let alone irreparable harm, stemming from the PHO.

<p align="center">**Argument & Authorities**</p>

**I.      Plaintiff fails to demonstrate standing to enjoin the PHO's restrictions on parks and playgrounds**

Plaintiffs in federal civil actions must demonstrate standing for each form of relief sought. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The "irreducible constitutional minimum" requirements of standing consist of three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant; and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 560-61, 112 S.Ct. 2130 (citations omitted). To demonstrate injury-in-fact in the context of a future or prospective prosecution, a plaintiff must establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Given the unique requirements imposed by *Bruen* that the Court analyze Second Amendment restrictions as to certain and specific places, plaintiffs must establish standing as to each such "place" where regulations apply. *Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 2023 WL 4373260, *5 (D. Md. July 6, 2023); *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 257 (N.D.N.Y. 2022),

<p align="center">6</p>

*reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022); *Koons v. Platkin*, 2023 WL 3478604 (D.N.J. May 16, 2023).

As the Court has noted, neither Plaintiff's complaint nor his initial motion for a temporary restraining order contained sufficient allegations showing that he has standing to challenge the PHO's restrictions on parks and playgrounds in Bernalillo County. [Doc. 9] Plaintiff has now attached an updated declaration to the Motion stating:

> I have been prohibited by the [PHO] from lawfully carrying my firearm . . . for most of the months of September and October at the parks that I attend for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta.

[Doc. 10-2] Importantly, however, Plaintiff fails to assert that he intends to carry a firearm in these locations *going forward*—especially since he lives in an entirely different county. *See* [Doc. 1 ¶ 1] *Antonyuk*, 639 F. Supp. 3d 232, 262 (N.D.N.Y. 2022) (finding a lack of standing for plaintiffs that have previously visited locations in which firearms are prohibited when they did not allege that they intend to visit those locations in the future); *Maryland Shall Issue*, 2023 WL 4373260, at *5 (finding a lack of standing when the plaintiffs did not allege they intended to visit the locations in question with a firearm). Furthermore, Plaintiff fails to allege or assert that he has or will continue to carry firearms in playgrounds. *See generally* Motion; [Doc. 10-2].

Additionally, the City of Albuquerque has issued administrative instructions interpreting New Mexico statutes that prohibit the carrying of deadly weapons (including firearms) on school premises[11] to apply to city neighborhood parks, city sports fields, city pools and their parking lots, Balloon Fiesta Park, and Civic Plaza, along with other enumerated City properties such as

---

[11] *See* NMSA 1978, § 30-7-2.1 (1994); NMSA 1978, § 30-7-2.4 (2003).

7

**App. 62**

community centers, health and social service centers, and senior centers.[12] Thus, enjoining Defendants from enforcing the PHO will not redress Plaintiff's purported injury. *See Valdez v. Lujan Grisham*, 2022 WL 2129071 (10th Cir. 2022) (noting that even if injunction were granted to prohibit enforcement of state vaccine mandate for hospital workers, the plaintiff was still required to be vaccinated under federal law, and thus her "injury . . . is not redressable by enjoining the PHO"). Accordingly, the Court must deny Plaintiff's requested relief for failure to demonstrate standing.

## II. Plaintiff cannot establish that he is entitled to a preliminary injunction

### A. Standard of review

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal quotation marks and citation omitted). To obtain preliminary injunctive relief, plaintiffs must show that "(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). "The third and fourth factors 'merge' when, like here, the government is the opposing party." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020). Because preliminary injunctive relief is an "extraordinary remedy, . . . the right to relief

---

[12] *See AI No. 5-19*, City of Albuquerque (Aug. 16, 2019), https://export.amlegal.com/media/8ffbf7 b40c28f5c233e2316a4dae2a820825b80f/DATAOBJECTS/0-0-0-1765.pdf; *AI No. 5-20*, City of Albuquerque (Aug. 31, 2020), https://export.amlegal.com/media/8ffbf7b40c28f5c233e2316a4dae 2a820825b80f/DATAOBJECTS/0-0-0-1978.pdf. Plaintiff should be aware of this, as his attorney is currently challenging this measure in state court. *See New Mexico Patriots Advocacy Coalition v. Keller*, Case No. D-202-CV-2020-01048 (2nd Jud. Dist. Ct.).

8

must be clear and unequivocal." *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 (10th Cir. 2006). The movant *must* satisfy his or her burden for *each* one of these prerequisites. *See Diné Citizens Against Ruining Our Env't*, 839 F.3d 1276, 1281-82 (10th Cir. 2016).

Further, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit specifically disfavors "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colorado et.al.*, 427 F.3d 1252, 1258-59 (10th Cir. 2005) (internal quotation marks and citation omitted). Therefore, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro Espirita Beneficente Uniao do Vegetal ("O Centro") v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

Plaintiff's requested injunctive relief falls into the category of disfavored injunctions because it would require the Court alter the status quo and force Defendants to affirmatively alter the PHO and the State's enforcement of it. *Cf. ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1003, 1028 (D.N.M. 2021) (noting that the plaintiffs' request "to prohibit Defendants from enforcing all PHOs" required affirmative action and was therefore disfavored). Thus, this Court should closely scrutinize Plaintiffs' request for preliminary injunctive relief and require Plaintiffs to "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms[.]" *O Centro*, 389 F.3d at 975.

9

**App. 64**

**B.**    **Plaintiff cannot demonstrate a strong likelihood of success on the merits**

1.    The PHO is constitutional under *Bruen*

Even if Plaintiff could establish standing to challenge the PHO, he cannot demonstrate that he is likely to succeed in challenging the PHO's restrictions on firearms in parks and playgrounds. In *Bruen*, the United States Supreme Court adopted a new two-part test for Second Amendment claims, in which courts would first ask "whether the Second Amendment's plain text covers an individuals' conduct" and, if so, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. This inquiry considers whether there is "historical precedent" from before, during, and after the enactment of the Second and Fourteenth Amendments that "evinces a comparable tradition of regulation" in a similar manner as the present-day restriction. *Id.* at 2131, 2137-38.

For many modern-day firearm regulations, this analysis will require "reasoning by analogy." *Id.* at 2130, 2132. Two primary metrics are relevant for determining whether a modern regulation is "relevantly similar" to a historical regulation: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'central'" considerations when engaging in an analogical inquiry." *Id.* at 2133. But the Court has made it "clear" that analogical reasoning under the Second Amendment is not "a regulatory straightjacket" and "requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* (internal quotation marks and citations omitted)). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

10

**App. 65**

One category of laws the Supreme Court identified that courts could examine to determine whether modern regulations prohibiting the carry of firearms are constitutionally permissible is "longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id.* (quoting *D.C. v. Heller*, 554 U.S. 570, 626 (2008)). While there were "relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited," the Court was not aware of any disputes regarding the lawfulness of such prohibitions, and therefore "assume[d] it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id.* at 2133. Thus, "courts can use analogies to [these] historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Id.*

Here, the PHO's restriction on carrying firearms in playgrounds is constitutionally permissible because they are analogous to schools—a location which the Supreme Court has specifically deemed to be a "sensitive place" where carrying firearms could be prohibited consistent with the Second Amendment. *See id.* As Judge Urias and other district courts have held, "playgrounds are often associated with schools and therefore the inference that they are sensitive places under *Bruen* is appropriate." *We the Patriots*, 2023 WL 6622042, at *10 (citing *Siegel v. Platkin*, 2023 WL 1103676, at *10 (D.N.J. Jan. 30, 2023)). This is because both locations typically contain a "vulnerable population" that are unable to defend themselves or exercise Second Amendment rights of their own (i.e., children). *See id.*; *see also Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 324 (N.D.N.Y. 2022) (finding that ban on firearms in playgrounds "finds support in those historical analogues prohibiting firearms in schools given that, by their very nature, both places often contain children"), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL

11

19001454 (N.D.N.Y. Dec. 13, 2022); *Maryland Shall Issue*, 2023 WL 4373260, at *9 (finding childcare facilities analogous to schools because and noting that "prohibitions on firearms in both schools and childcare facilities are meant to protect the same or similar vulnerable populations, consisting of students and children"); *Nordyke v. King*, 563 F.3d 439, 459 (9th Cir. 2009), *vacated*, 611 F.3d 1015 (9th Cir. 2010) (noting that "[t]he [Supreme] Court listed schools and government buildings as examples[ of sensitive places], presumably because possessing firearms in such places risks harm to great numbers of defenseless people (e.g., children)"). Accordingly, the PHO's provisions banning firearms possession in playgrounds is constitutional.

The Court should reach the same conclusion with regard to the PHO's restriction of firearms in parks. In *Mayland Shall Issue*, the court addressed this very issue. In determining whether there was a history of restricting firearm possession and carrying in public parks, the court identified dozens of state and local regulations restricting the possession or carry of firearms in public parks or their historical analogues, including firearm bans in parks in the five largest cities in the United States. *Id*. at *11. The court explained: "As to public parks, numerous historical statutes and ordinances from the time period before and following the ratification of the Fourteenth Amendment imposed such restrictions in relation to parks." *Id*. The court identified examples of prohibiting gun carrying in parks in Central Park in New York City and Fairmount Park in Philadelphia, Pennsylvania; as well as parks in Detroit, Michigan; Chicago, Illinois; Saint Paul, Minnesota; Williamsport, Phoenixville, and Reading, Pennsylvania; Boulder, Colorado; Wilmington, Delaware; Trenton, New Jersey; Oakland, California; Staunton, Virginia; and Birmingham, Alabama. *Id*. The court also identified similar statewide laws in Minnesota, Wisconsin, and North Carolina. *Id*. Ultimately, the court concluded, "[t]hese laws which. . . categorically bar the carrying of firearms in parks, demonstrate that there is 'historical precedent'

12

**App. 67**

from before, during, and after the ratification of the Fourteenth Amendment that 'evinces a comparable tradition of regulation' of firearms in parks." *Id.* (quoting *Bruen*, 142 S. Ct. at 2131-32).

In addition to the laws cited by the court in *Mayland Shall Issue*, Defendants point out that New Mexico itself had a law making it "unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any settlements of this Territory" unless they were threatened with imminent danger of an attack on themselves, family or property, 1869 Terr. of N.M. Laws ch. 32, § 1, Arizona prohibited "the carrying of firearms in any 'place where persons are assembled for amusement or for educational or scientific purposes,'" and Oklahoma prohibited firearms in any place "where persons are assembled . . . for amusement, or for educational or scientific purposes." *Antonyuk*, 639 F. Supp. 3d at 323.[13] Texas similarly prohibited firearms in numerous public venues and social gatherings. *See* 1871 Texas Gen. Laws ch. 34, § 1.[14] And Missouri enacted a law in 1883 "prohibiting the carrying of firearms in places where people are assembled for 'educational, literary or social purposes' and 'any other public assemblage of persons met for any lawful purpose.'" *Antonyuk*, 639 F. Supp. 3d at 323. These

---

[13] Although *Bruen* discounted the impact of territorial restrictions on firearms, subsequent research and legal analysis has suggested that because territories were subjected to the Second Amendment well before the Fourteenth Amendment made it applicable to the states, this approach may have been short-sighted. *See Atkinson v. Garland*, 70 F.4th 1018, 1036 (7th Cir. 2023); Andrew Willinger, *The Territories Under Text, History and Tradition*, 101 Wash. U. L. Rev. 1, 13-21 (2023).

[14] The Supreme Court of Texas upheld the law, finding arguments to the contrary "little short of ridiculous." *English v. State*, 35 Tex. 473, 476 (1871). While the Court in *Bruen* declined to rely on this Texas law and the reasoning in *English* because it "'contradict[ed] the overwhelming weight of other evidence regarding the right to keep and bear arms for defense' in public[,]" 142 S. Ct. at 2153 (quoting *Heller*, 554 U.S. at 632), the Court did not speak to its persuasive value in determining whether there is a historical tradition of prohibiting firearms in certain locations such as parks.

13

**App. 68**

broader territorial and state laws buttress the conclusion that a narrower restriction on firearms in parks in New Mexico's most-populated city and county is supported by the historical record.

Significantly, this Court's colleague, Judge Urias, reached the same conclusion as the court in *Mayland Shall Issue* in upholding the PHO's prohibition of firearms in parks in Albuquerque and Bernalillo County. In so holding, Judge Urias recognized that two other district courts reached an opposite conclusion. *See We the Patriots*, 2023 WL 6622042, at **7-8 (citing *Antonyuk*, 639 F. Supp. 3d 232, and *Koons*, 2023 WL 3478604).[15] However, Judge Urias observed, the *Antonyuk* court discounted the myriad local ordinances—which it found arguably "support a historical tradition of banning firearms in public parks in a city (where the population density is generally higher)"—because it was examining a law prohibiting firearms in parks throughout the state (unlike the PHO here). *Antonyuk*, 639 F. Supp. 3d at 325; *see We the Patriots*, 2023 WL 6622042, at *8. And while the *Koons* court acknowledged there were "many laws—mostly local ordinances—from the 19th and 20th centuries restricting firearms at parks," the court ignored many of the laws it deemed too far removed from 1868 and found the remaining laws insufficient

---

[15] Although Judge Urias did not discuss it, he was also aware that a district court in Hawaii rejected the Maryland district court's conclusion simply because some of the laws were enacted after the ratification of the 14th Amendment. *See Wolford v. Lopez*, 2023 WL 5043805, at *23 (D. Haw. Aug. 8, 2023). But *Bruen* does not require courts to ignore laws passed after 1868—especially when they were passed shortly after that time and do not contradict earlier evidence. *See* 142 S. Ct. at 2154 & n.28; *accord Vincent v. Garland*, 80 F.4th 1197, 1203 (10th Cir. 2023) (stating that the court will consider "the interpretation of the Second Amendment from its ratification *through the end of the nineteenth century*" (emphasis added)); *Antonyuk*, 639 F. Supp. 3d at 255 n.4 (recognizing that laws from the "decades" immediately before and after 1791 and 1868 are probative because they "are the approximate periods in which there lived the state and federal legislators who ratified the Second and Fourteenth Amendments by a three-fourths majority as well as the people who chose those legislators, and thus the laws from those time periods tend to shed more light on the public understanding of the plain meaning of the words 'keep and bear arms' in 1791 and 1868"). The Hawaii district court's opinion also suffered from the same flaws discussed below with regard to *Antonyuk* and *Koons*.

**App. 69**

simply because "they governed less than 10% of the nation's entire population." *Koons*, 2023 WL 3478604, at **82-85).[16] But this refusal to consider many of these laws and the overly simplistic conclusion based on population alone finds little to no support in *Bruen*.[17]

Ultimately, Judge Urias concluded, "[w]hen all of the laws and ordinances cited by *Antonyuk*, *Koons*, and *Maryland Shall Issue* are combined and tallied, it appears plausible, although not certain, that Defendants may be able to demonstrate a national historical tradition of firearm restrictions at public parks within cities." *We the Patriots*, 2023 WL 6622042, at *9. Thus, the plaintiffs failed to demonstrate that their right to a preliminary injunction was "clear and unequivocal." *Id.* (quoting *Diné Citizens*, 839 F.3d at 1281).

Respectfully, the Court should reach the same conclusion as Judge Urias given the extraordinary standard that applies to preliminary injunctions. Moreover, another district court judge has reached the same conclusion as the one in *Maryland Shall Issue. See Kipke v. Moore*, 2023 WL 6381503, at **9-10 (D. Md. Sept. 29, 2023). On the other hand, the *Antonyuk* and *Koons* decisions have been stayed pending appeal—indicating that the Second and Third Circuits disagree with their conclusions. *See Antonyuk v. Hochul*, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022)

---

[16] The *Koons* court also erroneously discounted these laws because there were no colonial era laws prohibiting firearms in parks. *See* 2023 WL 3478604, at **82-84. This is historically incorrect, as "parks around 1791 were not comparable to modern parks." *Wolford*, 2023 WL 5043805, at *21. There were no modern-style parks at the time of the Founding Era. "Parks" such as Boston Common, were used primarily as a pasture, a place for public executions, and a site for the militia to muster and drill. *See* Steven R. Pendery, *Probing the Boston Common*, 43 Archaeology 42-47 (1990); Suzanne Scheld *et al.*, *Rethinking Urban Parks: Public Space and Cultural Diversity*, 19-20 (2009); Michael Rawson, *Eden On The Charles: The Making Of Boston*, 73 (2014). Notably, in Colonial Massachusetts, militia members were prohibited from coming to muster with a loaded firearm. *See Records of The Governor and Company Of The Massachusetts Bay In New England*, 98 (1853); 1866 Mass. Acts 197, An Act Concerning the Militia, § 120.

[17] *See supra* note 15; Andrew Willinger, *Litigation Update: Antonyuk Round 3; Judge Grants Preliminary Injunction of Large Portions of New York's Post-Bruen Law*, Duke Ctr. For Firearms L. (Nov. 18, 2022), https://firearmslaw.duke.edu/2022/11/litigation-update-antonyuk-round-3-judge-grants-preliminary-injunction-of-large-portions-of-new-yorks-post-bruen-law/.

(granting stay of preliminary injunction after having "weighed the applicable factors" (citing *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007); Order, *Koons v. Att'y Gen. of N.J.*, No. 2023-CV-16164 (3d Cir. June 20, 2023) (granting stay of preliminary injunction against restriction on firearms in parks "because the applicable factors warrant such a stay" (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). Simply put, the current post-*Bruen* case law strongly suggests Plaintiff will not ultimately prevail on the merits of his Second Amendment challenge.

Plaintiff gives this Court no reason to conclude otherwise. Plaintiff relies exclusively on a pre-*Bruen* Idaho district court opinion holding that an Army Corps. of Engineers regulation prohibiting firearms at dams and the surrounding recreation areas violated the Second Amendment simply because it "banned" firearms rather than "regulating" them. *See Morris v. U.S. Army Corps of Engineers*, 60 F. Supp. 3d 1120, 1123 (D. Idaho 2014); Motion at 5. However, this regulation did not address the same sort of "parks" in urban areas that are covered by the PHO. Moreover, the then-binding Ninth Circuit precedent that the district court relied on for this conclusion was subsequently vacated and replaced with a significantly different en banc opinion. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1325 n.5 (11th Cir. 2015) (declining to rely on *Morris* and noting this fact); *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 921 (9th Cir. 2016) (en banc). And finally, the *Morris* court did not engage in *Bruen*'s historical analysis (which does not revolve on whether a law completely "bans" or simply "regulates" firearms), so its holding has no application here.

2.      The PHO does not violate the First Amendment

Plaintiff next argues that the PHO somehow violates his First Amendment rights. *See* Motion at 6-7. However, Plaintiff does not try to explain exactly how this is so. *See id.* To the

extent Plaintiff ties this argument to his desire to attend protests in Civic Plaza, *see* Motion at 3, this is a moot point because the PHO no longer covers this forum. Regardless, many courts have held that "gun possession alone is unlikely to convey a particular message that would be understood by those who witnessed it" and is therefore not protected by the First Amendment. *Chesney v. City of Jackson*, 171 F. Supp. 3d 605, 617 (E.D. Mich. 2016) (collecting cases). Thus, the Court should reject Plaintiff's First Amendment claim given his failure to explain how the First Amendment applies to his conduct going forward. *See Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1147 (10th Cir. 2020) ("Plaintiffs had the initial burden of showing that the First Amendment applies to their conduct.").

Assuming, *arguendo*, Plaintiff *could* show that the First Amendment applies to gun possession in certain instances, such as attending a pro-gun rally, Plaintiff's facial challenge to the PHO's prohibition of firearms in parks and playgrounds in all instances fails because the vast majority of its application does not chill any speech. *See Rio Grande Found. v. City of Santa Fe*, 437 F. Supp. 3d 1051, 1074 (D.N.M. 2020). Nor can Plaintiff show how the PHO's prohibition on firearms in parks and playgrounds constitutes viewpoint discrimination (the only First Amendment basis Plaintiff presents in his complaint) as applied to pro-gun rallies because the prohibition applies equally to firearms at anti-gun demonstrations (e.g., burning or destroying guns) in those locations and there is no evidence that Defendants enacted the restrictions *because of* Plaintiff's speech. *See Pahls v. Thomas*, 718 F.3d 1210, 1230-31 (10th Cir. 2013) ("[F]or plaintiffs to prevail as to each defendant, they must show that the defendant's individual actions caused viewpoint discrimination to occur, and that those actions were taken because of, not merely in spite of, plaintiffs' anti-Bush message." (alterations, internal quotation marks. and citation omitted); *United States v. Durango & Silverton Narrow Gauge R.R. Co.*, 2020 WL 9432882, at *1 (D. Colo. July

**App. 72**

14, 2020) (stating that "a motion for preliminary injunctive relief presupposes a claim to which that request is tethered").[18]

In short, Plaintiff has failed to demonstrate he is likely to succeed on the merits of his First Amendment claim. Because Plaintiff cannot establish that he is likely to succeed in challenging the PHO's provisions on any constitutional basis, the Motion must be denied. *See Diné Citizens*, 839 F.3d at 1281-82.

## C. Plaintiff cannot demonstrate any harm, much less *irreparable* harm

The Court should also deny the Motion for failure to establish an injury, let alone an *irreparable* one. As discussed earlier, the City of Albuquerque already prohibits Plaintiff from carrying a firearm in parks and playgrounds. *See* discussion *supra* Section I. Thus, Plaintiff cannot demonstrate that he will be injured *at all* by enforcement of the PHO. And even if the City of Albuquerque did not already prohibit firearms in parks and playgrounds, Plaintiff cannot demonstrate any *irreparable* harm. Plaintiff's "harm" of not being able to protect his family while at parks and playgrounds without his gun depends on unsupported speculation that they will be attacked while at those locations. This is insufficient. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." (internal quotation marks and citation omitted)). And Plaintiff's failure to demonstrate a substantial likelihood of success on the merits of his claims means he cannot demonstrate irreparable harm based on the purported loss of his constitutional rights. *See Logan v. Pub. Emps. Ret. Ass'n*, 163 F. Supp. 3d 1007, 1030 (D.N.M. 2016) ("[A] plaintiff who cannot

---

[18] Even if this as-applied claim *did* have merit, Plaintiff does not have standing to enjoin the PHO as applied to pro-gun rallies or protests because he has not asserted that he has concrete plans on attending rallies at a park covered by the PHO. *See generally* Motion; *Antonyuk*, 639 F. Supp. 3d at 289 (rejecting standing because the plaintiff "does not assert a concrete intention to attend a 'pro-gun' rally armed in the immediate future").

demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm." (citing *Schrier*, 427 F.3d at 1266)). Therefore, the Motion must be denied. *See Diné Citizens*, 839 F.3d at 1281-82.

<u>**Conclusion**</u>

For the foregoing reasons, the Court should deny Plaintiff's request for a preliminary injunction.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

19

**App. 74**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 9, 2023, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Cody R. Rogers*
Holly Agajanian

20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

        Plaintiff,

v.

                                 Civil Action No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

        Defendants.

## REPLY IN SUPPORT OF *RENEWED* MOTION FOR PRELIMINARY INJUNCTION UNDER THE GOVERNOR'S MOST RECENT ORDERS

COMES NOW Plaintiff by and through his undersigned counsel of record, and respectfully offers his reply in support of his renewed motion for a Preliminary Injunction addressing the October 6, 2023, Public Health Order, and for his reasons states:

### INTRODUCTION

It is intriguing to observe the contortions of anti-Second Amendment politicians as they attempt to justify disarming law-abiding citizens. They must of course ignore the obvious realities concerning the data that these policies do not actually have any track record of delivering the desired compelling government interest in curbing gun violence.[1] And, again without providing any evidence that making schools gun free sensitive zones has reduced gun violence against children, they continue to preach about this being about protecting children, like we do in a closed environment of schools versus in a park or playground wide open to any criminal, while ignoring the obvious and severe risk of harm that this places on law-abiding parents of not being able to protect those children from the enhanced risks in

---

[1] https://www.rand.org/research/gun-policy/analysis/gun-free-zones.html

1

Bernalillo County.  A more circular and disingenuous argument is hard to comprehend, unless the Court considers the real goal of the Defendants – *a gun free country* where law abiding citizens are disarmed.

In keeping with this circularity, Defendants make an argument about Mr. Springer's standing that requires little analysis to find to be utterly lacking in merit.  They acknowledge that Mr. Springer has suffered an injury previously, but defying logic argue that Mr. Springer, who has filed a lawsuit, provided two declarations discussing that he has *previously carried* in Albuquerque and has asked for an injunction against the SAPHO so that he can carry in Albuquerque in the future without fear of criminal penalty has not alleged that he intends to return to Albuquerque's parks and playgrounds *in the future*.

All told, the Response of the Defendants asks this Court to ignore the obvious favorably cited precedent and secondary sources from *Bruen* in favor of weighing in ideologically with Judge Urias in *We the Patriots* and the Maryland District Court in *Maryland Shall Issue*. The Response asks the Court to analogize that parks and playgrounds are like schools simply because a vulnerable population is present and then to ignore that with none of other safeguards in place for these sensitive areas, such as security guards, fencing, locked doors and limited avenues for entrance, that the children will be better protected from a criminal carrying a gun intending or willing to do harm by disarming their parents. A more nonsensical analogy cannot be achieved which is likely why the *Bruen* court did not even begin to buy it when New York advanced those type of arguments.

Finally and tellingly, the Defendants dance around the attempt by Albuquerque to engage in the regulation of the carrying of firearms in parks and playgrounds (like Civic Plaza where the City of Albuquerque installed playground equipment as the Defendants very well

**App. 77**

know) as being dispositive of a lack of injury because it is already prohibited, but, also, as the Defendants know the New Mexico Constitution is very clear that "[n]o municipality or county shall regulate, *in any way*, an incident of the right to keep and bear arms." N.M. Const. art. II, § 6.  If the City of Albuquerque's regulation from 2019[2] and 2020[3] were constitutionally valid and effective at achieving the same stated goal of the Defendants to curb gun violence, then surely between 2019 and the issuance of the SAPHO, gun violence should have diminished, making the actions of the Defendants wholly redundant.

## ARGUMENT

**I.      Plaintiffs are Likely to Succeed on the Merits.**

*A.   Schools are Not a Proper Analogue to Playgrounds and Parks*

As this Court has noted, in *Bruen,* the United States Supreme Court has adopted a two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct." If it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only *if the government* makes such a showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*  As the Supreme Court also noted, it is Plaintiff's burden to demonstrate a likelihood that the Government's regulation is inconsistent with the Nation's historical tradition of firearm regulation.

As was noted in the Motion, but bearing repeating here, the Supreme Court's rejection of New York's argument regarding sensitive places lays out that where New York viewed:

---

[2] *See* EX 1 attached hereto
[3] *See* EX 2 attached hereto

**App. 78**

"sensitive places" where the government may lawfully disarm law-abiding citizens [to] include all "places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available." Brief for Respondents 34. It is true that people sometimes congregate in "sensitive places," and it is likewise true that law enforcement professionals are usually presumptively available in those locations. But expanding the category of **"sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly.** Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense that we discuss in detail below.

*Bruen* at 2133–34 (emphasis added).   In essence, Defendants argue in their Response for a corollary expansion nearly identical to what New York argued in *Bruen,* that anywhere children congregate as a vulnerable population can be made into a sensitive place.  This is essentially same argument that the Maryland District Court accepted and agreed with to find there was no reason to distinguish between public and private schools, as well as between levels of schools from daycare to college in *Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, 2023 WL 4373260, at *9 (D. Md. July 6, 2023).  But, here, different from *Maryland Shall Issue*, and more in line with the *Bruen* analysis noted above, there is not a homogenous population of children or young adults present for learning at the parks and playgrounds with access limited for the rest of the adult population so the analogy Defendants make applying *Bruen* must fail.

Again, the Supreme Court in *Bruen* also cited favorably D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018) which supports that the SAPHO's *ban* on the carrying of firearms in public parks and playgrounds is outside of the historical tradition of firearm regulation.  Importantly, Kopel and Greenlee's research supports that "*Heller's* mention of 'longstanding' laws against carrying guns in 'schools' or 'government buildings' has modest support in history and tradition. As of the 1930s, several states had broad laws against guns in schools. A larger number of states had laws against arms at polling places.

But these were the minority approach. Widespread bans on arms in government buildings or schools came in the later part of the twentieth century." *Id.* at 263.

And again, if schools are not the proper analogue, then this Court applying *Bruen* should use the correct one. Playgrounds and parks, in this regard, have much more in common with the recreation area in *Morris v. U.S. Army Corps of Eng'rs*, 60 F. Supp. 3d 1120 (D. Idaho 2014) where children and families intermingle with other members of the public in an unrestricted fashion for leisure rather than learning in schools. And perhaps, more applicable from the favorably cited Kopel & Greenlee, is the Illinois Supreme Court's decision which finds that there is no applicable analogue that Defendants here can make for parks and playgrounds stating:

> In sum, based on the record, the State provides no evidentiary support for its claims that prohibiting firearms within 1000 feet of a public park would reduce the risks it identifies. Without specific data or other meaningful evidence, we see no direct correlation between the information the State provides and its assertion that a 1000–foot firearm ban around a public park protects children, as well as other vulnerable persons, from firearm violence. The State merely speculates that the proximity of firearms within 1000 feet threatens the health and safety of those in the public park. The lack of a valid explanation for how the law actually achieves its goal of protecting children and vulnerable populations from gun violence amounts to a failure by the State to justify the restriction on gun possession within 1000 feet of a public park.

*People v. Chairez*, 2018 IL 121417, ¶ 54, 104 N.E.3d 1158, 1176. Importantly, the Illinois Supreme Court was considering and made its decision based upon *Heller* just as the *Bruen* court did in rejecting the New York argument that Defendants seek to make here. Quite simply, Judge Urias and the other District Courts cited by Defendants are engaged in an ideological two-step to try to avoid the obviously correct application of *Bruen* that parks and playgrounds are *not* capable of satisfying the historical requirements to be considered a sensitive place where firearms can be banned here and, thus, Plaintiff is substantially likely to succeed on the merits.

**App. 80**

**B.**  **The SAPHO Bans the Carrying of Firearms in Playgrounds and Parks for <u>All</u> Reasons, Which Includes for the Purpose of Engaging in Protest in Traditional Public Forums**

While it is true that the regulation bans the *possession, either open or concealed*, in parks or playgrounds, it doesn't contemplate persons dispossessing firearms by burning or destroying them in protest at a public park.  In this regard, the Defendants argument is a bit disingenuous because it is clear that the purpose of the regulation serves to limit speech either for or against from a traditional public forum.  This type of argument that the speech is not viewpoint discrimination just because both sides of the debate are restricted has been rejected by Supreme Court stating that "[a]s we have explained, a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 171, 135 S. Ct. 2218, 2231, 192 L. Ed. 2d 236 (2015). Just because the challenged law discriminates to stop both sides of the argument from speaking on a particular topic does not mean that both sides are not also subjected to viewpoint discrimination based upon an unconstitutional content-based restriction.  Thus, whether it is the person that wants to openly carry firearms as expressive conduct in favor of the continuation of the right or the person that wants to burn guns in support of abolishing the right, a constitutional injury has occurred causing irreparable harm and where the persons are substantially likely to succeed on the merits because there is no evidence that restricting this speech at protests or rallies on the basis of the content will withstand strict scrutiny to find that it achieves a compelling government interest.

Thus, because the ban is not narrowly tailored so as to not infringe upon expressive speech in a public forum, but instead bans firearms for *all* purposes including for the purposes of engaging in protected speech, Plaintiff should be granted an injunction allowing for his expressive speech in these traditional public forums.

**App. 81**

**C.     The Argument that Plaintiff's Harm is Not Irreparable Harm Just Because it is Speculative is Disingenuous**

"The loss of [constitutional] freedoms, *for even minimal periods of time*, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (emphasis added); Banning Plaintiff from carrying arms for his and his family's protection at public parks and playground in the dangerous city of Albuquerque represents an unquestionable loss of that liberty interest, and the SAPHO's conversion of traditional public forums such as Civic Plaza, unquestionably deprives him of his ability to speak freely and publish in the press based upon the content of the speech he wishes to engage in a traditional public forum. There is no adequate legal remedy for these "intangible harms." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1210 (D. Utah 2014) ("Rather, the court looks to intangible harms that are difficult to quantify when it determines whether irreparable harm warrants a preliminary injunction). Moreover, deprivation of constitutionally protected rights—including the rights to due process and equal protection— inexorably creates irreparable harm. *See Elrod v. Burns* 427 U.S. 347, 373 (1976).; *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citations omitted).

Here, Defendants' argument for taking away fundamental liberty is based upon rank unsubstantiated speculation that banning firearms at playgrounds and parks will curb gun violence at those locations, but such a premise is troubling. It is the responsibility of the government to prove that the stripping away of freedoms is warranted, not the individual to prove that they are likely to have one of their children die if the government takes away firearms that they would have been used in defense of that child's life from a criminal that will disregard this particular law just

**App. 82**

as they do other laws prohibiting violence against the child.  The sheer audacity of telling law-abiding parents that they are not allowed to protect their children from violence because the government speculates that banning firearms from places where the adult public and children both congregate without restriction will reduce gun violence simply cannot be overstated.

## **CONCLUSION**

This Court should protect children and their families by protecting the rights of law-abiding parents to protect their children in a very dangerous city and for all the foregoing reasons, Plaintiffs respectfully request this Court grant an issue a preliminary injunction without further evidentiary hearing, which Plaintiff offers is not necessary.

Respectfully submitted this 13th day of November 2023.

WESTERN AGRICULTURE, RESOURCE
AND BUSINESS ADVOCATES, LLP

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
Jared R. Vander Dussen, Esq.
400 Gold Ave SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060
abdunn@ablairdunn-esq.com
warba.llp.jared@gmail.com


Zach Cook, LLC

*/s/ Zach Cook*
Zach Cook
1202 Sudderth # 425
Ruidoso, NM 88345
(575) 937-7644
zach@zachcook.com

8

**App. 83**

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.

**App. 84**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————————

JAMES SPRINGER,

        Plaintiff,

    v.                                   No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Plaintiff's Renewed Motion for Preliminary Injunction under the Governor's Most Recent Orders **(Doc. 10)**.  Plaintiff requests the Court partially preliminarily enjoin Defendants' Second Amended Public Health Order, to the extent it restricts his right to carry a firearm in public parks and playgrounds within Bernalillo County and Albuquerque, New Mexico. The issue must be resolved based on the new test set forth by the Supreme Court of the United States in *Bruen. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Defendants have not satisfied the test set forth in *Bruen* at this stage, as they have not demonstrated a historical tradition of prohibiting the carrying of firearms in public parks. The Court therefore enters a preliminary injunction enjoining the public health order to the extent it prohibits carrying firearms in public parks in Bernalillo County and Albuquerque, New Mexico.

However, the Court declines to enjoin the public health order to the extent it prohibits firearms in playgrounds.  Plaintiff has not demonstrated standing to enjoin the firearm restrictions

in playgrounds.  Even if he had, the Government has demonstrated that playgrounds are analogous to "sensitive places" where there is a longstanding history of firearm regulation. For these reasons, and as set forth in more detail below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

<div align="center">

**BACKGROUND**

</div>

The Governor issued an executive order declaring a state of public health emergency due to gun violence.  Doc. 1, Ex. 2, Governor's Executive Order 2023-130, Declaring State of Public Health Emergency Due to Gun Violence, September 7, 2023.  Subsequently, the Department of Health Secretary Patrick Allen issued a public health order imposing restrictions on the possession of firearms.  *See* Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, Doc. 1, Ex. 1.  Those restrictions have been narrowed following rulings in related cases in this district.

Plaintiff challenges certain portions of the public health order currently in effect, the Second Amended Public Health Order, which in part temporarily restricts the right to carry firearms in certain public parks and playgrounds in Bernalillo County, New Mexico and Albuquerque, New Mexico.  *See* Doc. 10, Ex. 1, Second Amended Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, November 8, 2023.  That public health order was issued by the Secretary of the New Mexico Department of Health, Defendant Patrick Allen. The Governor also issued renewed executive orders extending the public health emergency due to gun violence.

The Second Amended Public Health Order currently in effect is narrower than prior orders. In relevant part, the current order states that no individual, aside from law enforcement officers, licensed security officers, and certain others, may carry firearms in public parks or playgrounds.

<div align="center">

2

</div>

*Id.* This temporary restriction does not apply to Albuquerque's Shooting Range Park, state parks, or areas owned by the New Mexico Energy, Minerals and Natural Resources Department, State Parks Division, or the State Land Office.  *Id.*  The Second Amended Public Health Order clarifies that the firearm restrictions apply to Bernalillo County and the City of Albuquerque.  It also has several provisions unrelated to the right to bear firearms.

The relevant portion of the Second Amended Public Health Order the Plaintiff seeks to preliminarily enjoin is as follows:

> (1) No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office

Doc. 10-1, Ex. 1, at 2.  This temporary restriction is in effect through the duration of the public health emergency declared in the Governor's executive orders.  Doc. 10-1, Ex. 1, at 3.   On December 1, 2023, the Executive Order declaring a public health emergency was extended through December 1, 2023.  *See* Doc. 18; Executive Order 2023-144 Renewing State of Public Health Emergency Due to Gun Violence, https://www.sos.nm.gov/legislation-and-lobbying/executive-orders (last accessed December 5, 2023).

## LEGAL STANDARD

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). "A preliminary injunction is

3

**App. 87**

an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)).   "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir. 2012) (citations omitted).

To obtain a preliminary injunction or temporary restraining order, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

## DISCUSSION

### I.   <u>A heightened preliminary injunction standard does not apply here.</u>

Defendants suggest that Plaintiff must satisfy a heightened standard to obtain a preliminary injunction in this case, because an injunction would alter the status quo.  The Court disagrees.  The Tenth Circuit has described the heightened standard as follows:

> [C]ourts "disfavor" some preliminary injunctions and so require more of the parties who request them. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial. *Id.* Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. *Awad*, 670 F.3d at 1125 (citing *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1048–49 (10th Cir. 2007)); *see also Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997) (explaining that an injunction is "mandatory" if "its terms would alter, rather than preserve, the status quo by commanding some positive act"). To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms

factors: She must make a "strong showing" that these tilt in her favor. *Fish*, 840 F.3d at 724 (quoting *Beltronics*, 562 F.3d at 1071).

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019).

The Court is not convinced that any of the above circumstances apply here to warrant a heightened standard.  The Tenth Circuit reasoned that preliminarily enjoining an unconstitutional law would not alter the status quo, as the last peaceable uncontested status was *before* the alleged unconstitutional law was enacted.  *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (reasoning that the "status quo," the "last peaceable uncontested status existing between the parties before the dispute developed" was *before* the unconstitutional law was enacted). Similarly here, Plaintiff seeks to enjoin an allegedly unconstitutional restriction on his Second Amendment right to bear arms.  Plaintiff does not request all relief be granted; moreover the preliminary injunction can be undone if Defendants prevail at trial.  *Id.* at 798 n.3.

Therefore, a heightened standard does not apply here.  Nevertheless, the Court finds that Plaintiff satisfies even the heightened standard as to his request to enjoin the restriction on carrying firearms in public parks, as explained below.

**II.**     **Standing for preliminary injunctive relief.**

Defendants assert that Plaintiff has not established standing for preliminary injunctive relief.  The Court agrees in part and concludes that Plaintiff (1) has established standing to challenge the public health order's restriction on carrying firearms in public parks, (2) but lacks standing to challenge the restriction on carrying firearms in playgrounds.

To demonstrate standing, Plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L.

Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-

1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Here, this means that Plaintiff must demonstrate

standing to challenge the restrictions on carrying firearms in both public parks and playgrounds.

*See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 185, 120

S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each

form of relief sought").

    At issue here is whether Plaintiff has demonstrated an injury-in-fact. "[A] plaintiff satisfies

the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct

arguably affected with a constitutional interest, but proscribed by a statute, and there exists a

credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-

59, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S.

289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Defendants assert that Plaintiff has failed to

assert an injury-in-fact, as he does not state he desires to carry firearms in parks and playgrounds

in the future.

    Plaintiff filed a declaration in support of standing. He asserts that:

> 3.    I have been prohibited by the Second Amended Public Health order from
> lawfully carrying my firearm for my and my family's protection for most of the
> months of September and October at the parks that I attend for non-scholastic youth
> sporting events or just to enjoy the beautiful fall weather in Albuquerque during the
> balloon fiesta.
>
> 4.    I also planned to organize and attend a rally in support of the Second
> Amendment to exercise my First Amendment rights by engaging in the expressive
> conduct of openly carrying a firearm in Civic Plaza but also have been prohibited
> from doing so by the SAPHO.

**Doc. 10-2, Exhibit 2, at 1.** Moreover, in his verified Motion, he asserts that he "has children that

participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been

forced [sic] to attend several of those parks without the benefit of firearms for his own personal

defense, or for the defense of his family in the drug and violence riddled city of Albuquerque."
**Doc. 10 at 2.**

Here, Plaintiff clearly asserts that the public health order prevents him from carrying firearms in public parks, and that he intends to carry firearms in public parks in Albuquerque or Bernalillo County.

However, Plaintiff does not assert that he has ever, or intends to, carry firearms in playgrounds. Each youth activity identified by Plaintiff takes place in a park. Therefore, Plaintiff has not demonstrated an injury stemming from the public health order's restriction on carrying firearms in playgrounds.

Defendants summarily assert that Plaintiff's asserted injury is not redressable as there is a separate restriction on carrying firearms in parks in Albuquerque. According to Defendants, the City of Albuquerque has administratively interpreted state law prohibiting the carrying of firearms on school property to include a wide range of city property, including parks. **Doc. 15 at 7.** That restriction is subject to a separate lawsuit in state court. The Court finds this point to be undeveloped in the briefing and insufficient to place the issue before the Court. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). For example, it is unclear whether the threat of prosecution in the other case is credible. Even assuming Defendants' redressability argument were properly developed, Defendants do not allege that the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque. Moreover, an injunction would eliminate the threat of being prosecuted under the public health order, which would redress Plaintiff's injury. Finally, Defendants' argument in their response that a separate firearm ban was already in place appears to contradict the Public Health Order and Executive

**App. 91**

Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence.  In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks. Therefore, it appears an injunction would still redress Plaintiff's injury, with respect to the firearm ban in public parks.

Finally, Plaintiff has not established standing with respect to his First Amendment claim. In its prior order denying Plaintiff's first motion, the Court directed Plaintiff to establish standing. *See* Doc. 9.  In his motion and reply, Plaintiff does not establish standing for his First Amendment claim, or state which standing test applies to his First Amendment claim.  *See, e.g., Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 974–75 (10th Cir. 2020) (setting forth a test for standing for First Amendment claim).  Moreover, Defendants assert that the public health order currently in effect does not restrict carrying firearms in Civic Plaza, where Plaintiff seeks to hold his rally.  **Doc. 15 at 17**.

In sum, Plaintiff has established standing to challenge the restriction on carrying firearms in public parks, as he has demonstrated that he intends to engage in a course of action where there exists a credible threat of prosecution.  However, Plaintiff has not established standing as to his First Amendment claim or to enjoin the restriction on carrying firearms in playgrounds.

**III.** **Plaintiff has demonstrated a likelihood of success on the merits of his Second Amendment claim challenging the restriction on carrying firearms in public parks, but not as to carrying firearms in playgrounds.**

**A.** **Defendants have not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues.**

As explained below, Plaintiff has shown a likelihood of success on the merits as to his Second Amendment claim challenging firearm restrictions in public parks, as Defendants have

failed to carry their burden to show a historical tradition of banning firearms in public parks or their historical analogues.

The Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Association, Inc. v. Bruen*, __U.S. __, 142 S.Ct. 2111, 2122, 213 L.Ed.2d 387 (2022).  In *Bruen,* the United States Supreme Court adopted a new two-step test to determine whether a restriction violates the Second Amendment.  *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct."  *Id.* at 2130.  In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such as showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."  *Id.*

As to the first step, Defendants do not appear to dispute that the Second Amendment's plain text covers an ordinary, law-abiding citizen's right to carry firearms outside the home for his or her own defense. *Bruen*, 142 S. Ct at 2133-35.  Rather, they appear to focus on the second step. The Court will do the same.

As to the second step, Defendants have failed to carry their burden of demonstrating a historical tradition of firearm regulation in public parks.  The burden on the merits in a preliminary injunction proceeding tracks the burden at trial.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government.  *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct.").  Therefore, Defendants bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020). District courts "are thus entitled to decide a case based on the historical record compiled by the parties."  *Bruen*, 142 S. Ct. at 2130 n.6.  A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

In analyzing the government's proffered historical evidence, the Court must keep in mind that "constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783, *quoted in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022).  But "the Second Amendment's historically fixed meaning applies to new circumstances ...." *Bruen*, 142

10

S.Ct. at 2132. This task "will often involve reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar." *Id*. (citation and internal quotation marks omitted).   In assessing whether regulations are "relevantly similar under the Second Amendment," courts should look "toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132–33. But, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*. (emphases in *Bruen*).

Here, Defendants provide the Court with no evidence attached to its response, in declaration or any other evidentiary form.  Rather, Defendants point to two separate categories of citations: (1) citations to regulations identified in a district court case, *Maryland Shall Issue* and (2) western territorial laws.  *See* **Doc. 15 at 12**, *citing Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11-12 (D. Md. July 6, 2023); **Doc. 15 at 13** (citing western territorial laws).  As explained below, these citations do not satisfy Defendants' burden of pointing to a historical tradition of firearm regulation in public parks or their historical analogues.

The *Maryland Shall Issue* decision cited to the following laws or regulations restricting firearms in public parks:

> *see* First Annual Report on the Improvement of the Central Park, New York at 106 (**1857**), Opp'n Ex. 13, ECF No. 59-17; an 1870 law enacted by the Commonwealth of Pennsylvania stating that "[n]o persons shall carry fire-arms" in Fairmount Park in Philadelphia, Pennsylvania, *see* Acts of Assembly Relating to Fairmount Park at

11

**App. 95**

18, § 21.II (**1870**), Opp'n Ex. 20, ECF No. 59-24; an 1895 Michigan state law providing that "No person shall fire or discharge any gun or pistol or carry firearms, or throw stones or other missiles" within a park in the City of Detroit, *see* **1895** Mich. Local Acts at 596, § 44, Opp'n Ex. 43, ECF No. 59-47; and a **1905** ordinance in Chicago, Illinois stating that "all persons are forbidden to carry firearms or to throw stones or other missiles within any of the Parks ... of the City," **1905** Chi. Revised Mun. Code, ch. XLV, art. I, § 1562, Opp'n Ex. 49, ECF No. 59-53. Similar restrictions were enacted to bar the carrying of firearms in (I) Saint Paul, Minnesota, *see* Annual Reports of the City Officers and City Boards of the City of Saint Paul at 689 (**1888**), Opp'n Ex. 32, ECF No. 59-36; (2) Williamsport, Pennsylvania, *see* **1891** Williamsport, Pa. Laws and Ordinances at 141, § 1, Opp'n Ex. 37, ECF No. 59-41; (3) Wilmington, Delaware, *see* **1893** Wilmington, Del. Charter, Part VII, § 7, Opp'n Ex. 39, ECF No. 59-43; (4) Reading, Pennsylvania, *see* A Digest of the Laws and Ordinances for the Government of the Municipal Corporation of the City of Reading, Pennsylvania at 240, § 20(8) (**1897**), Opp'n Ex. 44, ECF No. 59-48; (5) Boulder, Colorado, *see* **1899** Boulder, Colo. Revised Ordinances at 157, § 511, Opp'n Ex. 45, ECF No. 59-49; (6) Trenton, New Jersey, *see* **1903** Trenton, N.J. Charter and Ordinances at 390, Opp'n Ex. 48, ECF No. 59-52; (7) Phoenixville, Pennsylvania, *see* A Digest of the Ordinances of Town Council of the Borough of Phoenixville at 135, § 1 (**1906**), Opp'n Ex. 52, ECF No. 59-56; (8) Oakland, California, *see* **1909** Oakland, Cal. Gen. Mun. Ordinances at 15, § 9, Opp'n Ex. 53, ECF No. 59-57; (9) Staunton, Virginia, *see* **1910** Staunton, Va. Code, ch. II, § 135, Opp'n Ex. 54, ECF No. 59-58; and (10) Birmingham, Alabama, *see* **1917** Birmingham, Ala. Code, ch. XLIV, § 1544, Opp'n Ex. 55, ECF No. 59-59.

On a state level, in **1905**, Minnesota prohibited the possession of firearms within state parks unless they were unloaded and sealed by a park commissioner. 1905 Minn. Laws, ch. 344, § 53, Opp'n Ex. 50, ECF No. 59-54. In 1917, Wisconsin prohibited bringing a "gun or rifle" into any "wild life refuge, state park, or state fish hatchery lands" unless it was unloaded and in a carrying case. **1917** Wis. Sess. Laws, ch. 668, § 29.57(4), Opp'n Ex. 56, ECF No. 59-60. In **1921**, North Carolina enacted a law prohibiting the carrying of firearms in both private and public parks without the permission of the owner or manager of that park. *See* 1921 N.C. Sess. Laws 53–54, Pub. Laws Extra Sess., ch. 6, §§ 1, 3, Opp'n Ex. 57, ECF No. 59-61.

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11 (D. Md. July 6, 2023) (emphases added).  The Court notes that these laws were provided to the *Marlyand Shall Issue* court as exhibits but were not provided to the undersigned.

Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*.  There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before

or around the enactment of the Fourteenth Amendment. *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law.

Defendants appear to take the position that they need not cite to any laws from the 18th century or early to mid-19th century because modern public parks existed beginning in the late 19th century.

Defendants have not established in the evidentiary record that modern parks arose in the late 19th century. In a footnote, Defendants reference several articles, but do not provide the full citation for them or provide them to the court. The Court is not convinced such articles provide sufficient evidence. Even assuming those articles provided evidence for the Court to consider, it is not at all clear that there was no historical *analogue* to parks. *See* Anne Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1, 14 (2021) ("Today's American public park is deeply rooted in the seventeenth- and eighteenth-century utilitarian village green, common, square, and parade ground"); *Koons v. Platkin*, 2023 WL 3478604, at *83 (D. NJ 2023) (listing examples and noting no evidence that historical analogues prohibited the carrying of firearms).

*Bruen* did not state that the government need only look for historical *twins*. *Bruen*, 142 S.Ct. at 2133. Rather, Defendants have the burden to cite to historical *analogues*, and Defendants have not provided evidence that there were no historical analogues to modern parks in the 18th century and early 19th century. *Id.* Even if parks (as defined today) did not exist in the 18th century

13

or early 19th century, Defendants still had the burden of providing evidence of firearm regulations in public spaces that were relevantly similar to parks. *Bruen*, 142 S.Ct. at 2132-33.  Here, Defendants did not present any such evidence. *See, e.g., Koons*, — F.Supp.3d at ——, 2023 WL 3478604, at *83 ("Despite the existence of such common lands since the colonial period, the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks."), *cited in Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) (same).

Moreover, the vast majority of the citations in *Marlyand Shall* Issue are to laws or ordinances arising in the late 19th century and early 20th century.  "This Court gives less weight to laws enacted within a few years of the 20th century because they provide little insight into the public's understanding of the Second Amendment either in 1791 or 1868." *Bruen*, 142 S. Ct. at 2154 (explaining that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence"); *see also Id.* at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or their *amici*. As with their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence.").  The *Bruen* decision considered late 19th century laws only to the extent they were consistent with earlier laws. *Id.* at 2137, 2154.  And it did not consider 20th century law at all. *Id.* at 2154 n.28; *see also Heller*, 554 U.S. at 605, 128 S.Ct. 2783 (evidence of "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century" represented a "critical tool of constitutional interpretation."), quoted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022). Because Defendants did not create a record, in accordance with these authorities, of earlier laws

14

**App. 98**

restricting the carrying of firearms in historical analogues, they have not shown that the laws they did cite were consistent with earlier law.

Defendants also cites to territorial law from western states such as New Mexico, Arizona, Oklahoma, and Texas. But the *Bruen* court expressly rejected relying on territorial laws or decisions. *Bruen*, 142 S.Ct.. at 2154-55. The *Bruen* decision reasoned that the territories governed less than 1% of the American population, the territorial laws were enacted a century after the Second Amendment was adopted, the territorial laws were transitory, and they were rarely subject to judicial scrutiny. *Id.* at 2155.   Therefore, western territorial laws shed little light on the understanding of the Second Amendment when it was adopted. Defendants suggest the Court should reject the *Bruen* decision's analysis of western territorial law.  District courts lack authority to reject the analysis set forth by the United States Supreme Court, and in any event, *Bruen's* analysis is persuasive.

In sum, Defendants provide *no* evidence illuminating the scope of the Second Amendment right at or around the time it was adopted.  *Bruen*, 142 S.Ct. at 2136 (constitutional rights "are enshrined within the scope they were understood to have when the people adopted them").  As to the Fourteenth Amendment, Defendants presented insufficient evidence illuminating such understanding. The vast majority of Defendants' citations come at least 20 years after the enactment of the Fourteenth Amendment, which the *Bruen* decision only considered to the extent it was consistent with earlier law.

Because Defendants failed to carry their burden to establish a historical tradition of firearm regulations in public parks, the Court concludes that Plaintiff is likely to succeed on the merits.

**B.**   **Defendants have demonstrated a historical tradition of restricting firearms in sensitive places analogous to playgrounds.**

Even assuming Plaintiff has standing to challenge the restriction on firearms in playgrounds, the Court would not enter an injunction in his favor, as Defendants have demonstrated that playgrounds are "sensitive places" where there is a longstanding historical tradition of firearm regulation.

*Bruen* and *Heller* acknowledged "longstanding" "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626, *quoted in Bruen*, 142 S.Ct. at 2133. Moreover, "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S.Ct. at 2133.

This court finds, like the majority of district courts to consider this issue so far, that playgrounds are analogous to schools. Therefore, playgrounds are "sensitive places" where firearms may be restricted. *We the Patriots USA, Inc. v. Grisham*, No. 1:23-CV-00773-DHU-LF, 2023 WL 6377288, at *3 (D.N.M. Sept. 29, 2023); *Antonyuk v. Hochul*, 639 F.Supp.3d 232, 324 (N.D.N.Y. 2022), reconsideration denied sub nom, *Antonyuk v. Negrelli*, No. 122CV0986GTSCFH, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022) (declining to preliminarily enjoin New York's gun law ban on carrying firearms at public playgrounds); *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604, at *82 (D.N.J. May 16, 2023). The Court declines to preliminarily enjoin the public health order as to its restrictions on firearms in playgrounds.

III.   **Plaintiff has not demonstrated a likelihood of success on his First Amendment claim and Due Process claim.**

In two paragraphs of argument, Plaintiff suggests that Defendants have violated his substantive due process rights and First Amendment rights. Even assuming Plaintiff had established standing on this issue, the Court would not grant him injunctive relief. Plaintiff appears to assert that Defendants are excluding him from traditional public forums on the basis of the

16

content of his speech.  *See* Motion, Doc. 10 at 6-7.  However, his argument lacks sufficient citation to case law or analysis of the legal issues.  This effort is not sufficient to place these complex constitutional issues before the Court.  Therefore, the Court concludes that Plaintiff has not shown a likelihood of success on his First Amendment and Due Process claims.

**IV.      Remaining factors favor issuance of preliminary injunction.**

To obtain a preliminary injunction, Plaintiff must show that he "will suffer irreparable injury unless the injunction issues." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)). The Tenth Circuit has observed that "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). The Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases).  Here, Plaintiff has demonstrated a likely violation of his Second Amendment right to carry firearms in public parks in Bernalillo County, New Mexico and Albuquerque, New Mexico.  The violation of a constitutional right constitutes irreparable harm which cannot necessarily be adequately remedied by money damages. *Free the Nipple-Fort Collins*, 916 F.3d at 806-07 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm to the defendant.... (internal quotations and citations omitted)). Therefore, Plaintiff has demonstrated irreparable harm.

Defendants summarily suggest that Plaintiff cannot demonstrate irreparable harm because he is already prohibited from carrying firearms in parks, as the City of Albuquerque has administratively interpreted state law banning firearms in schools to apply to a wide range of city property, including parks. This restriction is challenged in a separate lawsuit in state court.  The

**App. 101**

Court addressed a similar argument above regarding standing.  As explained above, Defendants have not adequately briefed this separate case to place this issue before the Court.  For example, it is not in the record whether that separate restriction is enforced in city parks, whether there is a reasonable threat of prosecution under the city's administrative interpretation of state law, or why Defendants felt a separate firearm ban was necessary in light of this alleged existing restriction. Even assuming the issue were adequately briefed, enjoining the public health order would remove the threat of prosecution under the public health order.  Moreover, Defendants have not stated that the City of Albuquerque's separate restriction on firearms in parks is in effect elsewhere in Bernalillo County. Finally, Defendants' argument in their response that a firearm ban was already in place appears to contradict the Public Health Order and Executive Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence.  In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks.

Plaintiff must also demonstrate "that the balance of equities tips" in his favor and "that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)*. "The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the preliminary injunction causes" the Defendants. *Free the Nipple-Fort Collins,* 916 F.3d at 806. A loss of a constitutional right usually trumps any harm to the defendant, even under a heightened standard. *Id.* Here, the Court finds that the irreparable harm suffered by Plaintiff outweighs the harm to Defendants' interests. *Id.* at 806-07.

As to the fourth and final factor, "it's always in the public interest to prevent the violation of a party's constitutional rights."  *Id.* at 806-07.

18

**App. 102**

Therefore, the remaining factors all weigh in favor of a preliminary injunction as to the restriction on carrying firearms in public parks.

**CONCLUSION**

District courts must follow the binding precedent of the Supreme Court of the United States, as relevant here, the *Bruen* decision. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). Pursuant to that decision, the Court preliminarily enjoins the portion of the Second Amended Public Health Order restricting the carrying of firearms in public parks in Albuquerque and Bernalillo County, New Mexico. Because Defendants have not carried their burden of establishing a historical tradition of banning firearms in public parks (or their historical analogues) as required under *Bruen*, the Court concludes that Plaintiff has shown a likelihood of success on the merits of his Second Amendment claim. Moreover, the remaining preliminary injunction factors weigh in favor of entering a preliminary injunction as to the restriction on carrying firearms in public parks.

However, Plaintiff has not established standing to challenge the firearm restriction in playgrounds. Even if he had, the Court would not enjoin the firearm restriction in playgrounds, as playgrounds appear to be "sensitive places" under *Bruen* permitting such restrictions.

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion for Preliminary Injunction under the Governor's Most Recent Orders **(Doc. 10)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Court preliminarily enjoins *only* the limited portion of the Second Amended Public Health Order (Doc. 10, Ex. 1, at 2), issued by the New Mexico Department of Health Secretary Patrick Allen, which restricts the carrying of firearms in public

19

**App. 103**

parks in Albuquerque and Bernalillo County, New Mexico.  No other portion of the public health order is enjoined.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

     **Plaintiff,**

vs.                          No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

     **Defendants.**

## DEFENDANTS' NOTICE OF APPEAL

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record, hereby give notice of their appeal to the Tenth Circuit Court of Appeals of the Court's December 5, 2023, Memorandum Opinion and Order [Doc. 19] to the extent it enjoins enforcement of the public health order.

                     Respectfully submitted,

                     */s/ Holly Agajanian*
                     HOLLY AGAJANIAN
                     *Chief General Counsel to Governor Michelle Lujan Grisham*
                     KYLE P. DUFFY
                     *Deputy General Counsel to Governor Michelle Lujan Grisham*
                     490 Old Santa Fe Trail, Suite 400
                     Santa Fe, New Mexico 87501
                     (505) 476-2200
                     Holly.Agajanian@exec.nm.gov
                     Kyle.duffy@exec.nm.gov

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I filed the foregoing via the CM/ECF filing

system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

     Plaintiff,

vs.                            No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

     Defendants.

**DEFENDANTS' EMERGENCY MOTION
FOR STAY PENDING APPEAL AND CLARIFICATION**

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New

Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record,

hereby move for this Court to stay[1] its December 5, 2023, Memorandum Opinion and Order [Doc.

19] to the extent it enjoins enforcement of the public health order while Defendants can pursue an

appeal or, alternatively, clarify that the injunction only applies to Plaintiff.[2] In support thereof,

Defendants state as follows.

**INTRODUCTION**

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief

must be *clear and unequivocal*." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276,

---

[1] To the extent the instant motion convinces the Court to reconsider and reverse its preliminary
injunction, Defendants request that relief in lieu of a stay.

[2] Plaintiff opposes this motion.

1281 (10th Cir. 2016) (emphasis added) (cleaned up). Defendants are likely to succeed on appeal both because Plaintiff has failed to establish standing, and because Defendants have presented extensive laws establishing a historical tradition of prohibiting firearms in parks and other gathering-places. Several other district courts (including a court in this district) have found the historical parks laws sufficient to demonstrate a "comparable tradition of regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 27 (2022). And earlier today, the Second Circuit became the first court of appeals to rule on this issue since *Bruen*, holding that New York's firearms prohibition in urban parks was "plainly legitimate." *Antonyuk v. Chiumento*, No. 22-2908, Slip Op. at 183 (2d Cir. Dec. 8, 2023). At the very least, the new decision in *Antonyuk* warrants a stay of the injunction while the Tenth Circuit considers this case.

To the extent the Court was concerned that Defendants had not provided historical laws as exhibits, Defendants hereby rectify the issue by attaching a compilation exhibiting over 100 restrictions on guns in parks as well as a separate compilation of prohibitions at places where people gather. With this supplemented record, Defendants respectfully submit that they have a strong likelihood of succeeding on their appeal of the preliminary injunction sufficient to warrant a stay. Likewise, the equities favor a stay when the Court's order prevents elected officials from enforcing important public safety measures that appear to have little to no continuing impact on Plaintiff. Alternatively, should the Court decline to stay its injunction, it should clarify that the injunction applies only to Plaintiff.

## BACKGROUND

As the Court is familiar with the background of this litigation, Defendants only briefly summarize it. Shortly after a string of tragedies in which children were shot and killed, Governor

**App. 108**

Michelle Lujan Grisham issued Executive Order 2023-130 on September 7, 2023, invoking her powers under the All Hazard Emergency Management Act (AHEMA), NMSA 1978, §§ 12-10-1 to -10 (2007), and declaring a state of public health emergency due to gun violence pursuant to the Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015).[3] The following day, Department of Health Secretary Patrick Allen issued a public health emergency order imposing broad restrictions on the possession of firearms in cities and counties with high levels of gun violence and implementing various other measures meant to reduce gun violence and drug abuse (the "PHO").[4] The PHO was eventually amended to, *inter alia*, remove the original prohibition on the carrying of firearms in Albuquerque and Bernalillo County and replace it with a provision restricting firearms in public parks and playgrounds.[5]

Plaintiff filed suit challenging the PHO primarily on the basis of the Second Amendment. [Doc. 1] The case was originally consolidated with several other lawsuits challenging the PHO and assigned to Judge David Urias. [Doc. 3] However, this specific case was later reassigned to this Court after Plaintiff sought to have Judge Urias recuse himself because Plaintiff's counsel had

---

[3] *Executive Order 2023-130*, Gov. Michelle Lujan Grisham (Sept. 7, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-130-1.pdf;   *Executive Order 2023-132*, Gov. Michelle Lujan Grisham (Sept. 8, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/09/Executive-Order-2023-132.pdf.   The Governor most recently renewed the state of public health emergency on December 1, 2023. *See Executive Order 2023-144*, Gov. Michelle Lujan Grisham (Dec. 1, 2023), https://www.governor.state.nm.us/wp-content/uploads/2023/12/Executive-Order-2023-144.pdf.

[4] *Public Health Order*, N.M. Dep't of Health (Sept. 8, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/090823-PHO-guns-and-drug-abuse.pdf.

[5] *Public Health Order*, N.M. Dep't of Health (Sept. 15, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/09/NMAC-EO-2023-130-132-Amended.pdf; Public Health Order, N.M. Dep't of Health (Oct. 6, 2023), https://cv.nmhealth.org/wp-content/uploads/2023/10/NMAC-PHO-20231006-Amended.pdf.

previously sued Judge Urias. [Docs. 7-8] On October 16, 2023, this Court denied Plaintiff's request for an *ex parte* temporary restraining order regarding the original PHO's restrictions on the possession of firearms because they were no longer in effect and Plaintiff had not established facts showing that he had standing to challenge the restrictions on firearms in parks and playgrounds. [Doc. 9 at 1, 4] The Court further observed that Plaintiff had not demonstrated a likelihood of success on the merits as to the operative PHO because "he has not engaged with the historical tradition analysis under *Bruen* by showing that the regulation restricting firearms in playgrounds and certain public parks is inconsistent with the Nation's historical tradition of firearm regulation." [Doc. 9 at 5] Plaintiff subsequently filed a renewed motion seeking a preliminary injunction against the PHO's current restrictions on firearms in parks and playgrounds, with a de minimis analysis of historical tradition. [Doc. 10]

On December 5, 2023, the Court granted in part and denied in part Plaintiff's renewed motion for preliminary injunction. [Doc. 19] The Court denied Plaintiff's request to enjoin the PHO's restriction of firearms in playgrounds. *Id.* at 16. However, after concluding that Plaintiff had standing to challenge the PHO's restriction on firearms in parks, *id.* at 8, the Court held that Defendants "failed to carry their burden to show a historical tradition of banning firearms in public parks or their historical analogues." *Id.* at 9. Specifically, the Court found significant Defendants' failure to provide the Court with copies of the mid-to-late 19th- and early 20th-century laws prohibiting firearms in parks cited in their brief and other district court opinions. *Id.* at 11-12. But even if Defendants did provide copies of these laws, the Court concluded they were unpersuasive because Defendants could not point to any similar prohibitions from the 18th or early 19th century. *Id.* at 13. The Court found this significant because "Defendants have not established in the

4

evidentiary record that modern parks arose in the late 19th century" and did "not provide[] evidence that there were no historical analogues to modern parks in the 18th century and early 19th century." *Id.* Thus, according to the Court, Defendants "have not shown that the laws they did cite were consistent with earlier law." *Id.* at 15. Given this, the Court declined to consider the many mid-to-late 19th- and early 20th-century laws as sufficient to show a historical tradition of restricting firearms in public parks. *Id.*

## DISCUSSION

### I.      Standard of Review

"Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay." *Sec. USA Servs., LLC v. Invariant Corp.*, 2023 WL 5055060, at \*1 (D.N.M. July 28, 2023) (Riggs, J.) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

### II.     Defendants have a strong likelihood of succeeding on appeal

#### a.  The Court erroneously found that Plaintiff has standing to seek injunctive relief

As explained in Defendants' Response to Plaintiff's Renewed Motion for Preliminary Injunction Under the Governor's Most Recent Orders, Plaintiff failed to allege or show that he intends to visit parks in Albuquerque or Bernalillo County *going forward*. [Doc. 15 at 7] This is a key requirement—and the Plaintiff's burden—for seeking prospective injunctive relief such as a preliminary injunction. *See Buscema v. Wal-Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1329

**App. 111**

(D.N.M. 2020) (stating that "a plaintiff cannot maintain an injunctive action 'unless he or she can demonstrate a good chance of being . . . injured in the future'" (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991))); *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1297 (10th Cir. 2023) ("Plaintiffs have the burden to demonstrate standing for each form of relief sought." (cleaned up)); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Although Plaintiff asserts he was previously affected by the PHO's restrictions on firearms in parks, there is no evidence in the record demonstrating that Plaintiff intends to engage in the proscribed conduct in the imminent future. [Doc. 19 at 6-7]. Plaintiff's declaration merely states that he was prohibited from carrying his firearm "for most of the months of September and October" at the parks that he attended for "non-scholastic youth sporting events" or to "enjoy the beautiful fall weather in Albuquerque during the balloon fiesta." [Doc. 10-2] He does not assert that these activities are ongoing or state any future desire to visit the relevant parks in the future. Other courts addressing sensitive place restrictions have concluded plaintiffs lacked standing based on a similar failure to allege a future desire to visit those locations. *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 262 (N.D.N.Y. 2022) (finding plaintiff lacked standing where he previously visited locations in which firearms are prohibited, but did not allege that he intends to visit those locations with a firearm in the immediate future);[6] *Maryland Shall Issue, Inc. v. Montgomery Cnty.,*

---

[6] *See Antonyuk*, slip op. at 132 n.52 (noting that Plaintiffs did not contest this standing conclusion on appeal).

*Maryland*, 2023 WL 4373260, *5 (D. Md. July 6, 2023) (finding plaintiffs lacked standing where they did not allege they intended to visit the locations in question with a firearm). For these reasons, Defendants respectfully submit that the Court erred in finding Plaintiff had standing to seek a preliminary injunction under these circumstances. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.").

Likewise, Plaintiff failed to meet his burden of demonstrating redressability. In their response, Defendants pointed out that Plaintiff's purported injury was not redressable because the City of Albuquerque has issued administrative instructions interpreting New Mexico statutes that prohibit the carrying of firearms on school premises to apply to city neighborhood parks, city sports fields, Balloon Fiesta Park, and Civic Plaza. [Doc. 15 at 7-8 (citing *Valdez v. Lujan Grisham*, 2022 WL 2129071 (10th Cir. 2022))] While the Court recognized this, it found this to be "undeveloped in the briefing and insufficient to place the issue before the Court." [Doc. 19 at 7] However, it is *Plaintiff's* burden to demonstrate that his purported injury of not being able to carry a firearm in Albuquerque parks is redressable by enjoining the PHO.[7] *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) ("As the party seeking to invoke federal jurisdiction,

---

[7] Defendants note that Plaintiff only asserted that he had previously desired to carry firearms in Albuquerque parks—not in Bernalillo County parks outside of Albuquerque. [*See generally* Doc. 1, 10-2] Accordingly, whether "the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque" is of no moment. [Doc. 19 at 7]. Likewise, the fact that "an injunction would eliminate the threat of being prosecuted under the [PHO]" does not mean the injunction would redress Plaintiff's purported injury. *Cf. Valdez*, 2022 WL 2129071, at *2 ("If we were to grant a preliminary injunction against the PHO today, Ms. Blackford would still be required to be vaccinated to work at Presbyterian because of Presbyterian's own requirement and the IFC. Thus, the injury associated with Ms. Blackford's Contracts Clause claim is not redressable by enjoining the PHO.").

the plaintiff . . . has the burden of establishing each of these three elements of Article III standing."); *LA All. for Human Rights v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) ("At the preliminary injunction stage, the plaintiffs must make a clear showing of each element of standing[.]" (cleaned up)). Once Defendants raised this issue, it was incumbent on Plaintiff to show otherwise. He did not. [*See generally* Doc. 16] Respectfully, the Court should not have excused Plaintiff's failure to do so. *See Whitmore*, 495 U.S. at 155-56.

> **b. The Court erred in concluding Plaintiff demonstrated a *clear and unequivocal* right to a preliminary injunction**

As the Court is aware, "[b]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be *clear and unequivocal*." *Dine Citizens*, 839 F.3d at 1281 (emphasis added) (cleaned up). Defendants respectfully submit that the Court erred in concluding that Plaintiff met this high burden when Defendants cited: (1) a large number of similar laws prohibiting firearms in parks and other gathering-places around the time of the Fourteenth Amendment's ratification, (2) caselaw and sources finding that modern-day parks did not exist in large numbers until the late 19th century, and (3) caselaw demonstrating that several courts, including one court in this district, that had addressed the constitutionality of similar prohibitions post-*Bruen* have refused to grant preliminary injunctions. [Doc. 15 at 12-16 (citing *We the Patriots, Inc. v. Lujan Grisham*, 2023 WL 6622042, at *9 (D.N.M. Oct. 11, 2023) ("[G]iven the different analysis of the historical evidence by three district courts which have considered the issue post-*Bruen*, it cannot be said that Plaintiffs' right to relief is 'clear and unequivocal.'" (quoting *Dine Citizens*, 839 F.3d at 1281)); *Md. Shall Issue*, 2023 WL 4373260, at *11-12 (concluding Second Amendment challenge to a prohibition on guns in parks was unlikely to succeed on the merits); *Kipke v. Moore*, 2023 WL 6381503, at *9-10 (D. Md. Sept. 29, 2023) (same))]. Together, these

**App. 114**

historical laws are sufficient to demonstrate a historical tradition of regulating firearms in parks, and at the very least demonstrate that Plaintiff's right to relief was not "clear and unequivocal." *Dine Citizens*, 839 F.3d at 1281. With regard to the Court's concern that Defendants did not provide copies of the parks laws cited in their brief and caselaw, Defendants have attached to this Motion a compilation of over 100 prohibitions on firearms in parks. *See* Exhibit A.

Furthermore, with the Second Circuit concluding in today's decision in *Antonyuk* that prohibiting guns in urban parks is entirely constitutional, the landscape has now changed sharply in Defendants' favor. Several aspects of the decision bear emphasis. *First*, the court recognized that not only laws specific to parks, but also those regulating firearms in "public forums and quintessentially crowded places" constituted part of the regulatory tradition justifying such a prohibition. *See Antonyuk*, slip op. at 183-88 (surveying laws prohibiting guns in "the traditional, crowded public forum" from medieval times through colonial times and into Reconstruction). Defendants invoked this historical tradition by relying on Reconstruction-era prohibitions on guns in locations where people assemble. [Doc. 15 at 13.][8] As *Antonyuk* found, this historical tradition

---

[8] This Court [Doc. 19 at 15] dismissed these laws as "territorial laws[s] from western states," saying that *Bruen* "expressly rejected relying on territorial laws or decisions." Defendants' citations, however, included an 1871 law from Texas (admitted to the union in 1845) and an 1883 law from Missouri (admitted in 1821). And, in any event, "automatic rejection of any territorial laws … is not compelled by *Bruen*." *Antonyuk*, slip op. at 206 (accepting and giving effect to some of the same territorial laws Defendants present here). Specifically, *Bruen* rejected New York's reliance on a handful of territorial carry restrictions because they could not "overcome the overwhelming evidence" it had already found in favor of "an otherwise enduring American tradition permitting public carry." *Bruen*, 597 U.S. at 67. Here there is no evidence (let alone "overwhelming evidence") of an enduring American right to carry firearms in parks or in crowded public forums. Thus, as the Second Circuit observed, "there [i]s no reason … to discount territorial laws." *Antonyuk*, slip op. at 193.

9

**App. 115**

also stretches back to the colonial era and earlier. *See* Exhibit B (compiling copies of additional crowded places/public forum laws).

*Second*, even though New York presented a far more limited record of prohibitions specific to parks than Defendants have here—just eight such prohibitions—*Antonyuk* held that the district court had been wrong to discount them, including because "they were apparently accepted without any constitutional objection by anyone." *See Antonyuk,* slip op. at 188-92. Defendants' much more extensive collection of laws provides an even stronger ground to uphold the PHO.

*Third*, *Antonyuk* found that public parks "r[o]se … as municipal institutions over the latter half of the 19th century," *see id.* at 189 & nn. 79-80 (citing scholarly articles); *see also id.* at 194-95 ("'The modern idea of the park emerged in the nineteenth century[.]'" (citation omitted)). Those findings undercut this Court's conclusion that Defendants had not established "that modern parks arose in the late 19th century" or that scholarly articles could not so establish. [Doc. 19 at 13].

*Fourth*, *Antonyuk* rejected the suggestion, which featured in this Court's decision [Doc. 19 at 13-14] that the absence of firearms prohibitions in Boston Common and early town greens "undermines a tradition of regulating firearms in urban public parks." *Id.* at 194-96. Early commons and greens are simply not akin to modern public parks. *See id.* (citing historical and scholarly materials highlighting the differences); *see also Wolford v. Lopez*, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) ("[P]arks around 1791 were not comparable to modern parks[.]").[9] In any event, as *Antonyuk* observed, because "[l]egislatures past and present have not generally

---

[9] For further discussion on this point, Defendants attach a sworn declaration prepared by Dr. Terrence Young, a respected historian, submitted in a similar challenge in California and comprehensively explaining that "America's tradition of public parks was launched in the 1850s." Exhibit C at 3. *See generally Hernandez v. Lujan Grisham*, 494 F. Supp. 3d 1044, 1067 n.2 (D.N.M. 2020) (finding declarations filed in another court "persuasive").

legislated to their constitutional limits," absence of regulation does not indicate unconstitutionality. *See* slip op. at 48-49.

*Fifth*, this Court [Doc. 19 at 14-15] appeared to discount laws that were not from the founding era, contrary to the conclusion of another court in this district that "the period of the ratification of the Fourteenth Amendment in 1868 [is] more probative of the scope of the Second Amendment's right to bear arms than those from the Founding Era." *We the Patriots*, 2023 WL 6622042, at *8 (citing *National Rifle Association v. Bondi*, 61 F.4th 1317, 1322 (11th Cir. 2023), *vacated for reh'g en banc*, 72 F.4th 1346 (11th Cir. 2023); *see also Md. Shall Issue*, 2023 WL 4373260, at *8. *Antonyuk* recognized that "1868 and 1791 are both focal points of our analysis," and that, because "it is implausible that such public understanding would promptly dissipate," evidence from around those dates is also relevant. *See id.* at 55; *see also id.* at 176 (city park restrictions that state presented and court relied on were adopted between 1861 and 1897). Accordingly, this Court should have given significantly more weight to Defendant's 19th-century laws—and also, Defendants submit, to its early-20th-century laws, which form part of the same, unbroken tradition.

Together, these points clearly demonstrate that the PHO's restriction of firearms in parks "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. And it bears repeating that judge who would have decided this case if Plaintiff had different counsel has recently reached a conclusion opposite to this Court's and refused to enjoin the PHO. *See We the Patriots*, 2023 WL 6622042. Furthermore, the only circuit court other than the Second Circuit that has addressed a preliminary injunction of restrictions on firearms in parks post-*Bruen* stayed that injunction pending appeal—indicating that it disagreed with the lower court's

**App. 117**

conclusion. Specifically, in *Koons v. Att'y Gen. of N.J.*, No. 23-1900, Dkt. 29 (3d Cir. June 20, 2023), the Third Circuit granted a stay of the preliminary injunction against New Jersey's restriction on firearms in parks because it "conclude[d] the applicable factors warrant such a stay." *Id.* (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). The first of those factors is "the stay applicant has made a strong showing that [it] is likely to succeed on the merits." *In re Revel AC, Inc.*, 802 F.3d at 568. The Second Circuit had similarly stayed the district court's injunction on New York's prohibition on firearms in parks, foreshadowing its decision to uphold the law. *See Antonyuk v. Hochul*, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022).

Here, it is equally likely that Defendants will succeed on merits of their appeal. At the very least, the strong weight of authority in Defendants' favor makes clear that the better course is to maintain the initial status quo while the appeal proceeds. *See, e.g.*, *Worth v. Jacobson*, 2023 WL 3052730, at *2 (D. Minn. Mar. 31, 2023) (staying own injunction of state's handgun age restriction pending appeal because, among other things, "*Bruen* left open a critical doctrinal question concerning the proper historical lens," and thus the dispute was "open to differing conclusions"); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022) (staying own injunction of Texas's law prohibiting those under twenty-one from carrying a handgun pending appeal because "different interpretations on whether Reconstruction-Era history is applicable . . . could, for instance, alter the outcome of this case"); *Fraser v. ATF*, 2023 WL 5617894, at *3-4 (E.D. Va. Aug. 30, 2023) (staying own injunction pending appeal because there remain "unresolved questions about the exact application of the *Bruen* analytical mode" and "this area of law is in flux"); *Brown v. ATF*, No. 1:22-cv-00080, slip op. at 4, 7-8  (N.D.W. Va. Dec. 7,

2023) (staying own injunction in Second Amendment case pending appeal where "[c]ourts are split in their assessment of this question").

In light of the foregoing, Defendants respectfully suggest they have a strong likelihood of prevailing on appeal.

### III.        The non-merits factors favor a stay

As an initial matter, it cannot be disputed that New Mexico "suffers … irreparable injury" whenever it is barred "from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012); *Abbott v. Perez*, 138 S.Ct. 2305, 2324 n.17 (2018).[10] Indeed, the injunction undermines the judgment of New Mexico's democratic branches on how best to keep residents safe. That harm is especially profound here: the preliminary injunction threatens "an ongoing and concrete harm to" the State's "law enforcement and public safety interests," *King*, 567 U.S. at 1303, and produces confusion on the ground given the fact that another district court judge has refused to preliminarily enjoin the PHO. *See Winter v. NRDC*, 555 U.S. 7, 32-33 (2008) (equities independently sufficient for stay). But the government is not the only entity that may be irreparably harmed should the Court decline to stay the preliminary injunction. The public has the right to enjoy public spaces, such as parks, without the threat of being gunned down. Allowing individuals to carry firearms into public parks where large amounts

---

[10] True, the PHO is not a statute. However, it was issued pursuant to the statutory scheme the Legislature enacted to respond to public health emergencies such as the ongoing gun violence epidemic. *See* §§ 12-10A-1 to -19; *see generally* Kimberly Leonard, *American Medical Association Calls Gun Violence a Public Health Crisis*, U.S. News (June 14, 2016); *Firearm Violence Prevention*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/violenceprevention/firearms/index.html (last visited Dec. 6, 2023); Destinee Adams, *Is gun violence an epidemic in the U.S.? Experts and history say it is*, NPR News (June 29, 2023), https://www.npr.org/2023/06/29/1184731316/gun-violence-epidemic-suicide-mass-shooting-public-health-emergency-chicago.

of people and children gather significantly increases the likelihood of shootings in those locations.[11] Firearm injuries and deaths "c[an]not be undone, thus rendering the consequences irreparable." *Uniformed Fire Officers Ass'n v. De Blasio*, 973 F.3d 41, 48 (2d Cir. 2020); *see generally Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 806 (10th Cir. 2019) ("What makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after full trial.").[12] And, unfortunately, the possibility of being shot in a park is not just theoretical, as there is a documented history of shootings in Albuquerque parks.[13]

In contrast, granting a stay will not substantially harm Plaintiff. As explained above, it is unclear, *at best*, if Plaintiff (a Torrance County resident) even intends to visit an Albuquerque area park in the near future. And even if he did, there is no evidence showing how often he would visit such parks or for how long he would remain there. Nor has Plaintiff shown that his ability to carry firearms in Albuquerque area parks would reduce the likelihood of him or his family being injured

---

[11] *See, e.g.*, Paul M. Reeping, et al., *The Effect of Gun-Free School Zones on Crimes Committed with a Firearm in Saint Louis, Missouri*, J. Urban Health (2023), https://bit.ly/3Rwvwqd (first-of -its-kind peer-reviewed, quantitative study finding "13.7% significantly fewer crimes committed with a firearm in gun-free school zones compared to gun-allowing zones").

[12] As one recent scientific survey shows, the presence of guns in parks also has intimidating and chilling effects and reduces the public's use and enjoyment of the parks. *See* Darrell A.H. Miller et al., *Technology, Tradition, and 'The Terror of the People'*, Notre Dame L. Rev. (forthcoming 2023) (manuscript, at 20-22), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4521030.

[13] *See, e.g.*, *2 teens charged in shooting at busy Albuquerque park*, KOB4 News (Jul. 13, 2023), https://www.kob.com/new-mexico/2-teens-charged-in-shooting-at-busy-albuquerque-park/; Laila Freeman, *Man wanted for fatal Taylor Park shooting arrested*, KRQE News (Jun. 10, 2023), https://www.krqe.com/news/albuquerque-metro/man-wanted-for-fatal-taylor-park-shooting-arrested/; Audrey Davis, *West Mesa student shot at Cedar Ridge Park in northwest Albuquerque*, KRQE News (Mar. 6, 2023), https://www.krqe.com/news/albuquerque-metro/two-people-shot-at-cedar-ridge-pond-park-in-albuquerque/.

should a shooting occur.[14] Respectfully, to allow a resident from another county to singlehandedly strike down a public safety measure intended to protect Albuquerque and Bernalillo County residents based on this record would be an abuse of this Court's equitable powers. *See Dine Citizens*, 839 F.3d at 1281.[15] Accordingly, the equities and public interest strongly favor granting a stay.

### IV.   The Court's preliminary injunction should only apply to Plaintiff

Should the Court decline to stay its injunction, Defendants respectfully request that it clarify that the injunction only apply to Plaintiff. As the Supreme Court has observed, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *see also United States v. National Treasury Employees Union*, 513 U.S. 454, 478 (1995) (narrowing injunction that banned the enforcement of the statute against all the employees in "the entire Executive Branch of the Government" to cover only the plaintiffs in the case and stating "although

---

[14] *See, e.g.*, Steven E. Barkan and Michael Rocque, *Crime Prevention: Programs, Policies, and Practices* at 65 (2021) (study finding "little evidence that self-defense gun use reduces the likelihood of victim injury during a crime").

[15] Indeed, other district courts have routinely stayed preliminary injunctions pending appeal in Second Amendment cases on the basis that the irreparable harm to the state and the public outweighed any harms to the plaintiff. *See, e.g.*, *Firearms Policy Coalition, Inc.*, 623 F. Supp. 3d at 757 (staying injunction pending appeal because a state "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws," and the state's "interest and harm merges with that of the public"); *Worth*, 2023 WL 3052730, at *3-4 (same); *Fraser*, 2023 WL 5617894, at *4 (noting that although the plaintiffs "have a strong interest in exercising their constitutional rights and the stay will delay the date on which they may do so," a stay pending appeal would not cause them "substantial[] injur[y]).

the occasional case requires us to entertain a facial challenge in order to vindicate a party's right

not to be bound by an unconstitutional statute, we neither want nor need to provide relief to

nonparties when a narrower remedy will fully protect the litigants"); *Georgia v. President of the*

*United States*, 46 F.4th 1283, 1303 (11th Cir. 2022) (explaining why injunctions should ordinarily

be limited to apply only to the parties in an action). Therefore, the Court should, at a minimum,

clarify that its injunction only applies to Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay[16] its

preliminary injunction while Defendants pursue review in the Tenth Circuit, or alternatively,

clarify that the injunction only applies to Plaintiff.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan
Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle
Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

---

[16] Again, Defendants would prefer dissolution of the preliminary injunction if the Court is now
satisfied they have met their burden under *Bruen*.

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2023, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

17

**App. 123**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

       Plaintiff,

    v.                                       No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

       Defendants.

## <u>ORDER TEMPORARILY STAYING PRELIMINARY INJUNCTION PENDING BRIEFING ON MOTION</u>

THIS MATTER comes before the Court upon Defendants' Emergency Motion for Stay Pending Appeal and Clarification **(Doc. 21)**.  Defendants request that the Court stay the preliminary injunction, or alternatively reconsider the preliminary injunction.  The Court will temporarily stay the preliminary injunction until the emergency motion is fully briefed and decided.

A district court may stay a preliminary injunction pending appeal.  Fed. R. Civ. P. 62(d). Courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Here, the Court will temporarily stay the preliminary injunction pending briefing and decision on the emergency motion. The does so to enable to receive full briefing by the parties.

Defendants also in part request that the Court reconsider its decision and vacate the preliminary injunction. The Court generally has discretion to reconsider interlocutory orders. Fed. R. Civ. P. 54(b). However, Defendants also filed a notice of appeal before filing their motion to reconsider. A notice of appeal generally divests a district court of jurisdiction. *Stewart v. Donges*, 915 F.2d 572, 577-78 (10th Cir. 1990).

Although a district court has some discretion to stay a preliminary injunction pending appeal, Fed. R. Civ. P. 62(d), some courts have held that a district court lacks discretion to reconsider and vacate a preliminary injunction pending appeal. *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989) (holding that "the district court lacked authority to dissolve the injunction" because of a pending appeal); *see also International Ass'n of Machinists v. Eastern Airlines,* 847 F.2d 1014 (2nd Cir.1988).

The Court directs the parties to address in their briefing whether the Court has discretion to reconsider and vacate a preliminary injunction after a notice of appeal was filed.

**IT IS SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE

2

**App. 125**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

        **Plaintiff,**

**v.**

                                    **Civil Action No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,**
**OFFICE OF THE GOVERNOR,**
**PATRICK ALLEN, and**
**NM DEPARTMENT OF HEALTH,**

        **Defendants.**

**PLAINTIFF'S NOTICE OF CROSS APPEAL**

        Plaintiff James Springer, by and through his counsel of record, hereby give notice of

his cross appeal to the Tenth Circuit Court of Appeals of the Court's December 5, 2023,

Memorandum Opinion and Order [Doc. 19] to the extent denies Plaintiff's standing or

denies injunctive relief sought by the Plaintiff.

        Respectfully submitted this 12th day of December 2023.

                         WESTERN AGRICULTURE, RESOURCE
                         AND BUSINESS ADVOCATES, LLP

                         */s/ A. Blair Dunn*
                         A. Blair Dunn, Esq.
                         Jared R. Vander Dussen, Esq.
                         400 Gold Ave SW, Suite 1000
                         Albuquerque, NM 87102
                         (505) 750-3060
                         abdunn@ablairdunn-esq.com
                         warba.llp.jared@gmail.com

                         Zach Cook, LLC

                         */s/ Zach Cook*
                         Zach Cook
                         1202 Sudderth # 425
                         Ruidoso, NM 88345

1

(575) 937-7644
zach@zachcook.com

CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*_____
A. Blair Dunn, Esq.

2

**App. 127**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JAMES SPRINGER,**

       **Plaintiff,**

**v.**

                          **Civil Action No. 1:23-cv-00781-KWR-LF**

**MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,**

       **Defendants.**

**RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING
APPEAL AND CLARIFICATION**

    COMES NOW Plaintiff by and through his undersigned counsel of record, and respectfully

offers his Response in Opposition to the Emergency Motion for Stay Pending Appeal and

Clarification, ECF Doc. No. 21, and for his reasons states:

**INTRODUCTION**

    Ultimately, this Court has cut to the quick of the instant motion, by requesting in its

Order, ECF Doc. No. 22, that the parties brief the extent to which this Court may reconsider

its grant of the preliminary injunction while the interlocutory appeal is pending before the

Tenth Circuit.  This is especially important, given that it appears that Defendants are

attempting to bootstrap almost 1000 pages of exhibits of additional evidence that they could

have supplied but elected not to when they filed their Response.  Putting aside the untimeliness

of the new allegations of material evidence the Defendants seek to have this Court review for

reconsideration, the information is unpersuasive because of the laws they cite in the time

before (1851-1866, *see* ECF. Doc. No. 21-1 pg 1) the ratification of the Fourteenth

Amendment only one state (NY) was regulating firearms in "modern" parks and the recent

1

time after ratification (1868 – 1878, *see* ECF. Doc. No. 21-1 pgs 1-2) only three additional states, for a total of 4 out of 45 were regulating firearms in parks. Thus, not only is this untimely information, it doesn't change the analysis with regard to parks that this Court has already performed and is merely rearguing that the Court was wrong in holding:

> Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*. There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before or around the enactment of the Fourteenth Amendment. *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law.

MOO at 12-13. Virtually nothing and certainly nothing new in the almost 1000 pages that Defendants have supplied with the instant Motion calls the Court's analysis, noted above, into question. These are arguments that are transparently a design to have this material presented to the Tenth Circuit, which is improper, even if it would change the Tenth Circuit's analysis, for this Court to consider as a factor for likelihood of success on appeal, because the Tenth Circuit is no more likely to disregard the Supreme Court's instruction in *Bruen* than this Court was.

Likewise, it is unfair for the Defendants' to ask this Court, while the appeal is pending, to reconsider the Court's decision regarding Plaintiff's standing.  Plaintiff respectfully offers that that Court misapprehended several things from Plaintiff's perspective as well.  First, Plaintiff misunderstood the Court's understanding that playgrounds and parks are not commonly one unit.  That is to say, Plaintiff is unaware of public playgrounds, not attached to a school, in Bernalillo County and Albuquerque that are not found within the boundaries

**App. 129**

of a public park.  Likewise, Plaintiff understood Civic Plaza to be "[a] large open area usu. with grass and trees, esp. in a city or town, for public recreation." PARK, Black's Law Dictionary (11th ed. 2019).  Plaintiff respectfully proffers, here to the Court, the he absolutely intends to frequent all of these parks, <u>again, in the future</u>, but that he is prevented from doing in the future by the SAPHO. And, that all of these locations, as he done in the past, he would like to be armed when he again takes his 2-year child to play again on the playground equipment in these now increasingly dangerous areas of Albuquerque. But, in the context, that these are aspects of the case already involved in the appeal, Plaintiff understands must be addressed based upon the record on appeal rather than trying to shoehorn new evidence in under the guise of a motion to stay pending appeal.

## ARGUMENT

### I.  The Court has Limited Authority to Take Action on the Preliminary Injunction While the Appeal Is Pending.

It is well established "that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982) (per curiam); *see also Barnes v. Sec. Life of Denver Ins. Co.*, No. 18-cv-718-WJM-SKC, 2019 U.S. Dist. LEXIS 4037, 2019 WL 142113, at *1 (D. Colo. Jan. 9, 2019) ("While an interlocutory appeal is pending, jurisdiction generally transfers from the district court to the court of appeals." (*citing Griggs*, 459 U.S. at 58)).

However, there are pertinent limitations on this transfer of jurisdiction. "First, no transfer occurs if the appeal is taken from a non-appealable order. Second*, the transfer affects only those*

**App. 130**

*aspects of the case involved in the appeal*. Thus, when an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case." *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998) (citations omitted) (emphasis added). "Even when an order is appealable, the district court is divested of control only over 'those aspects of the case involved in the appeal.'" *Barnes* at *2-3 (quoting *Howard*, 150 F.3d at 1229). Here, because the Motion for a Stay specifically asks this Court to reconsider its prior grant of the preliminary injunction based upon a rehash of the aspects of the case *already involved in the appeal* this Court cannot and should not reconsider its prior decision until the case transfers back from the Court of Appeals. Here, this means this Court is prohibited from granting relief regarding the preliminary injunction that divests the appellate court of its jurisdiction by eliminating or materially altering the controversy. *See Pueblo of Pojoaque v. State,* 233 F. Supp. 3d 1021, 1091 (D.N.M. 2017).   In *Pojoaque* Judge Browning, explicitly clarified that the reconsideration sought by the Defendants, here, to vacate a preliminary injunction, is outside of a district court's jurisdiction stating that "[i]t follows that the pendency of an interlocutory appeal from a PI divests the district court of its jurisdiction to vacate or dissolve the injunction. *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1091 (D.N.M. 2017)

## II.   The Defendants' Motion Does Satisfy the Four Factors of *Hilton* for a Stay Pending Appeal

As this Court recited in the Order staying the injunction pending briefing on the motion to stay the Defendant must satisfy four factors for the relief they seek being: (1) whether the stay applicant has made a strong showing that they are likely to succeed on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

**App. 131**

**A.      Defendants are Unlikely to Succeed on Appeal**

To be perfectly clear, Defendants are asking this Court to ignore its sound analysis of applying *Bruen's* clear holdings rejecting the broad application of sensitive places stating that "expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement defines the category of "sensitive places" far too broadly. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022).   It especially worth noting that Defendants' reliance on the Second Circuit's pronouncement of "overreading of *Bruen*" by District Court in *Antonyuk v. Chiumento*, 2023 WL 8518003, at *62 (2d Cir. Dec. 8, 2023) becomes unpersuasive given that it was the Second Circuit that was reversed by the Supreme Court in *Bruen*.

To be sure there is a distinct, politically-charged debate raging in the Nation and in the Courts, which is part of why the Second Circuit's holding to narrowly interpret *Bruen* is suspect stating that "the appropriate figure in this instance is not the percentage of the nation's *total* population that was affected by city park firearms restrictions, but rather the percentage of the *urban* population that was governed by city park restrictions." *Antonyuk v. Chiumento*, 2023 WL 8518003, at *62 (2d Cir. Dec. 8, 2023)(emphasis in original.)   That statement from the Second Circuit finds no support in *Bruen*. Especially, when what does find support in *Bruen* is the Supreme Court's citation to D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018), which does not support the Second Circuit's expansion of parks as an analogue to fairs and markets.

Thus, the critical question that this Court has correctly addressed, at least as far as parks are concerned, that the Second Circuit gets wrong, is whether the regulation is consistent with the *Nation's* (presumably the Supreme Court is not indicating some small percentage of the Nation in

**App. 132**

this test) history and tradition. And in this regard the Second Circuit's decision which is based upon the premise of crowds of people gathering at fairs and markets flies in the face of the statement from the Supreme Court that "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a "sensitive place" simply because it is crowded and protected generally by the New York City Police Department. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 31, 142 S. Ct. 2111, 2134, 213 L. Ed. 2d 387 (2022). Rather, the District Court in that case, performed the Court *Bruen* analysis that this Court should follow to be consistent with *Bruen* and that the Tenth Circuit is more likely to follow which is a survey of the Nation's (considered as a whole) history and tradition to find that:

> In any event, even if the number and geographical origins of these city laws *326 (when combined with the two state laws previously mentioned) were sufficient to constitute a tradition that was *established*, they do not constitute a tradition that was *representative* of the Nation. As explained earlier in this Decision, as of 1890, the five cities in question (New York City law, Philadelphia law, Chicago law, St. Louis law, and St. Paul law) comprised about 6.8 percent of the American population. *See* Dept. of Interior, Compendium of Eleventh Census: 1890 (1890). As of 1870, the two states in question (Texas and Missouri) contained only about 6.6 percent of the American population. *See* Dept. of Interior, Compendium of Ninth Census: 1870 (1870). The Court need not go back and recalculate the numbers so that they both come from the same census: it is confident that, under reasoning conduct in *NYSRPA*, the resulting percentage of less than 15 would not suffice to be representative of the Nation.

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 325–26 (N.D.N.Y. 2022), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), and *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. Chiumento*, 2023 WL 8518003 (2d Cir. Dec. 8, 2023). This Court's analysis and logic regarding the Plaintiff's likelihood of success is more consistent with *Bruen* than the Second Circuit's inconsistent decision in *Antonyuk* and therefore, a better indicator of the likelihood of Defendants' success in the appeal in the Tenth Circuit.

6

**App. 133**

Finally, Defendants equate their likelihood of success to maintaining the initial status quo while the appeal proceeds, but this is far from accurate and while the Court may very well find that there is an interest in maintaining the initial status quo because there is substantial question about the correct application of *Bruen* it should not equate that question to likelihood of success as the Defendants invite here.  Rather, in considering the application for a stay, in light of the fact that reconsideration would improperly divest or alter the proceedings before the Tenth Circuit, this Court could reasonably agree with the other District Courts cited by Defendants including the North District of Texas stating that "*Bruen* left open a critical doctrinal question concerning the proper historical lens," and thus the dispute was "open to differing conclusions"); *Firearms Policy Coalition, Inc. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022).  Plaintiff does not agree that this question is as murky as those District Courts found it to be or certainly as open to obviously inconsistent interpretation as the Second Circuit has decided it is and thus, opposed the instant Motion, but would certainly understand if this Court stayed the injunction pending appeal, the for practical reasons that: 1) the *We the Patriots* consolidated cases denying the same injunction at issue are already on appeal on the same questions, being likely to be consolidated and 2) this moots the question regarding whether the government can continue to enforce what the Court has determine is likely unconstitutional regulation against everyone but Plaintiff.

**B.     The Non-Merits Factors Do Not Support a Stay**

As an initial matter, it absolutely *can be* disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging what the Court has determined is likely unconstitutional action.  Moreover, the Tenth Circuit has been clear on this point regarding the government's assessment of speculative harm to the public stating In the Tenth Circuit, "the [government's] potential harm must be weighed against [plaintiffs'] actual [constitutional] injury." *Summum v.*

*Pleasant Grove City*, 483 F.3d 1044, 1056 (10th Cir. 2007) *rvs'd other grounds by* 555 U.S. 460

(2009). And the recent Dissent of Justice Alito, joined by Justices Thomas and Gorsuch, is

persuasive in this regard stating:

> the Government offers a series of hypothetical statements that a covered official
> *might* want to make in the future and that, it thinks, *might* be chilled. Application
> 36–38.But hypotheticals are just that—speculation that the Government "*may*
> suffer irreparable harm at some point in the future," not concrete proof. *White*, 458
> U.S. at 1302, 103 S.Ct. 1 (emphasis added). And such speculation does not establish
> irreparable harm. *Nken*, 556 U.S. at 434, 129 S.Ct. 1749; see also *Clapper v.
> Amnesty Int'l USA*, 568 U.S. 398, 414, n. 5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)

*Murthy v. Missouri*, 2023 WL 6935337, at *2 (U.S. Oct. 20, 2023). Here, Defendants offer that

the irreparable harm of gun violence will occur if they are enjoined from enforcing the PHO. Yet,

this speculation is betrayed by the invocation, again, of the City of Albuquerque's nearly identical

attempt to regulate parks for more than the last 3 years. Assuming *arguendo*, that City of

Albuquerque could enact its Administrative Orders without violating the provision of the New

Mexico Constitution that prohibits municipal regulation of firearms (a point which is undeveloped

before this Court and undecided by the state district court in the pending matter), the City of

Albuquerque has not been enjoined by the state district court enforcing its prohibition on the carry

of firearms in public parks and that order has done nothing to curb gun violence in parks in over 3

years, such that the Defendants here felt compelled to enact a nearly identical prohibition.

Assuming that repeating the same action will produce a different result is not just rank speculation,

it is Einstein's definition of insanity.

As previously raised in the Plaintiff's motion he has established that he intends to visit the

parks at issue in the future and is prevented from doing so armed by the PHO. His loss of his

constitutionally protected freedom is therefore real and present constituting irreparable harm. That

is not the question pending before this Court because this Court has already correctly applied Tenth

**App. 135**

Circuit precedent to find "[t]he Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases)."

Moreover, as to public interest this Court has correctly applied the Tenth Circuit's holding in *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) that "[a]s to the fourth and final factor, 'it's always in the public interest to prevent the violation of a party's constitutional rights.' *Id.* at 806-07." MOO at 18.

<u>**CONCLUSION**</u>

Because this Court should not engage in reconsideration of the granted preliminary injunction and because Defendants have failed to satisfy all 4 of the factors for a stay pending appeal this Court should deny the Motion.

Respectfully submitted this 12th day of December 2023.

> WESTERN AGRICULTURE, RESOURCE
> AND BUSINESS ADVOCATES, LLP
>
> */s/ A. Blair Dunn*
> A. Blair Dunn, Esq.
> Jared R. Vander Dussen, Esq.
> 400 Gold Ave SW, Suite 1000
> Albuquerque, NM 87102
> (505) 750-3060
> abdunn@ablairdunn-esq.com
> warba.llp.jared@gmail.com
>
>
> Zach Cook, LLC
>
> */s/ Zach Cook*
> Zach Cook
> 1202 Sudderth # 425
> Ruidoso, NM 88345
> (575) 937-7644
> zach@zachcook.com

9

**App. 136**

CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I filed the foregoing via the CM/ECF causing all parties of record to be served electronically.

*/s/ A. Blair Dunn*_____
A. Blair Dunn, Esq.

**App. 137**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

     **Plaintiff,**

vs.                             **No. 1:23-cv-00781-KWR-LF**

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

     **Defendants.**

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"),[1] by and through their counsel of record, hereby answer the complaint [Doc. 1] as follows:

### PARTIES AND JURISDICTION

1.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 and therefore deny the same.

2.     Paragraph 2 states a legal conclusion to which no response is required.

3.     With respect to the allegations in Paragraph 3, Defendants admit Michelle Lujan Grisham is the Governor. The remainder of Paragraph 3 states a legal conclusion to which no response is required.

---

[1] The Office of the Governor, named in the caption of Plaintiffs' complaint, is not a legal entity that can sue or be sued.

4.      With respect to the allegations in Paragraph 4, Defendants admit Patrick Allen is the Secretary of the Department of Health. The remainder of Paragraph 4 states a legal conclusion to which no response is required.

5.      Paragraph 5 states a legal conclusion to which no response is required.

6.      Paragraph 6 states a legal conclusion to which no response is required.

7.      Paragraph 7 states a legal conclusion to which no response is required.

8.      The first Paragraph 8 states a legal conclusion to which no response is required.

## GENERAL ALLEGATIONS

8.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 8 and therefore deny the same.

9.      Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 9 and therefore deny the same.

10.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 10 and therefore deny the same.

11.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 11 and therefore deny the same.

12.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 12 and therefore deny the same.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 13 and therefore deny the same.

14.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in the second Paragraph 14 and therefore deny the same.  Defendants admit the Secretary issued the challenged public health order.

15.     With respect to the allegations in Paragraph 15, Defendants state that the order speaks for itself.

16.     With respect to the allegations in Paragraph 16, Defendants state that the order speaks for itself and deny the rest.

17.     Admit.

18.     With respect to the allegations in Paragraph 18, Defendants admit the Governor issued the challenged executive order, which speaks for itself, and deny the rest.

19.     With respect to the allegations in Paragraph 19, Defendants admit the Governor issued the challenged executive order, which speaks for itself, and deny the rest.

20.     With respect to the allegations in Paragraph 20, Defendants state that the order speaks for itself.

21.     With respect to the allegations in Paragraph 21, Defendants admit Michelle Lujan Grisham was the current occupant of the Office of the Governor for the State of New Mexico at all times related to the complaint. The remainder of Paragraph 3 states a legal conclusion to which no response is required.

22.     Paragraph 22 states a legal conclusion to which no response is required. To the extent that Paragraph 22 can be construed to make factual allegations, Defendants deny them.

**App. 140**

23.     Paragraph 23 states a legal conclusion to which no response is required. To the extent that Paragraph 23 can be construed to make factual allegations, Defendants deny them.

24.     With respect to the allegations in Paragraph 24, Defendants admit the Governor issued the challenged executive order, which speaks for itself, and deny the rest.

25.     With respect to the allegations in Paragraph 25, Defendants admit the Governor issued the challenged executive order, which speaks for itself.

26.     With respect to the allegations in Paragraph 26, Defendants admit the Secretary issued the challenged public health order, which speaks for itself, and deny the rest.

27.     Paragraph 27 states a legal conclusion to which no response is required. To the extent that Paragraph 27 can be construed to make factual allegations, Defendants deny them.

28.     Paragraph 28 states a legal conclusion to which no response is required. To the extent that Paragraph 28 can be construed to make factual allegations, Defendants deny them.

29.     Paragraph 29 states a legal conclusion to which no response is required. To the extent that Paragraph 29 can be construed to make factual allegations, Defendants deny them.

30.     Paragraph 30 states a legal conclusion to which no response is required.

31.     Paragraph 31 states a legal conclusion to which no response is required.

32.     Paragraph 32 states a legal conclusion to which no response is required.

33.     Paragraph 33 states a legal conclusion to which no response is required.

34.     Paragraph 34 states a legal conclusion to which no response is required.

35.     Paragraph 35 states a legal conclusion to which no response is required. To the extent that Paragraph 35 can be construed to make factual allegations, Defendants deny them.

36.     Paragraph 36 states a legal conclusion to which no response is required.

37.     Paragraph 37 states a legal conclusion to which no response is required.

**App. 141**

38.     Paragraph 38 states a legal conclusion to which no response is required. To the extent that Paragraph 38 can be construed to make factual allegations, Defendants deny them.

39.     Paragraph 39 states a legal conclusion to which no response is required. To the extent that Paragraph 39 can be construed to make factual allegations, Defendants deny them.

40.     Paragraph 40 states a legal conclusion to which no response is required. To the extent that Paragraph 40 can be construed to make factual allegations, Defendants deny them.

41.     Paragraph 41 states a legal conclusion to which no response is required.

42.     Paragraph 42 states a legal conclusion to which no response is required.

43.     Paragraph 43 states a legal conclusion to which no response is required.

44.     Paragraph 44 states a legal conclusion to which no response is required. To the extent that Paragraph 44 can be construed to make factual allegations, Defendants deny them.

45.     Paragraph 45 states a legal conclusion to which no response is required. To the extent that Paragraph 45 can be construed to make factual allegations, Defendants deny them.

46.     Paragraph 46 states a legal conclusion to which no response is required. To the extent that Paragraph 46 can be construed to make factual allegations, Defendants deny them.

47.     Paragraph 47 states a legal conclusion to which no response is required. To the extent that Paragraph 47 can be construed to make factual allegations, Defendants deny them.

48.     Admit.

49.     With respect to the allegations in Paragraph 49, Defendants admit the Attorney General sent the cited letter to the Governor, which speaks for itself.

50.     Paragraph 50 states a legal conclusion to which no response is required. To the extent that Paragraph 50 can be construed to make factual allegations, Defendants deny them.

**App. 142**

**COUNT I: VIOLATION OF THE RIGHT TO BEAR ARMS – 42 U.S.C. § 1983**

51.     Defendants reincorporate the preceding answers.

52.     With respect to the allegations in Paragraph 52, Defendants admit Defendants issued the challenged orders, which speaks for themselves, and deny the rest.

53.     Paragraph 53 states a legal conclusion to which no response is required. To the extent that Paragraph 53 can be construed to make factual allegations, Defendants deny them.

54.     Paragraph 54 states a legal conclusion to which no response is required. To the extent that Paragraph 54 can be construed to make factual allegations, Defendants deny them.

55.     Paragraph 55 states a legal conclusion to which no response is required. To the extent that Paragraph 55 can be construed to make factual allegations, Defendants deny them.

56.     Paragraph 56 states a legal conclusion to which no response is required. To the extent that Paragraph 56 can be construed to make factual allegations, Defendants deny them.

**COUNT II: VIOLATION OF FREEDOM OF THE PRESS AND SPEECH – VIEWPOINT DISCRIMINATION – 42 U.S.C. § 1983**

57.     Defendants reincorporate the preceding answers.

58.     Paragraph 58 states a legal conclusion to which no response is required.

59.     Paragraph 59 states a legal conclusion to which no response is required. To the extent that Paragraph 59 can be construed to make factual allegations, Defendants admit Defendants issued the challenged orders, which speaks for themselves, and deny the rest.

60.     Paragraph 60 states a legal conclusion to which no response is required. To the extent that Paragraph 60 can be construed to make factual allegations, Defendants deny them.

**COUNT III: VIOLATION OF N.M. CONST. ART. II, § 6, AND ART. II, § 17 (ONLY AS TO THE DEFENDANTS OFFICE OF THE GOVERNOR AND DEPARTMENT OF HEALTH)**

61.     Defendants reincorporate the preceding answers.

6

**App. 143**

62.     Paragraph 62 states a legal conclusion to which no response is required. To the extent that Paragraph 62 can be construed to make factual allegations, Defendants deny them.

63.     Paragraph 63 states a legal conclusion to which no response is required. To the extent that Paragraph 63 can be construed to make factual allegations, Defendants deny them.

64.     Paragraph 64 states a legal conclusion to which no response is required. To the extent that Paragraph 64 can be construed to make factual allegations, Defendants deny them.

65.     Paragraph 65 states a legal conclusion to which no response is required. To the extent that Paragraph 65 can be construed to make factual allegations, Defendants deny them.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense:** Plaintiff's complaint fails to state a claim upon which relief may be granted.

**Second Affirmative Defense:** Plaintiff's complaint is barred by sovereign immunity.

**Third Affirmative Defense:** Plaintiff's complaint is barred by qualified immunity.

**Fourth Affirmative Defense:** Plaintiff failed to mitigate his damages.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.duffy@exec.nm.gov

7

**App. 144**

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, I filed the foregoing via the CM/ECF filing

system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

8

**App. 145**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES SPRINGER,

      Plaintiff,

vs.                                No. 1:23-cv-00781-KWR-LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NM DEPARTMENT OF HEALTH,

      Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION
## FOR STAY PENDING APPEAL AND CLARIFICATION

      Defendants Governor Michelle Lujan Grisham, Secretary Patrick M. Allen, and the New Mexico Department of Health (collectively, "Defendants"), by and through their counsel of record, hereby submit their reply in support of their Emergency Motion for Stay Pending Appeal and Clarification [Doc. 21] (the "Motion"). In support thereof, Defendants state as follows.

## INTRODUCTION

      On December 8, 2023, Defendants moved this Court to stay its December 5, 2023, Memorandum Opinion and Order [Doc. 19] to the extent it enjoins enforcement of the public health order ("PHO") while Defendants can pursue an appeal or, alternatively, clarify that the injunction only applies to Plaintiff. *See* Motion. Defendants requested, if the motion convinced the Court to reconsider and reverse its preliminary injunction, that the Court grant that relief in lieu of a stay. *See id.* at 1 n.1. On December 11, this Court issued an Order temporarily staying its preliminary injunction and asking the parties to address "whether the Court has discretion to reconsider and vacate a preliminary injunction after a notice of appeal was filed." [Doc. 22]. For the reasons set

out below and in the Motion, Defendants respectfully request that the Court (a) stay its preliminary injunction while Defendants pursue review in the Tenth Circuit; (b) issue an indicative ruling stating that the Court would dissolve the preliminary injunction upon remand; and (c), alternatively, clarify that the injunction applies only to Plaintiff.

## DISCUSSION

I.     **Defendants have a strong likelihood of succeeding on appeal**

   a.     **Plaintiff has failed to demonstrate standing to seek injunctive relief against the PHO's temporary restrictions on firearms**

As explained in the Motion, Plaintiff failed to show that he has standing to seek a preliminary injunction because he did not present evidence demonstrating that he intended to visit affected parks in the future—let alone the imminent future. Motion at 5-8. Nothing in Plaintiff's Response in Opposition to the Emergency Motion for Stay Pending Appeal and Clarification [Doc. 26] (the "Response") changes that fact. While Plaintiff now "proffers" that "he absolutely intends to frequent all of these parks, again, in the future," Response at 3 (emphasis omitted), this is mere argument of counsel and not evidence that the Court can consider in determining whether Plaintiff has standing to seek a preliminary injunction. *See Boles v. Colo. Dep't of Corr.*, No. 22-1086, 2023 WL 1463248, at *5 (10th Cir. Feb. 2, 2023) (unpublished) ("Preliminary injunctive relief requires evidentiary support."); *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (recognizing that "the argument of counsel is not evidence" ); *see also Engility Corp. v. Daniels*, No. 1:16-cv-02473, 2016 WL 7034976, at *12 (D. Colo. Dec. 2, 2016) (rejecting the defendants' unsupported factual assertions on a preliminary injunction motion because "argument of counsel is not evidence" (citation omitted)). Likewise, Plaintiff makes no effort to present any evidence showing that enjoining the PHO would redress his injury in light of the City of Albuquerque's separate regulations. *See generally* Response.

2

**App. 147**

Given the foregoing, the Court should reconsider its previous conclusion that Plaintiff has standing to obtain a preliminary injunction against the PHO's restriction on firearms in Albuquerque and Bernalillo County parks.[1]

### b.    Plaintiff has not demonstrated a clear and unequivocal right to a preliminary injunction on the merits of his Second Amendment claim

Defendants explained in their Motion that they are very likely to win on appeal because Plaintiff has not established a likelihood of success on the merits of his Second Amendment claim at all—let alone the "clear and unequivocal" merits showing required to obtain the "extraordinary remedy" of a preliminary injunction. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted). As another judge in this district concluded in considering a separate challenge to the PHO, "it cannot be said that Plaintiffs' right to relief is 'clear and unequivocal.'" *We the Patriots, Inc. v. Lujan Grisham*, No. 1:23-cv-00773-DHU-LF, 2023 WL 6622042, at *9 (D.N.M. Oct. 11, 2023) (quoting *Diné Citizens*, 839 F.3d at 1281), *appeal filed*, Nos. 23-2166, 23-2167, 23-2185 (10th Cir. Oct. 20, 2023). In addition to *We the Patriots*, two other federal district courts, and now the Second Circuit, have all rejected similar challenges to parks restrictions at the preliminary injunction stage. *See* Motion at 8-9 (citing cases). Indeed, given the growing consensus among courts that parks are sensitive places in which the government may regulate firearms, it is Defendants whose entitlement to a stay is unequivocal. Even Plaintiff appears, in some portions of his response, to recognize that a stay is appropriate in these circumstances. *See, e.g.*, Response at 7 ("Plaintiff . . . would certainly understand if this Court

---

[1] The Court need not consider Plaintiffs' unsupported factual assertions regarding his standing to challenge the PHO's restriction of firearms in playgrounds, Response at 2-3, as Plaintiff has not moved for reconsideration or any other relief regarding the Court's December 5, 2023, memorandum opinion and order.

**App. 148**

stayed the injunction pending appeal[.]"). And in those portions where he appears to continue to resist the entry of a stay, none of his arguments has merit.

*First*, Plaintiff suggests that the Tenth Circuit is likely to find the decision of its sister circuit in *Antonyuk v. Chiumento*, No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023), less authoritative than the district court decision that the Second Circuit (largely) vacated in that case. *See* Response at 6. That is baseless. To begin with, a Second Circuit decision is on its face far more likely to influence the Tenth Circuit's approach than a decision of one district court judge in New York, particularly given the Tenth Circuit's caution against creating circuit splits. *See, e.g.*, *United States v. Thomas*, 939 F.3d 1121, 1130 (10th Cir. 2019) (surveying reasons to avoid splits and concluding that "[w]e should not create a circuit split merely because we think the contrary arguments are marginally better").[2] Moreover, any suggestion that this particular district court opinion might be persuasive is undercut by the fact that the court could not even agree with itself: over the course of ten weeks, it issued three decisions and took a different approach in each, both as to methodology and many of its conclusions. *Compare Antonyuk v. Bruen*, 624 F. Supp. 3d 210 (N.D.N.Y. 2022), *with Antonyuk v. Hochul*, 635 F. Supp. 3d 111 (N.D.N.Y. 2022), *and Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y 2022); *see also* Joseph Blocher & Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication*, 133 Yale L.J. 99, 139-40 (2023) (tracing "shifting methodologies" across the three *Antonyuk* district court opinions); *id.* at 140-41 (surveying "confusion" in district court's resulting conclusions—including, for example, that "[b]ans on guns in places of worship were unconstitutional in [its first opinion], constitutional in

---

[2] There is, of course, no equivalent principle that militates for following a district court opinion from another circuit (let alone one that the sister circuit vacated).

**App. 149**

[its second], and unconstitutional again in [its third]" and "[b]ans on guns in children's summer camps were unconstitutional in [its first and second opinions], but constitutional in [its third]").[3]

*Second*, Plaintiff argues that the Second Circuit's analysis is inconsistent with *Bruen*'s instruction that New York cannot "effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the [police]." *See* Response at 6 (quoting *N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1, 31 (2022)); *see also id.* at 5. But that is not what the Second Circuit did. Instead, it concluded that there was a centuries-long, specific tradition of "regulating firearms in quintessentially crowded areas and public forums," such as "fairs and markets," *Antonyuk*, 2023 WL 8518003, at *58-59, and held that a prohibition on guns in urban parks sat comfortably within this tradition: "As urban public parks took root as a new type of public forum [in the late nineteenth century], cities continued the tradition of regulating firearms in historical public forums, such as fairs and markets, to likewise keep these new public spaces, urban parks, peaceable." *Id.* at *61. In other words, the Second Circuit accepted that this tradition justified prohibiting guns in Central Park and other parks in New York City—not that it justified a blanket prohibition throughout all of Manhattan.

*Third*, Plaintiff quibbles with the Second Circuit's view that the relevant comparison when assessing the representativeness of urban parks restrictions is urban populations, not the entire

---

[3] Plaintiff also suggests that this Court should deem the Second Circuit's decision "unpersuasive" simply because "it was the Second Circuit that was reversed . . . in *Bruen*." Response at 5. The notion that the Tenth Circuit or this Court should disregard all Second Circuit decisions on Second Amendment issues, no matter how well-reasoned, simply because the decision of a different panel considering a different issue under different controlling law was reversed in *Bruen*, is self-evidently mistaken.

**App. 150**

national population. *See* Pl. Resp. at 5.[4] But that is simply a matter of common sense: if a court were examining the regulatory approach of states to activity on an underground public transit system, it would not make sense to assign significance to the absence of regulations in Wyoming or Hawai'i. In any event, the more important aspect of *Antonyuk*'s analysis regarding a population-based approach is its conclusion that a cramped focus on relative population size is fundamentally unsound—and at odds with *Bruen*. "Disqualifying proffered analogues based only on strict quantitative measures such as population size absent any other indication of historical deviation would turn *Bruen* into the very 'regulatory straightjacket' the Court warned against." *Antonyuk*, 2023 WL 8518003, at *43 (quoting *Bruen*, 597 U.S. at 30).

*Fourth*, Plaintiff suggests that this Court should ignore the robust historical tradition on which Defendants rely because, in his view, the copies of historical laws Defendants submitted are "exhibits of additional evidence" that should have been provided earlier. Response at 1. But laws are not subject to the same constraints on the timing of submission as factual evidence (such as the matter of where Plaintiff intends to carry a firearm). *See, e.g.*, *Baca v. Dep't of the Army*, 983 F.3d 1131, 1140 (10th Cir. 2020) (stating that "[we] allow a party to provide new legal authority on appeal for the position that he advanced below" and permitting consideration of Army and Department of Defense policies raised for first time on appeal because they were "new legal authority in support of" plaintiff's claim "rather than a new theory of relief" (cleaned up)); *see also, e.g.*, *Constantino v. TRW, Inc.*, 13 F.3d 969, 981 n.13 (6th Cir. 1994) ("Plaintiffs are now citing to statutory authority in support of their theory to which they apparently did not cite in the court below. In [arguing that this is improper, in] effect, Defendants are urging us to adopt a rule

---

[4] Plaintiff disregards the fact that *Antonyuk* was considering a far smaller group of historical restrictions specific to parks—just the eight city ordinances New York had presented—than Defendants have presented in this Court. *See Antonyuk*, 2023 WL 8518003, at *61.

**App. 151**

prohibiting parties from submitting new citations of authority at the appellate level. Such a rule would undermine one of the fundamental purposes of our adversarial legal system, that of determining the legal premises properly applicable to a case."); *United States v. Rapone*, 131 F.3d 188, 196 (D.C. Cir. 1997) (rejecting argument that defendant could not cite, for the first time on appeal, statute entitling him to jury trial, where he had repeatedly asked for jury trial in district court and on appeal was "simply offer[ing] new legal authority for th[at] position"); *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (following *Rapone*); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 n.20 (7th Cir. 2010) ("A litigant may cite new authority on appeal."). In any event, Defendants had already (prior to the filing of this motion) cited a large proportion of the historical laws they provided, either directly or through reference to the collections of historical laws considered by other district courts in challenges to firearms prohibitions in parks. [*See* Doc. 15 at 12-15].[5]

In sum, nothing in Plaintiff's response disturbs the conclusion that Defendants have a strong likelihood of success on appeal. And it is clear from the significant weight of authority in Defendants' favor—not to mention Plaintiff's suggestions of acquiescence—that the better course is to stay the preliminary injunction and maintain the status quo while the appeal proceeds.

---

[5] Plaintiff also suggest that the historical parks laws are almost all "unpersuasive" because those that appeared before 1866 were from one state and those that appeared from 1868 to 1878 were from three additional states. Response at 1-2. There are a host of errors underlying this suggestion, but because Plaintiff makes it only in passing, Defendants will mention just two. First, all of these laws are part of a historical tradition stretching back to the medieval Statute of Northampton, as *Antonyuk* found, *see* 2023 WL 8518003, at *58-65, so any suggestion that they came too late is mistaken. Second, six of the eight ordinances to which *Antonyuk* gave significant weight in its parks analysis were passed in the 1880s and 1890s, *see id.* at *56 n.69, 61, making Plaintiff's 1878 cutoff inexplicable. *See also District of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (explaining that "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period *after* its enactment or ratification" is "a critical tool of constitutional interpretation" (second emphasis added)); *Bruen*, 597 U.S. at 20 (quoting same).

III.     **The non-merits factors favor staying or dissolving the preliminary injunction**

Plaintiff's final arguments regarding the non-merits factors are similarly unpersuasive. Plaintiff's first argument that "it absolutely *can* be disputed that New Mexico will suffer irreparable injury if it is enjoined from engaging what the Court has determined is likely unconstitutional action," Response at 7, misses the mark, as it assumes the PHO's temporary restrictions will ultimately be found unconstitutional. Defendants' point, rather, is that should this Court or the Tenth Circuit later determine that the PHO's temporary restrictions on firearms in parks are, in fact, constitutional, Defendants and the State of New Mexico will have indisputably suffered irreparable injury if it cannot now enforce those restrictions. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the state.").[6] This is not mere speculation—especially considering the current state of the record and caselaw.[7] *See* discussion *supra* Section II; Motion at 8-13. Likewise, the harm that would be visited on the public at large should Defendants be prevented from enforcing the PHO is not "rank speculation," Response at 8, when Defendants have provided several

---

[6] *See also Worth v. Jacobson*, No. 0:21-cv-1348, 2023 WL 3052730, at *3 (D. Minn. Apr. 24, 2023) (finding the irreparable harm factor weighed in favor of a stay because, although the court had concluded the law likely violated the Second Amendment, "there is a sufficient debate about the merits in this case and the substantial, difficult, and novel legal issues raised"); *Firearms Policy Coal. v. McCraw*, 623 F. Supp. 3d 740, 757 (N.D. Tex. 2022) (staying injunction pending appeal in Second Amendment case because a state "necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws," and the state's "interest and harm merges with that of the public").

[7] The Court should not be distracted by Plaintiff's citation to the *dissent* from a grant of an application of stay pending appeal in *Murthy v. Missouri*, 2023 WL 6935337 (U.S. Oct. 20, 2023). First, a dissent is obviously not controlling. Second, the purported irreparable harm in that case did not involve the government's inability to enforce its laws—unlike the situation here.

8

**App. 153**

examples of recent shootings in Albuquerque parks and literature demonstrating the chilling effect of guns on the public's use and enjoyment of parks.[8] *See* Motion at 14 nn. 12 & 13.

On the other hand, it remains unclear, *at best*, whether Plaintiff will suffer any irreparable harm if the Court stays the preliminary injunction. As previously explained, there is no evidence in the record suggesting that Plaintiff (a Torrance County resident) will visit an Albuquerque park in the near future. Motion at 14-15. And even if there were, Plaintiff fails to show how his temporary inability to carry a firearm while he occasionally visits parks in another county amounts to "substantial injury." The fact that other circuits have stayed injunctions of similar parks restrictions pending appeal suggests that those courts did not find the potential injury to those plaintiffs in not being able to carry firearms in certain parks substantial enough to overcome the other factors warranting a stay. *See Antonyuk v. Hochul*, No. 22-2908, 2022 WL 18228317, at *1 (2d Cir. Dec. 7, 2022) (concluding that applicable factors weighed in favor of a stay pending appeal)[9]; *Koons v. Att'y Gen. of N.J.*, No. 23-1900, Dkt. 23 (3d Cir. June 20, 2023) (same).[10] Accordingly, the non-merits factors weigh in favor of staying the preliminary injunction.

_____

[8] True, it is possible the City of Albuquerque may continue to enforce its restriction at those parks where it applies, as Plaintiff observes. Response at 8. But that does not mean that prohibiting Defendants—who have greater resources than the City of Albuquerque—from enforcing the PHO will not increase the likelihood of shootings and other harms going forward.

[9] As noted, *see* discussion *supra* Section II, the Second Circuit has since strengthened the arguments for a stay here even more by reversing the district court's grant of a preliminary injunction as to New York's parks restrictions.

[10] District courts addressing motions to stay injunctions pending appeal in Second Amendment cases have likewise concluded that the potential harm to the plaintiff was not significant enough to warrant denial of a stay. *See, e.g.*, *Fraser v. ATF*, 2023 WL 5617894, at *4 (E.D. Va. Aug. 30, 2023) (noting that although the plaintiffs "have a strong interest in exercising their constitutional rights and the stay will delay the date on which they may do so," a stay pending appeal would not cause them "substantial[] injur[y]"); *Firearms Policy Coal.*, 623 F. Supp. 3d at 757 ("Though Plaintiffs' interest in the vindication of their Constitutional rights suffers while the judgment is stayed, the stay is necessary to militate the possible negative effects of relying on the injunction

IV.    **The Court should issue an indicative ruling stating it would dissolve the preliminary injunction upon remand**

Although the Tenth Circuit has not yet opined on the issue, the Court has valid concerns that it does not have jurisdiction to dissolve the preliminary injunction now that Defendants have filed a notice of appeal. *See Pueblo of Pojoaque v. State of New Mexico*, 221 F. Supp. 3d 1289, 1298 (D.N.M. 2016); [Doc. 22 at 2]; *but see In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120, 123 (D.D.C. 2010) (noting that the at least one D.D.C. judge and the Eleventh Circuit have suggested that a court may dissolve an injunction pending appeal pursuant to Fed. R. Civ. P. 62(d)). Regardless, the Court indisputably has the authority to issue an "indicative ruling" pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, which provides: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See generally Pueblo of Pojoaque*, 221 F. Supp. 3d at 1298 (discussing law of "indicative rulings"). "If the court makes such an indication, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." *Id.* at 1299 (cleaned up).

Given the substantial record now in front of this Court and the Second Circuit's holding in *Antonyuk*, Defendants respectfully request that the Court stay its preliminary injunction pending appeal and issue an indicative ruling stating that it would grant Defendants' request to dissolve the

---

while it is subject to appellate review and possible reversal."); *Worth*, 2023 WL 3052730, at *4 ("As this Court has interpreted this rapidly developing and uncertain area of the law, entering the stay . . . will affect the Plaintiffs' ability to exercise their rights . . . [b]ut this factor does not outweigh all the others.").

**App. 155**

injunction if the Tenth Circuit remands for that purpose.[11] *See Pueblo of Pojoaque*, 221 F. Supp.

3d at 1297 (stating that the decision to reconsider a preliminary injunction "should account for the

fact that a preliminary injunction is often granted under pressured time constraints, on limited

evidence and expedited briefing schedules" (cleaned up)).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay its

preliminary injunction while Defendants pursue review in the Tenth Circuit and issue an indicative

ruling stating that the Court would dissolve the preliminary injunction upon remand. Alternatively,

Defendants request that the Court clarify that the injunction only applies to Plaintiff.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.Duffy@exec.nm.gov

---

[11] While Rule 62.1 permits the Court to instead state that "motion raises a substantial issue," Defendants do not seek this relief in light of commentary that identifies potential risks. The Advisory Committee Notes observe that "[r]emand is in the court of appeals' discretion" and "[t]he court of appeals may remand all proceedings, terminating the original appeal." *See* Fed. R. App. P. 12.1 advisory committee's note to 2009 adoption. The Notes caution that, in the "postjudgment context," this should only be the procedure if the movant "has clearly stated its intention to abandon the appeal." *Id.* "The danger," they explain, "is that if the initial appeal is terminated and the district court then denies the requested relief, the time for appealing the initial judgment will have run out and a court might rule that the appellant is limited to appealing the denial of the postjudgment motion." *Id.*; *see also* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3958.10 (5th ed. 2020). Without certainty that they will face no such potential risk in the prejudgment context, Defendants respectfully request that the Court only indicate whether it would dissolve the preliminary injunction upon remand.

SERPE ANDREWS, PLLC

*/s/ Cody R. Rogers*
Cody R. Rogers
2540 El Paseo Road, Suite D
Las Cruces, NM 88001
(575) 288-1453
crogers@jarmielaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, I filed the foregoing via the CM/ECF filing

system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

12

**App. 157**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

JAMES SPRINGER,

        Plaintiff,

    v.                                  No. 1:23-cv-00781 KWR/LF

MICHELLE LUJAN GRISHAM,
OFFICE OF THE GOVERNOR,
PATRICK ALLEN, and
NEW MEXICO DEPARTMENT OF HEALTH,

        Defendants.

## ORDER DENYING REQUEST TO RECONSIDER OR STAY PRELIMINARY INJUNCTION

THIS MATTER comes before the Court upon Defendants' Emergency Motion for Stay Pending Appeal and Clarification **(Doc. 21)**. Defendants request the Court reconsider or stay its order preliminarily enjoining the portion of Defendant Patrick Allen's public health order banning firearms in public parks. For the reasons stated below, the Court finds Defendants' motion is not well-taken and therefore is **DENIED**. The temporary stay of the preliminary injunction pending briefing on this motion is vacated.

This case concerns Defendant Patrick Allen's public health order, which in relevant part temporarily banned firearms in parks and playgrounds in Bernalillo County and Albuquerque, New Mexico. The Court entered a preliminary injunction enjoining the public health order to the extent it banned firearms in public parks, concluding that Defendants had not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues pursuant to _Bruen. See New York State Rifle & Pistol Ass'n, Inc. v. Bruen_, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

Defendants filed a motion to stay the preliminary injunction or alternatively reconsider and vacate the preliminary injunction. Defendants presented (1) new evidence they believe demonstrates a historical tradition of firearm regulation in public parks or historical analogues, and (2) argued the Court otherwise erred.  As explained below, the Court declines to consider Defendants' belated evidence, as they have not demonstrated why they could not have presented it during the briefing on the preliminary injunction motion.

Moreover, having considered all evidence presented in the preliminary injunction briefing, the Court concludes that it did not err in finding that Defendants had not carried their burden of showing a historical tradition of firearm prohibition in public parks.  Therefore, the Court declines to reconsider the preliminary injunction or stay the preliminary injunction pending appeal.

## BACKGROUND

New Mexico's Governor issued an executive order declaring a state of public health emergency due to gun violence.  Doc. 1, Ex. 2, Governor's Executive Order 2023-130, Declaring State of Public Health Emergency Due to Gun Violence, September 7, 2023.  Subsequently, based on this public health emergency, the Department of Health Secretary Patrick Allen issued a public health order imposing restrictions on the possession of firearms. *See* Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, Doc. 1, Ex. 1. Those restrictions have been narrowed following rulings in related cases in this district.

In his motion for preliminary injunction, Plaintiff challenged certain portions of the public health order currently in effect which in part temporarily restricts the right to carry firearms in certain public parks and playgrounds in Bernalillo County and Albuquerque, New

2

Mexico. *See* Doc. 10, Ex. 1, Amended[1] Public Health Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures, October 6, 2023 (the "Public Health Order"). That public health order was issued by the Secretary of the New Mexico Department of Health, Defendant Patrick Allen. The Governor also issued renewed executive orders extending the public health emergency due to gun violence.

The Public Health Order currently in effect is narrower than prior public health orders. In relevant part, the current order states that no individual, aside from law enforcement officers, licensed security officers, and certain others, may carry firearms in public parks or playgrounds. *Id.* This temporary restriction does not apply to Albuquerque's Shooting Range Park, state parks, or areas owned by the New Mexico Energy, Minerals and Natural Resources Department, State Parks Division, or the State Land Office. *Id.* The Public Health Order clarifies that the firearm restrictions apply to Bernalillo County and Albuquerque, New Mexico. It also has several provisions unrelated to the right to bear firearms.

The relevant portion of the Public Health Order the Plaintiff seeks to preliminarily enjoin is as follows:

> (1) No person, other than a law enforcement officer or licensed security officer, or active duty military personnel shall possess a firearm, as defined in NMSA 1978, Section 30-7- 4.1, either openly or concealed, in public parks or playgrounds within the City of Albuquerque or Bernalillo County, except in the City of Albuquerque's Shooting Range Park and areas designated as a state park within the state parks system and owned or managed by the New Mexico Energy, Minerals and Natural Resources Department State Parks Division, or the State Land Office

Doc. 10-1, Ex. 1, at 2. This temporary restriction is in effect through the duration of the public health emergency declared in the Governor's executive orders. Doc. 10-1, Ex. 1, at 3. The

---

[1] The public health order in effect and at issue has previously been referred to as the "Second Amended Public Health Order" by Plaintiff and this Court. Any reference to "Second Amended Public Health Order" or "Public Health Order" generally refers to the operative public health order being challenged in the record as Doc. 10, Exhibit 1, unless otherwise noted.

public health emergency has been extended several times.  It is currently in effect until January 26, 2024.  *See* Executive Order 2023-146 Renewing State of Public Health Emergency Due to Gun Violence, issued December 29, 2023, https://www.sos.nm.gov/legislation-and-lobbying/executive-orders (last accessed January 22, 2024).

> The Court granted in part the motion for preliminary injunction, as follows:

> [T]he Court preliminarily enjoins *only* the limited portion of the Second Amended Public Health Order (Doc. 10, Ex. 1, at 2), issued by the New Mexico Department of Health Secretary Patrick Allen, which restricts the carrying of firearms in public parks in Albuquerque and Bernalillo County, New Mexico.  No other portion of the public health order is enjoined.

Doc. 19 at 19-20.  Defendants simultaneously filed a notice of appeal and this emergency motion which in substance seeks a stay pending appeal or reconsideration of the preliminary injunction. Doc. 21.  The Court issued an order temporarily staying the preliminary injunction pending briefing on the motion, and ordering briefing on whether it had discretion to reconsider or vacate the preliminary injunction while an appeal is pending.  Order Temporarily Staying Preliminary Injunction Pending Briefing on Motion, Doc. 22.

## DISCUSSION

**I.**    <u>**District courts have discretion to reconsider a preliminary injunction while an appeal is pending under Fed. R. Civ. P. 62.1 by issuing an indicative ruling.**</u>

Defendants requested, as an alternative form of relief, that the Court reconsider the preliminary injunction. Doc. 21 at 1 n.1. The Court ordered briefing on whether it had discretion to reconsider and vacate the preliminary injunction while an appeal was pending.  *See* Doc. 22. As explained below, the Court assumes it has discretion to reconsider an interlocutory order such as a preliminary injunction while an appeal is pending by making an indicative ruling under Fed. R. Civ. P. 62.1.

District courts generally have discretion to reconsider interlocutory orders.  Fed. R. Civ. P. 54(b).  However, a notice of appeal may divest a district court of jurisdiction in some circumstances.  *Stewart v. Donges*, 915 F.2d 572, 577-78 (10th Cir. 1990).  Fed. R. Civ. P. 62 allows a district court to "suspend, modify, restore, or grant an injunction" while an appeal is pending.  Moreover, when a request for reconsideration is made, Fed. R. Civ. P. 62.1 provides:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1.  Therefore, the Court assumes it has discretion to rule on the request to reconsider the preliminary injunction by issuing an indicative ruling or by denying the motion.

## II.  The Court declines to consider new evidence presented by Defendants which could have been, but was not, presented before the Court issued the preliminary injunction.

Defendants request that the Court reconsider the preliminary injunction or stay the preliminary injunction, in part based on new evidence and an expanded historical record attached to their motion.  As explained below, the Court in its discretion declines to consider Defendants' new evidence in deciding whether to reconsider the preliminary injunction. Moreover, the Court does not believe it is appropriate here to consider new evidence not previously in the record to stay the preliminary injunction pending appeal.

5

**App. 162**

**A. The Court, in its discretion, declines to consider new evidence which, could have been but was not presented earlier, in deciding whether to reconsider the preliminary injunction.**

Defendants filed new evidence in their motion to stay or reconsider which they did not present in their response the motion for preliminary injunction, including (1) creating a new historical record of firearm regulations, and (2) a declaration from an historian regarding the history of public parks.

The Court in its discretion declines to consider Defendants' new evidence in deciding whether to stay or vacate the preliminary injunction.  Defendants request to reconsider an interlocutory order. The Court has discretion to reconsider an interlocutory order and its discretion is not cabined by the standards which apply to Fed. R. Civ. P. 59 and 60 motions. "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). Moreover, the Court has discretion to "reconsider" an interlocutory order under Fed. R. Civ. P. 54(b).

The Court has discretion in deciding what standard to apply to reconsideration of an interlocutory order. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that in considering a motion to reconsider an interlocutory order, the "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)").  In its discretion, the Court finds the Rule 59(e) framework useful here when considering a motion to reconsider an interlocutory order. *Id.*

"Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.' " *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144,

**App. 163**

1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *see also Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rule 59(e) relief is appropriate where "the court has misapprehended the facts, a party's position, or the controlling law.").

However, "[Rule 59(e)] 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted).  Additionally, Rule 59 "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see also Servants of Paraclete*, 204 F.3d at 1012 fFiling a motion pursuant to Rule 59 is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

Applying these standards in its discretion to this interlocutory order, the Court concludes that Defendants have not explained why their new evidence could not have been provided earlier. Rather, the evidence appears to have been available prior to their response to the motion for preliminary injunction.

As explained in its prior opinion, the United States Supreme Court in *Bruen* stated that a district court is "entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6.

> The burden on the merits in a preliminary injunction proceeding tracks the burden at trial.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

**App. 164**

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government. *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct."). Therefore, Defendants bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23- 00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020), *quoted in Bruen*, 142 S.Ct at 2130 n.6. District courts "are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6. A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

Memorandum Opinion and Order, Doc. 19 at 10. Defendants have not explained why their new evidence was not previously presented for consideration in the preliminary injunction briefing. Rather, the evidence appears to have been available to use in their response to the preliminary injunction motion. Defendants did not request an extension to file its brief in response to the motion for preliminary injunction. Therefore, the Court in its discretion declines to consider Defendants' new evidence in determining whether to reconsider the preliminary injunction.

**B. Court declines to consider new evidence in determining whether Defendants have made a strong showing they are likely to succeed on appeal.**

A district court may stay a preliminary injunction pending appeal. Fed. R. Civ. P. 62(d). District courts must consider four factors when deciding whether to stay an order pending appeal: (1) whether the stay applicant has made a strong showing that they are likely to succeed

on appeal; (2) whether the stay applicant will be irreparably injured without a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether public interest weighs in favor of granting or denying the stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

In determining whether Defendants have made a strong showing that they are likely to succeed on appeal, the Court believes that the new evidence is irrelevant. Appellate courts generally decide appeals based on the record before the district court at the time it made its decision. As explained above, the *Bruen* court concluded that the governmental defendants have the burden to create a historical record demonstrating a historical tradition of firearm regulation. *Bruen* further stated the district court is "entitled" to rely upon this historical record created by the parties, and need not carry the government's burden for them by sifting through historical materials not presented to it. *Bruen*, 142 S.Ct at 2130 n.6, 2150.   Here, Defendants' new evidence was not presented to this court at the time the preliminary injunction was entered.

Defendants appear to suggest that they can expand the historical record on appeal, and therefore they are likely to succeed on appeal.  Defendants cite to several cases suggesting that a party can offer new case law or legal authority on appeal.  *See* Doc. 32 at 6-7.  Citing to new legal authority on appeal is different from expanding the *Bruen* evidentiary historical record.  As explained above, *Bruen* has made clear that the historical record created by the parties is not the same as merely citing to legal authority or case law, and that the districts courts are entitled to rely upon the historical record in issuing their decisions.   In that sense, *Bruen's* "historical record" has some characteristics of a factual record.  In contrast, district courts sometimes must find and apply the relevant law to a case before it even if the parties fail to do so.

**App. 166**

III.    **Defendants have not shown that the Court erred in concluding that Plaintiff had demonstrated standing for preliminary injunctive relief.**

Defendants assert that the Court erred by finding that Plaintiff had established standing for preliminary injunctive relief as to the public health order's ban on firearms in public parks. The Court disagrees.

To demonstrate standing, Plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Defendants assert the Court erred by finding that Plaintiff had (1) established an injury in fact (2) that is likely to be redressed by a favorable judicial decision.  As explained below, Plaintiff has established an injury in fact and redressability.

**A.  Plaintiff has established an injury in fact as he has shown he intends to engage in a course of conduct arguably affected with a constitutional interest.**

In opposing the motion for preliminary injunction, Defendants primarily asserted that Plaintiff had failed to establish an injury in fact, because he did not assert that he intended to engage in a course of conduct arguably affected with a constitutional interest, i.e., carrying firearms in parks *in the future*.  "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895

10

**App. 167**

(1979)).  Defendants did not contest that there was a credible threat of prosecution under the public health order.

> Plaintiff filed a declaration in support of standing.  He asserts that:
>
> 3.      I have been prohibited by the Second Amended Public Health order from lawfully carrying my firearm for my and my family's protection for most of the months of September and October at the parks that I attend for non-scholastic youth sporting events or just to enjoy the beautiful fall weather in Albuquerque during the balloon fiesta.
>
> 4.      I also planned to organize and attend a rally in support of the Second Amendment to exercise my First Amendment rights by engaging in the expressive conduct of openly carrying a firearm in Civic Plaza but also have been prohibited from doing so by the SAPHO.

**Doc. 10-2, Exhibit 2, at 1.**  Moreover, in his verified Motion, he asserts that he "has children that participate in youth sports at the parks at issue in the SAPHO. Under the SAPHO, he is now been forced [sic] to attend several of those parks without the benefit of firearms for his own personal defense, or for the defense of his family in the drug and violence riddled city of Albuquerque."  **Doc. 10 at 2.**  In his declaration, he asserted that this statement was true and correct.  *See* **Doc. 10-2, Exhibit 2, at 1**.

Defendants assert that Plaintiff did not show an injury in fact because he did not assert he intends to visit parks in the future. The Court disagrees.

As noted above, a plaintiff establishes an injury in fact when he shows an intention to engage in a course of conduct arguably affected with a constitutional interest.  The Court finds he did so when he said "I attend" parks, Doc. 10-2, Exhibit 2 at 1, and when he said he "has children that participate in youth sports at the parks at issue in the SAPHO" Doc. 10 at 2.  By saying "I attend" parks, the Court finds that Plaintiff is clearly asserting that he is *currently* and *continues* to attend parks.  Defendants appear to assert that by saying "I attend", he did not say he would attend parks in the future.  When a declarant states "I attend parks", it is not limited to

**App. 168**

when the declarant speaks, i.e, that he only attends parks at the time he wrote the declaration. The present tense has long been used to express something *currently* ongoing and expected to *continue*, or an act outside of time.  *See, e.g.,* Rodney Huddleston, et al., *A Student's Introduction to English Grammar,* § 3.4, at 59 (Cambridge University Press, 2d ed. 2022) (phrase such as "Tricia mows the lawn" is present imperfective, used in a situation where declarant "regularly or habitually" does an activity.  "This situation holds at the time of speaking but began before then and may continue after it."); *Bas Aarts, Oxford Modern English Grammar* § 9.2.1.1 (Oxford University Press, 2011); *Id.* at § 9.2.1.4 ("in a number of contexts the present tense is used without referring to present time.   These include general descriptions, descriptions of journeys…"); *Id.* at § 9.3.2.1. The Court finds that when Plaintiff said that he *attends* parks, that he is not referring merely to the moment he drafted the declaration, but a continuing activity he participates in.

Defendants assert or imply that by referencing the months of September and October in his declaration, Plaintiff was asserting he only attends parks in September and October, and no other time.  The Court disagrees. Plaintiff drafted his declaration in October when he filed his motion for preliminary injunction.   Defendants first issued their firearm ban in parks on September 8, 2023.  When Plaintiff referenced the months of September and October in his declaration, he was not stating that he only attends parks in September or October, but was referencing how long *so far* he had been prohibited from carrying firearms in parks at the time he drafted his declaration in October.

Reading Plaintiff declaration and his statements in his verified motion as a whole, Plaintiff has clearly asserted an injury in fact. The Court finds that Plaintiff has stated he intends

to carry firearms in parks, and has demonstrated an intention to engage in a course of conduct affected with a constitutional interest.

**B. Plaintiff established redressability, as the record before the Court reflects that a preliminary injunction would redress his injury.**

Defendants also assert that Plaintiff had failed to establish that the injury is likely to be redressed by a favorable judicial decision. The Court disagrees. The Court addressed redressability in its opinion as follows:

> Defendants summarily assert that Plaintiff's asserted injury is not redressable as there is a separate restriction on carrying firearms in parks in Albuquerque. According to Defendants, the City of Albuquerque has administratively interpreted state law prohibiting the carrying of firearms on school property to include a wide range of city property, including parks. **Doc. 15 at 7**. That restriction is subject to a separate lawsuit in state court. The Court finds this point to be undeveloped in the briefing and insufficient to place the issue before the Court. *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). For example, it is unclear whether the threat of prosecution in the other case is credible. Even assuming Defendants' redressability argument were properly developed, Defendants do not allege that the City's interpretation of state law applies elsewhere in Bernalillo County outside the City of Albuquerque. Moreover, an injunction would eliminate the threat of being prosecuted under the public health order, which would redress Plaintiff's injury. Finally, Defendants' argument in their response that a separate firearm ban was already in place appears to contradict the Public Health Order and Executive Order, which stated that a restriction on the carrying of firearms was necessary to curb rising gun violence. In other words, Defendants clearly intended for the public health order to affect the right to carry firearms in public parks. Therefore, it appears an injunction would still redress Plaintiff's injury, with respect to the firearm ban in public parks.

Doc. 19 at 7-8. The Court sees no reason to deviate from this reasoning.

Defendants argue that the Court shifted the burden on redressability to them. The Court disagrees. Plaintiff bears the burden of establishing standing, including redressability. In their response to the motion for preliminary injunction, Defendants argued that a judicial decision would not redress Plaintiff's injury, as firearms were already banned under a separate City of

Albuquerque administrative memorandum. Plaintiff's burden does not alter the fundamental principle that a party asserting an argument or fact has the burden of adequately developing an argument, or supporting an asserted fact by evidence in the record, to properly place the issue before the Court.  Here, Defendants summarily asserted that Plaintiff failed to establish that an injunction would redress his injury by referencing a City of Albuquerque administrative policy without explaining the policy or providing it.  There is no such evidence in the record before the Court. NMSA 1978 § 30-7-2.1 makes it unlawful to carry a deadly weapon on "school premises."  That administrative policy apparently interprets state law banning firearms on school premises to apply to a wide variety of city property.   Defendants did not provide the administrative policy, any citation or explanation of that policy, nor did they provide any evidence in the record supporting their assertion of fact.  There is no evidence in the record that the policy is being enforced, or there is a credible threat of prosecution under that policy. Defendants asserted a statement of fact – that guns were already banned in parks in Albuquerque pursuant to a city administrative decision – without supporting that fact in the record by citation to any evidence. This unsupported argument or factual assertion was also contradicted by their other arguments in the briefing.  For example, Defendants have also asserted the firearm ban under the public health order is necessary, as otherwise guns would be allowed in parks in Albuquerque. *See* Doc. 21 at 13 (noting public would be irreparably harmed by the presence of firearms in parks if public health order's firearm ban was enjoined).  Therefore, Defendants' argument regarding redressability was not adequately developed for the Court to consider.

Alternatively, assuming the argument was properly developed, the record before the Court does not reflect that firearms are banned in *all* parks in the City of Albuquerque.  Plaintiff provided the city's administrative interpretation in their reply, which does not appear to ban

14

**App. 171**

firearms in *all* parks in the city. Doc. 16-2, Exhibit 2. Rather, the memo is careful to describe that firearms are banned in parks where school activities are held. Doc. 16-2 at 2 (interpreting state statute's prohibition on carrying firearms on school premises to include "city neighborhood parks, which are used as playing areas for public schools and other school programing, including those used for the Food services Program for Children in partnership with Albuquerque public schools."). Nothing in the record before this Court suggests that school activities are held in all parks in Albuquerque. Finally, the record does not suggest that firearms are banned in *all* city parks. *See* Doc. 16-2. Therefore, based on the record before the court, it would be merely speculative that firearms are banned in all parks in the City of Albuquerque as school premises, based on the City of Albuquerque's administrative memorandum.

Moreover, there is nothing in the record to reflect that the threat of prosecution is credible under the City's administrative interpretation of "school premises".

Alternatively, even assuming there were a separate firearm ban in public parks in Albuquerque, Plaintiff still could redress his injury as the city's restriction does not appear to apply elsewhere in Bernalillo County. Defendants assert that Plaintiff did not state he attended parks in Bernalillo County. The Court disagrees. Plaintiff plainly stated that he attends "youth sports at the parks at issue in the SAPHO," and attends parks at issue in the Public Health Order. Doc. 10 at 2; *see also* Doc. 10-2, Exhibit 2 (declaration stating he is prohibited from carrying firearms in parks he attends). Nothing in the record suggests that Plaintiff restricts his visits to parks in Albuquerque. Moreover, although he states that he has been unable to attend the Balloon Fiesta in Albuquerque, he does not state that he only attends parks in Albuquerque. *See* Doc. 19 at 6, citing Doc. 10-2, Exhibit 2 at 1. Therefore, even assuming the City of Albuquerque's

administrative memorandum independently bars carrying guns in public parks, it does not appear to bar carrying guns elsewhere in Bernalillo County.

Issuing a preliminary injunction would redress Plaintiff's injury on two separate, alternate grounds: (1) it would allow him to carry guns in parks and (2) it would remove the threat of prosecution under the Defendants' public health order for carrying guns in public parks in Bernalillo County and Albuquerque, New Mexico. Plaintiff has satisfied the redressability element of standing.

Therefore, for the reasons stated herein and in the Court's prior order, Doc. 19, the Court concludes that Plaintiff has demonstrated standing for a preliminary injunction of the public health order's ban on firearms in public parks.

**IV.**  **Considering the evidence before the Court at the time the preliminary injunction was issued, Defendants have not shown that the Court erred warranting reconsideration or a stay of the preliminary injunction pending appeal.**

Defendants request that the Court either stay the preliminary injunction or reconsider the injunction. The Court concludes that defendants have not shown that the Court erred based on the evidence presented in the briefing on the motion for preliminary injunction. Therefore, Defendants have not (1) made a strong showing of success on appeal warranting a stay or (2) demonstrated error warranting reconsideration.

> **A.**  **Defendants have not carried their burden of showing a historical tradition of banning firearms in public parks or their historical analogues.**

As explained below, Plaintiff has shown a likelihood of success on the merits as to his Second Amendment claim challenging firearm restrictions in public parks. Considering the evidence before the Court at the time the preliminary injunction was issued, Defendants have not

16

carried their burden to show a historical tradition of banning firearms in public parks or their historical analogues.

The Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Association, Inc. v. Bruen*, __U.S. __, 142 S.Ct. 2111, 2122, 213 L.Ed.2d 387 (2022). In *Bruen,* the United States Supreme Court adopted a new two-step test to determine whether a restriction violates the Second Amendment. *Id.* at 2129-30. In the first step, the court must determine "whether the Second Amendment's plain text covers an individuals' conduct" – if it does, "the Constitution presumptively protects that conduct." *Id.* at 2130. In the second step, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the government makes such as showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.*

The burden on the merits in a preliminary injunction proceeding tracks the burden at trial. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial," therefore government had burden even at preliminary injunction stage); *see also Baird v. Bonta*, 81 F.4th 1036, 1044 (9th Cir. 2023).

Here, the *Bruen* decision placed the burden of showing a historical tradition of firearm regulation on the government. *Bruen*, 142 S.Ct. at 2135 ("the burden falls on respondents to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct."). Therefore, Defendants

bear the burden to identify a "well-established and representative historical analogue" to ban carrying firearms in public parks. *Bruen*, 142 S. Ct. at 2133, 2135; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *13 (D. Colo. Aug. 7, 2023) (government had burden of showing regulation was constituent with historical tradition); *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *20–21 (D. Haw. Aug. 8, 2023) (same).

Moreover, "[i]n our adversarial system of adjudication, we follow the principle of party presentation." *United States* v. *Sineneng-Smith*, 590 U.S. ——, ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020). District courts "are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6.  A district court need not try to help the government carry its burden by "sift[ing] ... historical materials" to find an analogue. *Id.* at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden.").

In analyzing the government's proffered historical evidence, the Court must keep in mind that "constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783, *quoted in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022).  But "the Second Amendment's historically fixed meaning applies to new circumstances ...." *Bruen*, 142 S.Ct. at 2132. This task "will often involve reasoning by analogy" and "[l]ike all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are relevantly similar." *Id*. (citation and internal quotation marks omitted).  In assessing whether regulations are "relevantly similar under the Second Amendment," courts should look "toward at least two

18

metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132–33. But, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 2133. "[A]nalogical reasoning requires only that the government identify a well-established and representative **analogue**, not a historical **twin**. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*. (emphases in *Bruen*).

In its response to the motion for preliminary injunction, Defendants provided the Court with no evidence, in a declaration or any other evidentiary form. Rather, Defendants point to the following citations: (1) citations to laws or regulations identified in a district court case, *Maryland Shall Issue*; (2) western territorial laws; (3) a Texas law from 1871; and (4) a Missouri law from 1883. *See* **Doc. 15 at 12**, *citing Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11-12 (D. Md. July 6, 2023); **Doc. 15 at 13** (citing western territorial laws). As explained below, these citations do not satisfy Defendants' burden of pointing to a historical tradition of firearm regulation in public parks or their historical analogues.

The *Maryland Shall Issue* decision cited to the following laws or regulations restricting firearms in public parks:

> *see* First Annual Report on the Improvement of the Central Park, New York at 106 (**1857**), Opp'n Ex. 13, ECF No. 59-17; an 1870 law enacted by the Commonwealth of Pennsylvania stating that "[n]o persons shall carry fire-arms" in Fairmount Park in Philadelphia, Pennsylvania, *see* Acts of Assembly Relating to Fairmount Park at 18, § 21.II (**1870**), Opp'n Ex. 20, ECF No. 59-24; an 1895 Michigan state law providing that "No person shall fire or discharge any gun or pistol or carry firearms, or throw stones or other missiles" within a park in the City of Detroit, *see* **1895** Mich. Local Acts at 596, § 44, Opp'n Ex. 43, ECF No. 59-47; and a **1905** ordinance in Chicago, Illinois stating that "all persons are forbidden to carry firearms or to throw stones or other missiles within any of the Parks ... of the City," **1905** Chi. Revised Mun. Code, ch. XLV, art. I, § 1562, Opp'n Ex. 49, ECF No. 59-53. Similar restrictions were enacted to bar the

carrying of firearms in (I) Saint Paul, Minnesota, *see* Annual Reports of the City Officers and City Boards of the City of Saint Paul at 689 (**1888**), Opp'n Ex. 32, ECF No. 59-36; (2) Williamsport, Pennsylvania, *see* **1891** Williamsport, Pa. Laws and Ordinances at 141, § 1, Opp'n Ex. 37, ECF No. 59-41; (3) Wilmington, Delaware, *see* **1893** Wilmington, Del. Charter, Part VII, § 7, Opp'n Ex. 39, ECF No. 59-43; (4) Reading, Pennsylvania, *see* A Digest of the Laws and Ordinances for the Government of the Municipal Corporation of the City of Reading, Pennsylvania at 240, § 20(8) (**1897**), Opp'n Ex. 44, ECF No. 59-48; (5) Boulder, Colorado, *see* **1899** Boulder, Colo. Revised Ordinances at 157, § 511, Opp'n Ex. 45, ECF No. 59-49; (6) Trenton, New Jersey, *see* **1903** Trenton, N.J. Charter and Ordinances at 390, Opp'n Ex. 48, ECF No. 59-52; (7) Phoenixville, Pennsylvania, *see* A Digest of the Ordinances of Town Council of the Borough of Phoenixville at 135, § 1 (**1906**), Opp'n Ex. 52, ECF No. 59-56; (8) Oakland, California, *see* **1909** Oakland, Cal. Gen. Mun. Ordinances at 15, § 9, Opp'n Ex. 53, ECF No. 59-57; (9) Staunton, Virginia, *see* **1910** Staunton, Va. Code, ch. II, § 135, Opp'n Ex. 54, ECF No. 59-58; and (10) Birmingham, Alabama, *see* **1917** Birmingham, Ala. Code, ch. XLIV, § 1544, Opp'n Ex. 55, ECF No. 59-59.

On a state level, in **1905**, Minnesota prohibited the possession of firearms within state parks unless they were unloaded and sealed by a park commissioner. 1905 Minn. Laws, ch. 344, § 53, Opp'n Ex. 50, ECF No. 59-54. In 1917, Wisconsin prohibited bringing a "gun or rifle" into any "wild life refuge, state park, or state fish hatchery lands" unless it was unloaded and in a carrying case. **1917** Wis. Sess. Laws, ch. 668, § 29.57(4), Opp'n Ex. 56, ECF No. 59-60. In **1921**, North Carolina enacted a law prohibiting the carrying of firearms in both private and public parks without the permission of the owner or manager of that park. *See* 1921 N.C. Sess. Laws 53–54, Pub. Laws Extra Sess., ch. 6, §§ 1, 3, Opp'n Ex. 57, ECF No. 59-61.

*Maryland Shall Issue, Inc. v. Montgomery Cnty., Maryland*, No. CV TDC-21-1736, 2023 WL 4373260, at *11 (D. Md. July 6, 2023) (emphases added).  The Court notes that these historical records were provided to the *Marlyand Shall Issue* court as exhibits but were not provided to the undersigned in the response.

Nevertheless, in reviewing these historical citations, there are several issues that render them irrelevant or unpersuasive in light of *Bruen*.  There was *no* citation to any relevant laws around the time of the enactment of the Second Amendment, and only two citations to laws before or around the enactment of the Fourteenth Amendment.  *Maryland Shall Issue* cited to six ordinances or laws from the late 1880 or 1890s, more than two decades after the enactment of the

Fourteenth Amendment, which have little bearing on the understanding of the right to bear arms during the enactment of the Second Amendment or Fourteenth Amendment. *Bruen*, 142 S.Ct at 2133, 2137 (because post-Civil War discussions of the right to keep and bear arms "took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources."), *quoting Heller*, 554 U.S. at 614. Finally, *Maryland Shall Issue* cited to several early 20th century laws, a time period which the *Bruen* decision expressly chose not to consider, as they were not consistent with earlier law. 142 S.Ct at 2154 n.28.

Defendants appear to take the position that they need not cite to any laws from the 18th century or early to mid-19th century because modern public parks existed beginning in the late 19th century.

However, Defendants did not establish in the evidentiary record that modern parks arose in the late 19th century.  In a footnote, Defendants reference several scholarly articles or books, but do not provide a relevant parenthetical or provide them to the Court. The Court is not convinced such articles provide sufficient evidence.  Even assuming those articles provided evidence for the Court to consider, it is not at all clear that there was no historical *analogue* to parks. *See* Anne Beamish, *Before Parks: Public Landscapes in Seventeenth- and Eighteenth-Century Boston, New York, and Philadelphia*, 40 Landscape J. 1, 14 (2021) ("Today's American public park is deeply rooted in the seventeenth- and eighteenth-century utilitarian village green, common, square, and parade ground"); *Koons v. Platkin*, 2023 WL 3478604, at *83 (D. NJ 2023) (listing examples and noting no evidence that historical analogues prohibited the carrying of firearms).  The Court does not determine whether modern parks are historically analogous to

historical common greens, but merely illustrates that Defendants have not provided *any* citation to firearm restrictions before 1850, such as during recreation.

Bruen did not state that the government need only look for historical *twins*.  *Bruen*, 142 S.Ct. at 2133. Rather, Defendants have the burden to cite to historical *analogues*, and Defendants have not provided evidence that there were no historical analogues to modern parks in the 18th century and early 19th century.  *Id.* Even if parks (as defined today) did not exist in the 18th century or early 19th century, Defendants still had the burden of providing evidence of firearm regulations in public spaces that were analogous to parks.  *Bruen*, 142 S.Ct. at 2132-33.  Here, Defendants did not present *any* such evidence, or any citation before 1850.  *See, e.g., Koons*, — F.Supp.3d at ——, 2023 WL 3478604, at *83 ("Despite the existence of such common lands since the colonial period, the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks."), *cited in Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805, at *21 (D. Haw. Aug. 8, 2023) (same).  For example, assuming today modern parks are used for recreation, Defendants provided no citations to historical analogues before 1850 limiting firearms during recreational activity or in places of recreation, or even in social gatherings.

Moreover, the vast majority of the citations in *Marlyand Shall* Issue are to laws or ordinances arising in the late 19th century and early 20th century.  "This Court gives less weight to laws enacted within a few years of the 20th century because they provide little insight into the public's understanding of the Second Amendment either in 1791 or 1868." *Bruen*, 142 S. Ct. at 2154 (explaining that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence"); *see also Id.* at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or

**App. 179**

their *amici*. As with their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence.").  The *Bruen* decision considered late 19th century laws to the extent they were consistent with earlier laws. *Id.* at 2137, 2154.  And it did not consider 20th century law at all. *Id.* at 2154 n.28; *see also Heller*, 554 U.S. at 605, 128 S.Ct. 2783 (evidence of "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century" represented a "critical tool of constitutional interpretation."), quoted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136, 213 L. Ed. 2d 387 (2022).  Because Defendants did not create a record in accordance with these authorities of earlier laws restricting the carrying of firearms in historical analogues, they have not shown that the laws they did cite were consistent with earlier law. *See, e.g., Rocky Mountain Gun Owners v. Polis*, No. 23-CV-01077-PAB, 2023 WL 5017253, at *18 (D. Colo. Aug. 7, 2023) (government fell short of showing historical tradition of firearm regulation when it failed  to point to *any* evidence of understanding of right to bear arms in founding period.), *citing Bruen*, 142 S. Ct. at 2136 (relying on evidence from reconstruction era on would "give postenactment history  more weight than it can rightly bear.").

Defendants cite to territorial law from western states such as New Mexico, Arizona, and Oklahoma. But the *Bruen* court expressly rejected relying on territorial laws or decisions.  *Bruen*, 142 S.Ct*.* at 2154-55. The *Bruen* decision reasoned that the territories governed less than 1% of the American population, the territorial laws were enacted a century after the Second Amendment was adopted, the territorial laws were transitory, and they were rarely subject to judicial scrutiny. *Id.* at 2155. Therefore, western territorial laws shed little light on the understanding of the Second Amendment when it was adopted. Defendants suggest the Court

**App. 180**

should reject the *Bruen* decision's analysis of western territorial law.  District courts lack the authority to reject the analysis set forth by the United States Supreme Court, and in any event, *Bruen's* analysis is persuasive.

Defendants also cite to a Texas statute from 1871.  *See* Response, Doc. 15 at 13.  The *Bruen* court addressed this Texas statute, finding it to be an outlier.  In that statute, Texas prohibited firearms in public venues and social gatherings.  1871 Texas Gen Laws Ch. 34, § 1. The Supreme Court of Texas upheld the law.  *English v. State*, 35 Tex. 473, 476.  The *Bruen* court analyzed this law, considered it an outlier, and stated that it contradicted the weight of other evidence.  *Bruen,* 142 S. Ct at 2153.  Here, the Texas statute and decision does not alter the Court's reasoning, or fix the defects identified in the Court's order.  The Texas law does not cure the defect that *no* historical analogue was cited prior to 1850, or demonstrate a historical tradition of firearm regulation in historical analogues.

Defendants also cited to a statute from Missouri.  Missouri enacted a law in 1883 "prohibiting the carrying of firearms in places where people are assembled for 'educational, literary or social purposes' and ' any other public assemblage of persons met for any lawful purpose."  Response, Doc. 15 at 13, *quoting Antonyuk,* 639 F. Supp. 3d at 323. As noted above, the Missouri law does not fix the deficiencies identified in Defendants' historical record, as it was enacted in the late 19th century. Moreover, it is unclear why Defendants did not cite to any earlier law banning firearms in places where people assemble for educational, literary, social, or recreational purposes.

In sum, Defendants provide *no* evidence illuminating the scope of the Second Amendment before or around the time it was adopted.  *Bruen*, 142 S.Ct. at 2136 (constitutional rights "are enshrined within the scope they were understood to have when the people adopted

**App. 181**

them"). As to the time of the enactment of the Fourteenth Amendment, Defendants presented insufficient evidence illuminating such understanding. The majority of Defendants' citations come at least 20 years after the enactment of the Fourteenth Amendment, which the *Bruen* decision gave less weight, and considered to the extent it was consistent with earlier law. Under the circumstances of this case, Defendants' citation primarily to historical analogues from the late 19th century and early 20th century is insufficient to establish a historical tradition of firearm regulation in relevant historical analogues.

Considering the evidence before the Court at the time the preliminary injunction was issued, the Court concludes that it did not err in concluding that Defendants failed to carry their burden to establish a historical tradition of firearm regulations in public parks. Therefore, the Court concludes that (1) Defendants have not shown an error warranting reconsideration and (2) Defendants have not demonstrated they are likely to succeed on the merits of an appeal warranting a stay of the preliminary injunction.

**B.      Defendants' arguments for reconsideration or a stay are not well-taken**

Defendants assert that the Court erred in noting that they failed to cite to any law regulating firearms prior to 1850, as public parks only a rose in the late 19th century. As explained above, Defendants did not establish in the record that public parks arose in the late 19th century, which is a factual determination. Moreover, they did not establish that there were no earlier historical *analogues* to cite, such as prohibitions on carrying firearms during social gatherings or recreation.

Defendants cited to three scholarly works to establish that parks arose in the late 19th century. Doc. 15 at 15, n.16. The Court expressed skepticism that scholarly articles or books neither submitted into the record nor referenced in a declaration could provide evidence to

**App. 182**

establish a fact.  Doc. 19 at 13.  Defendants also did not state that those articles found that there were no historical *analogues* to modern parks prior to 1850. Defendants cited to three scholarly works as *evidence* establishing a *fact*, i.e., that "there were no modern-style parks at the time of the Founding Era."  Doc. 15 at 15 n.16. None of those three scholarly works were provided to the Court to consider as evidence.  *See* D.N.M.LR-Civ. 7.3(b) ("Parties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact."). *Bruen*, 142 S.Ct at 2130 n.6, 2133, 2150 (government must develop historical record). Therefore, Defendants did not satisfy their evidentiary burden.

Alternatively, Defendants' citations generally do not establish when modern parks arose, and do not establish that there was no *analogue* to modern parks in the 18th century or early 19th century. For example, one book stated that parks were created in the *early* 19th century.  *See* Susanne Scheld *et al., Rethinking Urban Parks: Public Space and Cultural Diversity*, 19-20 (2009).  It discusses the various type of parks but it does not state that modern parks were created in the mid to late nineteenth century.  Moreover, it did not state there were no historical analogues to modern parks relevant to the analysis of the historical tradition of firearm regulation, such as places for social gathering or recreation.  Defendants also cited to Steven R. Pendery, *Probing the Boston Common* at 43 Archaeology 42-47 (1990), but that citation has the same problems. It does not (1) state that modern parks were created in the late 19th century, or state that (2) there were no historical analogues to modern parks. Finally, Defendants cited to Michael Rawson, *Eden on the Charles, the Making of Boston*, 73 (Harvard University Press, 2010).  The cited page stated that the Boston Commons became entirely dedicated to passive recreation in 1830, approximately 30 years before "America's great park-building age." *Id.* There is no citation for this proposition.  The relevant end-note citation does not provide a source

26

for this fact and instead discusses a separate topic, and is therefore not persuasive. *See Id.* n. 88. Even so, *Eden on the Charles* does not establish that there were no historical analogues for Defendants to cite.  Therefore, the Court finds that (1) Defendants have not established that modern parks did not exist at the time of the founding or in the early 19th century; and (2) Defendants have not established there were no historical analogues they could have cited before 1850, such as restrictions during social gatherings or recreation.

Even assuming Defendants had established that modern parks did not exist prior to the mid to late 19th century (which they did not), Defendants had the burden of demonstrating a historical tradition of firearm regulation in historical *analogues,* not *twins.*  Defendants have not shown there were no historical *analogues,* such as firearm regulations during social gatherings or recreation.

Defendants assert the Court should have given more weight to the understanding of the right to bear arms around the time of the enactment of the Fourteenth Amendment in 1868, as opposed to the Founding Era.  *Bruen* noted a scholarly debate regarding whether the appropriate analysis should focus on time of the enactment of the Second Amendment (1791) or Fourteenth Amendment (1868) and did not expressly resolve the issue.  *Bruen,* 142 S.Ct. at 2138.  However, ignoring the understanding of the right to bear arms around the time of enactment of the Second Amendment would be wholly contradictory *Bruen's* actual analysis.  As explained above, *Bruen* repeatedly focused on the understanding of the right to bear arms at the time of the Second Amendment, and discounted later laws as not providing sufficient understanding of the understanding of the right to bear arms at the time of the enactment of the Second Amendment. Although *Bruen* acknowledged the scholarly debate, it also cited to multiple United States Supreme Court cases holding that the protections of the Bill of Rights as applied to the States is

27

**App. 184**

"pegged to the public understanding of the right when the Bill of rights was adopted in 1791." *Bruen*, 142 S.Ct at 2137-38. *Bruen* did not overrule those cases, and until the United States Supreme Court issues a different decision, the Court must follow these other Supreme Court decisions. *Bruen* itself considered the historical record at the time of the founding, and gave less weight to later laws.  The federal district courts ultimately must follow United States Supreme Court precedent. Therefore, the Court concludes that ignoring the understanding of the right to bear arms around the time of the enactment of the Second Amendment is not appropriate here.

Defendants assert that the Court should follow the Second Circuit decision in *Antonyuk,* which was issued after the court issued the preliminary injunction decision. *See Antonyuk v. Chiumento*, 89 F.4th 271, 355 (2d Cir. 2023) (reversing district court's preliminary injunction of firearm ban in public parks).  The Court notes that the *Antonyuk* decision appears to have a different historical record before it than this Court had.  The cases cited in *Antonyuk* were not all cited here, especially those from the founding era.  Moreover, *Antonyuk* appears to analogize modern parks to crowded public forums. There is nothing in the record demonstrating that public parks in Albuquerque and Bernalillo County are analogous to crowded, historical public forums in New York City.  Moreover, *Antonyuk* appeared to rely in part on territorial laws which the United States Supreme Court expressly rejected in *Bruen*, as explained above.

**V.     The remaining stay factors do not favor the issuance of a stay of the preliminary injunction pending appeal.**

Moreover, the remaining stay factors do not favor a stay of the preliminary injunction. To obtain a stay pending appeal, Defendants must show that they "will suffer irreparable injury unless the [stay] issues." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)). Harm

must not be speculative, rather Defendants bear the burden of showing a significant risk of harm absent a stay. *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021). That harm "must be both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001), quoted in *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021).

Defendants assert that they will suffer irreparable harm due to potential increased gun violence in public parks.  The record before the Court is unclear whether a firearm ban in public parks would reduce gun violence.  Defendants' arguments are contradictory. They cite to three shootings which occurred in Albuquerque parks before the public health order's ban on firearms in Albuquerque parks, as proof that a ban is necessary.  However, those shootings occurred during what Defendants allege was a separate firearm ban imposed by the City of Albuquerque.[2] To the extent they may suggest that additional state resources would be provided to enforce the Defendants' ban under the public health order, they have not presented that in the record. Defendants suggest that the public may be intimidated by individuals such as Plaintiff carrying firearms for self-defense.  While the Court is sympathetic to this argument, it is unclear whether this constitutes irreparable harm, and the Court is constrained by binding precedent under *Bruen*. Moreover, the government generally does not suffer irreparable harm from an injunction which halts an unconstitutional practice. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Even assuming Defendants had demonstrated irreparable harm, when a movant has not demonstrated a strong likelihood of success on appeal, a "stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co. v. United States*, 272 U.S. at 672, 47

---

[2] Although Defendants argue that the City of Albuquerque already had a firearm ban in place, as noted above, evidence of that ban was not presented in the record.

**App. 186**

S.Ct. 222 (citation omitted).  Based on the record before the Court, it appears that any harm is speculative.

Defendants must also demonstrate "that the balance of equities tips" in their favor and "that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)*.* "The third preliminary-injunction factor involves balancing the irreparable harms identified above against the harm that the [stay] causes" the other party. *Free the Nipple-Fort Collins,* 916 F.3d at 806. A loss of a constitutional right usually trumps any harm to the defendant. *Id*. Here, the Court finds that the harm suffered by Plaintiff outweighs the harm to Defendants' interests. *Id.* at 806-07. Even assuming the Defendants had demonstrated irreparable harm absent a stay pending appeal, the Court concludes that the balance of the equities favors denying the stay pending appeal.

It is clear that Plaintiff suffers harm from the infringement of his constitutional rights. The Tenth Circuit has observed that "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805 (10th Cir. 2019). The Tenth Circuit has ruled that violations of individual rights guaranteed under the Constitution constitute irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) (collecting cases).  Here, Plaintiff has made a strong showing that Defendants violated his Second Amendment right to carry firearms in public parks in Bernalillo County and Albuquerque, New Mexico. The violation of a constitutional right constitutes irreparable harm which cannot necessarily be adequately remedied by money damages. *Free the Nipple-Fort Collins*, 916 F.3d at 806-07 ("When a constitutional right hangs in the balance, though, even a temporary loss usually trumps any harm

**App. 187**

to the defendant.... (internal quotations and citations omitted)). Balancing the equities, the Court concludes a stay pending appeal is not appropriate.

As to the fourth and final factor, "it's always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 806-07.

Therefore, the remaining factors all weigh in favor of denying a stay pending appeal.

**VI.    The Court declines to modify the preliminary injunction to apply only to Plaintiff.**

Defendants request that the Court clarify that the preliminary injunction only applies to enforcement of the public health order against Plaintiff.  For example, Defendants cited to a case which counseled against a district court issuing a nationwide injunction. *Georgia v. President of the United States*, 46 F.4th 1283, 1306 (11th Cir. 2022). Here, the Court did not issue a nationwide injunction which applies outside of this district. Rather, it enjoins a portion of the Defendants' public health order which restricts the right to carry firearms in public parks in Albuquerque and Bernalillo County, New Mexico, which is within the District of New Mexico.

Moreover, courts regularly enjoin named defendants from enforcing their unconstitutional state or local laws, which has the result of enjoining them from enforcing their unconstitutional laws against non-parties. *See, e.g., May v. Bonta,* SACV 23-01798 CJC, 2023 WL 8946212, at *19 (C.D. Cal. Dec. 20, 2023) (enjoining state law restricting firearms); *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126, 1135 (D. Colo. 2017) (preliminarily enjoining "the City of Fort Collins from enforcing § 17–142(b) of the Fort Collins Municipal Code or Ordinance No. 134 to the extent that it prohibits women, but not men, from knowingly exposing their breasts in public."), *aff'd,* 916 F.3d 792 (10th Cir. 2019); *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1158 (10th Cir. 1999) (affirming preliminary injunction enjoining enforcement of unconstitutional New Mexico state law). This is especially true in what

31

**App. 188**

appears to be a facial challenge to an unconstitutional law or executive order.[3] *See, e.g., United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478, 115 S. Ct. 1003, 1019, 130 L. Ed. 2d 964 (1995) (considering whether plaintiff asserts a facial challenge to statute in determining whether to apply injunction to nonparties).

## CONCLUSION

As explained above, Defendants have not demonstrated that the Court should consider their new evidence which they could have, but did not, present in the briefing on the motion for preliminary injunction.  Considering the evidence before the Court at the time the preliminary injunction was issued, the Court concludes it did not err. Finally, the Court concludes that Defendants have not made a strong showing of success on appeal warranting a stay pending appeal. Therefore, the Court declines to issue an indicative ruling under Fed. R. Civ. P. 62.1 vacating the preliminary injunction, declines to modify the preliminary injunction, and declines to issue a stay of the preliminary injunction pending appeal.

**IT IS THEREFORE ORDERED** that Defendants' Emergency Motion for Stay Pending Appeal and Clarification **(Doc. 21)** is **DENIED.**

---

[3] It appears that Plaintiff has raised a facial challenge to the public health order's restriction on carrying firearms in public parks. A facial challenge attacks a statute head-on, asserting that the challenged statute "violates the Constitution in all, or virtually all, of its applications." *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (citation omitted). In contrast, an as-applied challenge "concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the *particular circumstances* of the case." *Id.* (citation omitted). "[T]he distinction between facial and as-applied challenges .... goes to the breadth of the remedy employed by the Court." *Citizens United*, 558 U.S. at 331, 130 S.Ct. 876. Here, the challenge appears to be facial, as Plaintiff has argued that public health order's firearm ban is unconstitutional in virtually all of its applications.  No party has identified any facts which would render the firearm ban constitutional in some circumstances, but unconstitutional in this case.

32

**IT IS FURTHER ORDERED** that the temporary stay of the preliminary injunction pending briefing on this motion is vacated.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

33