Nos. 23-2192, 23-2194

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JAMES SPRINGER,
Plaintiff-Appellee/Cross-Appellant,

v.

MICHELLE LUJAN GRISHAM, in her official capacity, et al.,
Defendants-Appellants/Cross-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
No. 1:23-cv-00781, Hon. Kea W. Riggs

**BRIEF FOR THE DISTRICT OF COLUMBIA, ILLINOIS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, HAWAI'I, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, WASHINGTON, AND WISCONSIN AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS/CROSS-APPELLEES**

BRIAN L. SCHWALB
District of Columbia Attorney General

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

RUSSELL C. BOGUE
Assistant Attorney General

MARCELLA COBURN
Assistant Attorney General

Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 674-0753
marcella.coburn@dc.gov

KWAME RAOUL
Illinois Attorney General

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General for
the State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI CURIAE...................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT .........................................................................................4

I.    The Second Amendment Allows States To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence. ........................................................................................4

II.   Consistent With Regulations Adopted By Other States, New Mexico's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations..........................................................7

      A.    Firearms pose special risks in crowded gathering spots. ......................9

      B.    Restricting firearms in sensitive places protects vulnerable populations. .........................................................................12

      C.    Sensitive-place designations help to protect the exercise of other constitutional rights. ..........................................................15

CONCLUSION ....................................................................................16

# TABLE OF AUTHORITIES

## *Cases*

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ............................................ 13

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
704 S.E.2d 365 (Va. 2011) ................................................................. 13

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................ 1, 4, 5, 6, 7, 15

*Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017) ......................................................... 7

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...................................... 2, 5, 6

*Medtronic Inc. v. Lohr*, 518 U.S. 470 (1996) .......................................................... 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 ......................................................... 1, 4, 5, 6, 7, 8, 15

*United States v. Class*, 930 F.3d 460 (D.C. Cir. 2019) ...................................... 8, 13

*United States v. Morrison*, 529 U.S. 598 (2000) ..................................................... 4

*Voisine v. United States*, 579 U.S. 686 (2016) ........................................................ 8

## *Statutes and Regulations*

Ala. Code § 13A-11-61.2 ........................................................................................ 12

Cal. Code. Regs. tit. 14, § 4313 .............................................................................. 12

Cal. Penal Code § 26230 ................................................................................... 12, 14

Colo. Rev. Stat. § 18-9-118 .................................................................................... 12

D.C. Code § 7-2509.07 ........................................................................................... 12

D.C. Code § 22-4502.01 .......................................................................................... 14

Del. Code Ann. tit. 11, § 1457 ................................................................................ 14

Ga. Code Ann. § 16-11-127.1 ................................................ 14

Haw. Rev. Stat. § 134-9.1 .................................................. 12

430 Ill. Comp. Stat. 66/65 ............................................. 12, 14

80 Ind. Admin. Code 11-2-2 .............................................. 12

La. Rev. Stat. § 40:1379.3 ................................................ 12

Mich. Comp. Laws Ann. § 28.425o .......................................... 14

Minn. Stat. § 97A.091 ..................................................... 12

Mo. Rev. Stat. § 571.107 .................................................. 14

N.C. Gen Stat. § 14-277.2 ................................................. 12

N.D. Cent. Code § 62.1-02-05 .............................................. 14

N.M. Stat. Ann. § 29-19-8 ................................................. 14

N.Y. Penal Law § 265.01-e ............................................. 12, 14

Neb. Rev. Stat. § 28-1202.01 .............................................. 15

18 Pa. Cons. Stat. Ann. § 912 ............................................. 14

S.C. Code Ann. § 23-31-215 ................................................ 14

Tex. Penal Code § 46.03 ............................................... 12, 14

Vt. Stat. Ann. tit. 13, § 4023 ............................................ 14

W. Va. Code Ann. § 61-7-11a ............................................... 14

Wash. Rev. Code Ann. § 9.41.300 ........................................... 15

Wyo. Stat. Ann. § 6-8-104 ................................................. 14

*Other*

Albuquerque, N.M., Code of Resolutions § 6-5-2(A) (2014) ............................... 10

Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139 (2021) .................................................. 11, 15

*Brooklyn Subway Shooting: Police Search for Gunman in Attack on Brooklyn Subway*, N.Y. Times (Apr. 15, 2022) ................................................ 10

Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727 (2018).................................... 11

Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12, 2013) ................................................ 9

*Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (June 15, 2023) .................................................. 11

Carina Benata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60 (2022) ................................. 9

David Hemenway et al., *Gun Use in the United States: Results from Two National Surveys*, 6 Injury Prevention 263 (2000) ........................................... 10

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205 (2018) ...................................................... 8

*Parks & Recreation: Balloon Fiesta Park*, City of Albuquerque, (last visited Mar. 6, 2024)........................................................................ 9

Carlie Porterfield, *10 Injured in Stampede at New York's Barclays Center Amid Shooting Scare, Police Say*, Forbes (May 29, 2022) ............................... 10

Sophie Reardon, *2 Arrested in "Targeted Shooting" Outside Pittsburgh Church During Funeral*, CBS News (Oct. 28, 2022)........................................ 10

Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881 (2019) ..................................................................... 13

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

Amici the District of Columbia, Illinois, California, Colorado, Connecticut, Delaware, Hawai'i, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin (collectively, "Amici States") submit this brief in support of defendants-appellants/cross-appellees under Federal Rule of Appellate Procedure 29(a)(2).

As independent sovereigns, Amici States have a responsibility to ensure the health, safety, and welfare of their communities.  That responsibility includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms.  Amici States have historically fulfilled this responsibility by implementing reasonable measures to regulate firearms, including by imposing location-based restrictions on carrying guns.  Such regulation does not conflict with the Second Amendment.  As the Supreme Court has consistently recognized, the Second Amendment does not encompass the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008)), but rather leaves states with the flexibility they need to protect their communities.

Indeed, the Second Amendment permits states to enact a variety of regulations to combat the misuse of firearms, making possible "solutions to social problems that suit local needs and values." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010). This flexibility is an essential element of our federalist system, and it ensures that firearm regulations appropriately and effectively address the specific concerns in each locality. Although Amici States have taken different approaches to regulating firearms, they share an interest in addressing gun violence in ways that are tailored to the needs of their residents. Amici States seek to maintain their authority to address firearm-related issues through legislation that is consistent with historical tradition and responsive to the unique circumstances in their communities.

## SUMMARY OF ARGUMENT

In September 2023, the New Mexico Governor issued an executive order declaring a state of public health emergency because of gun violence and directed several state agencies to implement a coordinated response to the emergency. Joint Appendix ("JA") 25-27 (Docket ("Doc.") 1-1). Following that order, the New Mexico Department of Health issued an emergency order imposing temporary restrictions on the possession of firearms in certain public places. JA28-30 (Doc. 1-2). At issue in this appeal is an amended version of that order, issued on October 6, 2023 ("Public Health Order"), that restricts individuals from carrying firearms, either openly or concealed, in public parks and playgrounds within the City of

Albuquerque or Bernalillo County.  JA51-54 (Doc. 10-1).  Plaintiff in this case sought preliminary injunctive relief enjoining enforcement of the Public Health Order, arguing that the restrictions violated his Second Amendment rights.  JA41-50 (Doc. 10).  The district court granted in part and denied in part plaintiff's request for preliminary injunctive relief.  The court declined to enjoin enforcement of the Public Health Order as to playgrounds, but it enjoined enforcement as to public parks.  JA103-04 (Doc. 19 at 19-20).  New Mexico appealed the court's ruling as to parks, JA105-06 (Doc. 20), and plaintiff cross-appealed as to playgrounds, JA126-27 (Doc. 25).

Amici States agree with New Mexico that both of these restrictions are permissible under the Second Amendment, and that the district court's ruling to the contrary as to public parks was incorrect.  In particular, the challenged provisions fit squarely within a long tradition of constitutionally acceptable regulations designed to meet states' responsibility to protect their residents and should not be enjoined.  Additionally, the sensitive places at issue in this case—parks and playgrounds—are consistent with the types of locations that other states have designated as sensitive: designations that limit firearm possession in crowded places, around vulnerable populations, and where individuals are exercising other constitutionally protected rights.  As in other states, New Mexico's sensitive-place designations protect the public from the heightened risk of gun violence in such locations.

## ARGUMENT

**I.    The Second Amendment Allows States To Implement Reasonable Firearm Regulations To Promote Gun Safety And Protect Against Gun Violence.**

Since the Founding, states have enacted restrictions on who may bear arms, where arms may be brought, and the manner in which arms may be carried. *See Bruen*, 142 S. Ct. at 2145; *Heller*, 554 U.S. at 626-27. The Public Health Order is one in a long line of state regulations designed to make gun possession and use safer for the public.

States have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotation marks omitted). Enacting measures to promote public safety—particularly those that are tailored to local circumstances—falls squarely within the reasonable exercise of states' police powers. Indeed, there is "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000).

The Supreme Court has repeatedly affirmed states' authority in this area, even as it has defined the scope and import of the rights conferred by the Second Amendment. In each of its major Second Amendment opinions—*Heller*, 554 U.S.

570, *McDonald*, 561 U.S. 742, and *Bruen*, 142 S. Ct. 2111—the Court expressly acknowledged the important role states play in setting their own local policies to minimize the risk of gun violence, consistent with our Nation's historical tradition.

In *Heller*, the Court made clear that the right to keep and bear arms is "not unlimited." 554 U.S. at 626. Although states may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens, they still possess "a variety of tools" to combat the problem of gun violence in a way that is responsive to the needs of their communities. *Id.* at 636. States may, for example, implement measures prohibiting certain groups of people from possessing firearms, and they may "forbid[] the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 626-27.

The Court reiterated this point in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" a state's "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute."). Recognizing that "conditions and problems differ from locality to locality," *id.* at 783, the Court made clear that "state and local experimentation with reasonable firearms regulations" could and should continue "under the Second Amendment," *id*. at 785 (brackets and internal quotation marks omitted).

*Bruen* reaffirmed these principles. There, the Court explicitly stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of provisions "designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635). Building on *Heller*, the *Bruen* Court also "assume[d] it settled" that prohibiting firearms in certain sensitive locations—including "schools and government buildings," "legislative assemblies, polling places, and courthouses," and analogous "new" sensitive locations—is constitutional. 142 S. Ct. at 2133. As the Court emphasized, the Second Amendment should not be understood to protect the "'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id*. at 2128 (quoting *Heller*, 554 U.S. at 626-27).

These decisions make clear that states retain wide power to enact laws to protect their residents. Those laws need not be uniform: states are free to select "solutions to social problems that suit local needs and values," ensuring that firearm regulations appropriately and effectively address the specific circumstances in each state. *McDonald*, 561 U.S. at 785. In other words, the Second Amendment is not a "regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133. On the contrary, states are permitted to enact a wide range of firearm regulations. *See id.* at 2162 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

Nor must these state laws be frozen in time. In *Bruen*, for example, the Court instructed courts to "use analogies" to long-recognized sensitive places—such as schools and government buildings—to "determine [whether] modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 142 S. Ct. at 2133-34; *see also Heller*, 554 U.S. at 627 n.26 (noting that a list of "presumptively lawful regulatory measures," including restrictions on firearms in schools and government buildings, contains only "examples" and is not "exhaustive").

In short, although the Supreme Court has defined the outer bounds of permissible regulations, it did not "abrogate" states' "core responsibility" of "[p]roviding for the safety of citizens within their borders." *Kolbe v. Hogan*, 849 F.3d 114, 150 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring) (quoting *Heller*, 554 U.S. at 635), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. States retain not only the freedom, but also the fundamental responsibility, to implement reasonable measures designed to respond to the needs of their communities and to protect their residents from the harms associated with gun violence.

## II. Consistent With Regulations Adopted By Other States, New Mexico's Designation Of "Sensitive Places" Protects Uniquely Vulnerable Locations And Populations.

The right to "bear" firearms in public has long been understood to permit restrictions on bearing arms in "sensitive places." *Heller*, 554 U.S. at 626; *see*

*Bruen*, 142 S. Ct. at 2133 (reaffirming that in sensitive places, "arms carrying [can] be prohibited consistent with the Second Amendment"). That is so because these restrictions "neither prohibit nor broadly frustrate any individual from generally exercising his right to bear arms." *Voisine v. United States*, 579 U.S. 686, 714 (2016) (Thomas, J., dissenting). Accordingly, "sensitive places" are "in effect exempt . . . from the Second Amendment." *Bruen*, 142 S. Ct. at 2133-34; *see* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 Charleston L. Rev. 205, 215 (2018) ("[T]he sensitive places doctrine is an exception to the general right to bear arms.").

As the D.C. Circuit has recognized, "bans on firearm possession" in sensitive places are justified by certain characteristics those places share—in particular, "because of the people found there or the activities that take place there." *United States v. Class*, 930 F.3d 460, 465 (D.C. Cir. 2019) (internal quotation marks omitted). New Mexico's decision to restrict firearms in parks and playgrounds aligns with these justifications and is thus a constitutional response to the heightened risk associated with the presence of firearms in such locations. Without the power to institute such restrictions, New Mexico and other states would be left unable effectively to prevent gun violence in crowded places, around vulnerable populations, or where individuals are exercising other constitutionally protected rights, putting the public at risk.

**A.     Firearms pose special risks in crowded gathering spots.**

To start, designating areas as sensitive places helps to preserve order and diminish the risk of panic in gathering locations and other crowded spaces. *See* Carina Bentata Gryting & Mark Frassetto, NYRSPA v. Bruen *and the Future of the Sensitive Places Doctrine: Rejecting the Ahistorical Government Security Approach*, 63 B.C. L. Rev. E. Supp. I.-60, I.-68 (2022) ("The number of potential targets" and "the increased risk of conflict all seem to be relevant in the historical determination that an area constitutes a sensitive place[.]").  Governments may therefore choose to restrict the use of firearms in places where the presence of large numbers of people creates risks to health and safety, such as in gathering spots like parks and playgrounds.  Indeed, the parks covered by the Public Health Order have the capacity to host myriad large gatherings and special events, including sporting events, company picnics, weddings, graduation parties, fundraisers, and concerts. *E.g.*, *Parks & Recreation: Balloon Fiesta Park*, City of Albuquerque.[1]

In such busy locations, firearm use is likely to end in tragedy—not only for the innocent bystanders who may be shot, but also for others who may be injured attempting to escape alongside a panicked crowd.  *See, e.g.*, Lauren DiSanto, *Teen Bystander Dies After Philadelphia Playground Shooting*, NBC News (Apr. 12,

---

[1]     *Available at* https://tinyurl.com/2rrwwjcz.

2013);[2] *Brooklyn Subway Shooting: Police Search for Gunman in Attack on Brooklyn Subway*, N.Y. Times (Apr. 15, 2022) (describing how 10 people were hit by gunfire and another 13 were injured from smoke inhalation, falls, or panic attacks);[3] Carlie Porterfield, *10 Injured in Stampede at New York's Barclays Center Amid Shooting Scare, Police Say*, Forbes (May 29, 2022);[4] Sophie Reardon, *2 Arrested in "Targeted Shooting" Outside Pittsburgh Church During Funeral*, CBS News (Oct. 28, 2022) (describing individual who was injured while trying to escape the scene of a church shooting).[5]

These dangers are heightened in locations where crowds can become volatile because of the presence of alcohol. *E.g.*, Albuquerque, N.M., Code of Resolutions § 6-5-2(A) (2014) (allowing alcohol in certain parks).[6] When individuals consume alcohol—which impairs both judgment and dexterity—the risk of either accidental or intentional use of firearms increases. *See* David Hemenway et al., *Gun Use in the United States: Results from Two National Surveys*, 6 Injury Prevention 263, 266 (2000) ("Regular citizens with guns, who are sometimes tired, angry, drunk or afraid, and who are not trained in dispute resolution or when it is proper to use a firearm,

---

[2]    *Available at* http://tinyurl.com/2p2xpvxk.

[3]    *Available at* http://tinyurl.com/4tdteru9.

[4]    *Available at* https://tinyurl.com/2xeuc7fj.

[5]    *Available at* https://tinyurl.com/5434vek3.

[6]    *Available at* https://tinyurl.com/4uvaffdb.

have many opportunities for inappropriate gun use.").[7] Further, given the "weapons effect," wherein the presence of a weapon intended to shoot human targets primes individuals to think and act more aggressively, allowing firearms in these spaces invites violence. *See* Brad J. Bushman, *Guns Automatically Prime Aggressive Thoughts, Regardless of Whether a "Good Guy" or "Bad Guy" Holds the Gun*, 9 Soc. Psych. & Personality Sci. 727, 730-31 (2018).

Firearms can also inhibit the safe and effective operation of locations where large numbers of people gather. The discharge of a firearm in or near a park or playground could cause a disruptive and inconvenient shut-down. *See, e.g.*, *Glasgow Park Closed Due to Thursday Morning Shooting*, First State Update (June 15, 2023).[8] And even the perceived risk of gun violence could cause repercussions, as individuals may be discouraged from visiting crowded locations where they know others may be armed. *See* Joseph Blocher & Reva B. Siegel, *When Guns Threaten the Public Sphere: A New Account of Public Safety Regulation Under* Heller, 116 Nw. U. L. Rev. 139, 141 (2021) ("Gun laws protect people's freedom and confidence to participate in every domain of our shared life, from attending school to shopping, going to concerts, gathering for prayer, voting, assembling in peaceable debate, counting electoral votes, and participating in the inauguration of a President.").

---

[7]     *Available at* https://tinyurl.com/3vnx7uc7.

[8]     *Available at* http://tinyurl.com/mrxw7nbh.

Recognizing these dangers, many states, like New Mexico, have chosen to restrict carrying firearms in crowded places. Some states similarly limit firearms in public and state parks. *See, e.g.*, Cal. Penal Code § 26230(a)(12); Cal. Code. Regs. tit. 14, § 4313; Minn. Stat. § 97A.091, subd.1(1); N.Y. Penal Law § 265.01-e(2)(d); 430 Ill. Comp. Stat. 66/65(a)(13). Other states limit open or concealed carry of firearms in public-transit facilities or vehicles. *See* Colo. Rev. Stat. § 18-9-118 (facilities); D.C. Code § 7-2509.07(a)(6) (facilities and vehicles); Haw. Rev. Stat. § 134-9.1(a)(13) (same); N.Y. Penal Law § 265.01-e(2)(n) (same), 430 Ill. Comp. Stat. 66/65(a)(8) (same). Still other states limit firearms at locations like stadiums, fairgrounds, and parade routes that, like public parks, host large gatherings and events. *See, e.g.*, Ala. Code § 13A-11-61.2(a)(5), (6) (school and professional athletic events); 80 Ind. Admin. Code 11-2-2(b) (fairgrounds); La. Rev. Stat. § 40:1379.3(N)(9) (parades); N.C. Gen Stat. § 14-277.2(a) (parades, picket lines, funeral processions); Tex. Penal Code § 46.03(a)(4), (13) (racetracks and amusement parks). By taking steps to prevent the unique dangers of firearm violence in crowded gathering spots, these laws help to support the inclusion and participation of all members of the public in community events.

## B. Restricting firearms in sensitive places protects vulnerable populations.

New Mexico's restrictions on carrying firearms in parks and playgrounds also help to protect the particularly vulnerable populations that frequent these locations,

such as children and their caregivers, elderly individuals, and persons with disabilities. Such individuals cannot easily defend themselves or escape a violent attack, should one occur. And even if they are not physically harmed by firearms, exposure to such violence can cause psychological harm. *See* Heather A. Turner et al., *Gun Violence Exposure and Posttraumatic Symptoms Among Children and Youth*, 32 J. Traumatic Stress 881, 888 (2019) (indirect exposure to gun violence, including witnessing violence or hearing gunshots, can be traumatic to children).[9]

Both federal and state courts have recognized that the regular presence of vulnerable people (such as children, the sick, and the elderly) in a particular location is a strong indication that it is properly deemed sensitive for Second Amendment purposes. *See, e.g.*, *Antonyuk v. Chiumento*, 89 F.4th 271, 341 (2d Cir. 2023) (finding a historical "tradition of prohibiting firearms in locations congregated by vulnerable populations"); *Class*, 930 F.3d at 465 (places are designated as sensitive "because of the people found there" (internal quotation marks omitted)); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("GMU is a 'sensitive place'" because it "is a school" with many students "under the age of 18," including "elementary and high school students" in the summer).

---

[9] *Available at* https://tinyurl.com/3esj8mmz.

Indeed, many states, like New Mexico, exclude firearms from places that welcome vulnerable segments of the population. For instance, some states similarly prohibit firearms at playgrounds. *See, e.g.*, Cal. Penal Code § 26230(a)(11) (playgrounds and youth centers); 430 Ill. Comp. Stat. 66/65(a)(12) (public playgrounds); N.Y. Penal Law § 265.01-e(2)(d) (same). Other states bar firearms in and around schools, *see, e.g.*, 11 Del. Code Ann. § 1457(a), (b)(1)-(2); D.C. Code § 22-4502.01(a); 18 Pa. Cons. Stat. Ann. § 912(b); Wyo. Stat. Ann. § 6-8-104(t)(ix), and at school functions, *see, e.g.*, Ga. Code Ann. § 16-11-127.1(b)(1); N.D. Cent. Code § 62.1-02-05(1)(a); W. Va. Code Ann. § 61-7-11a(b)(1)(C). States also prohibit weapons in daycare centers and preschools. *See, e.g.*, Mich. Comp. Laws Ann. § 28.425o(1)(b); N.M. Stat. Ann. § 29-19-8(C); S.C. Code Ann. § 23-31-215(M)(6). Additionally, many states prohibit firearms at hospitals, nursing homes, or other healthcare facilities. *See, e.g.*, 430 Ill. Comp. Stat. 66/65(a)(7) (hospitals, mental-health facilities, nursing homes); Mo. Rev. Stat. § 571.107(17) (hospitals); Tex. Penal Code § 46.03(a)(11) (hospitals and nursing homes); 13 Vt. Stat. Ann. § 4023(a) (hospitals). Like New Mexico, these states have acted to protect vulnerable populations by designating the spaces where they congregate as sensitive places where carrying firearms is prohibited.

**C.** **Sensitive-place designations help to protect the exercise of other constitutional rights.**

States also frequently designate locations as sensitive places to protect the exercise of other constitutional rights. The Supreme Court has recognized that areas in which constitutionally protected activities occur—such as courthouses, polling places, and legislative assemblies—are quintessential examples of sensitive places. *See Bruen*, 142 S. Ct. at 2133; *Heller*, 554 U.S. at 626-27. Firearms may be prohibited in these locations because of the risk that violence could threaten key government functions.

States have similarly designated as sensitive places events involving political speech, like political rallies and protests. *See, e.g.*, Neb. Rev. Stat. § 28-1202.01(3) (restricting firearms at political rallies and fundraisers); Wash. Rev. Code Ann. § 9.41.300(2) (restricting firearms at protests or demonstrations). The same reasoning applies to areas like public parks, in which individuals may engage in speech and political activity. Not only are these locations often targets of violence, but the mere presence of firearms (and the implicit threat they communicate) could chill individuals' peaceful exercise of their speech rights. *See* Blocher & Siegel, *supra* at 141.

# CONCLUSION

This Court should reverse in part and vacate the injunction.

Respectfully submitted,

<div style="display: flex;">
<div>

BRIAN L. SCHWALB
District of Columbia Attorney General

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

RUSSELL C. BOGUE
Assistant Attorney General

/s/ Marcella Coburn
MARCELLA COBURN
Assistant Attorney General

Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 674-0753
marcella.coburn@dc.gov

March 21, 2024

</div>
<div>

KWAME RAOUL
Illinois Attorney General

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General

Office of the Attorney General for the
State of Illinois
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

</div>
</div>

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther
King Jr. Boulevard
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 N. Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
Richard J. Hughes
Justice Complex
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. of App. P. 29(a)(4)(G) and 32(g), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(C) because it contains 3,329 words, excluding the parts of the brief exempted by Fed. R. App. P. 29(a)(5) and 32(a)(7).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Marcella Coburn
Marcella Coburn

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on March 21, 2024, I electronically filed the foregoing Brief of Amici Curiae the District of Columbia, Illinois, et al., with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Marcella Coburn
Marcella Coburn